| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Marianna Udem<br>Brigette McGrath<br>ASK LLP<br>60 East 42nd Street, 46th Floor<br>New York, NY 10165<br>Telephone: (212) 267-7342<br>Facsimile: (212) 918-3427<br>mudem@askllp.com<br>bmcgrath@askllp.com<br><br>*Special Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND, INC., *et al.*,[1]<br><br>                Debtor. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |
| Michael Goldberg, as Plan Administrator for<br>20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath &<br>Beyond Inc.),[2]<br>                Plaintiff,<br><br>v.<br><br>Artsana USA, Inc.,<br>                Defendant. | Adv. No. 24-01336-VFP |

**PLAN ADMINISTRATOR'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S CLAIMS
AGAINST DEFENDANT, ARTSANA USA, INC.**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

I.      SUMMARY OF ARGUMENT ....................................................................... 1

II.     STATEMENT OF UNDISPUTED MATERIAL FACTS ................................ 2

III.    ARGUMENT ................................................................................................. 7

    A.  Legal Standard for Summary Judgment ....................................................... 7

    B.  The Transfers Were Property of the Debtors ................................................ 8

    C.  Plaintiff's *Prima Facie* Case is Satisfied ...................................................... 8

        1.   The Transfers Were Made to Defendant, a Creditor of the Debtors ...................... 9

        2.   The Transfers Were on Account of Debt Owed by the Debtors Before the
             Transfers Were Made, and Were Therefore "Antecedent" Within the Meaning Of
             11 U.S.C. § 547(b)(2) ...................................................... 9

        3.   The Debtors Were Insolvent at All Times During the Preference Period and Have
             the Benefit of the Statutory Presumption of Insolvency Under 11 U.S.C. § 547(f)
             ...................................................................................... 10

        4.   The Transfers Occurred On Or Within 90 Days of The Petition Date ................. 10

        5.   The Transfers Enabled Defendant to Receive More Than It Would Have Received
             If the Transfers Had Not Been Made and Defendant Received Payment of Its
             Debt to The Extent Provided by The Bankruptcy Code ...................................... 11

    D.  The Plaintiff Conducted Reasonable Due Diligence ....................................... 12

    E.  The Plaintiff Need Not Introduce Evidence That The Exceptions to Avoidance Set Forth
        in 11 U.S.C. § 547(c) Are Inapplicable to the Transfers ................................... 13

    F.  There is No Genuine Issue of Material Fact That The Transfers Were Not Made in the
        Ordinary Course of Business .......................................................................... 13

    G.  Defendant's Claims Should Be Disallowed Pending Plaintiff's Recovery of the Transfers
        ...................................................................................................... 18

IV.     CONCLUSION ............................................................................................ 18

# TABLE OF AUTHORITIES

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505 (1986) ....................................................................... 7

*Barnhill v. Johnson*,
    503 U.S. 393, 112 S. Ct. 1386 (1992) ..................................................................... 10

*Braniff Inc. v. Sundstrand Data Control, Inc. (In re Braniff, Inc.)*,
    154 B.R. 773 (Bankr. M.D. Fla. 1993) ................................................................... 15

*Briden v. Foley*,
    776 F.2d 379 (1st Cir. 1985) .................................................................................. 10

*Burtch v. Masiz (In re Vaso Active Pharmaceuticals, Inc.)*,
    500 B.R. 384 (Bankr. D. Del. 2013) ........................................................................ 7

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548 (1986) ...................................................................... 7

*Corel Petroleum, Inc. v. Banque Paribas-London*,
    797 F.2d 1351 (5th Cir. 1986) ................................................................................. 8

*Fruehauf Trailer Corp. v. Gen. Bearing Corp.* (*In re Fruehauf Trailer Corp.*),
    2008 WL 835693 (Bankr. D. Del. Mar. 27, 2008) .................................................. 9

*G.H. Leidenheimer Baking Co. v. Sharp (In re SGSM Acquisition Co.)*,
    439 F.3d 233 (5th Cir. 2006) ................................................................................. 13

*Gold Force Int'l, Ltd. v. Off. Comm. of Unsecured Creditors of Cyberrebate.com, Inc.*,
    No. 03 CV 5982(JG), 2004 WL 287144 (E.D.N.Y. Feb. 10, 2004) ...................... 15

*Halperin v. All Am. Poly Corp. (In re FBI Wind Down)*,
    581 B.R. 116 (Bankr. D. Del. 2018) ...................................................................... 15

*Hassett v. Altai, Inc.* (*In re CIS Corp.*),
    214 B.R. 108 (S.D.N.Y. 1997) .............................................................................. 13

*Hechinger Inv. Co. of Del., Inc. v. Universal Forest Prods. (In re Hechinger Inv. Co. of Del.,
    Inc.)*,
    489 F.3d 568 (3d Cir. 2007) .................................................................................. 15

*Huffman v. New Jersey Steel Corp. (In re Valley Steel Corp.)*,
    182 B.R. 728 (Bankr. W.D. Va. 1995) ................................................................... 14

*In re 360Networks (USA) Inc.*,
    338 B.R. 194 (Bankr. S.D.N.Y. 2005) ................................................................... 14

*In re Alpha Ctr., Inc.*,
    165 B.R. 881 (Bankr. S.D. Ill. 1994) ....................................................................... 8

*In re Brazier Forest Products, Inc.*,
    921 F.2d 221 (9th Cir. 1990) ................................................................................. 13

*In re Brothers Gourmet Coffees, Inc.*,
  271 B.R. 456 (Bankr. D. Del. 2002) ............................................................................ 10

*In re Bullion Reserve of North America*,
  836 F.2d 1214 (9th Cir. 1988) ...................................................................................... 8

*In re Coco*,
  67 B.R. 365 (Bankr. S.D.N.Y. 1986) .......................................................................... 10

*In re Contempri Homes*,
  269 B.R. 124 (Bankr. M.D. Pa. 2001) .......................................................................... 9

*In re Dobbs*,
  *115 B.R. 258 (Bankr. D. Idaho 1990)* ......................................................................... 8

*In re First Software Corp.*,
  81 B.R. 211 (Bankr. D. Mass. 1988) ........................................................................... 13

*In re Keystone Foods, Inc.*,
  145 B.R. 502 (Bankr. W.D. Pa. 1992) ........................................................................ 11

*In re Molded Acoustical Prod., Inc.*,
  18 F.3d 217 (3d Cir. 1994) ..................................................................................... 1, 14

*In re Radnor Holdings Corp.*,
  2009 WL 2004226 (Bankr. D. Del. July 9, 2009) ....................................................... 8

*In re Sierra Steel, Inc.*,
  96 B.R. 271 (B.A.P. 9th Cir. 1989) ............................................................................... 8

*In re Smith Min. and Material, LLC*,
  405 B.R. 589 (Bankr. W.D. Ky. 2009) ........................................................................ 14

*In re Total Tech. Serv., Inc.*,
  150 B.R. 893 (Bankr. D. Del. 1993) ............................................................................ 11

*In re Valley Steel Petroleum, LLC*,
  2010 WL 2746989 (Bankr. E.D. Wi. Jul. 9, 2010) ..................................................... 15

*In re Virginia-Carolina Fin. Corp.*,
  954 F.2d 193 (4th Cir. 1992) ....................................................................................... 11

*J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*,
  909 F.2d 1524 (3d Cir. 1990) ...................................................................................... 13

*J.P. Fyfe, Inc. v. Bradco Supply Corp.*,
  891 F.2d 66 (3d Cir. 1989) .......................................................................................... 15

*Marathon Oil v. Flatau (In re Craig Oil)*,
  785 F.2d 1563 (11th Cir. 1986) ................................................................................... 14

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574, 106 S. Ct. 1348 (1986) ........................................................................... 7

*Official Comm. of Unsecured Creditors v. Juniper Commc'ns, Inc. (In re Network Access
  Solutions Corp.)*,
  320 B.R. 574 (Bankr. D. Del. 2005) .............................................................................. 9

*Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*,
   315 B.R. 443 (Bankr. S.D. Ohio 2004) ................................................................. 14

*Savage & Assoc. v. Mandl (In re Teligent, Inc.)*,
   380 B.R. 324 (Bankr. S.D.N.Y. 2008) ................................................................. 11

*Scharffenberger v. United Creditors Alliance (In re Allegheny Health)*,
   292 B.R. 68 (Bankr. W.D. Pa. 2003) ................................................................. 11

*Schick v. Herskowitz (In re Schick)*,
   234 B.R. 337 (Bankr. S.D.N.Y. 1999) ................................................................. 8

*Waslow v. The Interpublic Grp. Of Cos. (In re M Group, Inc.)*,
   308 B.R. 697 (Bankr. D. Del. 2004) …………………………………………………..……10


**Statutes**
11 U.S.C. § 502(d) ................................................................................................. 18
11 U.S.C. § 547(b) ......................................................................................... passim
11 U.S.C. § 547(c) ......................................................................................... passim
11 U.S.C. § 547(f) ........................................................................................... 1, 10
11 U.S.C. § 547(g) ....................................................................................... 1, 9, 13
**Rules**
Fed. R. Bankr. P. 7056 ..................................................................................... 1, 2, 7
Fed. R. Civ. P. 56 .............................................................................................. 1, 2, 7

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable herein pursuant to Federal Rule of Bankruptcy Procedure 7056, Michael Goldberg, in his capacity as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.) (the "Plan Administrator" or "Plaintiff"), hereby submits this Memorandum of Law in support of his *Motion for Summary Judgment with Respect to Plaintiff's Claims Against Defendant, Artsana USA, Inc.* (the "Motion").

## I.    SUMMARY OF ARGUMENT

The preference statute aims to (a) ensure creditors are treated equitably by prohibiting the debtor from preferring its most demanding creditors to the detriment of others and (b) discourage certain creditors from racing to dismember the debtor. *In re Molded Acoustical Prod., Inc.*, 18 F.3d 217, 219 (3d Cir. 1994). Avoidance and recovery of the transfers at issue in this matter will accomplish both of these goals.

Plaintiff has satisfied the elements under 11 U.S.C. § 547(b)(1)-(2) and (4)-(5) of its *prima facie* case against Defendant, both through evidence presented *infra* as well as the admissions of Defendant. As for the insolvency requirement of 11 U.S.C. § 547(b)(3), Plaintiff is entitled to a presumption of insolvency under 11 U.S.C. § 547(f), and Defendant has no evidence to rebut the statutory presumption. Thus, Plaintiff meets all elements of 11 U.S.C. § 547(b), and summary judgment should be granted as a matter of law as to Plaintiff's case in chief.

The Transfers are avoidable unless they are protected by one of the exceptions to avoidance under 11 U.S.C. § 547(c). Pursuant to 11 U.S.C. § 547(g), Defendant bears the burden of proof of its 11 U.S.C. § 547(c) defenses and Plaintiff reserves the right to respond to and refute any defenses raised by Defendant. Nevertheless, the evidence available to Plaintiff confirms that summary judgment in favor of Plaintiff as to § 547(c) defenses is appropriate.

1

## II.    STATEMENT OF UNDISPUTED MATERIAL FACTS

Pursuant to Federal Rule of Civil Procedure 56(a), made applicable by Federal Bankruptcy Rule 7056, and Local Rule 7056-1, Plaintiff presents the following statements of material facts which are not in dispute (the "Statement of Facts"):

**Undisputed Facts Concerning the Bankruptcy Cases**

1.    On April 23, 2023 (the "Petition Date"), Bed Bath & Beyond Inc. and certain of its affiliates (collectively, the "Debtors") each commenced a voluntary case under chapter 11 of the Bankruptcy Code (the "Bankruptcy Cases").  The 90-day period before the Petition Date was January 23, 2023 through April 23, 2023 (the "Preference Period").

2.    On April 24, 2023, the Court entered the *Interim Order (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records, (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances, and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days*, incorporated here by reference (the "Cash Management Order").[3]  The Cash Management Order approved the Debtors' continued use of their centralized cash management system, including the use of certain Concentration Accounts and Disbursement Accounts for the collection of revenues and the disbursement of accounts payable.[4]

---

[3] D.I. 78.

[4] *See* Cash Management Order and corresponding *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Continue Use of Existing Business Forms and Records, (B) Maintain Existing Corporate Bank Accounts and Cash Management System, (C) Pay Prepetition Bank Fees Associated with the Cash Management System, and (D) Continue Performance of Intercompany Transactions; (II) Granting Administrative Expense Status to Postpetition Intercompany Balances; and (III) Waiving Certain U.S. Trustee Requirements for a Period Not to Exceed Thirty Days* [D.I. 18].

3.      On September 14, 2023, the Court entered its *Findings of Fact, Conclusions of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* (the "Confirmation Order" and "Plan," respectively).[5]

4.      The effective date of the Plan (the "Effective Date") occurred on September 29, 2023.[6]

5.      In accordance with the Plan, Confirmation Order, and the Plan Administrator Agreement, Michael Goldberg was appointed as the Plan Administrator with all rights, powers, duties, and privileges of a trustee in bankruptcy and as exclusive representative of the Wind-Down Debtors.[7]  A copy of Mr. Goldberg's supporting Declaration is attached hereto as **Exhibit A** (the "Goldberg Declaration").

6.      Pursuant to paragraph 47 of the Confirmation Order, "all Causes of Action shall automatically vest in the Wind-Down Debtors, and the Plan Administrator, subject to the oversight of the Oversight Committee, shall have the right and authority to investigate, commence, prosecute, or settle, as appropriate, any and all of the Non-Released Claims, whether arising before or after the Petition Date."[8]

7.      Pursuant to Article III(D) of the *Amended Disclosure Statement Relating to the Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates* (the "Disclosure Statement"), general unsecured claims comprise an impaired class of creditors and are

---

[5] D.I. 2172.

[6] D.I. 2311.

[7] *See* D.I. 2161 (the "Plan Administrator Agreement"), § 2.1.

[8] D.I. 2172.

not expected to be paid in full.[9]

**Undisputed Facts Concerning the Adversary Proceeding**

8.      On May 20, 2024, Plaintiff filed the *Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548 and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502*, initiating this adversary proceeding (the "Adversary Proceeding").[10]

9.      On February 18, 2025, Plaintiff filed the *First Amended Complaint to Avoid and Recover Transfers Pursuant to 11 U.S.C. §§ 547, 548 and 550 and to Disallow Claims Pursuant to 11 U.S.C. § 502* (hereafter, the "Complaint").[11]

10.     On March 13, 2025, Defendant filed an answer ("Answer") to the Complaint.[12]

11.     On April 16, 2025, Plaintiff caused to be served its amended written discovery requests and initial disclosures upon Defendant.[13]

12.     On May 14, 2025, Defendant submitted responses to Plaintiff's amended written discovery requests, a copy of which is attached hereto as **Exhibit B** (the "Discovery Responses").

13.     On September 8, 2025, Defendant conducted the deposition of the Debtors' representative, Laura Crossen, pursuant to Federal Rule 30(b)(6).  A copy of Ms. Crossen's deposition transcript with exhibits is attached hereto as **Exhibit C** (the "Crossen Trans.").

14.     On or about September 29, 2025, Plaintiff conducted the deposition of Defendant's representative, Thomas Gwiazdowski, pursuant to Bankruptcy Rule 30(b)(6).  A copy of Mr. Gwiazdowski's deposition transcript with exhibits is attached hereto as **Exhibit D** (the

---

[9] D.I. 1716 (projecting recoveries to holders of general unsecured claims to be 0% - 2.5%).  *See also* Goldberg Declaration ¶ 20.

[10] Adv. D.I. 1.

[11] Adv. D.I. 9.

[12] Adv. D.I. 14.

[13] Adv. D.I. 15.

"Gwiazdowski Trans.").

**Undisputed Facts Regarding Preference Period Transfers Between Debtors and Defendant**

15.     Prior to the Petition Date, the Debtors and Defendant had a business relationship whereby Defendant sold goods including baby products to the Debtors. Crossen Trans. 13:9-19.[14]

16.     Prior to the Preference Period, the Debtors purchased goods from Defendant on credit, with 60-day payment terms. Crossen Trans. 14:22 – 15:11; 22:14-20; Gwiazdowski Trans. 51:16-19.

17.     In December and early January 2023, Defendant inquired with the Debtors on multiple occasions about the Debtors' intentions to pay past due invoice obligations. Crossen Trans., Ex. 5.

18.     By early January 2023, Defendant determined the Debtors had amassed more than $5 million in accounts payable obligations owing to Defendant, including $2 million in past due payables. Crossen Trans. 51:12-20.

19.     On January 4, 2023, Defendant informed the Debtors it was considering stopping all shipments to the Debtors. Crossen Trans. 40:19-25, Ex. 5; Goldberg Decl. ¶ 13., Ex. 2.

20.     On January 7, 2023, Defendant imposed a freeze on all orders by the Debtors. Crossen Trans. 47:12-16, Ex. 6.

21.     On January 9, 2023, Defendant informed the Debtors it was holding all shipments. Goldberg Decl. ¶ 13, Ex. 2.

22.     On or about January 10, 2023, Defendant changed the parties' payment terms from credit to prepayment. Crossen Trans. 58:19-22; 59:8-12, Ex. 9; Gwiazdowski Trans. Ex. 12;

---

[14] Citations to deposition transcripts follow the following format: [Transcript Name] [page number]:[line number range]. In this example, the citation refers to page 13, lines 9 through 19 of Ms. Crossen's deposition transcript.

Goldberg Decl. ¶ 13, Ex. 2.  From this point forward, the Debtors were only permitted to buy goods from Defendant by payment in advance. Crossen Trans. 61:25 – 62:8.

23.     During the Preference Period, the Debtors desired to order new goods from Defendant.   Crossen Trans. 61:25 – 62:8; Gwiazdowski Trans. 63:21-23.

24.     At the same time as the Debtors were placing (and paying in advance for) new orders, the Debtors arranged to simultaneously pay a portion of their outstanding past due invoice obligations to Artsana.   Crossen Trans. 67:23 – 69:10; Gwiazdowski Trans. 63:21 – 64:21. Specifically, the Debtors arranged a payment to be allocated against past due invoices in an amount equal to 50% of the amount of their prepayment for new goods.  Crossen Trans. 63:13 – 64:21; 67:23 – 69:10, Ex 7.

25.     On or about February 24, 2023, the Debtors paid to Defendant $1,603,440.00 (the "February Payment").  *See* Discovery Responses, Defendant's Admission No. 26; Goldberg Decl. ¶ 9; Crossen Trans. 66:11-17, Exs. 3, 8.  Of the February Payment sum, $538,400.30 (the "Transfers") was applied in satisfaction of past due invoices.  Defendant's Admission No. 27; Gwiazdowski Trans. 12:12 – 13:10, Ex. 3; Goldberg Decl. ¶ 9.

26.     The remaining amount of the February Payment, in the sum of $1,065,040, was applied as prepayments for future goods.  Gwiazdowski Trans. 13:11 – 14:4, Ex. 3; Goldberg Decl. ¶ 13, Ex. 2.

27.     Defendant received the Transfers during the Preference Period.  Defendant's Admission Nos. 1, 2.

28.     The Transfers were made for Defendant's benefit in satisfaction of an antecedent debt. Defendant's Admission Nos. 3, 4, 6.

29.     At the time of the Transfers, Defendant was a creditor of the Debtors. Defendant's

Admission No. 5.

30.     Defendant had a right to receive the Transfers in satisfaction of or on account of a then-existing obligation or debt owed to it by the Debtors at the time of the Transfers.  Defendant's Admission No. 3.

31.     Defendant did not hold a fully perfected security interest in the assets of the Debtors.  Defendant's Admission No. 10.

### III.    ARGUMENT

**A.    Legal Standard for Summary Judgment**

In accordance with Federal Rule 56 and Bankruptcy Rule 7056, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A fact is considered material if it might affect the outcome of the suit under governing law.  *See Id*. at 248.

If the moving party satisfies its burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). "The mere existence of a scintilla of evidence" in support of the non-moving party is not sufficient to show a genuine issue of material fact. *Anderson*, 477 U.S. at 252. "'If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.'" *Burtch*

*v. Conn. Cmty. Bank (In re J. Silver Clothing, Inc.)*, 453 B.R. 518, 525 (Bankr. D. Del. 2011) (quoting Fed. R. Civ. P. 56).

**B.    The Transfers Were Property of the Debtors**

"For a transfer to be avoided under Section 547, 'it is essential that the debtor have an interest in the property transferred so that the estate is thereby diminished.'" *Corel Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351, 1355-56 (5th Cir. 1986), *rev denied*, 801 F.2d 398 (5th Cir. 1986) (quoting *In re Castillo*, 39 B.R. 45, 46 (Bankr. D. Colo. 1984)).    Money paid from a bank account under the debtor's control is presumptively property of the debtor. *In re Bullion Reserve of N. Am.*, 836 F.2d 1214, 1217 (9th Cir. 1988), *cert denied* 486 U.S. 1056, 108 S. Ct. 2824, 100 L. Ed. 2d 925 (1988); *In re Radnor Holdings Corp.*, 06-10894 (PJW), 2009 WL 2004226, *2 (Bankr. D. Del. July 9, 2009) (citing *Schick v. Herskowitz (In re Schick)*, 234 B.R. 337, 343 (Bankr. S.D.N.Y. 1999)).    "Money or funds paid from a commingled bank account are presumptively property of the debtor, and the transferee bears the burden of overcoming this presumption by tracing the money as trust assets." *In re Alpha Ctr., Inc.*, 165 B.R. 881, 886 (Bankr. S.D. Ill. 1994) *(citing In re Sierra Steel, Inc.*, 96 B.R. 271, 274, n. 5 (B.A.P. 9th Cir. 1989)*; In re Dobbs*, 115 B.R. 258, 271 (Bankr. D. Idaho 1990))*.

In this case, the Transfers were the property of the Debtors because the Transfers came from a bank account belonging to the Debtors.    Goldberg Decl. ¶ 9.    Specifically, the Transfers were paid from the Debtors' bank account with JP Morgan ending in x7509, an account used to pay accounts payable obligations.    Goldberg Decl. ¶ 9, Ex. 1.

**C.    Plaintiff's Prima Facie Case is Satisfied**

When all inferences to be drawn from the underlying facts are viewed in the light most favorable to the Defendant, the pleadings and affidavits submitted in connection with this Adversary Proceeding show that there is no genuine issue as to the fact that the Plaintiff has alleged

all of the necessary elements to satisfy its *prima facie* case under 11 U.S.C. § 547(b) and the

Plaintiff is therefore entitled to judgment as a matter of law.

To be recoverable as a preferential transfer, a payment must satisfy all of the requirements

of 11 U.S.C. § 547(b). Specifically, the transfer must have been:

> (1) made to or for the benefit of a creditor;
> (2) made for or on account of an antecedent debt owed by the debtor before such transfer was made;
> (3) made while the debtor was insolvent;
> (4) made on or within ninety (90) days before the date of filing of the petition; and
> (5) enabled the benefited creditor to receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor not received the transfer.

11 U.S.C. § 547(b).  The trustee or debtor in possession bears the burden of proving each of these

elements by a preponderance of the evidence. 11 U.S.C. § 547(g); *Official Comm. of Unsecured*

*Creditors v. Juniper Commc'ns, Inc. (In re Network Access Solutions Corp.)*, 320 B.R. 574, 576

(Bankr. D. Del. 2005).

### 1.    The Transfers Were Made to Defendant, a Creditor of the Debtors

The Defendant received the Transfers from the Debtors. *See* SUMF ¶¶ 25-30.   The

Transfers were made for the Defendant's benefit and Defendant was a creditor of the Debtors.  *See*

SUMF ¶¶ 25-30.

### 2.    The Transfers Were on Account of Debt Owed by the Debtors Before the Transfers Were Made, and Were Therefore "Antecedent" Within the Meaning Of 11 U.S.C. § 547(b)(2)

A debt is antecedent if it is incurred prior to the transfer in question. *Fruehauf  Trailer*

*Corp. v. Gen. Bearing Corp.* (*In re Fruehauf Trailer Corp.*), 96-01563 (PJW), 2008 WL 835693,

*4 (Bankr. D. Del. Mar. 27, 2008) (quoting *In re Contempri Homes,* 269 B.R. 124, 127 (Bankr.

M.D. Pa. 2001)).  The facts in this case establish that the Transfers were payments on antecedent

debts, as the payments were made pursuant to obligations that arose prior to the payments.

Specifically, the Transfers were made in satisfaction of invoices that predated each corresponding

Transfer.  *See* SUMF ¶¶ 24-30.  Defendant had a right to receive each Transfer in satisfaction of

or on account of a then-existing obligation or debt owed to it by the Debtors at the time payment

was made. *See* SUMF ¶¶ 24-30.

> **3.**      **The Debtors Were Insolvent at All Times During the Preference Period and Have the Benefit of the Statutory Presumption of Insolvency Under 11 U.S.C. § 547(f)**

For purposes of the third element, a debtor is presumed insolvent during the ninety (90)

days preceding the filing of the petition. *See* 11 U.S.C. § 547(f); *Waslow v. The Interpublic Grp.*

*Of Cos. (In re M Group, Inc.)*, 308 B.R. 697, 700 (Bankr. D. Del. 2004).  A creditor's lack of

knowledge of the debtor's insolvency is no defense.  *See Briden v. Foley*, 776 F.2d 379, 381, n. 3

(1st Cir. 1985) ("The requirement that the creditor have reasonable cause to believe that the

debtor was insolvent at the time of the transfers was eliminated by Congress in the Bankruptcy

Amendments and Federal Judgeship Act of 1984"); *In re Coco*, 67 B.R. 365, 371 (Bankr.

S.D.N.Y. 1986). Because the Debtor has the benefit of this presumption, "[t]he party seeking to

rebut the presumption must introduce some evidence to show that the debtor was solvent at the

time of the transfer." *In re Brothers Gourmet Coffees, Inc.*, 271 B.R. 456 (Bankr. D. Del. 2002).

A party seeking to avoid a transfer may rest upon the presumption if the creditor fails to produce

some evidence of solvency. *Id.* If the party seeking to rebut the presumption fails, there is no

material issue as to the Debtor's insolvency.  *Id.*

In the instant case, the Defendant has no evidence to overcome the presumption.

Defendant's Admission No. 8.  Based on the presumption of insolvency, the Debtors were

insolvent during the ninety (90) days prior to the Petition Date. The Debtors' insolvency cannot

be questioned and there is no issue as to the Plaintiff's success on this element of its claim.

> **4.**      **The Transfers Occurred on or Within 90 Days of The Petition Date**

For purposes of Section 547(b)(4), a transfer occurs when the bank honors the payment.

*See Barnhill v. Johnson*, 503 U.S. 393, 400, 112 S. Ct. 1386, 1390 (1992) ("for the purposes of payment by ordinary check, therefore, a 'transfer' as defined by § 101(54) occurs on the date of honor, and not before"). The Preference Period in this matter is January 23, 2023, through and including April 23, 2023. The Transfers were made during the Preference Period. *See* SUMF ¶¶ 25, 27. Therefore, Section 547(b)(4)(A) is satisfied.

> **5.    The Transfers Enabled Defendant to Receive More Than It Would Have Received If the Transfers Had Not Been Made and Defendant Received Payment of Its Debt to The Extent Provided by The Bankruptcy Code**

Whether a transfer meets the test of Section 547(b)(5) of the Bankruptcy Code requires the formulation of a hypothetical chapter 7 distribution of the debtor's estate as it existed on the bankruptcy petition date. *Savage & Assoc. v. Mandl (In re Teligent, Inc.)*, 380 B.R. 324, 339 (Bankr. S.D.N.Y. 2008). Courts must determine whether the creditor obtained more pursuant to the transfer than the creditor would have received in a chapter 7 distribution without the transfer. 11 U.S.C. § 547(b)(5); *In re M Group, Inc.*, 308 B.R. at 700. As long as the distribution in bankruptcy is less than 100%, any payment on account of an unsecured creditor during the Preference Period will enable that creditor to receive more than it would have received in liquidation had the payment not been made. *Id.* (citing *Scharffenberger v. United Creditors Alliance (In re Allegheny Health)*, 292 B.R. 68, 78 (Bankr. W.D. Pa. 2003)); s*ee also In re Virginia-Carolina Fin. Corp.*, 954 F.2d 193, 198-99 (4th Cir. 1992); *accord In re Keystone Foods, Inc.*, 145 B.R. 502, 509 (Bankr. W.D. Pa. 1992). Therefore, a transfer is usually preferential if the distribution to unsecured trade creditors is less than 100% because a payment to a trade creditor during the preference period would enable that creditor to receive a 100% payment. *See In re Total Tech. Serv., Inc.*, 150 B.R. 893 (Bankr. D. Del. 1993).

In the instant case, pursuant to the Disclosure Statement, the Confirmation Order and Plan,

general unsecured creditors are impaired and will receive far less than a 100% payout.  The

Disclosure Statement projects unsecured creditors will receive between 0 and 2.5% distributions

on the face amount of their claims.  Although the process of objecting to certain claims continues,

and therefore the reconciliation of claims has yet to be completed, the combination of secured and

unsecured claims is far greater than available assets such that general unsecured creditors will not

be paid in full.  Goldberg Decl. ¶ 14.  Defendant is an unsecured creditor, as it did not hold a

perfected security interest in the assets of the Debtors with respect to the Transfers.  *See* SUMF ¶

31.

   Plaintiff has accordingly met his burden of proving that the Transfers enabled the

Defendant to receive more than it would have received had the Debtors filed a chapter 7 case

without having made the Transfers at issue.

**D.    The Plaintiff Conducted Reasonable Due Diligence**

   Section 547(b) allows for avoidance "based on reasonable due diligence in the

circumstances of the case and taking into account a party's known or reasonably knowable

affirmative defenses under [§ 547(c)]".  Plaintiff conducted substantial due diligence in order to

assess Defendant's likely preference exposure after accounting for anticipated affirmative

defenses.

   Prior to bringing this Adversary Proceeding, Plaintiff collected and analyzed the Debtors'

invoice and payment histories in order to identify causes of action arising from transfers occurring

during the Preference Period and determine potential new value and any other likely defenses.

Goldberg Decl. ¶¶ 5-14.  Plaintiff's analysis determined that the amount of preferential transfers

avoidable under 11 U.S.C. § 547(b) was no less than $538,400.30.

   Based on the foregoing, Plaintiff conducted reasonable due diligence of the claims and

defenses supporting avoidance of the Transfers, and such Transfers are therefore avoidable.

**E.    The Plaintiff Need Not Introduce Evidence That the Exceptions to Avoidance Set Forth In 11 U.S.C. § 547(c) Are Inapplicable to the Transfers**

The moving party on summary judgment has no burden to negate or disprove matters for which the opponent has the burden of proof at trial. The Defendant has the burden of proving the non-avoidability of the Transfers under 11 U.S.C. § 547(c) by a preponderance of the evidence. 11 U.S.C. § 547(g); *G.H. Leidenheimer Baking Co. v. Sharp (In re SGSM Acquisition Co.)*, 439 F.3d 233, 239 (5th Cir. 2006); *In re Brazier Forest Products, Inc.*, 921 F.2d 221, 223 (9th Cir. 1990), and the Plaintiff, as the moving party, may simply point to the absence of such to make its case. *See J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990); *Hassett v. Altai, Inc. (In re CIS Corp.)*, 214 B.R. 108, 119 (S.D.N.Y. 1997). Moreover, "[b]ecause of the policy served by preference law, courts have repeatedly held that the exceptions contained in 11 U.S.C. § 547(c), including the ordinary course of business exception, 'should be narrowly construed.'" *In re CIS Corp.*, 214 B.R. at 119-20 (quoting, *inter alia*, *In re First Software Corp.*, 81 B.R. 211, 213 (Bankr. D. Mass. 1988)).

Nevertheless, for the reasons set forth in Part F, *infra*, there is no genuine issue of material fact that the Transfers were not made in the ordinary course of business and, therefore, Plaintiff requests summary judgment in his favor with regard to the ordinary course of business defense.

**F.    There is No Genuine Issue of Material Fact that the Transfers Were Not Made in the Ordinary Course of Business**

Section 547(c)(2) of the Bankruptcy Code allows a defense to recipients of otherwise avoidable transfers if the payments at issue were made in the ordinary course of business. 11 U.S.C. § 547(c)(2).

Courts commonly reject the ordinary course defense where the creditor has imposed

economic and collection pressure in order to receive payment. *See, e.g., In re 360Networks (USA) Inc.,* 338 B.R. 194, 210-11 (Bankr. S.D.N.Y. 2005) (It is "well settled" that payments made as a result of economic pressure or debt collection practices not common to the industry are not made in the ordinary course of business."; "To the extent an otherwise "normal" payment occurs in response to such practices, it is beyond the scope of § 547(c)(2)."); *Marathon Oil v. Flatau (In re Craig Oil),* 785 F.2d 1563, 1566 (11th Cir. 1986); *Huffman v. New Jersey Steel Corp. (In re Valley Steel Corp.*), 182 B.R. 728, 737 (Bankr. W.D. Va. 1995).

Creditor pressure includes, *inter alia*, an acceleration of payments, a change in credit terms imposed upon the parties' transactions, a credit or shipping hold, and a threat to stop shipments which spurs the debtor to pay. *See, e.g., Roberds, Inc. v. Broyhill Furniture (In re Roberds, Inc.)*, 315 B.R. 443 (Bankr. S.D. Ohio 2004) (a change in terms during the preference period was a factor supporting the denial of the ordinary course of business defense); *Halperin v. All Am. Poly Corp. (In re FBI Wind Down)*, 581 B.R. 116, 143 (Bankr. D. Del. 2018) (finding the threatening of account holds to be unusual collection activity); *Gold Force Int'l, Ltd. v. Off. Comm. of Unsecured Creditors of Cyberrebate.com, Inc.*, No. 03 CV 5982(JG), 2004 WL 287144, at *5 (E.D.N.Y. Feb. 10, 2004) (finding that the creditor engaged in pressure tactics and that the payments were not within the ordinary course of business where it attempted to suspend trading (delayed shipment of goods) due to payment delays and made phone calls to inquire about the status of payment and resent invoices for that payment); *In re Valley Steel Petroleum, LLC*, 2010 WL 2746989 (Bankr. E.D. Wi. Jul. 9, 2010) (citing various cases); *In re Molded Acoustical Prods., Inc.,* 18 F.3d 217 (3d Cir.1994) (payments not ordinary where creditor altered its collection practices by attempting to institute a payment plan and by mounting pressure on debtor to make larger payments as precondition to further shipments); *In re Smith Min. and Material, LLC*, 405 B.R. 589, 595 (Bankr.

W.D. Ky. 2009); *Hechinger Inv. Co. of Del., Inc. v. Universal Forest Prods. (In re Hechinger Inv.
Co. of Del., Inc.),* 489 F.3d 568, 577 (3d Cir. 2007); *J.P. Fyfe, Inc. v. Bradco Supply Corp.,* 891
F.2d 66 (3d Cir. 1989) (affirming the district court's finding that a change in payment terms carried
out as a result of the debtor's deteriorating financial condition precluded an ordinary course of
business defense); *Braniff Inc. v. Sundstrand Data Control, Inc. (In re Braniff, Inc.)*, 154 B.R. 773,
781 (Bankr. M.D. Fla. 1993) (finding that there were unusual debt collection effectors where the
creditor made threats to stop shipment of new merchandise unless payment were made on
outstanding invoices).

The testimony of the Debtors' representative, Ms. Crossen, confirms the Debtors made the
Transfers in direct response to Defendant's pressure.  According to Ms. Crossen, Defendant's
decision to stop shipments in response to an oversized open invoice balance imposed pressure on
the Debtors to pay down that balance.  Crossen Trans. pp. 43:10-18 ("the act of not shipping creates
pressure.  The act of indicating that shipments will be delayed or cease would create pressure.");
52:3-10 ("whenever shipments are held, it puts pressure on reviewing the status of the payables").
Defendant also changed the payment terms and stopped providing credit to the Debtors in order to
minimize its exposure going forward.  In addition, Defendant secured an arrangement whereby the
Debtors were not only paying in advance for new goods, but also paying an additional 50% toward
open invoices with each new order.   Crossen Trans. 68:4 – 69:10 ("Artsana received an
arrangement where 50 cents of each dollar of prepayment was paid to Artsana on open payables.
That's how [the amount of the Transfers] was arrived at.")  Defendant's cessation of shipments,
change in payment terms, shift to prepayment, and arrangement for arrearage payments at the time
of each new order for goods, created significant pressure on the Debtors.  Crossen Trans. 71:19 –
74:6 (describing prepayments and shipment holds as examples of the pressure imposed by

Defendant upon the Debtors); 58:9-16 ("if it was in fact a requirement that outstanding invoices be paid before any prepayment would be allowed, if that was the structure, then that would put pressure.").

Ms. Crossen's testimony is corroborated by email correspondence reflecting that Defendant took significant and atypical steps to minimize its credit exposure to the Debtors and protect itself from the Debtors' deteriorating financial condition just prior to and during the Preference Period:

- In early January 2023, Defendant informed BBB that Defendant was stopping all shipments on the Debtors' orders. This was the result of the Debtors' failure to make timely payments and Defendant's concerns about the Debtors' financial status. Crossen Trans. Exs. 1, 2, 5, 6.

- In addition to stopping shipments, Defendant informed the Debtors on January 10, 2023 it would no longer sell goods to the Debtors on credit and unilaterally shifted all payment terms with the Debtors going forward to prepayment. Crossen Trans. Ex. 9; Gwiazdowski Trans. 49:11-15 (explaining the shift to prepay was due to the Debtors' failure to timely pay past due invoices, in addition to the Debtors' lack of communication and responsiveness).

- On January 18, 2023, in response to Defendant's concerns about an outstanding receivable balance approaching $3 million, the Debtors communicated their intent to prioritize payments to Defendant. Crossen Trans. Ex. 10.

- On February 24, 2023, the Debtors informed Defendant they would spend approximately $1,065,040 on new orders, to be paid for in advance, and in addition, agreed to pay 50% of the new order amount, or approximately $532,520, in payment

of antecedent debt.[15]  Crossen Trans. Ex. 7.

This collection pressure alone dictates that the Transfers were made outside the ordinary course of business and are therefore recoverable.  Plaintiff is not aware of, nor can Defendant show, that the aforementioned evidence of collection pressure was a regular occurrence during the parties' course of dealing.  In addition to Defendant's pressure to pay, the Transfers were unusual for several other reasons.  The Transfers were combined with prepayments as part of one large payment (the February Payment) which was unlike any previous payment.  In fact, the Debtors were not subject to prepayment terms at any point during the 5-year period prior to the Petition Date.  Gwiazdowski Trans. 27:25 – 28:6; 51:16 – 52:8.  The Debtors had historically paid on a weekly basis, whereas the Transfers were made following several weeks of nonpayment.  Gwiazdowski Trans. 60:8-24.  In order to even afford the February Payment, the Debtors were forced to negotiate with their lenders to obtain waivers and raise cash.  Crossen Trans. 62:12 – 63:6.

In summary, Defendant reacted to the Debtors' financial struggles by holding shipments, eliminating credit terms, shifting the Debtors to prepay only, and collecting an additional 50% in arrearage payments (which constitute the very Transfers now subject to avoidance) on top of payment in advance for future goods.  These tactics allowed Defendant to reduce its credit exposure to the Debtors and place itself in a better position than other vendors which the Debtors could not afford to pay.  Defendant's actions are the hallmarks of non-ordinary collection pressure intentionally carried out for Defendant's benefit over other similarly-situated vendors, and render Defendant ineligible for the ordinary course of business defense.

---

[15] The amount ultimately paid and applied against past due invoices was $538,400.30, which sum is the subject of Plaintiff's preference claim.

**G. Defendant's Claims Should Be Disallowed Pending Plaintiff's Recovery of the Transfers**

Section 502(d) of the Bankruptcy Code expressly provides:

. . . the Court "shall disallow any claim of any entity from which property is recoverable under section . . . 550 . . . of this title or that is a transferee of a transfer avoidable under section . . . 547 . . . of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550 . . . of this title.

11 U.S.C. § 502(d).  The Transfers are both avoidable and recoverable from Defendant.  Defendant

has asserted claims in the underlying Bankruptcy Cases.  Pursuant to section 502(d), such claims

should be disallowed until such time as Defendants the amount of the Transfers to Plaintiff.

## IV.        CONCLUSION

The pleadings in this Adversary Proceeding, together with the declaration and deposition

transcripts and accompanying exhibits, collectively show there is no genuine issue as to any

material fact with respect to the avoidance and recovery of the Transfers. Accordingly, Plaintiff

respectfully requests that this Court enter an order granting summary judgment in favor of Plaintiff

with respect to the Transfers, in the amount of $538,400.30, plus interest at the prevailing rate.

Dated: March 13, 2026

                              **ASK LLP**

                              By: _/s/ Brigette McGrath_
                              Brigette McGrath Esq., NJ SBN 01000-2011
                              Nicholas C. Brown, Esq., VA SBN 99898,
                              NC SBN 38054 (admitted *pro hac vice*)
                              ASK LLP
                              2600 Eagan Woods Drive, Suite 400
                              St. Paul, MN  55121
                              Telephone: (651) 289-3867
                              Fax: (651) 406-9676
                              Email: bmcgrath@askllp.com
                                          nbrown@askllp.com

*-and-*

Marianna Udem, Esq., NJ SBN 03659-2006
60 East 42nd Street, 46th Fl.
New York, NY  10165
Telephone: (212) 267-7342
Fax: (212) 918-3427

*Attorneys for Movant*

# Exhibit A

**UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY**

**Caption in Compliance with D.N.J. LBR 9004-1(b)**
Marianna Udem
Brigette McGrath
ASK LLP
60 East 42nd Street, 46th Floor
New York, NY 10165
Telephone: (212) 267-7342
Facsimile: (212) 918-3427
mudem@askllp.com
bmcgrath@askllp.com

*Special Counsel to the Plan Administrator*

| | |
|---|---|
| In re:<br><br>BED BATH & BEYOND, INC., *et al.*,[1]<br><br>       Debtor. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |
| Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath & Beyond Inc.),[2]<br>       Plaintiff,<br><br>v.<br><br>Artsana USA, Inc.,<br>       Defendant. | Adv. No. 24-01336 (VFP) |

**DECLARATION OF MICHAEL I. GOLDBERG AS PLAN ADMINISTRATOR**

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

1

I, Michael I. Goldberg, hereby declare under penalty of perjury:

1.      I am the Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath &
Beyond Inc.) and sole officer for the Wind-Down Debtors in the above-captioned bankruptcy
cases.  I was appointed Plan Administrator in accordance with the *Findings of Fact, Conclusions
of Law, and Order (I) Approving the Disclosure Statement on a Final Basis and (II) Confirming
the Second Amended Joint Chapter 11 Plan of Bed Bath & Beyond Inc. and its Debtor Affiliates*
(the "Confirmation Order" and "Confirmed Plan") [Case No. 23-13359-VFP, Docket No. 2172].

2.      I make this Declaration in support of the *Plan Administrator's Memorandum of Law
in Support of Motion for Summary Judgment With Respect to Plaintiff's Claims Against Defendant,
Artsana USA, Inc.* (the "Motion") including the Plaintiff's *Statement of Undisputed Material Facts*
(the "Statement of Facts").

3.      I have read and acknowledge the statements in the Statement of Facts are true and
accurate to the best of my knowledge.

4.      In accordance with Sections F.7 and K of the Confirmation Order, I am authorized
to prosecute Chapter 5 avoidance actions.

5.      In furtherance of my authority to pursue Chapter 5 avoidance actions, I retained the
law firm ASK LLP as special counsel.  It is my understanding that the ASK LLP law firm has
extensive experience pursuing Chapter 5 avoidance actions along with other bankruptcy litigation.

6.      In my capacity as Plan Administrator and sole officer for the Wind-Down Debtors,
I have assumed custody of the Debtors' business records which are comprised in part of invoice
and payment data, account payable records, email correspondence, and financial information.

2

7.      I, by and through my retained professionals including but not limited to ASK LLP, undertook an in-depth review of the Debtors' invoice and payment data for the purpose of identifying potential Chapter 5 avoidance actions.

8.      In the course of the review of the Debtors' business records, I, with the assistance of my retained professionals including but not limited to ASK LLP, identified payments made by the Debtors to Artsana USA, Inc. ("Artsana" or "Defendant") during the 90-day period preceding the bankruptcy filing date, or January 23, 2023 through April 23, 2023 (the "Preference Period").

9.      Based on this review and the review of information provided by Artsana, I, with the assistance of professionals retained by me, identified a payment to Artsana in the total sum of $1,603,440.00 on or about February 24, 2023, of which $538,400.30 paid outstanding invoices (the "Transfers").  The payment was made from a bank account belonging to the Debtors.  A copy of the Debtors' bank statement corresponding to this payment is attached hereto as **Exhibit 1**.

10.     In connection with this review of the Debtors' business records, I, by and through professionals retained by me, reviewed the Debtors' invoice and payment information both prior to and during the Preference Period for evidence in support of common affirmative defenses including subsequent new value and ordinary course of business.

11.     Based on this review, I, by and through professionals retained by me, concluded that Artsana did not provide any goods or services during the Preference Period that would qualify under the subsequent new value defense because, among other reasons, any such goods were prepaid by the Debtors.

3

12.     I, by and through professionals retained by me, also reviewed the Debtors' email correspondence during and prior to the Preference Period for information relevant to potential avoidance actions, including evidence of economic or collection pressure by Artsana.

13.     Among other emails, I, by and through my retained professionals, identified the emails enclosed herewith as **Exhibit 2** as representative of economic and collection pressure by Artsana, summarized as follows:

- On January 4, 2023, Artsana's Vice President of Sales, Steve McLaughlin, informed the Debtors they were considering ceasing all shipments, stating "our HQ is pressuring stop ship."

- On January 9, 2023, Artsana notified the Debtors that Artsana was holding all shipments.

- The next day, on January 10, 2023, Artsana terminated its credit to the Debtors, notifying them that "we regret to inform you that we will be moving our terms to prepayment effective immediately on invoices dated 1/10/2023 or later.  We understand this move is not ideal and can review as more information on the state of the business is released."

- On January 18, 2023, Artsana notified the Debtors they were "close to $3M in past due invoices," to which the Debtors' representative responded they would "prioritized weekly payments".

- On February 24, 2023, the Debtors informed Artsana they would make a payment consisting of $1,065,040 in prepayments for new goods, plus an additional 50% of that figure to be applied to past due invoices.

14.     My responsibilities as Plan Administrator include pursuing certain avoidance actions and recovering and collecting the proceeds for distribution to creditors in accordance with the Confirmed Plan.  The Confirmed Plan sets forth a distribution scheme for such recoveries, and the Disclosure Statement estimated distributions to holders of general unsecured claims to be between 0% and 2.5%.  Although the process of objecting to certain claims continues, and therefore the reconciliation of claims has yet to be completed, the combination of secured and

unsecured claims is far greater than available assets such that general unsecured creditors will not be paid in full.

Dated:  March 13, 2026

_/s/ Michael I. Goldberg_____
Michael I. Goldberg
Plan Administrator

# CHASE ◯

JPMorgan Chase Bank, N.A.
P O Box 182051
Columbus, OH 43218 - 2051

January 21, 2023 through February 24, 2023
**Account Number:** ▮▮▮▮▮▮▮7509

---

### Customer Service Information

If you have any questions about your
statement, please contact your
Customer Service Professional.

00002261 WBS 802 211 05623 NNNNNNNNNNN  2 000000000 86 0000
BED BATH AND BEYOND INC
CASH MANAGEMENT
ANX BLDG
650 LIBERTY AVE
UNION NJ 07083



## Commercial Checking
### Summary

| | Number | Market Value/Amount | Shares |
|---|---|---|---|
| Opening Ledger Balance | | $0.00 | |
| Opening Collected Balance | | $0.00 | |
| Deposits and Credits | 8 | $30,261,434.76 | |
| Withdrawals and Debits | 110 | $28,765,280.05 | |
| Checks Paid | 5 | $382,826.61 | |
| **Ending Ledger Balance** | | **$1,113,328.10** | |
| **Ending Collected Balance** | | **$1,113,328.10** | |

## Activity

| Ledger Date | Value Date | Description | Debit | Amount |
|---|---|---|---|---|
| 01/21 | | **OPENING LEDGER BALANCE** | *** Balance *** | $0.00 |
| 01/21 | | **OPENING COLLECTED  BALANCE** | *** Balance *** | $0.00 |
| 01/24 | | FUNDING XFER FROM ▮▮▮▮▮8770 TRN: 0190004417RJ | | 88.20 |
| 01/24 | | CHECK          # 822630 | 88.20 | |
| | | **CLOSING LEDGER  BALANCE** | *** Balance *** | $0.00 |
| | | **CLOSING COLLECTED  BALANCE** | *** Balance *** | $0.00 |
| 01/30 | | FUNDING XFER FROM ▮▮▮▮▮8770 TRN: 0190004473RJ | | 84,705.22 |
| 01/30 | | CHECK          # 822349 | 42,973.38 | |
| 01/30 | | CHECK          # 822191 | 41,731.84 | |
| | | **CLOSING LEDGER  BALANCE** | *** Balance *** | $0.00 |
| | | **CLOSING COLLECTED  BALANCE** | *** Balance *** | $0.00 |
| 01/31 | | REVERSAL | | 42,973.38 |

* Annual Percentage Yield Earned - the percentage rate earned if balances remain on deposit for a full year with compounding, no
change in the interest rate and all interest rate and all interest is left in the account.

Please examine this statement of account at once.  By continuing to use the account, you agree that: (1) the account is subject to
the Bank's deposit account agreement, and (2) the Bank has no responsibility for any error or in or improper charge to the account
(including any unauthorized or altered check) unless you notify us in writing of this error or charge within sixty days of the mailing or
availability of the first statement on which the error or charge appears.

**CHASE** ◯

January 21, 2023 through February 24, 2023

**Account Number:** ▇▇▇▇▇▇7509

## Activity  *(continued)*

| Ledger Date | Value Date | Description | Debit | Amount |
|---|---|---|---|---|
| 02/24 | | ORIG CO NAME:BED BATH & BEYON    ORIG ID:9027509002 DESC DATE:PFINOF CO ENTRY DESCR:PAYMENTS  SEC:CCD TRACE#:021000024598138 EED:230224   IND ID:823031               IND NAME:823031 ACH ORIGIN#:8773467011  CO EFF: 23/ 02/24 230224 RP0552FV    I TRN: 0554598138TC | 1,603,440.30 | |
| 02/24 | | ORIG CO NAME:BED BATH & BEYON    ORIG ID:9027509002 DESC DATE:PFINOF CO ENTRY DESCR:PAYMENTS  SEC:CCD TRACE#:021000024598165 EED:230224   IND ID:823045               IND NAME:823045 ACH ORIGIN#:8773467011  CO EFF: 23/ 02/24 230224 RP0552FV    I TRN: 0554598165TC | 887,622.48 | |
| 02/24 | | ORIG CO NAME:BED BATH & BEYON    ORIG ID:9027509002 DESC DATE:PFINOF CO ENTRY DESCR:PAYMENTS  SEC:CCD TRACE#:021000024598167 EED:230224   IND ID:823046               IND NAME:823046 ACH ORIGIN#:8773467011  CO EFF: 23/ 02/24 230224 RP0552FV    I TRN: 0554598167TC | 825,767.42 | |
| 02/24 | | ORIG CO NAME:BED BATH & BEYON    ORIG ID:9027509002 DESC DATE:PFINOF CO ENTRY DESCR:PAYMENTS  SEC:CCD TRACE#:021000024598141 EED:230224   IND ID:823032               IND NAME:823032 ACH ORIGIN#:8773467011  CO EFF: 23/ 02/24 230224 RP0552FV    I TRN: 0554598141TC | 646,013.04 | |
| 02/24 | | ORIG CO NAME:BED BATH & BEYON    ORIG ID:9027509002 DESC DATE:PFINOF CO ENTRY DESCR:PAYMENTS  SEC:CCD TRACE#:021000024598173 EED:230224   IND ID:823049               IND NAME:823049 ACH ORIGIN#:8773467011  CO EFF: 23/ 02/24 230224 RP0552FV    I TRN: 0554598173TC | 619,843.04 | |
| 02/24 | | ORIG CO NAME:BED BATH & BEYON    ORIG ID:9027509002 DESC DATE:PFINOF CO ENTRY DESCR:PAYMENTS  SEC:CCD TRACE#:021000024598161 EED:230224   IND ID:823043               IND NAME:823043 ACH ORIGIN#:8773467011  CO EFF: 23/ 02/24 230224 RP0552FV    I TRN: 0554598161TC | 477,105.56 | |
| 02/24 | | ORIG CO NAME:BED BATH & BEYON    ORIG ID:9027509002 DESC DATE:PFINOF CO ENTRY DESCR:PAYMENTS  SEC:CCD TRACE#:021000024598151 EED:230224   IND ID:823037               IND NAME:823037 ACH ORIGIN#:8773467011  CO EFF: 23/ 02/24 230224 RP0552FV    I TRN: 0554598151TC | 264,520.00 | |
| 02/24 | | ORIG CO NAME:BED BATH & BEYON    ORIG ID:9027509002 DESC DATE:PFINOF CO ENTRY DESCR:PAYMENTS  SEC:CCD TRACE#:021000024598159 EED:230224   IND ID:823042               IND NAME:823042 ACH ORIGIN#:8773467011  CO EFF: 23/ 02/24 230224 RP0552FV    I TRN: 0554598159TC | 134,058.47 | |

 Outlook

---

**FW: Buy Buy Aging**

---

| From | Steve McLaughlin <IMCEAEX-_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-Steve+20McLau@EURP251.PROD.OUTLOOK.COM> |
|---|---|
| Date | Wed 1/4/2023 11:09 AM |
| To | Chad Taylor <chad.taylor@buybuybaby.com> |
| Cc | Josh Pahl <Josh.Pahl@artsana.com> |

Chad – Happy New Year. Can you please assist in pushing the finance team on communication. Our team has seemed to have lost contact with BRG team and our HQ is pressuring stop ship.

Many Thanks for any assistance – trail below for your review.

Thanks,
Steve

**Steve McLaughlin**
Vice President of Sales
Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com



---

**From:** Amanda Plasterer
**Sent:** Tuesday, January 3, 2023 11:49 AM
**To:** Greg Obetz ; Brian Cashman ; John Dery
**Cc:** Steve Rubin ; Steve McLaughlin ; Josh Pahl
**Subject:** RE: Buy Buy Aging

Hello John and Brian,

As of today, total due for Domestic is $287,903. Total due for Import is $750,041.

Thank you,

**Amanda Plasterer**
Staff Accountant
Chicco USA | Artsana USA
1826 William Penn Way | Lancaster, PA 17601
p 717-517-5823 | f 717-735-0888 | chiccousa.com

---

**From:** Greg Obetz <Greg.Obetz@artsana.com>
**Sent:** Tuesday, January 3, 2023 10:45 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>; John Dery <john.dery@bedbath.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** RE: Buy Buy Aging

Hi John and Brian,

Please give me an update. We have not been paid in over two weeks. When will we (both Artsana USA and Caben) receive our next payment?

Regards,

Greg

**Greg Obetz**
_____Controller

Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601





The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

**From:** Greg Obetz
**Sent:** Wednesday, December 28, 2022 9:24 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>; John Dery <john.dery@bedbath.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** RE: Buy Buy Aging

Hi John,

Please see below. Can you give me any update on a payment to Artsana USA or Caben Asia Pacific?

Regards,

Greg

**From:** Brian Cashman <bcashman@thinkbrg.com>
**Sent:** Wednesday, December 28, 2022 9:22 AM
**To:** Greg Obetz <Greg.Obetz@artsana.com>; John Dery <john.dery@bedbath.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** Re: Buy Buy Aging

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Greg,

Please work with John Dery going forward on status of payments. Thank you.

**From:** Greg Obetz <Greg.Obetz@artsana.com>
**Sent:** Wednesday, December 28, 2022 8:56:15 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** [EXT] RE: Buy Buy Aging

Dear Brian,
Do you have any update on this? We still not received a payment from Buy Buy Baby since the previous email.
Also, our sister company Caben Asia Pacific is asking about payment as well. Do you have any update on a payment to us (Artsana USA) or Caben?
Thanks,
Greg
**Greg Obetz**
_____Controller

Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com



The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

**From:** Greg Obetz
**Sent:** Monday, December 19, 2022 9:00 AM
**To:** bcashman@thinkbrg.com
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** FW: Buy Buy Agingq

Dear Brian,

We have over $200k that is now past due from Buy Buy Baby. Can you please tell us if there is a payment coming soon to pay for these past due invoices?

Regards,
Greg

**Greg Obetz**
—————————————————————————Controller

Chicco USA │ Artsana USA

1826 William Penn Way │ Lancaster, PA 17601

p 717-735-6200 │ f 717-735-0888 │ chiccousa.com





The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

**From:** Amanda Plasterer <Amanda.Plasterer@artsana.com>
**Sent:** Monday, December 19, 2022 8:55 AM
**To:** Steve McLaughlin <Steve.McLaughlin@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>
**Subject:** Buy Buy Agingq

**Amanda Plasterer**
**Staff Accountant**
Chicco USA │ Artsana USA
1826 William Penn Way │ Lancaster, PA 17601
p 717-517-5823 │ f 717-735-0888 │ chiccousa.com



The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

BERKELEY RESEARCH GROUP, LLC (TOGETHER WITH ITS AFFILIATES, "BRG") - NOTICE

THIS EMAIL TRANSMISSION AND ANY ATTACHMENTS HERETO CONTAIN INFORMATION FROM BRG WHICH MAY BE CONFIDENTIAL AND PRIVILEGED. THE INFORMATION IS INTENDED FOR THE SOLE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOUR USE, DISSEMINATION, FORWARDING, PRINTING OR COPYING OF THIS INFORMATION IS PROHIBITED.

TAX ADVICE DISCLOSURE

ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (I) AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OR (II) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

BRG IS (I) NOT A LAW FIRM AND DOES NOT PROVIDE LEGAL ADVICE AND (II) NOT A CPA FIRM AND DOES NOT PROVIDE AUDIT, ATTEST OR PUBLIC ACCOUNTING SERVICES.

 **Outlook**

---

## RE: Schneider Appointment Request

---

**From** Steve Rubin <Steve.Rubin@artsana.com>

**Date** Mon 1/9/2023 2:51 PM

**To**   TMSNE <TMSNE@bedbath.com>; Amy Cruz <Amy.Cruz@artsana.com>

---

📎 2 attachments (12 KB)
image001.png; image002.png;

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Nyree,

At this time, we have been asked to hold shipments to BBB.  As we get more information and things change, we will advise.

Thank you,

Steve Rubin

**From:** TMSNE <TMSNE@bedbath.com>
**Sent:** Monday, January 9, 2023 2:50 PM
**To:** Steve Rubin <Steve.Rubin@artsana.com>; Amy Cruz <Amy.Cruz@artsana.com>
**Subject:** FW: Schneider Appointment Request

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Hi Amy,

Can I ask why this load is cancelled?

Thanks,

Nyree Waters
Logistics Consultant, North East
Nyree.Waters@Consultant.Bedbath.com

---

**From:** STM BBBY <STMBBBY@schneider.com>
**Sent:** Monday, January 9, 2023 2:41 PM
**To:** 653 inbound <653inbound@bedbath.com>; STM BBBY <STMBBBY@schneider.com>; TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,

@TMSNE
@653 inbound

Shipper is advising they are cancelling these two shipments.

**MVDP7114460**
and
**MVDP7114450**

Please confirm we are good to remove from our system.

Drivers assigned have been informed to avoid any TONUs.

Thanks,
**Cody Kinley**
*Account Management*

**SCHNEIDER TRANSPORTATION MANAGEMENT**
**Midwest Regional Logistics Center**
**1 N Dearborn St Chicago IL 60602**
**New Direct Line: 920-357-2869**
Kinleyc1@schneider.com



**After hours support: (855) 476-4786**

**Schneider**
**FreightPower**®

**Get unprecedented access to a vast network of shippers and quality freight with Schneider FreightPower**®.

**Learn More**

**All rate quotes are good for four (4) hours.
**All rates are good for thirty (30) days once accepted unless otherwise specified.
**All rate quotes include two (2) hours free load and unload.
**All rate quotes assume legal dimensions unless otherwise specified.
**LTL pickup/delivery dates cannot be guaranteed / Transit times are estimated and do not include the day of pickup or weekends.
** Volume expected is no more than five loads per day, unless otherwise specified.
**All rate quotes assume live load/live unload unless otherwise specified.
**Capacity is not guaranteed.  We work with outside carriers to provide capacity.
**Mexican rates and insurance coverage are limited depending on the product and applicable Mexican Regulations.
** The attached rates are based on current Federal Motor Carrier hours of service rules.  Should these regulations change, adjustments to our quoted rates may be necessary.
**STM, a division of Schneider Logistics, Inc. operates solely as a broker and shall not be held liable for any cargo claims or injuries to persons (including death) or property related to the movement of freight.

*The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies*

---

**From:** 653 inbound <653inbound@bedbath.com>
**Sent:** Friday, January 6, 2023 5:31 AM
**To:** STM BBBY <STMBBBY@schneider.com>; 653 inbound <653inbound@bedbath.com>
**Cc:** TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning.
Your loads are scheduled for 01-12@06:00 AM.

Thank you

Esmeralda Sempertegui

---

**From:** STM BBBY <STMBBBY@schneider.com>
**Sent:** Thursday, January 5, 2023 3:23 PM
**To:** STM BBBY <STMBBBY@schneider.com>; 653 inbound <653inbound@bedbath.com>
**Cc:** TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,

Kindly following up.

Please see emails attached from the shipper.

They are requesting to push pickup for both the loads below till 1/11.

Please let us know if we can reset the delivery appointments to the loads below:

**MVDP7114460**
1/12 0600

**MVDP7114450**
1/12 0600

Please let us know, thanks!

**Cody Kinley**
*Account Management*

**SCHNEIDER TRANSPORTATION MANAGEMENT**
**Midwest Regional Logistics Center**

1 N Dearborn St Chicago IL 60602

**New Direct Line: 920-357-2869**

Kinleyc1@schneider.com



**After hours support: (855) 476-4786**

**Schneider FreightPower®**

**Get unprecedented access to a vast network of shippers and quality freight with Schneider FreightPower®.**

**Learn More**

**All rate quotes are good for four (4) hours.
**All rates are good for thirty (30) days once accepted unless otherwise specified.
**All rate quotes include two (2) hours free load and unload.
**All rate quotes assume legal dimensions unless otherwise specified.
**LTL pickup/delivery dates cannot be guaranteed / Transit times are estimated and do not include the day of pickup or weekends.
** Volume expected is no more than five loads per day, unless otherwise specified.
**All rate quotes assume live load/live unload unless otherwise specified.
**Capacity is not guaranteed.  We work with outside carriers to provide capacity.
**Mexican rates and insurance coverage are limited depending on the product and applicable Mexican Regulations.
** The attached rates are based on current Federal Motor Carrier hours of service rules.  Should these regulations change, adjustments to our quoted rates may be necessary.
**STM, a division of Schneider Logistics, Inc. operates solely as a broker and shall not be held liable for any cargo claims or injuries to persons (including death) or property related to the movement of freight.

*The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies*

**From:** STM BBBY <STMBBBY@schneider.com>
**Sent:** Thursday, January 5, 2023 11:48 AM
**To:** 653 inbound <653inbound@bedbath.com>
**Cc:** STM BBBY <STMBBBY@schneider.com>; TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

Hello,

Please see emails attached from the shipper.

They are requesting to push pickup for both the loads below till 1/11.

Please let us know if we can reset the delivery appointments to the loads below:

**MVDP7114460**
1/12 0600

**MVDP7114450**
1/12 0600

Please let us know, thanks!

**Cody Kinley**
*Account Management*

**SCHNEIDER TRANSPORTATION MANAGEMENT**
**Midwest Regional Logistics Center**
**1 N Dearborn St Chicago IL 60602**
**New Direct Line: 920-357-2869**
Kinleyc1@schneider.com



**After hours support: (855) 476-4786**



**Get unprecedented access to a vast network of shippers and quality freight with Schneider FreightPower®.**

**Learn More**

\*\*All rate quotes are good for four (4) hours.

\*\*All rates are good for thirty (30) days once accepted unless otherwise specified.

\*\*All rate quotes include two (2) hours free load and unload.

\*\*All rate quotes assume legal dimensions unless otherwise specified.

\*\*LTL pickup/delivery dates cannot be guaranteed / Transit times are estimated and do not include the day of pickup or weekends.

\*\* Volume expected is no more than five loads per day, unless otherwise specified.

\*\*All rate quotes assume live load/live unload unless otherwise specified.

\*\*Capacity is not guaranteed.  We work with outside carriers to provide capacity.

\*\*Mexican rates and insurance coverage are limited depending on the product and applicable Mexican Regulations.

\*\* The attached rates are based on current Federal Motor Carrier hours of service rules.  Should these regulations change, adjustments to our quoted rates may be necessary.

\*\*STM, a division of Schneider Logistics, Inc. operates solely as a broker and shall not be held liable for any cargo claims or injuries to persons (including death) or property related to the movement of freight.

*The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies*

**From:** 653 inbound <653inbound@bedbath.com>
**Sent:** Monday, January 2, 2023 5:51 AM
**To:** Kinley, Cody <kinleyc1@schneider.com>; 653 inbound <653inbound@bedbath.com>
**Cc:** STM BBBY <stmbbby@schneider.com>
**Subject:** RE: Schneider Appointment Request

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning.

Your load has been scheduled for 01-10@6:00 AM.

Thank you

Esmeralda Sempertegui

---

**From:** kinleyc1@schneider.com <kinleyc1@schneider.com>
**Sent:** Saturday, December 31, 2022 1:24 PM
**To:** 653 inbound <653inbound@bedbath.com>
**Cc:** stmbbby@schneider.com
**Subject:** Schneider Appointment Request


CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,
Please confirm the suggested appointment for the Schneider order(s) below and include any required appointment references. To accept the "Suggested Appt Start/End," please put Y/Yes in the column labeled "Confirm Appointment (Y/N)". If the appointment does not work for you, please put N/No in the column labeled "Confirm Appointment (Y/N)" and provide an "Alternative Suggestion" and we will respond with confirmation.

| Order Id | Stop Type | Suggested Appt Start DTTM | Suggested Appt End DTTM | Additional Information | Confirm Appointment (Y/N) | Alternative Suggestion | Appointment Reference | Master Bill of Lading | Purchase Order |
|----------|-----------|---------------------------|-------------------------|------------------------|---------------------------|------------------------|------------------------|------------------------|----------------|
| 2044392780 | Delivery | 01/10/23 06:00 AM | 01/10/23 06:00 AM | | | | | MVDP7114450 | |

Thank you,
Cody Kinley

```
For Schneider internal use only: correlation-key=2337479-6130818627475429445-
1939457810836706923
```

Appointment requests not responded to, or confirmed outside of the requested times, may be subject to additional fees to include ramp storage, trailer detention, or redelivery fees, based on your specific agreement with Schneider. The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies.

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

 Outlook

---

**Fw: Chicco**

---

**From** Amanda Plasterer <Amanda.Plasterer@artsana.com>

**Date** Wed 5/14/2025 11:40 AM

**To** Corey Eshelman <corey.eshelman@artsana.com>

📎 1 attachment (50 KB)
BBB AGING 1-10-2023.xlsx;

**Amanda Plasterer**

Staff Accountant

Chicco USA │ Artsana USA

1826 William Penn Way │ Lancaster, PA 17601

p 717-517-5823 │ f 717-735-0888 │ chiccousa.com

---

**From:** Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Sent:** Tuesday, January 10, 2023 2:10 PM
**To:** Steve Rubin <Steve.Rubin@artsana.com>; Amanda Plasterer <Amanda.Plasterer@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>
**Cc:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** FW: Chicco

Team – Per my recent call with Chad Taylor of BBB we are effectively prepay go forward.

Thanks
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA │ Artsana USA

1826 William Penn Way │ Lancaster, PA 17601

p 717-735-6200 │ f 717-735-0888 │ chiccousa.com



**From:** Steve McLaughlin
**Sent:** Tuesday, January 10, 2023 2:09 PM
**To:** Chad Taylor <chad.taylor@buybuybaby.com>; Nora.Shoots@buybuybaby.com;
christina.dibella@buybuybaby.com
**Cc:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** Chicco

Good afternoon team,

Considering recent news, we regret to inform you that we will be moving our terms to prepayment effective
immediately on invoices dated 1/10/2023 or later.  We understand this move is not ideal and can review as more
information on the state of the business is released.

I have attached the current aging report prepared by our finance team for your review.  Our expectation is that
payments will continue as outlined for anything invoiced prior to 1/10/2023 according to our current terms
agreement.

We appreciate your partnership as we navigate this challenging time.

Regards,
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA │ Artsana USA

1826 William Penn Way │ Lancaster, PA 17601

p 717-735-6200 │ f 717-735-0888 │ chiccousa.com



**Falk, Turner N.**

| | |
|---|---|
| **From:** | Steve McLaughlin <IMCEAEX-_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-Steve+20McLau@EURP251.PROD.OUTLOOK.COM> |
| **Sent:** | Tuesday, January 10, 2023 2:09 PM |
| **To:** | Chad Taylor; Nora.Shoots@buybuybaby.com; christina.dibella@buybuybaby.com |
| **Cc:** | Josh Pahl |
| **Subject:** | Chicco |
| **Attachments:** | BBB AGING 1-10-2023.xlsx |

Good afternoon team,

Considering recent news, we regret to inform you that we will be moving our terms to prepayment effective immediately on invoices dated 1/10/2023 or later. We understand this move is not ideal and can review as more information on the state of the business is released.

I have attached the current aging report prepared by our finance team for your review. Our expectation is that payments will continue as outlined for anything invoiced prior to 1/10/2023 according to our current terms agreement.

We appreciate your partnership as we navigate this challenging time.

Regards,
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA │ Artsana USA

1826 William Penn Way │ Lancaster, PA 17601

p 717-735-6200 │ f 717-735-0888 │ chiccousa.com



 Outlook

---

**RE: Buy Buy Aging**

---

**From** Chad Taylor <chad.taylor@buybuybaby.com>

**Date** Wed 1/18/2023 11:36 AM

**To** Steve McLaughlin <IMCEAEX-
_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-
Steve+20McLau@EURP251.PROD.OUTLOOK.COM>; John Dery <John.Dery@bedbath.com>

**Cc** Christina Dibella <Christina.DiBella@buybuybaby.com>; Josh Pahl <Josh.Pahl@artsana.com>; Greg Obetz <IMCEAEX-
_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=ARTSANAGROUP+2Eonmicrosoft+2Ecom-
50609-Greg+2EObetz+40artsana+2Ecom22c@EURP251.PROD.OUTLOOK.COM>

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Hi Steve
Thank you for reaching out.
We (merchant team), have given the greenlight and prioritized weekly payments for you in both the domestic and DI sides, but can confirm I don't see any payments going out after last Monday to you. I'm reaching out to our AP team on this and am hoping for a payment date confirmation.
-Chad

**From:** Steve McLaughlin
**Sent:** Wednesday, January 18, 2023 9:37 AM
**To:** John Dery ; Chad Taylor
**Cc:** Christina Dibella ; Josh.Pahl@artsana.com; Greg Obetz
**Subject:** Buy Buy Aging

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Good Morning,
Please find attached Artsana aging report. We are currently close to $3M in past due invoices. I know last week this was brought up on your end. Can you please provide an update on payment?
Thanks,
Steve
**Steve McLaughlin**
Vice President of Sales

Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com



This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.

**Please, think about environment before printing this e-mail**

 Outlook

---

**RE: This Week's Order and Payment**

---

**From** Steve McLaughlin <IMCEAEX-
_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-
Steve+20McLau@EURP251.PROD.OUTLOOK.COM>

**Date** Fri 2/24/2023 11:59 AM

**To** Josh Pahl <Josh.Pahl@artsana.com>; Tom Gwiazdowski <Tom.Gwiazdowski@artsana.com>; Greg Obetz <IMCEAEX-
_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=ARTSANAGROUP+2Eonmicrosoft+2Ecom-
50609-Greg+2EObetz+40artsana+2Ecom22c@EURP251.PROD.OUTLOOK.COM>; Steve Rubin <Steve.Rubin@artsana.com>

---

Great, thanks for the update.

**Steve McLaughlin**
Vice President of Sales
Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com



---

**From:** Josh Pahl
**Sent:** Friday, February 24, 2023 11:59 AM
**To:** Steve McLaughlin ; Tom Gwiazdowski ; Greg Obetz ; Steve Rubin
**Subject:** RE: This Week's Order and Payment
I just heard from Chrissy again and Heather is writing the order today

**From:** Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Sent:** Friday, February 24, 2023 10:57 AM
**To:** Tom Gwiazdowski <Tom.Gwiazdowski@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>
**Cc:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** FW: This Week's Order and Payment
FYI

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Friday, February 24, 2023 10:03 AM
**To:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** This Week's Order and Payment

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

| Vendor # | Vendor Name | Payment Type | Cost NEW ORDERS | Repay | Total Cost |
|---|---|---|---|---|---|
| 18595 | ARTSANA USA INC/JUVENILE | ACH | $1,065,040 | $532,520 | $1,597,560 |

**Chrissy DiBella**
Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712
welcome to parenthood™
buybuy BABY

# Exhibit B

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** **DISTRICT OF NEW JERSEY** | |
| *Caption in Compliance with D.N.J. LBR 9004-1(b)* SAUL EWING LLP Turner N. Falk, Esq. 1500 Market Street, 38th Floor Philadelphia, PA 19102 Telephone: (215) 972-7777 Email: turner.falk@saul.com *Counsel for Artsana USA, Inc.* | |
| In re: BED BATH & BEYOND, INC., *et al.*,[1] Debtors. | Chapter 11 Case No. 23-13359 (VFP) (Jointly Administered) |
| Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.),[2] Plaintiff, v. Artsana USA, Inc., Defendant. | Adv. No. 24-01336 (VFP) |

**DEFENDANT'S RESPONSES AND OBJECTIONS TO AMENDED FIRST SET OF INTERROGATORIES, REQUESTS FOR PRODUCTION, AND REQUESTS FOR ADMISSION PROPOUNDED BY PLAINTIFF**

---

[1]    The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2]    Pursuant to the Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to 20230930-DK-Butterfly, Inc. [Filing ID No. 230921001833 DOS ID 315602].

Artsana USA, Inc. ("Defendant"), pursuant to Fed. R. Civ. P. 33, 34 and Fed. R. Bankr. P.

7033, 7034, hereby responds to *Amended First Set of Interrogatories, Requests for Production,*

*and Requests for Admission Propounded by Plaintiff* (the "Discovery Requests").[3]

## GENERAL OBJECTIONS AND RESERVATIONS OF RIGHTS

Defendant makes the following general objections (the "General Objections") to each of

the Discovery Requests, as well as to the Instructions and Definitions included in the Discovery

Requests.  Although some or all of these General Objections may be specifically referenced in the

responses below, for purposes of clarity, any omission of a General Objection from a response is

not and should not be construed as a waiver of the General Objection in connection with such

response.  By responding to any Discovery Request, Defendant does not intend to waive any

General Objection.

1.      Defendant objects generally to the Discovery Requests to the extent they exceed

the scope of discovery allowed by the Federal Rules of Civil Procedure, the Federal Rules of

Bankruptcy Procedure, the Local Rules, and/or applicable law.

2.      Defendant objects generally to the Discovery Requests and the accompanying

Definitions and Instructions to the extent they purport to impose obligations on Defendant greater

than, more burdensome than, or which conflict with or contradict, those imposed by the applicable

Federal Rules of Civil Procedure, Federal Rules of Bankruptcy Procedure, the Local Rules, and/or

applicable law.  Defendant will respond to the Discovery Requests in a manner consistent with its

obligations under applicable rules of procedure and law.

3.      Defendant objects to the Discovery Requests to the extent they impose an undue

burden and expense on it including, without limitation, and for example, they seek information

already within the Plaintiff's possession, custody or control or that has been requested from and/or

is more appropriately obtained from other persons or entities.

---

[3]      All capitalized defined terms have the meanings ascribed to them in the Discovery Requests.

4.      Defendant objects to the Discovery Requests to the extent they seek information or documents outside of its possession, custody or control, or seek information or documents already in the Plaintiff's and/or the Debtor's possession, custody or control, otherwise accessible to the Plaintiff and/or the Debtors, or that are a matter of public record.

5.      Defendant objects to the Discovery Requests to the extent they seek information or documents which are privileged or protected from discovery for any reason including, without limitation, information or documents protected by the attorney-client privilege, attorney work product doctrine or any other applicable privilege, protection, immunity, doctrine or rule of confidentiality.  By responding to any particular Discovery Request, Defendant does not intend to, nor does it, waive any such applicable privilege, protection, immunity, doctrine or confidentiality.

6.      Defendant does not waive or intend to waive any privilege pertaining to any privileged information inadvertently provided, and Defendant reserves the right to assert privilege with respect thereto.

7.      Defendant objects to the Discovery Requests to the extent they call for the disclosure of information or documents which are confidential and/or proprietary in nature, or otherwise constitute confidential business information and/or trade secrets.  Defendant will not produce such information or documents unless they are relevant and an appropriate protective order has been entered.

8.      Defendant is responding to the Discovery Requests without waiver of or prejudice to its right at any later time to raise objections to: (a) the competence, use, relevance, materiality, privilege, or admissibility of (i) the Discovery Requests or any part thereof and (ii) statements made in response thereto; or (b) any other demand for discovery involving or relating to the matters raised in the Discovery Requests or the information provided in responses to the Discovery Requests.

9.      By responding to the Discovery Requests, Defendant does not admit, adopt, or acquiesce in any factual or legal contention, assertion, assumption, characterization, or implication contained therein.

10.      Defendant bases its responses on information currently known to it after reasonable investigation.  Defendant reserves the right to amend, supplement, revise, correct, add to, and/or clarify any of the responses set forth herein upon, among other things, further investigation, discovery of additional facts, or discovery of person(s) with knowledge of relevant information in this action or any other related proceeding.

11.      Defendant reserves the right to object to the admissibility at any hearing or trial of any and all responses and/or documents identified herein.

12.      Defendant submits these responses and objections subject to, without intending to waive, and expressly preserving: (a) the right to object to other discovery procedures involving or relating to the subject matter of the Discovery Requests; and (b) the right to revise, correct, supplement or clarify any of the responses herein.

13.      The information provided in the responses set forth below is not necessarily based solely on the knowledge of the verifying party but also may include knowledge obtained from other persons or entities.  In addition, the word usage and sentence structure of the responses may be that of counsel assisting in their preparation and does not purport to be the precise language of the executing party.

14.      Defendant hereby expressly incorporates all of its General Objections into each and every specific response to each Discovery Request as though fully set forth therein.

## RESPONSES AND OBJECTIONS TO REQUESTS FOR ADMISSION

REQUEST FOR ADMISSION NO. 1: Admit that you received each of the Transfer(s) identified in the amount listed on Exhibit "A" attached to the Complaint.

**RESPONSE: ADMITTED.**


REQUEST FOR ADMISSION NO. 2: For each Transfer, admit the Transfer was made during the Preference Period.

**RESPONSE: ADMITTED.**


REQUEST FOR ADMISSION NO. 3: For each Transfer, admit that you had a right to receive the Transfer in satisfaction of or on account of a then-existing obligation or debt owed to you by one of more of the Debtors at the time payment was made.

**RESPONSE: ADMITTED.**


REQUEST FOR ADMISSION NO. 4: Admit that each Transfer was for your benefit or the benefit of a creditor.

**RESPONSE: ADMITTED.**


REQUEST FOR ADMISSION NO. 5: Admit at the time you received each Transfer you were a creditor of one or more of the Debtors.

**RESPONSE: ADMITTED that Defendant was a creditor of one or more Debtors on account of claims that were satisfied by the Transfers.**

REQUEST FOR ADMISSION NO. 6: Admit that each Transfer was, at the time it was made, on account of an antecedent debt owed to you by one of more of the Debtors.

**RESPONSE: ADMITTED.**

REQUEST FOR ADMISSION NO. 7: Admit that the Debtors were insolvent at the time of each Transfer.

**RESPONSE: Defendants lacks sufficient information to admit or deny this request for admission, and therefor denies same.**

REQUEST FOR ADMISSION NO. 8: Admit that You have no evidence to rebut the presumption of insolvency during the Preference Period.

**RESPONSE: ADMITTED only that Defendant presently lacks such information.**

REQUEST FOR ADMISSION NO. 9: Admit that, with respect to each Transfer, you received a greater percentage of what was owed to you (with respect to the obligation(s) or debt(s) satisfied by the Transfer) than you would have received if the Transfer had not been made and the Debtors conducted a liquidation of their business pursuant to Chapter 7 of Title 11 of the United States Code on the Petition Date.

**RESPONSE: Defendant lacks sufficient information to admit or deny this request for admission, and therefor denies same.**

REQUEST FOR ADMISSION NO. 10: Admit that, with respect to each Transfer, you did not hold a fully perfected security interest in assets of the Debtors (other than the Transfer) equal to or exceeding the amount of the Transfer that secured satisfaction of the obligation or debt on account of which the Transfer was made.

**RESPONSE: ADMITTED.**

REQUEST FOR ADMISSION NO. 11: For each Transfer, admit that the Transfer was not intended by either you or the Debtors to be in exchange for New Value to be conveyed contemporaneously with the Transfer.

**RESPONSE: DENIED, as the Transfers were made pursuant to an agreement with the Debtors, which agreement contemplated a contemporaneous exchange for New Value.**

REQUEST FOR ADMISSION NO. 12: For each Transfer, admit that no New Value was exchanged contemporaneously with the Transfer.

**RESPONSE: See Response to Request for Admissions No. 11.**

REQUEST FOR ADMISSION NO. 13: For each invoice or other obligation paid by each Transfer, admit that the invoice or obligation was paid later, earlier, or in a manner otherwise inconsistent with the prior course of business dealings between you and the Debtors.

**RESPONSE: DENIED, as the Transfers were made in a manner consistent with the prior course of dealings between Defendant and the Debtors.**

REQUEST FOR ADMISSION NO. 14: For each invoice or other obligation paid by each Transfer, admit that the invoice or obligation was paid later, earlier, or in a manner otherwise inconsistent with the general practices of your industry.

**RESPONSE: DENIED, as the Transfers were made in a manner consistent with the practices of Defendant's and/or the Debtors' industry.**

REQUEST FOR ADMISSION NO. 15: For each invoice or other obligation paid by each Transfer, admit that the invoice or obligation was paid later, earlier, or in a manner otherwise inconsistent with the general practices of the Debtors' industry.

**RESPONSE: DENIED, as the Transfers were made in a manner consistent with the practices of Defendant's and/or the Debtors' industry.**

REQUEST FOR ADMISSION NO. 16: For each invoice or obligation paid by each Transfer, admit that the invoice or obligation was not incurred by the applicable Debtor as part of its normal business or financial affairs with you.

**RESPONSE: DENIED, as the invoices paid for via the Transfers were incurred as part of the Debtors' ordinary business or financial affairs with Defendant.**

REQUEST FOR ADMISSION NO. 17: For each Transfer, admit that the Transfer made by the Debtors was inconsistent with ordinary business terms.

**RESPONSE: DENIED, as the Transfers were made consistent with "ordinary business terms."**

REQUEST FOR ADMISSION NO. 18: If you contend that the Transfers were not made for your benefit, admit that the Transfers were for the benefit of another creditor.

**RESPONSE: DENIED, as the Transfers were made for Defendant's benefit.**

REQUEST FOR ADMISSION NO. 19: Other than the insolvency element of 11 U.S.C. §§ 547(b)(3), admit that with respect to each of the Transfers that each of the elements of 11 U.S.C. §§ 547(b) is satisfied.

**RESPONSE: DENIED, as Defendant lacks sufficient information to admit or deny this request for admission, and therefor denies same.**

REQUEST FOR ADMISSION NO. 20: Admit that Defendant's name as set forth in the caption page of the Complaint is your correct legal name.

**RESPONSE: ADMITTED.**

REQUEST FOR ADMISSION NO. 21: Admit that you imposed a hold on all goods and services to the Debtors in January 2023.

**RESPONSE: ADMITTED.**

REQUEST FOR ADMISSION NO. 22: Admit that you imposed a hold on all goods and services to the Debtors during the Preference Period.

**RESPONSE: ADMITTED.**

REQUEST FOR ADMISSION NO. 23: Admit that, prior to the Preference Period, the Debtors' payment terms were net 60 days.

**RESPONSE: ADMITTED that the stated terms on the invoices were for payment within 60 days.**

REQUEST FOR ADMISSION NO. 24: Admit that, during the Preference Period, the Debtors' payment terms were modified to prepayment.

**RESPONSE: ADMITTED that, by virtue of an agreement between the Debtors and Defendant, the go-forward payment terms were modified to prepayment.**

REQUEST FOR ADMISSION NO. 25: Admit that, beginning in the Preference Period, you ceased providing goods and services to the Debtors on credit.

**RESPONSE: ADMITTED.**

REQUEST FOR ADMISSION NO. 26: Admit that on or about February 27, 2023, the Debtors made a payment to you in the amount of $1,603,440.30 (the "February 27 Payment").

**RESPONSE: ADMITTED.**

REQUEST FOR ADMISSION NO. 27: Admit that approximately $538,400.30 of the February 27 Payment was applied in satisfaction of past due invoices.

**RESPONSE: ADMITTED that approximately $538,400.30 of the February 27 Payment was applied in satisfaction of open invoices.**

REQUEST FOR ADMISSION NO. 28: Admit that more than half of the February 27 Payment was applied as prepayments for future goods and services.

**RESPONSE: ADMITTED.**

## OBJECTIONS AND RESPONSES TO INTERROGATORIES

INTERROGATORY NO. 1:  Identify every payment or other transfer from the Debtors to you directly or indirectly through your affiliates or subsidiaries during the Preference Period, specifically noting any Transfer appearing on Exhibit "A" attached to the Complaint that you assert you did not receive or received outside of the Preference Period.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is not reasonably calculated to lead to the discovery of relevant evidence nor is it proportional to the needs of the case.  Defendant further objects pursuant to Fed. R. Civ. P. 33(d) on the grounds that the information sought is reflected in the business records of Defendant, which will be produced by Defendant pursuant to the Discovery Requests, and the burden of deriving the answer is substantially the same for both Defendant and Plaintiff.  Without waiving the foregoing, the payments or transfers identified on Exhibit "A" to the Complaint were received by Defendant during the Preference Period.**

INTERROGATORY NO. 2:  For each transfer you identified in response to Interrogatory number 1, identify the debt owed by the Debtors to you that was satisfied by such transfer, including but not limited to, the nature of the debt satisfied, the invoice number (if any), the date the debt was incurred, the due date by which the debt or invoice was required to be paid, and the goods and/or services provided to the Debtors.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is overly burdensome.  The request for such a compilation is not reasonably calculated to lead to the discovery of relevant evidence nor is it nor proportional to the needs of the case.  Defendant further objects pursuant to Fed. R. Civ. P. 33(d) on the grounds that the information sought is reflected in the business records of Defendant, which will be produced by Defendant pursuant to the Discovery Requests, and the burden of deriving the answer is substantially the same for both Defendant and Plaintiff.**

INTERROGATORY NO. 3:  If you are claiming that any of the transfers identified in your answer to Interrogatory number 1 were made in the ordinary course of the parties' prior business transactions, describe all facts and identify all Documents that support your claim including, but not limited to (a) identifying all payments, including wire or other transfers of funds or assets, by Debtors to you during the two (2) year period before the Petition Date; (b) for each such transfer, identify the invoice to which the transfer was applied and the due date by which that invoice was required to be paid; and (c) when you received the transfer.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is overly burdensome.  The request for such a compilation is not reasonably calculated to lead to the discovery of relevant evidence nor is it nor proportional to the needs of the case.  Defendant further objects pursuant to Fed. R. Civ. P. 33(d) on the grounds that the information sought is reflected in the business records of Defendant, which will be produced by Defendant pursuant to the Discovery Requests, and the burden of deriving the answer is substantially the same for both Defendant and Plaintiff.**

INTERROGATORY NO. 4:  If you are claiming that the Debtors received subsequent New Value on account of the transfers identified in your answer to Interrogatory Number 1, describe in detail all facts which support your claim including, but not limited to, identifying the specific shipments and invoices (including delivery dates or the dates on which services were provided) that support your claim of subsequent New Value.

**RESPONSE:  Defendant is not asserting a subsequent New Value defense.**

<u>INTERROGATORY NO. 5</u>:  If you are claiming that the transfers identified in your answer to Interrogatory Number 1 were contemporaneous exchanges for new value and that the Debtors and defendant intended such exchange to be contemporaneous, describe in detail all facts which support your claim including, but not limited to, identifying the specific communications, agreements, credit terms, shipments and invoices that support your claim of contemporaneous exchanges for New Value.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is overly burdensome.  Defendant further objects pursuant to Fed. R. Civ. P. 33(d) on the grounds that the information sought is reflected in the business records of Defendant, which will be produced by Defendant pursuant to the Discovery Requests, and the burden of deriving the answer is substantially the same for both Defendant and Plaintiff.  Defendant asserts that the Debtors and Defendant contemplated terminating their business relationship prior to the bankruptcy, but then negotiated an arrangement whereby the Debtors would come current and make prepayments for future shipments in exchange for Defendant continuing to fill orders on those future shipments.  The Debtors and Defendant then performed this agreement contemporaneously.**

<u>INTERROGATORY NO. 6</u>:  If you are claiming that any of the transfers identified in your answer to Interrogatory number 1 were made according to ordinary business terms, describe all facts and identify all Documents that support your claim, including but not limited to, the typical, average and/or standard time period for accounts receivable to be paid (from the date of invoice) for companies in the industries most applicable to you, the industries upon which your answer is based, and the source(s) and/or compilations upon which your answer is based.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is overly burdensome.  The information sought by this Interrogatory is expert analysis that is not presently within the possession of Defendant.**

INTERROGATORY NO. 7:  Describe the substance of, identify all participants in, and identify any Documents relating to any communication between you and the Debtors during the one (1) year period prior to the Petition Date that concerned any debt of the Debtors then owed to you, including, but not limited to, any demand for payment, past due statement, or credit limit issues.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is overly burdensome and not proportional to the needs of the case.  Defendant further objects pursuant to Fed. R. Civ. P. 33(d) on the grounds that the information sought is reflected in the business records of Defendant, which will be produced by Defendant pursuant to the Discovery Requests, and the burden of deriving the answer is substantially the same for both Defendant and Plaintiff.  Defendant will produce documents responsive to this request that relate to the Transfers at issue in this case.**

INTERROGATORY NO. 8:  If your answer to Request for Admission Number 4 is not an affirmative admission, *i.e.,* "Admit," set forth all facts upon which you rely for your response to or denial of the Request For Admission.

**RESPONSE:  N/A.**

INTERROGATORY NO. 9:  If your answer to Request for Admission Number 6 is not an affirmative admission, *i.e.,* "Admit," set forth all facts upon which you rely for your response to or denial of the Request for Admission.

**RESPONSE:  N/A.**

INTERROGATORY NO. 10:  If your answer to Request for Admission Number 9 is not an affirmative admission, *i.e.,* "Admit," set forth all facts upon which you rely for your response to or denial of the Request For Admission.

**RESPONSE:  Defendant lacks sufficient information to evaluate what it would have been paid in a hypothetical liquidation, and thus denied Request for Admission number 9.**

INTERROGATORY NO. 11:  If your answer to Request for Admission Number 13 is not an affirmative admission, *i.e.,* "Admit," set forth all facts upon which you rely for your response to or denial of the Request For Admission.

**RESPONSE**:  **Based upon the historical transactions between the parties, for the approximately one year period prior to the Preference Period (the "Historical Period"), the average age at payment of Defendant invoices was substantially similar to the average age at payment of Defendant invoices during the Preference Period.  The manner of payment of the Transfers was the same as during the Historical Period.  Defendant did not exert any unusual pressure upon the Debtors in order to obtain payment.  Defendant reserves the right to support its ordinary course defense with additional facts, including expert opinion.**

INTERROGATORY NO. 12:  Set forth all facts and identify all Documents supporting any affirmative defenses set forth in your Answer.

**RESPONSE:  This request is duplicative of numerous other Discovery Requests herein. Defendant incorporates its responses to all other Discovery Requests as if set forth herein.**

INTERROGATORY NO. 13:  Identify all contracts and agreements, whether written or oral, between the Debtors and Defendant in effect within the two (2) year period preceding the Petition Date.

**RESPONSE:  Defendant identifies, and will provide a copy of, the following:**
- **Supply Chain terms detail dated May 28, 2019**
- **Damage Allowance terms detail dated May 30, 2019**
- **Freight Allowance terms detail dated March 10, 2020**
- **Volume Incentive terms detail dated April 10, 2020**

**Defendant further identifies an oral agreement to switch to prepayment, memorialized by an email dated January 10, 2023.**

INTERROGATORY NO. 14:  State the terms of credit, if any, including invoice terms and any credit limit, extended by you to the Debtors during the two (2) year period preceding the Petition Date, specifically stating the date(s) the credit terms changed, and what terms existed prior to and subsequent to such changes.

**RESPONSE:  Defendant is not asserting a subsequent New Value defense.**

14

INTERROGATORY NO. 15:  Identify all credit insurance policies, if any that governed the invoices issued by the Debtors during the two (2) year period preceding the Petition Date and, if applicable, state the date any credit insurance policy concerning or related to the Debtors was cancelled by either the insurer or you.

**RESPONSE: Defendant objects to this request as it seeks information that is not reasonably calculated to lead to admissible evidence, as information on credit insurance has no relevance to the claims and defenses in this matter.  Defendant further objects to the extent that this request seeks information protected by the attorney-client or work product privileges.**

INTERROGATORY NO. 16:  Identify each person who participated in preparing your responses to these Interrogatories, identifying the particular Interrogatory(ies) with which the person assisted.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is overly burdensome and seeks information subject to the attorney-client and work product privileges.**

INTERROGATORY NO. 17:  If you denied, in whole or in part, Request for Admission No. 20, specify your correct legal name and principal place of business (or state of incorporation, if you are a corporation).

**RESPONSE:  N/A.**

INTERROGATORY NO. 18:  Identify all person(s) with knowledge of your credit, billing, accounts receivable and/or collection practices for the two (2) year period preceding the Petition Date, including any person(s) with knowledge of the Transfers and the transactions relating thereto.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is overly burdensome and overbroad, as it seeks all persons with information on billing and collections practices, even those irrelevant to this case.  Without waiving the foregoing, the individuals identified in Defendant's initial disclosures pursuant to Fed. R. Civ. P. 26(a) have knowledge of the billing and collections practices between the Debtors and Defendant during the two-year prepetition period.**

INTERROGATORY NO. 19:  Identify all person(s) responsible in whole or in part for the

Defendant's dealings with the Debtors.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is overly burdensome and overbroad, as it seeks all persons with information on Defendant's dealing with the Debtors, even those irrelevant to this case.  Defendant further objects on the grounds that the term "responsible" is vague and ambiguous.  Without waiving the foregoing, the individuals identified in Defendant's initial disclosures pursuant to Fed. R. Civ. P. 26(a) have knowledge of the dealings between the Debtors and Defendant.**

INTERROGATORY NO. 20:  Identify your North American Industry Classification

System (NAICS) code or any other industry code if applicable and whom you consider to be your

five (5) closest business competitors during the fifteen (15) month period preceding the Petition

Date.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it requests the kind of industry comparison that is not within Defendant's possession, and is properly determined by an expert.**

INTERROGATORY NO. 21:  Identify any actions you took with respect to the Debtors in the fifteen (15) month time period before the Petition Date as a result of the existence of a debt owing to you from Debtors, including, by way of example only, the following:

1.      refuse to deliver any goods or services to the Debtors;

2.      suspend the performance of any services for the Debtors;

3.      undertake any efforts to collect amounts due from the Debtors (e.g., calls, letters, demands, threats, liens, litigation, etc.);

4.      impose any new payment terms upon the Debtors;

5.      impose any conditions upon the delivery of goods, services or other things of value to the Debtors;

6.       increase the price of any goods, service or other thing of value being provided to Debtors; or

7.      inform Debtors that you intended to undertake any collection activity;

describe in detail all acts taken, and identify all Documents and communications related thereto.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is overly burdensome, intended to harass and duplicative of other Interrogatories.  The request for such a compilation is not reasonably calculated to lead to the discovery of relevant evidence nor is it nor proportional to the needs of the case.  Defendant further objects pursuant to Fed. R. Civ. P. 33(d) on the grounds that the information sought is reflected in the business records of Defendant, which will be produced by Defendant pursuant to the Discovery Requests, and the burden of deriving the answer is substantially the same for both Defendant and Plaintiff.**


INTERROGATORY NO. 22:  Identify all Persons whom You expect to call as fact witnesses at or in connection with the trial or other evidentiary hearing in this action and, for each fact witness named Identify the facts and Documents that serve as the basis for their testimony.

**RESPONSE:  Defendant may call any individuals identified in Plaintiff's or Defendant's initial disclosures pursuant to Fed. R. Civ. P. 26(a), who may testify about the facts described in those same initial disclosures.  Defendant reserves the right to supplement this response.**

INTERROGATORY NO. 23:  Identify the name and address of any expert the Plaintiff

has retained or expects to call as an expert witness at trial in this matter.

**RESPONSE:  Defendant has not retained an expert.  Defendant will supplement this response if an expert is retained.**

INTERROGATORY NO. 24:  Describe all facts you relied on in support of your decision

to change the Debtors' payment terms in 2023 from credit to prepayment.

**RESPONSE:  Defendant objects to this Interrogatory on the grounds that it is overly burdensome and duplicative of other Interrogatories.  Defendant further objects pursuant to Fed. R. Civ. P. 33(d) on the grounds that the information sought is reflected in the business records of Defendant, which will be produced by Defendant pursuant to the Discovery Requests, and the burden of deriving the answer is substantially the same for both Defendant and Plaintiff.  Defendant asserts that the Debtors and Defendant contemplated terminating their business relationship prior to the bankruptcy, but then negotiated an arrangement whereby the Debtors would come current and make prepayments for future shipments in exchange for Defendant continuing to fill orders on those future shipments.  The Debtors and Defendant then performed this agreement contemporaneously.**

## OBJECTIONS AND RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

REQUEST FOR PRODUCTION NO. 1:  All Documents identified in your responses to the above interrogatories.

**RESPONSE:  Defendant objects to this request as unduly burdensome and not proportional to the needs of the case.  Defendant further incorporates its responses and objections to the Interrogatories as if set forth herein.**

REQUEST FOR PRODUCTION NO. 2:    All Documents that relate to any communication by you during the Preference Period of the possibility of any of the Debtors voluntarily filing a bankruptcy petition, creditors filing an involuntary bankruptcy petition against any of the Debtors, and/or any of the Debtors becoming or being insolvent or unable to pay its debts in a timely manner.

**RESPONSE:  Defendant objects to this request as unduly burdensome and not proportional to the needs of the case.**

REQUEST FOR PRODUCTION NO. 3:    Any and all Documents in your possession that evidence, relate to, or describe the financial condition, solvency or ability to timely pay debts, of the Debtors during the fifteen (15) month period prior to the Petition Date.

**RESPONSE:  Defendant objects to this request as unduly burdensome and not proportional to the needs of the case.  Defendant further objects as this request seeks the Debtors' internal financial documents already in the custody or control of Plaintiff.**

REQUEST FOR PRODUCTION NO. 4:  Please produce your internal customer record(s) (commonly known as a customer ledger, account histories, or A/R Ledgers) that show the invoice dates, numbers, and amount and the payments received by Defendant from the Debtors for the account relationship between Defendant and the Debtors for the two (2) year period preceding the Petition Date.

**RESPONSE: Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 5:  If not already provided in response to prior requests, above, please produce any and all Documents you intend to introduce into evidence as exhibits or to otherwise utilize at, or in connection with, trial or any evidentiary hearing in this adversary proceeding

**RESPONSE:  Defendant has not yet made a decision to seek to introduce any documents into evidence or otherwise utilize them in connection with this adversary proceeding.  Defendant will identify any intended exhibits pursuant to applicable court orders, Local Rules or judge's procedures prior to trial or an evidentiary hearing.**

REQUEST FOR PRODUCTION NO. 6:     With regard to each Person whom you expect to call as an expert witness at, or in connection with, the trial or any evidentiary hearing in this adversary proceeding, please produce (a) any and all Documents provided to the expert witness; (b) a current curriculum vitae, resume, and any other Documents that describe the expert's current qualifications to testify regarding the subject matter of the testimony; (c) any and all reports, summaries, or other Documents produced by the expert that express any findings, conclusions, or opinions regarding any of the issues in this adversary proceeding; (d) any and all Documents upon which the expert's findings, conclusions, or opinions are based; and (e) any and all exhibits to be used as a summary of, or to support, the expert's findings, conclusions, or opinions.

**RESPONSE:  Defendant objects to the extent that this request seeks material prepared in anticipation of litigation but not intended for introduction at a hearing or trial, which material is protected by the work product privilege.  Defendant has not retained a testifying expert.  If such a retention occurs, Defendant will provide documents responsive to this request.**

<u>REQUEST FOR PRODUCTION NO. 7</u>:  If not already provided in response to prior requests, above, please produce all Documents you believe support any purported defenses to the claims set forth in the Complaint.

**RESPONSE:  Defendant objects as this request is – intentionally – duplicative of numerous other Discovery Requests.  Defendant further objects on the grounds that this interrogatory requests documents based on beliefs and mental impressions, which include documents protected by the attorney-client and work product privileges.  Defendant incorporates its responses to all other Discovery Requests as if set forth herein.**

<u>REQUEST FOR PRODUCTION NO. 8</u>:  If not already provided in response to prior requests, above, please produce all Documents, including, but not limited to, all letters, notes, memoranda, facsimile transmissions and email correspondence or communications or other business records, written or electronic, relating to credit or payment terms, including credit limits, that existed between the Debtors and Defendant during the fifteen (15) month period preceding the Petition Date, including the Preference Period.

**RESPONSE: Defendant objects as this request is overly broad and not proportional to the needs of the case.  Without waiving the foregoing, Defendant will produce documents responsive to this request.**

<u>REQUEST FOR PRODUCTION NO. 9</u>:  If not already provided in response to prior requests, above, please produce any and all customer or account files relating to the Debtors.

**RESPONSE: Defendant objects as this request is overly broad and not proportional to the needs of the case, as it requested "any and all" such files "relating" to the Debtors.  Without waiving the foregoing, Defendant will produce documents responsive to this request covering the two-year period prior to the Preference Period.**

<u>REQUEST FOR PRODUCTION NO. 10:</u>  If not already provided in response to prior requests, above, please produce all summaries, analyses, calculations, or Documents used in or prepared for the defense of the claims asserted by the Debtors against Defendant.

**RESPONSE: Defendant objects to this request as it seeks only material prepared in anticipation of litigation, which material is protected by the attorney-client and work product privileges.**

REQUEST FOR PRODUCTION NO. 11:  If not already provided in response to prior requests, above, please produce all accounting records, including invoices, ledgers, journals, purchase orders, shipping documents, check remittances, bank records (including, but not limited to any confirmation of wire transfers) or any other Documents relating to payments from the Debtors to the Defendant during the two (2) year period preceding the Petition Date.

**RESPONSE: Defendant objects as this request is overly broad and not proportional to the needs of the case.  Without waiving the foregoing, Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 12:  If not already provided in response to prior requests, above, please produce any and all Documents relating to the Defendant's credit policies for customers in effect during the fifteen (15) month period preceding the Petition Date.

**RESPONSE: Defendant objects to this request as it seeks information that is not reasonably calculated to lead to admissible evidence, as credit policies for other customers have no relevance to the claims and defenses in this matter.**

REQUEST FOR PRODUCTION NO. 13:  If not already provided in response to prior requests, above, please produce Documents identifying Defendant's ten (10) largest customers (by dollar amount of business transacted therewith) during the fifteen (15) month period preceding the Petition Date.

**RESPONSE: Defendant objects to this request as it seeks information that is not reasonably calculated to lead to admissible evidence, as information on non-Debtor customers of Defendant has no relevance to the claims and defenses in this matter.**

REQUEST FOR PRODUCTION NO. 14:  If not already provided in response to prior requests, above, please produce all Documents identifying the purchase and credit terms, including invoice terms and credit limits, between the Defendant and the Debtors during the two (2) year period preceding the Petition Date.

**RESPONSE: Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 15:  If not already provided in response to prior requests, above, all Documents, including but not limited to emails, documents, and communications, concerning any credit insurance policy concerning, related to, or covering the Debtors during the two (2) year period preceding the Petition Date.

**RESPONSE: Defendant objects to this request as it seeks information that is not reasonably calculated to lead to admissible evidence, as information on credit insurance has no relevance to the claims and defenses in this matter.  Defendant further objects to the extent that this request seeks information protected by the attorney-client or work product privileges.**

REQUEST FOR PRODUCTION NO. 16:  Please produce any and all witness statements regarding payments made by the Debtors to the Defendant during the fifteen (15) month period preceding the Petition Date.

**RESPONSE: Defendant objects to this request as "witness statements" is vague and unclear. Defendant is not aware of any formal witness statements made to law enforcement officers and then provided by the Debtors to Defendant.**

REQUEST FOR PRODUCTION NO. 17:  Please produce all invoices, statements or other Documents, including, but not limited to, facsimile transmissions and/or email correspondence, reflecting demand for payment by you (or any agent for you) related to the Debtors during the Preference Period.

**RESPONSE: Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 18:  For Transfers by the Debtors during the Preference Period, any and all Documents that evidence, relate to, or describe the purpose of the Transfers and any debt which the Transfers were intended to extinguish in whole or in part.

**RESPONSE: Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 19:    For Transfers by the Debtors during the
Preference Period, any and all Documents that evidence, relate to, or describe any New Value that
you gave that Debtors substantially contemporaneously with the Transfers, in exchange therefor.

**RESPONSE: Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 20:    For Transfers by the Debtors during the
Preference Period, any and all Documents that evidence, describe or relate to any transfer of value
by you, or any other party, to the Debtors subsequent to the Transfers.

**RESPONSE: Defendant submits that the documents it will produce in response to Discovery
Requests on the contemporaneous exchange for New Value may be responsive to this request.
Other than this contemporaneous exchange, Defendant is not aware of any transfer of value
to the Debtors subsequent to the Transfers**

REQUEST FOR PRODUCTION NO. 21:    Any and all copies of checks and evidence of
wire, ACH, or ETF transfers and method of delivery of payment (*i.e.*, Federal Express, U.S. Mail,
UPS, etc.) from the Debtors to you during the one (1) year period prior to the Petition Date.

**RESPONSE: Defendant objects to this request as these documents are already within the
possession and control of Plaintiff, so the request is overly burdensome and intended to
harass.**

REQUEST FOR PRODUCTION NO. 22:    Any and all Documents that evidence, relate
to, or describe any credits or discounts the Debtors took or you gave the Debtors on the goods you
sold or services you provided during the Preference Period.

**RESPONSE: Defendant objects as this request is overly broad and burdensome in that it
requests all documents related to any credits or discounts.    Defendant will produce
documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 23:    Any and all credit policies of Defendant in effect in the one (1) year period prior to the Petition Date.

**RESPONSE: Defendant objects to this request, as "credit policies" is a vague term. Without waiving the foregoing, Defendant is not aware of any formal credit policies, and thus has no documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 24:    Any and all Documents evidencing the services rendered to the Debtors and time spent rendering such services, including, but not limited to, time records, for the time period one (1) year prior to the Petition Date.

**RESPONSE: Defendant provided the Debtors goods, not services, and thus has no documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 25:    All Documents in your possession that summarize the typical, average and/or standard time period(s) for accounts receivable to be paid (from the date of invoice) for companies in the industry or industries most applicable to you.

**RESPONSE: Defendant objects as this request seeks information that is more properly provided by expert analysis.**

REQUEST FOR PRODUCTION NO. 26:    All Documents that summarize the typical, average and/or standard time period(s) for accounts receivable to be paid (from the date of invoice) for your customers.

**RESPONSE: Defendant objects as this request seeks information on other customers' business dealings with Defendant, which information is not reasonably calculated to lead to admissible evidence. This request is not proportional to the needs of this case. Defendant further objects as this interrogatory seeks "typical," "average" or "standard" information, which terms are vague and ambiguous.**

REQUEST FOR PRODUCTION NO. 27:    To the extent not already provided in your responses to the above Requests For Production, produce each and every Document that supports the facts set forth in your response to Interrogatory Numbers 1 through No. 21.

**RESPONSE:  Defendant objects as this request is – intentionally – duplicative of other Discovery Requests. Defendant incorporates all objections and responses to Interrogatories 1-21 and all Requests for Production as if set forth at length.**

REQUEST FOR PRODUCTION NO. 28:    Any and all Documents that support your contention that the debts identified in your answer to Interrogatory 2 and any transfers identified in your answer to Interrogatory 1 were made in the ordinary course of business and financial affairs between you and the Debtors.

**RESPONSE: Defendant objects as this request is overly broad and not proportional to the needs of the case.  This request seeks documents protected by the attorney-client and work product privileges, and is duplicative of other requests, the response to which are incorporated herein.  Without waiving the foregoing, Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 29:    Any and all Documents that support your contention that the debts identified in your answer to Interrogatory 2 and any transfers identified in your answer to Interrogatory 1 were made in the ordinary course of the industry in which the Debtors operated and that the transfers were made according to ordinary business terms.

**RESPONSE: Defendant objects as this request is overly broad and not proportional to the needs of the case.  This request seeks documents protected by the attorney-client and work product privileges, and is duplicative of other requests, the response to which are incorporated herein.  Defendant further objects as this information is more properly the subject for expert analysis.  Without waiving the foregoing, Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 30:    Any and all Documents that support your contention that the debts identified in your answer to Interrogatory 2 and any transfers identified in your answer to Interrogatory 1 were made in the ordinary course of the industry in which the Defendant operated and that the transfers were made according to ordinary business terms.

**RESPONSE: Defendant objects as this request is overly broad and not proportional to the needs of the case.  Defendant further objects as this information is more properly the subject for expert analysis.  Without waiving the foregoing, Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 31: With respect to any person(s) you identified in Interrogatory No. 21, produce any and all transcripts of deposition and/or trial testimony given by said person(s) within the past five (5) years to present.

**RESPONSE: Defendant objects as this request is unduly burdensome, harassing, and not reasonably calculated to lead to admissible evidence.**

REQUEST FOR PRODUCTION NO. 32: If not already provided in response to prior requests, above, produce all contracts and agreements, whether written or oral, between the Debtors and Defendant in effect during the two (2) year period prior to the Petition Date and all Documents, including correspondence, relating thereto.

**RESPONSE: Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 33: If not already provided in response to prior requests, above, produce all Documents, including communications, regarding the shift in payment terms from credit to prepayment in 2023 (and prior to the Petition Date).

**RESPONSE: Defendant will produce documents responsive to this request.**

REQUEST FOR PRODUCTION NO. 34: If not already provided in response to prior requests, above, produce all Documents, including communications, regarding any credit holds or shipment holds imposed on the Debtors in 2023 (and prior to the Petition Date).

**RESPONSE: Defendant will produce documents responsive to this request.**

Dated: May 14, 2025                          Respectfully submitted,


**SAUL EWING LLP**

*/s/ Turner N. Falk*
Turner N. Falk, Esq.
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: turner.falk@saul.com

-and-

John D. Demmy
1201 N. Market Street, Suite 2300
P.O. Box 1266
Wilmington, DE  19899
Telephone: (302) 421-6800
Fax: (302) 421-6813
john.demmy@saul.com

*Counsel for Artsana USA, Inc.*

**VERIFICATION**

I, Tom Gwiazdowski, President & Chief Executive Officer of Artsana USA, Inc., hereby verify that the facts set forth in the foregoing **Defendant's Responses and Objections to Amended First Set of Interrogatories, Requests for Production, and Requests for Admission Propounded by Plaintiff,** and all documents produced by Artsana USA, Inc. in connection therewith, are true and correct to the best of my knowledge, information, and belief.   This verification is made subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsification to authorities.

<u>/s/ Tom Gwiazdowski</u>

Dated: May 14, 2025

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEW JERSEY**

*Caption in Compliance with D.N.J. LBR 9004-1(b)*

SAUL EWING LLP
Turner N. Falk, Esq.
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: turner.falk@saul.com

*Counsel for Artsana USA, Inc.*

|  |  |
|---|---|
| In re: | Chapter 11 |
| BED BATH & BEYOND, INC., *et al.*, | Case No. 23-13359 (VFP) |
| Debtors. | (Jointly Administered) |
| Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.), |  |
| Plaintiff, |  |
| v. | Adv. No. 24-01336 (VFP) |
| Artsana USA, Inc., |  |
| Defendant. |  |

## <u>CERTIFICATE OF SERVICE</u>

I, Turner N. Falk, hereby certify that on May 14, 2025, a true and correct copy of *Defendant's Responses and Objections to Amended First Set of Interrogatories, Requests for Production, and Requests for Admission Propounded by Plaintiff* was served by First Class Mail/Electronic Mail on the below parties:

Brigette McGrath Esquire
Nicholas C. Brown, Esquire
ASK LLP
2600 Eagan Woods Drive, Suite 400
St. Paul, MN 55121
bmcgrath@askllp.com
nbrown@askllp.com

Marianna Udem, Esquire
ASK LLP
60 East 42nd Street, 46th Fl.
New York, NY 10165
mudem@askllp.com

**SAUL EWING LLP**

*/s/ Turner N. Falk*
Turner N. Falk, Esq.
1500 Market Street, 38th Floor
Philadelphia, PA 19102
Telephone: (215) 972-7777
Email: turner.falk@saul.com

Dated:  June 18, 2025

# Exhibit C

Laura Crossen
September 08, 2025

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
CHAPTER 11
CASE NO. 23-13359 (VFP)
(JOINTLY ADMINISTERED)
        -  -  -  -
IN RE: BED BATH & BEYOND, INC.,
et al.,

                 Debtors,

- - - - - - - - - - - - - - - -

ADV. NO. 24-01336 (VFP)

MICHAEL GOLDBERG, AS PLAN ADMINISTRATOR
FOR 20230930-DK-BUTTERFLY-1, INC.
(f/k/a BED BATH & BEYOND, INC.),

                 Plaintiff,

V.

ARTSANA USA, INC.,

                 Defendant.
- - - - - - - - - - - - - - - - - - - -

                 Oral sworn Remote Video Conference

deposition of LAURA CROSSEN, taken pursuant to

Notice, commencing at 9:34 a.m., on Monday,

September 8, 2025 before Judith A. Maruca, a

New Jersey Certified Court Reporter and Notary

Public within and for the State of New Jersey.


                     -  -  -  -

                 U.S. LEGAL SUPPORT
                 1818 MARKET STREET
                    SUITE 1400
            PHILADELPHIA, PENNSYLVANIA 19103
                   (877) 479-2484

Laura Crossen
September 08, 2025

1    R E M O T E    A P P E A R A N C E S:

2

3    ASK LLP
     BY:  NICHOLAS C. BROWN, ESQUIRE
4         2600 Eagan Woods Drive, Suite 400
          St. Paul, MN 55121
5         nbrown@askllp.com
     Attorneys for the Plaintiff

6

7    SAUL EWING LLP
     BY:  TURNER N. FALK, ESQUIRE
8         1500 Market Street, 38th Floor
          Philadelphia, PA 19102
9         215.972.7777
          turner.falk@saul.com
10   Attorneys for the Defendant,
     Artsana USA, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Laura Crossen
September 08, 2025

```
 1                      -  -  -

 2                  I  N  D  E  X

 3                      -  -  -

 4   WITNESS

 5   LAURA CROSSEN

 6   (Witness remotely sworn.)

 7

 8   EXAMINATION                   PAGE

 9   BY MR. FALK..............      6

10   BY MR. BROWN.............     74

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                    INDEX  TO  EXHIBITS

 2                      LAURA CROSSEN

 3          IN RE: BED BATH & BEYOND, INC., ET AL.

 4                 MONDAY, SEPTEMBER 8, 2025

 5                  JUDITH A. MARUCA, CCR

 6

 7      MARKED              DESCRIPTION              PAGE

 8      Exhibit 1        E-mail chain              47

 9      Exhibit 2        E-mail chain              50

10      Exhibit 3        E-mail chain              65

11      Exhibit 4        E-mail chain              29

12      Exhibit 5        E-mail chain              38

13      Exhibit 6        E-mail chain              46

14      Exhibit 7        E-mail chain              63

15      Exhibit 8        E-mail chain              65

16      Exhibit 9        E-mail chain              54

17      Exhibit 10       E-mail chain              59

18      Exhibit 14       E-mail chain              70

19              (EXHIBITS ANNEXED HERETO)

20

21

22

23

24

25
```

Laura Crossen
September 08, 2025

```
 1                      -   -   -

 2                  DEPOSITION SUPPORT INDEX

 3                      -   -   -

 4   Direction to Witness Not to Answer

 5   Page Line        Page Line        Page Line

 6   None

 7

 8

 9   Request for Production of Documents

10   Page Line        Page Line        Page Line

11   None

12

13

14   Stipulations

15   Page Line        Page Line        Page Line

16   None

17

18

19   Question Marked

20   Page Line        Page Line        Page Line

21   None

22

23

24

25
```

Laura Crossen
September 08, 2025

```
 1                        -  -  -

 2                  THE COURT REPORTER:   The attorneys

 3      participating in this deposition acknowledge that I

 4      am not physically present in the deposition room and

 5      that I will be reporting this deposition remotely.

 6      They further acknowledge that, in lieu of an oath

 7      administered in person, the witness will verbally

 8      declare his/her testimony in this matter under

 9      penalty of perjury.   The parties and their counsel

10      consent to this arrangement and waive any objections

11      to this manner of reporting.

12                  Please indicate your agreement by

13      stating your name and your agreement on the record.

14                  MR. FALK:   Turner Falk, counsel for

15      the defendant, Artsana USA.   I'm in agreement.

16                  MR. BROWN:   Nicholas Brown for the

17      plaintiff.   We agree.

18                        -  -  -

19                  LAURA CROSSEN, after having been first

20      duly sworn, was examined and testified as follows:

21                        -  -  -

22                  EXAMINATION

23                        -  -  -

24      BY MR. FALK:

25           Q.     All right.   Good morning, Ms. Crossen.
```

Tanya Crosson
September 08, 2025

```
 1          A.       Good morning.

 2          Q.       So my name is Turner Falk.  I'm

 3   counsel for Artsana USA, Incorporated, the defendant

 4   in a piece of litigation.  Before we begin, I just

 5   want to get some basic background first.

 6                   First, are you under the influence of

 7   any substances that would prevent you from giving

 8   full and accurate answers to my questions?

 9          A.       No.

10          Q.       And you are here as a 30(b)(6)

11   designee.  In your own words, what does that mean?

12          A.       I'm here to represent information that

13   I have reviewed on behalf of this case.

14          Q.       And which entity are you the designee

15   for?

16          A.       For the wind down debtor DK-Butterfly

17   formerly Bed Bath & Beyond, Inc.

18          Q.       There may be times where I use the

19   word you, and it may be unclear whether I mean you

20   personally or you, the entity that you are the

21   designee for.  If that is unclear, just ask me and

22   I'll try to clear it up, and hopefully I won't get

23   my wires crossed in the first place.

24                   Tell me everything you did to get

25   ready for this deposition.
```

Tonya Crossen
September 08, 2025

```
 1          A.      I reviewed information that was

 2   provided by both counsel to plaintiff and counsel to

 3   the defendant.  I reviewed prior information around

 4   history of activities with Artsana USA with respect

 5   to records that were retained post bankruptcy.

 6          Q.      And Mr. Brown, your counsel, he

 7   provided me with a collection of documents that's

 8   about say 120 e-mails and 30 or so spreadsheets.

 9   And he represented to me that that was material that

10   you reviewed say last week, at least some time in

11   preparation for this deposition.  Does that seem

12   roughly accurate?

13          A.      That's correct.

14          Q.      And in your own words, what is this

15   litigation about?

16          A.      This is a preference claim with

17   respect to payments made in the 90 days prior to the

18   filing of bankruptcy.

19          Q.      And have you given testimony in a

20   court of preference claims before?

21          A.      No.

22          Q.      Have you given deposition testimony as

23   a designee of the Butterfly wind down entity before?

24          A.      No.

25          Q.      Have you ever given 30(b)(6) corporate
```

```
 1    designee testimony in any matter before?

 2         A.      No. For 30 (b)(6).

 3         Q.      And to your knowledge, what is the

 4    current amount in dispute in this case?

 5         A.      Approximately 530,000.

 6         Q.      If I said it was $535,358.78 does that

 7    sound right?

 8         A.      It does.

 9         Q.      And in your own words, what exactly is

10    a preference?

11         A.      It's a payment made in the 90 days

12    before the filing of bankruptcy that is designated

13    as having preference.

14         Q.      And personally, are you familiar with

15    any of the defenses to preferences?

16         A.      I am.

17         Q.      Which defenses are you familiar with?

18         A.      Most relevant is the value.  That's

19    one that I'm familiar with.

20         Q.      And are you also familiar with a

21    defense called the ordinary course of business

22    defense?

23         A.      I am.

24         Q.      I just want to make sure that I

25    minimize my jargon to the right level.
```

Laura Crossen

September 08, 2025

1              So let's talk about background.  Were

2       you formerly employed by the debtor, Bed Bath &

3       Beyond family companies.

4              A.      Yes, I was.

5              Q.      And what role did you have with Bed

6       Bath & Beyond when it filed bankruptcy?

7              A.      I was the chief accounting officer at

8       the time it filed bankruptcy.

9              Q.      And how long had you held that

10      position at the time it filed bankruptcy?

11             A.      Under one year.

12             Q.      But more than three months?

13             A.      Yes.

14             Q.      So you would have been the chief

15      accounting officer for the entire preference period?

16             A.      Yes.

17             Q.      Do you know if you took on that role

18      before or after say November 14th of 2022?

19             A.      Before.

20             Q.      And can you tell me what do you do?

21      What did you do in that role?

22             A.      So for clarification, I was named

23      chief accounting officer in June of 2022.  I assumed

24      the role of interim chief financial officer in

25      September of 2022, and basically wore both hats

Laura Crossen
September 08, 2025

```
 1    until around the time of February 23, at which time
 2    a chief restructuring officer was appointed by the
 3    Board, and I continued in my chief accounting
 4    officer role.  So I oversaw the accounting and
 5    financial functions of the company.
 6            Q.      And I guess as a chief officer, were
 7    you often digging into the nitty-gritty of ordering
 8    and billing?
 9            A.      No.
10            Q.      And who then was handling that sort of
11    on-the-ground-work?
12            A.      There were staff members in both the
13    business financial groups for the concepts as well
14    as a large accounts payable function.
15            Q.      Can you explain what you mean by the
16    concepts?
17            A.      The brands, Bed Bath & Beyond, Buy Buy
18    Baby, Harmon, et cetera.  They have finance
19    representatives.
20            Q.      I see.  I'm interested in
21    understanding how the different concepts work from
22    like invoicing, ordering, accounting perspective.
23    Can you sort of tell me about the order flow and the
24    payment flow between these different concepts?
25            A.      So they weren't necessarily between
```

Larry G. Crosser
September 08, 2025

1    them, but each concept would write its own hues

2    through a procurement company that operated to serve

3    most of the concepts that I referenced.  And that

4    procurement company would write the POs and the

5    payments would flow from the parent company.

6         Q.    The parent company.  What is the name

7    of the parent company?

8         A.    Bed Bath & Beyond, Inc.

9         Q.    And what was the name of that

10   procurement company that --

11        A.    Liberty Procurement Company.

12        Q.    Is that a subsidiary or affiliate in

13   the Buy Buy Baby group?

14        A.    It is a subsidiary of Bed Bath &

15   Beyond, Inc.

16        Q.    I see.  And I believe you said that

17   that procurement company would do purchase orders

18   for several different concepts.  Did those concepts

19   include the Buy Buy Baby concepts?

20        A.    Yes.

21        Q.    And let's see.  What is your role now

22   as we sit here today?

23        A.    I'm a consultant for the plan

24   administrator.

25        Q.    And how long have you held that role?

Laura Crossen
September 08, 2025

```
 1              A.      Approximately two years.

 2              Q.      And what are your job responsibilities

 3     in that role?

 4              A.      I assist in asset recovery, tax

 5     compliance, claims, resolution, and support all of

 6     the plan administrators, operating requirements and

 7     assist with, you know, any information needs that

 8     arise during the course of winding down the debtor.

 9              Q.      Are you familiar with the defendant in

10     this litigation, Artsana USA?

11              A.      I'm familiar with it to the extent

12     that I recognize the vendor name and have done

13     review necessary for today's deposition.  And I'm

14     familiar with the brands and products.

15              Q.      And what kind of goods did Artsana

16     supply to the Bed Bath & Beyond family companies?

17              A.      So I think a primary brand, Chicco was

18     the larger of the vendors.  And they provided baby

19     products in various categories.

20              Q.      When you say that -- did I hear you

21     right that Artsana was one of the larger vendors

22     supplying?

23              A.      No. I was referencing the Chicco brand

24     under Artsana as a large brand.

25              Q.      So you --
```

Laura Crossen
September 08, 2025

1        A.        -- within the Artsana family, right.

2        Q.        So when you say the Chicco brand is a

3    large brand, do you mean that the Chicco brand was

4    supplying a lot of inventory, or do you mean that it

5    is a well-known brand, generally?

6        A.        So I believe that the Chicco brand was

7    the one that sold the most branded product to Buy

8    Buy Baby.  That was what I was referencing.

9        Q.        I see.  And to your knowledge, did

10   Artsana sell only to the Buy Buy Baby concept or did

11   it also sell to other concepts?

12       A.        To my knowledge, the Buy Buy Baby

13   concept.

14       Q.        And it sounds like you are suggesting

15   that there were various Chicco brands that were not

16   necessarily Artsana USA; is that correct?

17       A.        No.

18       Q.        Are you aware of any Chicco affiliates

19   that are not Artsana USA that sold goods to any of

20   the Bed Bath family companies?

21       A.        No. No.

22       Q.        Can you describe the course of dealing

23   between Artsana USA and the Bed Bath family of

24   companies during the period -- I'll call it the

25   healthy period -- up to say a year before the

Laura Crossen
September 08, 2025

1    bankruptcy filing?

2        A.      Yes.  So I think they would be a

3    normal process of buyers and merchants corroborating

4    with Artsana USA to determine purchase volumes, and

5    purchase items, POs would be written.  They would be

6    written under agreed upon terms that would have been

7    60-day payment terms in tact during that period.

8    And then Bed Bath & Beyond slash Liberty Procurement

9    slash Buy Buy Baby, the whole entity would arrange

10   for carrier pickup of goods.  Those goods would be

11   picked up by carrier and shipped to the company.

12       Q.      I see.  And I'd like to dig in detail

13   into each of those steps in the process.  Let's

14   break down how actual ordering works.

15               Who -- when an order needs to be

16   placed, who makes the initial outreach to start the

17   process of placing that order?

18       A.      That is a merchant responsibility.

19       Q.      And who exactly would that be, which

20   entity first?

21       A.      Buy Buy Baby merchants would be the

22   ones reaching out.

23       Q.      And let's see, who -- I guess I will

24   get to that later -- so this merchant would reach

25   out to Artsana USA, correct?

Lanita Crosser
September 08, 2025

 1          A.      Correct.  The merchants were employees

 2     of Liberty Procurement Company, so that's who would

 3     reach out.

 4          Q.      And what information did they give to

 5     Artsana USA to start the process of placing an

 6     order?

 7          A.      Personally, I wouldn't know exactly

 8     what the dialogue or process is, but there was a,

 9     you know, and automated PO form, and I would assume

10     it would involve a skew number, quantity cases, and

11     distribution list of where to ship it to.

12          Q.      And talking about shipping, where did

13     the goods provided by Artsana ship from?

14          A.      I don't know.

15          Q.      And where did the goods provided by

16     Artsana ship to?

17          A.      It would have shipped to either

18     warehouses or stores.

19          Q.      In --

20          A.      The company.

21          Q.      Would all of those have been within

22     the United States or other countries as well?

23          A.      Within the United States.

24          Q.      And do you know if there were any

25     third-party shipping companies involved in this

Tonya Crossen
September 08, 2025

```
1    chain of distributing inventory?

2         A.      Can you clarify what you mean by a

3    third-party shipping company in the context of the

4    question?

5         Q.      So are you familiar with a company

6    called Yusen?

7         A.      Yusen was an import provider.  Yusen

8    was a logistics company that assisted with

9    scheduling import containers.

10        Q.      And was Yusen involved in the shipping

11   of orders from Artsana to the Bed Bath family

12   companies?

13        A.      So they would not have been involved

14   in domestic orders.  So I would -- they would have

15   been involved if there were import containers that

16   were shipping from Artsana to the Bed Bath family of

17   companies.

18        Q.      And do you know if import containers

19   were shipping to the Bed Bath family of companies?

20        A.      So I did see some reference and

21   e-mails that were shared with me related to import

22   containers, so I think the answer is yes.  But I do

23   not have access to records around import containers.

24   Those were in a third-party system that we no longer

25   have access to.
```

Laura Crossen
September 08, 2025

```
 1        Q.        And when something is shipping --

 2    let's do the import containers first.  When

 3    something is coming via an import container, what

 4    information can the Bed Bath family of companies see

 5    about that order before it's delivered?

 6                  MR. BROWN:  Objection to form.

 7    BY MR. FALK:

 8        Q.        What I mean is, can the Bed Bath

 9    family of companies see that it's left the port,

10    track it in the ocean, see that it's been dropped

11    off at a destination in the U.S., things like that?

12        A.        That's a question I did not prepare

13    for.  I do not have the details of the system or

14    records from it available to answer exactly what was

15    visible to people.  I don't have that information.

16        Q.        I see.

17        A.        To answer specifically.

18        Q.        Then let's dig into specific of how

19    delivery to the Bed Bath of families works.

20                  Can you tell me when product gets

21    dropped off somewhere and is made available to Bed

22    Bath, how does that work?

23        A.        So once a PO is agreed upon, a ship

24    date would be established.  In almost all cases, the

25    Bed Bath & Beyond family of companies would use a
```

Laura Crossen
September 08, 2025

1    designated carrier of its choice that it had

2    contracts with to go and schedule an appointment to

3    go pick up the goods and to bring them to a

4    warehouse or a store of the company.

5        Q.    And to your knowledge and

6    understanding, did Bed Bath -- at what point in this

7    process did Bed Bath come to own the goods?

8        A.    At the point it picked them up.  At

9    the point the carrier picked them up.

10        Q.    And which party is paying for the

11    carrier at that pickup time that you are discussing?

12        A.    As I said, in most cases, I don't have

13    the specifics here, but in most cases, Bed Bath and

14    Beyond of families paid the carrier, the purchaser.

15        Q.    Under what circumstances would some

16    other party have paid the carrier?

17        A.    There could have been a vendor

18    arrangement where it was flex rate, and that meant

19    that the vendor paid the freight and charged the

20    company for the freight.

21        Q.    And in that sort of hypothetical the

22    vendor would have been Artsana USA, correct?

23        A.    Correct.  If in fact that was the way

24    it was done.

25        Q.    That's I'm just about to get at.  Are

Laura Crossen
September 08, 2025

1    you aware of any times where Artsana shipped and

2    paid for those fees itself?

3         A.      I'm not.  I am not aware.  But I did

4    not have any information to review the answer to

5    that question, so I do not know the answer to that

6    question.

7         Q.      And just to be clear, is the reason

8    you did not have that information has been -- become

9    inaccessible?

10        A.      So information regarding the freight

11   component of each shipment, to my knowledge was not

12   retained.

13        Q.      I see.  Would it be fair to say that

14   Artsana shipped millions of dollars of inventory

15   each year to the Bed Bath family?

16        A.      Yes.

17        Q.      And how many other vendors shipped

18   million of dollars worth of inventory a year to the

19   Bed Bath family?  Let's -- for time period, I mean

20   say like a year before the bankruptcy filing?

21            MR. BROWN:  Objection to form.  Could

22   you clarify when you say millions of dollars, do you

23   mean anything over a million?

24            MR. FALK:  I will get more specific on

25   that in a moment, I guess.

Taylor Crossen
September 08, 2025

```
 1   BY MR. FALK:

 2        Q.      But yeah, a year before the bankruptcy

 3   filing, how many vendors shipped one million dollars

 4   or more worth of goods to the Bed Bath family?

 5        A.      I don't know the answer to that

 6   question.

 7        Q.      Would it be fair to say that Artsana

 8   shipped tens of million, 10 million or more dollars

 9   worth of goods per year?

10        A.      Yes.

11        Q.      And do you know how many vendors

12   shipped tens of millions of dollars per year to the

13   Bed Bath family again at that one year prior to the

14   bankruptcy date?

15        A.      No, not off the top of my head, no.

16        Q.      I see.  To your knowledge, are there

17   any major differences between the ordering and

18   shipping processes that Artsana and the Bed Bath

19   family used, and the ordering and shipping processes

20   that other large vendors -- other million dollar

21   plus vendors used?

22        A.      Can you clarify within that question.

23   That's such a broad process.

24        Q.      I'll break it down.  When I say large

25   vendors, at least for this part of the deposition, I
```

Laura Crossen
September 08, 2025

```
 1    mean those million dollar a year plus vendors.

 2                You described a process for placing

 3    purchase orders that would work with Artsana.  Was

 4    that -- would that be the same process that was used

 5    for other large vendors?

 6         A.     I would generally say yes, but there

 7    were different types of arrangements depending on

 8    the vendor and whether they shipped to warehouses or

 9    stores, whether they were drop shipped or vendor

10    direct to consumer.  So there were a number of

11    purchasing processes, but would Artsana's process

12    fit into a structure like other vendors to the

13    extent it was the same process for purchases?  Yes.

14         Q.     I see.  And I believe you mentioned

15    that Artsana was supplying inventory on 60-day

16    terms, is that right?

17         A.     Correct.

18         Q.     So the Bed Bath family was effectively

19    buying inventory on credit, correct?

20         A.     Correct.

21         Q.     And were -- one year prior to the

22    bankruptcy, were these other large vendors also

23    providing inventory to the Bed Bath family on

24    credit?

25         A.     Yes.
```

Laura Crossen
September 08, 2025

```
 1                    MR. BROWN:  Objection to form.

 2    BY MR. FALK:

 3         Q.     And one year prior to the bankruptcy,

 4    were any of the large vendors providing inventory on

 5    a pre-payment basis?

 6                    MR. BROWN:  Objection to form.  I

 7    think it is a little bit unclear what you are

 8    referring to when you say other large vendors.

 9                    MR. FALK:  Again, I'm using the

10    concept of other large vendors to mean vendors that

11    are not Artsana that supply a million plus dollars

12    worth of goods per year.

13                    THE WITNESS:  I don't know of the

14    specifics of all vendor orders one year prior to the

15    bankruptcy, but generally, the company purchased on

16    terms.

17    BY MR. FALK:

18         Q.     And are you aware of any of the large

19    vendors providing goods in that one year -- at that

20    one year benchmark on a cash and delivery basis?

21         A.     I believe there were some.

22         Q.     So --

23         A.     Limited.  Very limited.  It was not

24    standard.

25         Q.     I see.  Let's dig into billing,
```

Laura Crossen
September 08, 2025

 1    invoice and payments.

 2            Can you describe at a high level, how

 3    billing, invoicing and payment works.

 4         A.     So billing and invoicing I would call

 5    those synonymous.  The purchase order is placed.

 6    Once the goods are, you know, shipped by the vendor,

 7    they would EDI an invoice to the company's systems.

 8    And the company would schedule that pickup of the

 9    goods.  Once goods were received, the company

10    systems would attempt a three-way match between the

11    PO, the invoice, and the receiver.  And once that

12    process was complete and all differences,

13    discrepancies were resolved, that three-way matched

14    set of documents, electronic documents would be

15    available to pay.

16         Q.     And let's see, would it be fair to say

17    that at some point leading up to the bankruptcy, Bed

18    Bath & Beyond began to fall behind on payments to

19    its inventory vendors?

20         A.     There were definitely some payments

21    that fell behind.

22         Q.     And when did the Bed Bath family of

23    companies start to fall beyond on payments to large

24    vendors in general?

25         A.     I can't answer specifically as a group

Laura Crossen
September 08, 2025

 1   like that.  I don't have that level of information

 2   for each one to answer the question broadly like

 3   that.  It would have varied.

 4        Q.     And to your knowledge, when did the

 5   Bed Bath family start to fall behind on bills to

 6   Artsana?

 7        A.     Based on the information I reviewed,

 8   it appeared to be at the end of 2022.

 9        Q.     And can you describe for me what kind

10   of discussions were happening inside the Bed Bath

11   family about dealing with arrearages to inventory

12   vendors?

13        A.     I mean there was, you know, process of

14   discussing where payments were at with certain

15   vendors and, you know, what was due in each upcoming

16   period, and how to prioritize payments.

17        Q.     And how did the Bed Bath family of

18   companies decide which payments to prioritize?

19        A.     It would be based on the extent of the

20   past due balance and days past due, as well as in

21   collaboration with the merchant groups.

22        Q.     And did the criteria that you just

23   described are purely mathematical, days past due,

24   arrearage balance.  Are those the only factors that

25   were evaluated when deciding how to prioritize

Laura Crossen
September 08, 2025

1    payments towards arrearages?

2          A.      I can't answer if those were the only

3    factors, because the merchants would offer, you

4    know, their input on, you know, which vendors they

5    needed to, you know, improve or buy additional

6    inventory from so they would, you know, provide

7    information to us around which vendors to pay, you

8    know, from a priority prospective.  So it wasn't one

9    dimensional. There were multiple factors in when to

10   pay and how to prioritize those payments.

11         Q.      And so the identity of the vendor

12   mattered in deciding whether to do, what I'll call

13   catch-up payments?

14         A.      Yeah.  I can't say that the identity

15   mattered.  I can say there was a process of

16   evaluating you know open payments that were past due

17   and prioritizing them or determining how to allocate

18   funds to them.

19         Q.      Let me ask a more specific question.

20   Did the specific goods that a particular vendor

21   provided factor into the discussions about how to

22   prioritize payments of vendor arrearages?

23         A.      I can't say for sure.  But that

24   factored in. I can tell you that the merchants were

25   a part of the process.

Laura Crossen
September 08, 2025

```
 1            Q.      And were you personally as an
 2    individual part of these discussions on prioritizing
 3    payments towards arrearages?
 4                    MR. BROWN:  Objection to form.  Can
 5    you help clarify what timeframe you are referring
 6    to?  Is it generally, or is there a specific
 7    timeframe?
 8                    MR. FALK:  I believe Ms. Crossen
 9    indicated that we are talking about say the second
10    half of 2022 maybe the fourth quarter of 2022.
11    BY MR. FALK:
12            Q.      So Ms. Crossen, in that timeframe,
13    were you personally part of discussions regarding
14    payment toward arrearages to vendors?
15            A.      I was.  Yes.
16            Q.      And so you were on phone calls or
17    e-mail chains with the merchants in these
18    discussions?
19            A.      In a limited number of individual
20    discussions.  On a more broad basis I would monitor
21    the overall payables, the overall aging of payables
22    and ensure that we were managing, you know, the
23    process.  It wasn't -- I was not involved in every
24    detailed discussion.  I did get involved in a
25    handful.
```

Lauren Crossett
September 08, 2025

```
1          Q.      I just want to be clear on this.  You

2     were personally involved in some of these

3     discussions about paying towards vendors with

4     arrearages, correct?

5          A.      I was.  Yes.

6          Q.      But you were not able to tell me what

7     criteria the merchants used in deciding which

8     payments to prioritize?

9          A.      I assume the merchants were reviewing

10    their business, the needs of inventory for their

11    business, and the status of the past due with their

12    vendors and indicating priorities based on those

13    criteria.

14         Q.      And you said you assume this to be

15    true.  What information --

16         A.      I want to be clear.  I was involved in

17    the allocation of funds and so the broad management

18    of accounts payable and payments.  I wasn't involved

19    in the details of you know vendor ordering and

20    vendor purchasing status and prioritization.  That

21    was a merchant and business president

22    responsibility.

23         Q.      We have been talking generally about

24    this billing payment and arrearage process.  I would

25    like to dig in on Artsana specifically.
```

Laura Crossen
September 08, 2025

1        A.      Okay.

2        Q.      Can you tell me when did the Bed Bath

3   family of companies start -- when did they learn

4   that there was an arrearage with Artsana USA?

5        A.      So the company had system reporting

6   and data that would continuously age its accounts

7   payable.  So that would have been something that

8   would have appeared in a report, you know, with

9   thousands of other vendors.  So I would see that

10  report in aging bucket form, not -- I would not

11  necessarily look at every detail.

12       Q.      I see.  Can you take a look at the

13  exhibit marked exhibit number four.

14       A.      Yes.  Give me a moment to pull it up.

15               (Whereupon, Exhibit No. Exhibit-4 was

16  marked for identification.)

17  BY MR. FALK:

18       Q.      Ms. Crossen, do you have the document

19  in front of you?

20       A.      Yes, I do.  I'm just reviewing it to

21  make sure I know the details for you.

22       Q.      Thank you.

23       A.      Yes.  I'm rereading it.  Just give me

24  one moment.  Okay I re-read it.

25       Q.      Would it be accurate to say this is an

Taylor Crossen
September 08, 2025

1    e-mail chain where the last e-mail, the one that

2    appears at the top of the documents, November 14th,

3    2022?

4         A.      Correct.

5         Q.      And can you describe at a high level

6    what this e-mail reflects?

7         A.      This is an e-mail just going back and

8    forth on outstanding balances and asking questions

9    about when payments will be forwarded and answering

10   questions about when payments were made.

11        Q.      And you see the oldest e-mail in this

12   chain indicates about $670,000 due to Artsana from

13   Bed Bath & Beyond as of the date it was sent

14   October 28, 2022?

15        A.      I do.

16        Q.      And do you have any reason to believe

17   that that number is materially inaccurate?

18        A.      I don't have an open payable balance

19   history.  That was frozen at that time to answer

20   that question.  I see that it came from Artsana.  I

21   you know I don't have access to information to

22   verify it though at that point in time.

23        Q.      And do you see on the bottom of the

24   first page, top of the second page of the document,

25   do you see the October 31st, e-mail from Brian

James Crossen
September 08, 2025

```
 1    Cashman?

 2         A.      I do.

 3         Q.      And what does that e-mail indicate --

 4    per that e-mail, what has recently occurred?

 5         A.      He is indicating a payment was issued

 6    that morning.

 7         Q.      And what company is Brian Cashman with

 8    at this point?

 9         A.      He is with a company BRG, Berkeley

10    Research Group.  They are consultants that were

11    supporting the company through the back half of '22,

12    and to help support a number of areas including

13    assisting with payment flow.

14         Q.      Do you see any Bed Bath employees

15    anywhere on this e-mail chain?

16         A.      No, I don't.  Not on this one.  I see

17    Brian as the representative.

18         Q.      Is that unusual at this point in the

19    year with BRG on board, would that be unusual to be

20    no Bed Bath employees on a discussion about

21    payments?

22         A.      So I can't answer that question.  I,

23    you know, I don't have every access to every e-mail

24    communication that may have occurred at that

25    timeframe to answer that question.  What I can see
```

Laura Crosser
September 08, 2025

```
 1    is that Artsana initiated this e-mail string and

 2    included only Brian Cashman.

 3          Q.      How did this payment flow information?

 4          A.      Ask that again please?

 5          Q.      I'm sorry.  I'm trying to form a

 6    precise question for you.  When a BRG employee would

 7    receive information like this, how does that

 8    information make it to the Bed Bath family of

 9    companies?

10          A.      Well, this e-mail by example, if Brian

11    Cashman was receiving this e-mail is that your

12    question?

13          Q.      Right.  What I mean is a vendor says,

14    I'm owed "X" dollars.  They tell BRG.  How does the

15    information get from BRG to somebody at Bed Bath?

16          A.      Bed Bath would know the vendor

17    outstanding payables at least per its records which

18    may differ from the vendors, credits and other

19    things are being processed, but there would be

20    communication between the BRG employee and Bed Bath

21    employees daily.

22          Q.      Can you elaborate or the nature of

23    that communication between the BRG and the Bed Bath

24    employees?

25          A.      It could be e-mails.  It could be
```

Laura Crosser

September 08, 2025

1   discussions.  It could be meetings.  It could have

2   been any one of a number of things.

3         Q.      Did BRG of input on the prioritization

4   of payments towards arrearages?

5         A.      Did they have authority?  What is your

6   question around input.  Give me a little bit more

7   context, please.

8         Q.      Earlier we discussed criteria that

9   might have been used to decide the prioritization

10  towards arrearages.  Did BRG also weigh in on

11  prioritization?

12        A.      I don't believe so.

13        Q.      And when you say --

14        A.      I believe they supported processes and

15  helped manage the, you know, the broader

16  communications, but I don't believe they gave input

17  on the prioritization.

18        Q.      And you earlier testified that BRG had

19  authority to do something, correct?

20        A.      I didn't say -- I asked you what were

21  you asking.  Was that authority when you asked if

22  BRG gave input on payments.  I was trying to

23  understand -- define the word input.

24        Q.      I see.

25        A.      I didn't rendered authority to BRG.

Laura Crossen
September 08, 2025

```
 1            Q.      I'm about to ask you that about

 2    authority.  What I mean by authority is, the ability

 3    to legally bind the Bed Bath family of companies to

 4    a particular course of action.

 5                    Did BRG have authority to place orders

 6    with vendors?

 7            A.      No.

 8            Q.      Did it have authority to place orders

 9    with Artsana specifically?

10            A.      Not that I'm aware of, no.

11            Q.      Did have it --

12            A.      That is a merchant responsibility.

13            Q.      Did it have authority to decide which

14    payments for outstanding inventory would be made?

15            A.      No. It may have assisted with

16    communications with vendors and process management,

17    but no, not unilateral authority to decide the

18    prioritization.

19            Q.      Once a decision to pay was made, did

20    BRG have authority to accomplish that payment?

21            A.      BRG didn't work in the accounts

22    payable group to accomplish payments.  They were

23    financial consultants for the company.

24            Q.      I see.

25            A.      They didn't work in the accounts
```

Laura Crosser
September 08, 2025

1    payable function to execute a payment.

2         Q.      Going back to Exhibit Number 4.  If

3    you look at the oldest e-mail in the chain.  The one

4    from Amanda Plasterer.  There is a mention of

5    something called Caben there, C-A-B-E-N. What is

6    Caben?

7         A.      I do not know.

8         Q.      Why is an Artsana employee discussing

9    arrearages with Caben?  I should say why are Artsana

10   employees discussing arrearages that are allegedly

11   due to Caben?

12        A.      I don't know the answer to that.

13        Q.      Would it be fair to say that this

14   Exhibit-4 e-mail chain represents a request from

15   Artsana to catch up on arrearages?

16        A.      So the first of these e-mails appears

17   to be within the Artsana team.  So I don't know if

18   that initially was informational within the Artsana

19   team.  The next e-mail dated, you know, the same day

20   appears to be a communication to a Brian Cashman

21   referencing those aging payables.  So there is a

22   communication regarding past due payables in this

23   e-mail.

24        Q.      I see.  And is -- in this e-mail, is

25   Artsana threatening to take any action if these

Taylor Crossen

September 08, 2025

1    amounts are not paid?

2         A.    I do not see that, no.

3              MR. BROWN:  Could you repeat the

4    question?

5              MR. FALK:  I said in these e-mails is

6    Artsana threatening to take any action if these

7    amounts aren't paid?

8              THE WITNESS:  I don't see action.  But

9    I do see the words that say we will be evaluating

10   shipments this week.

11   BY MR. FALK:

12        Q.    And during the timeframe of this

13   e-mail chain from October 28th to November 14th, are

14   you aware of any oral communications from Artsana

15   threatening to take any action if this amount is not

16   paid?

17        A.    I'm not.

18        Q.    And would you say that this

19   communication in Exhibit-4 put pressure on the Bed

20   Bath family of companies to pay?

21              MR. BROWN:  Objection to form.  You

22   can answer.

23              THE WITNESS:  I'm reading the e-mails

24   as they were written.  And certainly where -- there

25   are references to evaluating shipments, or delaying

Jakub Crosset
September 08, 2025

```
 1   shipping.  That could, you know, put pressure.

 2        Q.      And where in this e-mail chain do you

 3   see a mention of delaying shipping?

 4        A.      From Steve McLaughlin where he says

 5   they will be evaluating for releasing shipments this

 6   week.

 7        Q.      And in response -- the arrearage

 8   amounts discussed here, do you know if that was

 9   eventually paid?

10        A.      I know the payment of 761,000 is

11   referenced in the e-mail was paid.

12        Q.      And --

13        A.      I don't have the specific invoices so

14   I can't answer the question relative to these

15   amounts being quoted back in October.  But it does

16   appear a large payment was released from the e-mail.

17        Q.      And at this time, the time frame of

18   this e-mail chain, did Artsana take any collections

19   effort that gave it advantage over other vendors who

20   were in arrears?

21             MR. BROWN:  Objection to form.

22             THE WITNESS:  I can't -- I can't make

23   that comparison at that time.  I don't have enough

24   information to make that comparison at that time.

25   BY MR. FALK:
```

Laura Crossen
September 08, 2025

```
 1          Q.      And to be clear, at this time period,

 2   let's say November 1st, 2022, was the Bed Bath &

 3   Beyond company of families in arrears with other

 4   large million dollar a year plus vendors?

 5          A.      I did not review the status of payable

 6   balances back at this specific timeframe.  So I

 7   can't answer it specifically as to those vendor --

 8   large vendors you're referencing.  I would have to

 9   review the data.

10          Q.      I see.  Would you please take a look

11   at Exhibit Number 5.  And let me know when you have

12   taken a look at the document.

13                  (Whereupon, Exhibit No. Exhibit-5 was

14   marked for identification.)

15                  THE WITNESS:  I looked at it.

16   BY MR. FALK:

17          Q.      All right.  And at a high level, what

18   does this e-mail chain represent?

19          A.      This is an e-mail chain done in late

20   December inquiring about past due balances in both

21   Artsana USA, and now I'm seeing capital Caben which

22   was a name for Artsana -- it looks like Asian

23   Pacific.

24          Q.      And when you say that you are now

25   coming to understand that Caben was a sister company
```

1    of Artsana, are you saying that based -- just on

2    having read it in this document?

3         A.      This is the only mention that I have

4    around Caben being a sister company of Artsana USA,

5    yes.

6         Q.      I see.  And would it be accurate to

7    say that over the course of this e-mail chain the

8    BRG team redirects payment requests to John Dery at

9    Bed Bath?

10        A.      Yes.

11        Q.      Do you know why that was done?  Why

12   did BRG pass this off?

13        A.      BRG ended their engagement around the

14   end of December and a different firm joined in the

15   supporting the company in late December, January of

16   2023.

17        Q.      What was the replacement company?

18        A.      Alix Partners.

19        Q.      And do you know why that switch from

20   BRG to Alix was made?

21        A.      That was made at a sort of an

22   executive board level, that decision.

23        Q.      Does that mean that you do not know?

24        A.      I do not know the specifics of why it

25   was made.

Laura Crossen
September 08, 2025

1          Q.       What do you know about the reasons for

2     the decision to switch?

3          A.       I believe that the company was

4     increasing the resources necessary to continue to

5     support the phase that it was in.

6          Q.       What phase was it in at the time the

7     switch was made?

8          A.       Increasing, you know, business

9     pressure and, you know, commercial performance

10    improvements were needed.

11         Q.       Would it be fair to say that at this

12    time Bed Bath's financial situation became worse

13    than it had been a year prior?

14         A.       Yes.

15         Q.       And I guess at an informal level,

16    would it be fair to say at this point, the company

17    is seriously considering bankruptcy?

18         A.       Yes.

19         Q.       So in the January 4th e-mail in this

20    chain, the first one or the one at the top of the

21    documents I mean --

22         A.       Uh-hum.

23         Q.       Do you see a reference to Artsana's HQ

24    pressuring to stop shipments?

25         A.       I do.

Laura Crossen
September 08, 2025

1      Q.      And can you tell me how did the Bed

2  Bath company react to this indication that shipments

3  might be stopped?

4      A.      What do you mean by the Bed Bath's

5  company reacting?  Could you please ask the question

6  more specifically?

7      Q.      Okay.  I will break it down into

8  pieces.  After Artsana mentioned that it might need

9  to stop shipments, were there any discussion of that

10  fact among the Bed Bath -- I'm going to calling it

11  payment team -- by which I mean the merchants and

12  accounts receivable folks that we were discussing

13  earlier about prioritization?

14      A.      So, I don't have knowledge of oral

15  discussions that would have taken place.  I have

16  reviewed the e-mails that you provided indicating

17  that you know there was some communication back and

18  forth with the merchant team around the fact that

19  you know, payment needed to be received otherwise

20  shipment may -- shipments may be delayed or cease.

21      Q.      And do you know of any e-mail or other

22  written correspondence internal to Bed Bath about

23  Artsana's suggestion that they may stop shipments?

24      A.      The ones I reviewed that are provided,

25  yes.

Laura Crossen
September 08, 2025

```
 1            Q.        And to your knowledge, those

 2     communications that you reviewed are the whole

 3     universe of written communications about that issue?

 4            A.        I don't have the whole universe to

 5     positively confirm that for you.  But I have what's

 6     been provided by house counsel and you.

 7            Q.        And how -- at this point, January 4th,

 8     2023, how did the Bed Bath companies respond to this

 9     suggestion that shipments may be stopped?

10            A.        Again, can you clarify what you mean

11     by respond?  Do you mean verbal conversations that

12     may have been taking place about that or what is

13     your specific question?

14            Q.        Did the Bed Bath family of companies

15     make a payment in response to this January 4th

16     suggestion?

17            A.        I do not believe they did.

18            Q.        Did the Bed Bath family of companies

19     change the manner in which they ordered inventory

20     from Artsana?

21            A.        I can't answer that question.

22            Q.        Why?

23            A.        I don't --

24            Q.        Why can't you answer it?

25            A.        Because that would have been a
```

Laura Crossen
September 08, 2025

```
1    merchant activity that I don't have an imprint or a

2    record of -- whether or not --

3         Q.    I just want to be clear that the

4    reason you can't answer that question is because you

5    don't know?

6         A.    I don't have the records to answer

7    that question right now.  I don't have the

8    merchant's side of the communications that may have

9    taken place internally, right.

10        Q.    And did the Bed Bath companies feel

11   pressured by Artsana's suggestion that it would need

12   to stop shipping?

13             MR. BROWN:  Objection to form.  You

14   can answer it.

15             THE WITNESS:  I would say generally

16   that the act of not shipping creates pressure.  The

17   act of indicating that shipments will be delayed or

18   cease would create pressure.

19   BY MR. FALK:

20        Q.    Who from the Bed Bath family of

21   companies is on this e-mail chain?

22        A.    Are you still referring to Exhibit-4?

23        Q.    Exhibit-5 I mean.

24        A.    Five.  Okay.  Bear with me.  I want to

25   reopen it and make sure I have only Exhibit-5 open.
```

Laura Crossen
September 08, 2025

```
 1    I see John Dery from the Bed Bath family of

 2    companies.

 3          Q.      Anyone else?

 4          A.      I only see John Dery after Brian

 5    Cashman.

 6          Q.      At this point, when this e-mail chain

 7    is going on, what is John Dery's job title?

 8          A.      He was director of accounts payable.

 9    Senior director of accounts payable.

10          Q.      And what were his job

11    responsibilities?

12          A.      He oversaw the accounts payable

13    function, processing, reconciliation, payment

14    making.

15          Q.      Is it fair to say that Artsana

16    communicated to John Dery a suggestion that they may

17    have to stop shipping if their arrearage was not

18    handled?

19          A.      So -- so in looking at this particular

20    e-mail, I do not see them communicating that to John

21    Dery.  I do see in the very final top e-mail that

22    that was communicated to Chad Taylor who was the

23    merchant or one of the merchants involved in the

24    account.

25          Q.      So he would be another person employed
```

Laura Crossen
September 08, 2025

```
 1    in the Bed Bath family of companies?

 2         A.      I see that at the top, yes.  Yep.  It

 3    doesn't have his suffix, but it is him.

 4         Q.      You said Chad Taylor worked with the

 5    merchants?

 6         A.      He was in the merchant group, yes.

 7    That's where it says HQ is pressuring stop ship.

 8         Q.      Do I have it right that the merchant

 9    group was mainly involved in the order placement

10    side and not the accounts payable side?

11         A.      Correct.  Correct.

12         Q.      Would it have been unusual then for

13    the merchant to be involved in an e-mail chain about

14    arrearages like this?

15         A.      No. No. That is not unusual.  Vendor

16    teams often communicate with merchant teams about

17    their accounts, both purchases and the status of

18    their accounts.

19         Q.      And this suggestion that shipments may

20    need to be stopped, do you have any knowledge of

21    whether it was communicated to anyone at Bed Bath

22    Beyond John Dery and Bed Bath?

23         A.      Personally, no.

24         Q.      And in your role as the designee, the

25    30(b)(6) witness, do you have any knowledge either?
```

Taylor Crossen
September 08, 2025

```
1          A.      I do not, no. I do not see the e-mail

2    being forwarded.  I don't -- I don't have physical

3    confirmation of it being shared with anyone else.

4          Q.      And do you have any knowledge of this

5    suggestion being communicated orally to anyone else

6    in the Bed Bath family of companies?

7          A.      I do not.

8          Q.      Would you take a look at Exhibit-6 and

9    let me know when you have given that a quick look

10   over?

11                 (Whereupon, Exhibit No. Exhibit-6 was

12   marked for identification.)

13                 THE WITNESS: (The witness complies.)

14   I looked at it.

15   BY MR. FALK:

16         Q.      Will you take a look at the second

17   page, at the January 7th, 2023 e-mail from Steve

18   Rubin.

19         A.      Uh-hum.

20         Q.      What is Steve Rubin asking be done in

21   this e-mail?

22         A.      He is asking that shipments are halted

23   or stopped.

24         Q.      Do you see that it refers to Caben

25   team as well?
```

Laura Crossen
September 08, 2025

```
1           A.      I do.  Uh-hum.

2           Q.      Do you know whether shipments were

3    actually stopped in response to this request?

4                   MR. BROWN:  Objection to form.

5                   Is there a Bed Bath representative on

6    this e-mail or is this an internal Artsana e-mail?

7                   MR. FALK:  I believe it's internal.

8                   THE WITNESS:  I don't see one.

9    BY MR. FALK:

10          Q.      What I really want to get at with this

11   exhibit then, I'll just ask it.

12                  Would it be fair to say that this

13   e-mail appears to show that Artsana made a request

14   to freeze orders on January 7th?

15          A.      They made a request to freeze certain

16   orders on January 7th, yes.

17          Q.      Do you have any reason to believe that

18   that that request to freeze these particular orders

19   was made on a different date than January 7th?

20          A.      This is Artsana's internal e-mail

21   exchange, so I can only observe it.

22          Q.      I see.  Would you take a look at

23   Exhibit Number 1.

24                  (Whereupon, Exhibit No. Exhibit-1 was

25   marked for identification.)
```

Laura Crossen
September 08, 2025

```
 1            A.        (The witness complies.)  Yes.  I

 2     reviewed it.

 3            Q.        And at a high level, what does this

 4     e-mail chain reflect?

 5            A.        This reflects carrier Schneider trying

 6     to schedule a pickup.  And there's information being

 7     exchanged about pushing the pickup back.  And then

 8     there is information exchanged around cancelling the

 9     pickup.

10            Q.        And so the orders being discussed for

11     pickup in this e-mail chain, were they picked up at

12     the times agreed in this e-mail chain?

13            A.        Not per the information in the e-mail

14     chain.  They were not.  They were cancelled.

15            Q.        And according to this e-mail why were

16     they cancelled?

17            A.        I don't -- this e-mail is being

18     exchanged between the carrier and the logistics.

19            Q.        Let me ask you more specifically here.

20            A.        I don't see a reference to exactly why

21     in this e-mail.

22            Q.        In the Monday, January 9, 2023 e-mail

23     sent at 2:52 p.m. it's the first one in the

24     document.

25            A.        Yes.
```

Taylor Crossen
September 08, 2025

1         Q.       Is there someone from Artsana on that

2     e-mail?  Is Steve Rubin from Artsana --

3         A.       Steve Rubin is Artsana, yes.  Amy Cruz

4     is Artsana, and I think the other one is sort of --

5     you see that letters, it's a Bed Bath e-mail box

6     related to shipping, yes.

7         Q.       That's -- that e-mail that's

8     abbreviating to TM SNE.  That is a Bed Bath e-mail

9     address?

10        A.       Yes.

11        Q.       I see.  And so, this first -- this

12    most recent e-mail in the chain it reflects a

13    communication between Artsana and someone at Bed

14    Bath, correct?

15        A.       It does, although that reads like a

16    more of sort of generic logistics handling e-mail

17    box not a merchant or a name of a person.  Just the

18    scheduling of pickups and carrier management wasn't

19    a merchant responsibility, so it looks like that was

20    going into an e-mail box that handled those matters.

21        Q.       Would you say that that's the right

22    e-mail box for this kind of communication to go to?

23        A.       Relative to the shipment itself and

24    de-scheduling it, I assume so, based on the fact

25    that the communications were going back and forth to

Lant J. Crossen
September 08, 2025

1    that e-mail.

2         Q.      The Bed Bath team that was responsible

3    for scheduling shipments, what kind of communication

4    would they have with the Bed Bath team dealing with

5    accounts payable?

6         A.      Not much.  Not to my knowledge.

7         Q.      So is it possible that this e-mail

8    never reached the Bed Bath accounts payable team?

9         A.      This is about holding shipments.  And

10   that accounts payable is after something was shipped

11   and been billed.  So I'm making the assumption that

12   this e-mail would not normally go to the accounts

13   payable team.

14        Q.      I see.  Could you please take a look

15   at Exhibit Number 2 and let me know when you have

16   given it a look over.

17               (Whereupon, Exhibit No. Exhibit-2 was

18   marked for identification.)

19        A.      (The witness complies.)  I've looked

20   at it.

21        Q.      And at a high level, what does this

22   e-mail chain reflect?

23        A.      This e-mail is referring to -- looks

24   like shipments that were being scheduled through use

25   and logistics import POs to Caben as you referred

Laura Crossen
September 08, 2025

```
1   to, and that these were being held.

2        Q.      And to your knowledge, were the orders

3   shipping through Yusen, the same orders that were

4   shipping through Schneider, the entity in the prior

5   exhibit?

6        A.      No.

7        Q.      It is different sets of orders?

8        A.      These are import orders through the

9   Caben Asia Specific company.  And Schneider

10  Logistics would have been a domestic carrier picking

11  up domestic orders.

12       Q.      And according to Artsana, in this

13  e-mail chain, how much -- how much does Bed Bath

14  family of companies owe to Artsana on this date of

15  January 9th?

16       A.      There is a reference to 5.2 million

17  for direct import in this e-mail.

18       Q.      And how much of that is past due?

19       A.      Two million is the amount that is

20  quoted here.

21       Q.      And does Bed Bath promise to do

22  anything on this e-mail chain?

23       A.      They -- the communicator, Christina

24  DiBella, indicates that she's heard about a payment

25  that could go out early in the week.  This -- a
```

Taylor Crossen
September 08, 2025

1    reference to payments that were received already

2    that week, and then some attempt to clarify that.

3        Q.      Would you say that Artsana pointing

4    out the two million that is allegedly past due, puts

5    pressure on the Bed Bath companies?

6        A.      I mean to me, it's a statement of past

7    due amounts.  The shipments are being held as a

8    result of that amount.  So you know, that again,

9    whenever shipments are held, it puts pressure on

10   reviewing the status of the payables.

11       Q.      Would it be fair to say that this

12   e-mail chain shows the Bed Bath employees finding

13   out about the shipping freeze for these orders on

14   January 9th?

15       A.      It appears to Jenn Turetsky at Bed

16   Bath received that information on January 9th.

17       Q.      Do you have any reason to believe that

18   Bed Bath employees got the information that there

19   would be a shipping freeze earlier than January 9th?

20       A.      I don't have that information.  I

21   wouldn't be able to answer that question.

22       Q.      Do you know whether the $1.2 million

23   payment from Bed Bath, referred in this e-mail

24   chain, do you know if that was requested before or

25   after Bed Bath learned of the shipping freeze?

Laura Crossen
September 08, 2025

```
 1            A.      I do not know.

 2            Q.      I know we have been going through the

 3     timeline detail.  I just want to back up for a

 4     moment.  So Artsana supplied goods mostly to the Buy

 5     Buy Baby concept, right?

 6            A.      Uh-hum.

 7            Q.      And --

 8            A.      Correct.

 9            Q.      You said it was shipping of large

10     dollar value of orders at least in excess of a

11     million dollars a year?

12            A.      Correct.

13            Q.      How important were Artsana's goods for

14     the normal business operations of the Buy Buy Baby

15     concept?

16            A.      I can't answer that question.  I

17     wasn't a merchant responsible for Buy Buy Baby

18     sales.

19            Q.      So you do not know whether the total

20     cessation of orders from Artsana would have severely

21     harmed the Buy Buy Baby concept?

22            A.      I think the cessation of orders from a

23     large vendor would create harm to sales.  I don't

24     have -- I personally didn't oversee the vendor and

25     its relationship with the business, so I don't have
```

Laura Crossen
September 08, 2025

1    the sort of the nuance context in which you ask that

2    question.

3          Q.    I see.  Would you please take a look

4    at Exhibit Number 9.

5                (Whereupon, Exhibit No. Exhibit-9 was

6    marked for identification.)

7                THE WITNESS:  Yes, I will.  I'm

8    familiar with it, yes.

9    BY MR. FALK:

10         Q.    And at a high level, what does this

11   e-mail chain reflect?

12         A.    It is a formal notice that --

13   notifying the company of Artsana's version of a

14   current aging report, and that any future orders

15   would need to be done via pre payment.

16         Q.    And what discussions occurred inside

17   Bed Bath & Beyond as a result of Artsana's switching

18   to pre payment?

19         A.    I don't know.

20         Q.    Did any discussions occur internally

21   about this?

22         A.    About Artsana specifically?

23         Q.    Yes.

24         A.    I don't know.

25         Q.    Did any discussions occur internally

Laura Crossen
September 08, 2025

```
1    in Bed Bath & Beyond about any vendors switching to

2    pre payments around this time?

3         A.      Specifically with respect to vendors

4    switching to pre payment at this time, I can't

5    answer the question on, you know, who had what

6    discussions about what vendors, but I would assume

7    if any other vendors were switching to pre payment

8    or requesting pre payment, the discussions would

9    have -- communications would have occurred.

10        Q.      That's an assumption that you do not

11   have direct knowledge of, correct?

12        A.      I do not have direct knowledge at this

13   point in time of who had which conversations about

14   the status of shipping or pre payment requests from

15   vendors.

16        Q.      And in the year leading up to the

17   bankruptcy, how many large vendors, million dollar a

18   year plus vendors, switched to pre payments?

19        A.      In the year leading up to bankruptcy,

20   so the timeframe literally, the one year?  Is that

21   the question?

22        Q.      I believe the bankruptcy was what,

23   April 2023?

24        A.      April '23.

25        Q.      April '22 to April '23, how many
```

Laura Crossen
September 08, 2025

1    million dollar plus vendors switched to pre payment?

2         A.      I do not have a specific number.  In

3    terms of assessing the exact count of vendors, but I

4    can say that they were very limited pre payments in

5    the year leading up.  There was only one timeframe

6    when the company offered a pre payment process for

7    new goods in December of '22, that stands as having

8    you know a significant amount of pre payments, but

9    that was not vendor-requested, it was

10   company-offered in order to replenish stock after

11   the holiday season.

12        Q.      And which vendor companies was this

13   special pre payment process offered to?

14        A.      When you say which companies, do you

15   mean which vendors?

16        Q.      Which vendors, yes.

17        A.      Yes.  There was a list of vendors.

18   There were several.

19        Q.      Was Artsana one of those vendors?

20        A.      No.

21        Q.      Was Caben?

22        A.      I did not see Caben, no.  I did not

23   see Caben.

24        Q.      Artsana switched to pre payment that's

25   discussed in this Exhibit 9.

1          A.       Uh-hum.

2          Q.       Did the Bed Bath team negotiate that

3    with Artsana before it was formally put in place?

4          A.       I do not know.  If it was negotiated,

5    it would have been by the merchants, so I don't have

6    any record of that.

7          Q.       And to be clear again, the merchants

8    are employees of a Bed Bath & Beyond affiliated

9    company, correct?

10         A.       Correct.

11         Q.       The entity the merchants work for, do

12   you know if that was one of the debtors in this

13   bankruptcy?

14         A.       Yes.

15         Q.       It was?

16         A.       Yes.

17         Q.       And after this switch to pre payment

18   was communicated to the Bed Bath & Beyond team, how

19   did Bed Bath react?

20         A.       I do not know.  I don't know how

21   individuals -- when you say the entity reacted, I

22   don't know.

23         Q.       Did the switch to pre payment put

24   pressure on the company?

25         A.       The switch to pre payment obviously

Laura Crossen
September 08, 2025

1   not being able to access goods affects the company's

2   performance.

3        Q.      Did the switch to pre payment put

4   pressure on the company to pay existing outstanding

5   invoices?

6             MR. BROWN:  Sir, can you repeat that

7   question?

8   BY MR. FALK:

9        Q.      Yes.  Did the switch to prepayment put

10  pressure on Bed Bath to pay existing outstanding

11  invoices?

12       A.      I think that any pressure to not ship,

13  if it was in fact a requirement that outstanding

14  invoices be paid before any prepayment would be

15  allowed, if that was the structure, then that would

16  put pressure.

17       Q.      Do you see that structure reflected in

18  this e-mail?

19       A.      I see this e-mail indicating

20  prepayment will be effective as of 1/10/23, and the

21  expectation is payments that are open would be paid

22  in accordance with terms.

23       Q.      And so that portion discussing payment

24  to the existing invoices, would it be fair to say

25  that Artsana is just asking those be paid normally?

Laura Crossen
September 08, 2025

```
 1          A.      That's what it reads, yes.

 2          Q.      Would you please take a look at

 3   Exhibit Number 10 and let me know when you have

 4   skimmed that.

 5                  (Whereupon, Exhibit No. Exhibit-10

 6   was marked for identification.)

 7          A.      I will.

 8          Q.      Oh, before we leave Exhibit 9.  I just

 9   want to get us oriented on the timeline.  Exhibit 9

10   is the switch to prepayment.  That's being

11   communicated to Bed Bath on January 10th, correct?

12          A.      Yes.  Correct.

13          Q.      Now we can go to Exhibit 10.

14                  MR. BROWN:  Would you mind maybe after

15   this next exhibit, if that would be a good time to

16   take a break?

17                  MR. FALK:  You know, it would actually

18   be a good time to take a break right now.  Because

19   the next few exhibits go together.

20                  MR. BROWN:  Great.

21                  MR. FALK:  What do you need, five

22   minutes, 10 minutes?  What do you need?

23                  MR. BROWN:  Maybe five or ten just to

24   be safe.

25                  THE WITNESS:  Ten would be good.
```

Laura Crossen
September 08, 2025

```
 1                    MR. FALK:  All right.  11:05 I'll see

 2    you again.

 3                    THE WITNESS:  Thank you.

 4                    MR. BROWN:  Thank you.

 5                    (Recess taken 10:56.)

 6                    (Back on the record 11:07.)

 7    BY MR. FALK:

 8        Q.     All right.  Ms. Crossen, we are just

 9    coming back after a short break.  You understand

10    that you are still under oath and must give true and

11    accurate answers to these questions.  Correct?

12        A.     I do.

13        Q.     Wonderful.

14                    To refresh us, is it right we were

15    just looking at a January 10th, 2023, e-mail

16    exchange where Artsana switched to going forward

17    orders to prepayment?

18        A.     Correct.

19        Q.     All right.  Let's take a look at

20    Exhibit Number 10.

21        A.     I have it open.

22        Q.     And have you given that a look?

23        A.     I have.

24        Q.     At a high level, what does this e-mail

25    exchange reflect?
```

Taylor Crosset

September 08, 2025

1          A.          Artsana communicating to I believe

2     three Bed Bath individuals, an aging report

3     indicating there's three million in past due

4     invoices and a response indicating that there will

5     be prioritized weekly payments going forward.

6          Q.          Would it be fair to say that this

7     indicates Bed Bath was going to be paying towards

8     existing past due invoices?

9          A.          So this indicates from the merchant,

10    Chad Taylor, that the merchant team, had given the

11    greenlight and prioritized weekly payments for

12    Artsana.  I don't believe that that necessarily can

13    guarantee that those payments would occur.  But that

14    the merchant team put that priority level in place.

15         Q.          Is there any indication in this e-mail

16    of Artsana put any pressure on the company to pay?

17         A.          Well, at this point Artsana had

18    already indicated in January 10th's e-mail that any

19    future orders would be on a pre-paid basis.  This

20    e-mail is more of an inquiry.

21         Q.          So you don't see this e-mail as

22    putting pressure on the company?

23         A.          I think that this is a request for

24    update and status on payment.

25         Q.          Okay.  And for the go-forward order by

Laura Crossen
September 08, 2025

```
 1    which I mean orders placed after January 10th that

 2    would have been occurring under the prepayment

 3    structure, were orders placed by Bed Bath under that

 4    new structure?

 5         A.      I believe yes.  Although there was a

 6    delay between the timing of that January 10th

 7    conversion to pre-pay, and an actual pre-pay going

 8    out, which was at the end of February.

 9         Q.      And what was responsible for that

10    delay?

11         A.      Cash flow availability.

12         Q.      By that do you mean Bed Bath & Beyond

13    was -- did not have sufficient cash flow to make all

14    the prepayments it wanted to?

15         A.      Yes.  They were lender waivers and

16    other things going on in the timeframe of January

17    and February and cash rasing activities.  So --

18         Q.      And those lender waivers -- actually,

19    to your knowledge, what are the other things.  You

20    mentioned lender waivers.  What are the other things

21    that were necessary to address, before the

22    prepayments could be made?

23         A.      Well, the accessibility to cash was

24    what had to be addressed.

25         Q.      Can you elaborate on what exactly that
```

Taylor Crossen
September 08, 2025

1    means?

2         A.        It means resolving any status issues

3    with lenders that were required to continue to

4    access the facility, as well as, you know,

5    generating cash flow from the business in order to

6    release payments.

7         Q.        And those issues, those were issues

8    did not need to be addressed with Artsana, correct?

9         A.        They are not specific to Artsana, no.

10        Q.        And those particular issues did not

11   involve negotiations with Artsana, did they?

12        A.        No.

13        Q.        Would you take a look at Exhibit

14   Number 7?

15                  (Whereupon, Exhibit No. Exhibit-7,

16   was marked for identification.)

17        A.        The witness complies.  Yes, I'm

18   familiar.

19        Q.        At a high level, what does this e-mail

20   chain represent?

21        A.        This is a Bed Bath merchant, Buy Buy

22   Baby, a merchant, communicating a new order and a

23   paydown of payables in the form of a total payment

24   in late February.

25        Q.        And what is the total amount of that

Laura Crossen
September 08, 2025

1    payment roughly?

2         A.      1.6 million, roughly.

3         Q.      And how is that divided up between new

4    orders versus payment to existing invoices?

5         A.      A million 65 new orders.  532,000,

6    paydown payment.

7         Q.      And that 532, that's for a paydown of

8    existing invoices.  Do you know if that is the

9    amount that is being challenged as a preference here

10   in this case.  Or do you know if that is a portion

11   of the amount that is being challenged as a

12   preference in this case?

13        A.      Yes.

14        Q.      This is Bed Bath committing to pay the

15   alleged preference?

16        A.      This is a communication about that

17   payment, yes.

18        Q.      I see.  And this also includes a

19   placement, a prepayment for new going-forward

20   orders, correct?

21        A.      Correct.

22        Q.      And the orders pre-paid by payment

23   discussed here, were they placed by Bed Bath &

24   Beyond?

25        A.      Based on subsequent communications

Laura Crossen
September 08, 2025

1   about the related shipments, I would say yes.

2        Q.      And were the goods ordered by those

3   orders delivered to Bed Bath?

4        A.      I don't have a direct answer to that

5   question.  But I do see some information in e-mails

6   that were shared indicating that some of the goods

7   on those orders may have been held and potentially

8   utilized by a carrier, but I would assume the vast

9   majority of that was in fact resolved, but there

10  seemed to be some back and forth on it in the e-mail

11  communications.

12       Q.      I see.  Would you please take a look

13  at Exhibit-3?

14              (Whereupon, Exhibit No. Exhibit-3 was

15  marked for identification.)

16              THE WITNESS:  Exhibit-3?

17  BY MR. FALK:

18       Q.      Yes.

19       A.      Yes.  I looked at it.

20       Q.      And on the third page of the document,

21  do you see an image that starts with the word Oracle

22  and payments and a number?

23       A.      I do.

24       Q.      So that image albeit cut off, extends

25  to the right side of the screen.  Would you take

Laura Crossen

September 08, 2025

```
 1    look at also Exhibit 8.  We are going to look at

 2    these in conjunction.

 3                    (Whereupon, Exhibit No. Exhibit-8 was

 4    marked for identification.)

 5                    THE WITNESS:  I have that opened as

 6    well.

 7         Q.       Does Exhibit-8 accurately reflect the

 8    entire contents of the picture that is cut off in

 9    Exhibit-3?

10         A.       It does.

11         Q.       I see.  So taken together, these

12    exhibits, do they reflect a payment made to Artsana

13    from the Bed Bath companies?

14         A.       They do.

15         Q.       And what is the amount of that

16    payment?

17         A.       1,603,440.30.

18         Q.       When a payment is made from Bed Bath

19    to Artsana, which company decides how that payment

20    will be applied?

21         A.       So normally when a payment is made,

22    Bed Bath systems will apply the payment to the

23    oldest invoices.

24         Q.       That's the general rule.  Do you have

25    any reason to believe that general rule was changed
```

Laura Crosset
September 08, 2025

1    for this payment?

2         A.      It's possible it was changed.  But not

3    changed intentionally, but when a prepayment goes

4    out, obviously there are no invoices yet.  So then a

5    manual intervention has to occur to clear a payment

6    against invoices.  But I would assume that the

7    portion of this payment that was paying down

8    invoices applied in the system as I described.

9         Q.      You headed off the question I was

10   about to ask next.  Would it be fair to say that

11   this e-mail chain in Exhibit-3 reflects the fact

12   that orders were being placed before this payment

13   was made?

14        A.      Well orders were being -- it looked to

15   me like discussed and arranged and chosen and

16   arrived at before the payment was made.

17        Q.      Did Bed Bath have any reason to

18   believe that if it did not make the portion of this

19   payment towards existing invoices, that Artsana

20   wouldn't fill pre-paid future orders?

21        A.      I can't determine that from this

22   e-mail exchange.

23        Q.      Do you have any other knowledge that

24   indicates that those two concepts were linked?  The

25   prepayment idea and the payment of the existing

1    invoices?

2                    MR. BROWN:  Objection to form.  You

3    can answer it, if you can.

4                    THE WITNESS:  I do believe that

5    Artsana received an arrangement where 50 cents of

6    each dollar of prepayment was paid to Artsana on

7    open payables.  That's how this amount was arrived

8    at.

9         Q.     Have you seen written communications

10   to that effect?

11        A.     I'm aware of it.  I'm aware of that

12   arrangement.

13        Q.     Are you aware of it from oral

14   discussions with other people or from written

15   communications?

16        A.     I'm aware of it from being in the

17   environment at the time.

18        Q.     I see.  And when you say you at this

19   point, you mean yourself personally?

20        A.     Personally, correct.

21        Q.     Which person did you speak with that

22   told you about this arrangement?

23        A.     I think that the chief restructuring

24   officer mentioned this arrangement -- these

25   arrangements, yes.

Laura Crossen
September 08, 2025

1        Q.        Who was that chief restructuring

2     officer?

3        A.        She was from Alix Partners.  Her name

4     is Holly Etlin.

5        Q.        And so this arrangement that we are

6     talking about, that was kind of -- that was the

7     deal, an amount pre-paid, half that amount towards

8     old invoices, and that would allow pre-paid

9     inventory to be shipped out?

10       A.        Yes.  That's how I understood it.

11       Q.        And Bed Bath -- on the Bed Bath side,

12    did Bed Bath understand this arrangement to be a way

13    to ensure continued fulfillment to orders?

14       A.        I can't answer that.  I don't know.  I

15    don't know what it -- what this arrangement did for

16    future orders.

17       Q.        If this arrangement was not in place,

18    did Bed Bath believe that go-forward pre-paid orders

19    would not be filed?

20                 MR. BROWN:  Objection to form.

21                 THE WITNESS:  I can't answer whether

22    it believed.  I don't know outright whether the Bed

23    Bath believed that in each vendor's case.  I think

24    that it would be reasonable to assume that pre-paid

25    orders, you know, may not occur with some vendors if

Laura Crossen
September 08, 2025

1    paid out of open payables, you know, didn't happen,

2    but I can't tell you for sure.

3    BY MR. FALK:

4         Q.      And you did not specifically know for

5    Artsana whether --

6         A.      I do not.

7         Q.      I see.  Would you take a look at

8    Exhibit Number 14.

9                 (Whereupon, Exhibit No. Exhibit-14

10   was marked for identification.)

11                THE WITNESS:  (The witness complies.)

12   I looked at it.

13   BY MR. FALK:

14        Q.      And at a high level, what does this

15   e-mail chain reflect?

16        A.      It indicates that there is a problem

17   with one of the freight carriers who some of the

18   orders were released to.  And that freight carrier

19   is threatening to salvage goods to pay past bills.

20        Q.      And so this -- would it be accurate to

21   say this is about the freight carrier not having

22   been paid?

23        A.      That's what it indicates, yeah.

24        Q.      And would Bed Bath or Artsana have

25   been responsible for paying that freight carrier?

Laura Crossen
September 08, 2025

```
 1        A.      I would assume Bed Bath based on the

 2   arrangements I described to you.

 3        Q.      And what is the earliest dated e-mail

 4   in this chain?

 5        A.      March 9th.

 6        Q.      March 9th, 2023?

 7        A.      That's right.

 8        Q.      So this entire exchange is happening

 9   after the $1.6 million payment that was made on

10   February 27, 2023, correct?

11        A.      That's correct.

12        Q.      So is there any way that these March

13   order issues could have put pressure on the company

14   to have made that February payment?

15        A.      These freight carrier issues?

16        Q.      Yes.

17        A.      In March?  I don't -- I think that

18   this would be unrelated.

19        Q.      So to sort of sum up this series of

20   exhibits that we've looked at, can you tell me what

21   kind of pressure Artsana put on Bed Bath to make

22   payment of its past due invoices?

23        A.      So Artsana required prepayment

24   following January 10th.  Artsana communicated

25   regarding open payables, and with respect to certain
```

Taylor Crossen
September 08, 2025

1    shipments, indicated that they would be held.

2         Q.      And those shipments that would be

3    held, how important were they to Bed Bath's

4    business?

5         A.      It's relative.  You know, it's hard

6    for me to indicate exactly how important they were.

7    But I assume based on the volume I see with Artsana

8    and Buy Buy Baby, that Artsana was an important

9    vendor to the Buy Buy Baby business.  And that the

10   shipments were prioritized and important to the

11   buyers.

12        Q.      You said that was something you

13   assume.  Is that assumption based on any specific

14   knowledge?

15        A.      It's just based on the volume and the,

16   you know, knowledge of the brand.

17        Q.      But it's not based on any specific

18   communication you had or know about?

19        A.      No.

20        Q.      And I believe you said that the switch

21   to prepayment put on pressure to pay prior invoices.

22   How so?

23        A.      I think what I said was, that the

24   holding or stopping shipments, leading up to the

25   prepayment, is what would have put pressure on the

Taylor Crossen
September 08, 2025

```
 1    company to pay.

 2         Q.      And let's see, to refresh both of us,

 3    I believe that the shipments were frozen between

 4    January 7th and 9th.  Does that sound about right?

 5         A.      That does sound correct.  As well as

 6    some that were held or were I believe potentially

 7    being reviewed for being held earlier than that,

 8    yes.

 9         Q.      And when was the alleged preference

10    payment made.  What date?

11         A.      I believe it's February 27th.

12         Q.      So that's six or seven weeks from the

13    order freeze, correct?

14         A.      That's correct.

15         Q.      Can you explain why there was such a

16    long time lag between the order freeze and that

17    payment being made?

18         A.      I will reiterate the explanation

19    around availability of funds and other financial

20    management that was taking place during that

21    timeframe.

22         Q.      And if in early January Bed Bath had

23    been in a financial position to make that

24    530-something thousand dollar payment, that it made

25    in February, if it would have been able to do so in
```

Janis Crossen
September 08, 2025

1    early January, would it have made that payment at

2    that time?

3         A.     It's a hypothetical question.  I would

4    assume if the company could have made that payment

5    at that time it would have.  But it's a hypothetical

6    question.

7              MR. FALK:  All right.  I believe that

8    concludes my direct.

9              MR. BROWN:  Just give me a minute.  I

10   would like to review my notes.  I have cross.

11   EXAMINATION BY MR. BROWN:

12        Q.     Ms. Crossen, I just have a couple of

13   questions.  Back towards the beginning of our

14   deposition today, Mr. Falk was asking you about

15   Chicco or Artsana and the size of its brand.

16        A.     Uh-hum.

17        Q.     I think there was a little bit of

18   confusion about whether were you referring to Chicco

19   in its large size as being large within the Artsana

20   family or large within all of the Buy Buy Baby

21   vendors.

22              Can you elaborate to what extent that

23   you can, the size or what you meant when you were

24   referring to that.

25        A.     So right, so I think in the context of

Taylor Crossen
September 08, 2025

1    describing vendors with over a million or in this

2    case, over 10 million a year in purchasing, I was

3    referencing the fact that Chicco was the most, you

4    know, well-known part of the purchase process for

5    the Buy Buy Baby business.  So it's really just

6    referencing the underlying brands under which goods

7    are sold from Artsana.

8         Q.      And so Chicco is one of the most

9    well-known brands that Buy Buy Baby is buying; is

10   that correct?

11        A.      I would say that is one -- that is a

12   well-known brand at Buy Buy Baby, yes.

13        Q.      Okay.  We saw some reference to

14   Christina DiBella.

15        A.      Correct.

16        Q.      Do you know what her position with Bed

17   Bath was?

18        A.      I believe Christina was a buyer,

19   internal terminology.

20        Q.      Let's just take a couple minute break

21   and come back.  And I will confirm whether or not I

22   have any more questions.

23              MR. FALK:  You need ten minutes?

24   Five?

25              MR. BROWN:  Five is fine, unless you'd

Laura Crossen
September 08, 2025

1  like more.

2                    MR. FALK:  No.

3                    MR. BROWN:  Great.

4                    (Recess taken at 11:36.)

5                    (Back on the record 11:40.)

6                    MR. BROWN:  Thank you.  We are back on

7  after a break.  I have no further questions for Ms.

8  Crossen unless you have any re-direct questions.

9                    MR. FALK:  Based on your cross, I do

10 not.

11                   Ms. Crossen, thank you for giving me

12 your time today.  Mr. Brown, thank you for setting

13 this up in the least painful way possible.

14                   THE COURT REPORTER:  Mr. Brown, do you

15 need a copy of the transcript?

16                   MR. BROWN:  Yes.  Electronic.  Thank

17 you.

18                   (Off the record 11:41 a.m.)

19                   (Whereupon, the Witness was excused.)

20                   (Whereupon, the deposition concluded

21 at approximately 11:41 a.m.)

22

23

24

25

Laura Crossen
September 08, 2025

```
 1              C E R T I F I C A T E

 2

 3              I, JUDITH A. MARUCA, a Notary Public

 4    and Certified Court Reporter of the State of New

 5    Jersey, do hereby certify that prior to the

 6    commencement of the examination, LAURA CROSSEN was

 7    duly sworn by me to testify to the truth, the whole

 8    truth and nothing but the truth.

 9              I DO FURTHER CERTIFY that the

10    foregoing is a verbatim transcript of the testimony

11    as taken stenographically by and before me at the

12    time, place and on the date hereinbefore set forth,

13    to the best of my ability.

14              I DO FURTHER CERTIFY that I am neither

15    a relative nor employee nor attorney nor counsel of

16    any of the parties to this action, and that I am

17    neither a relative nor employee of such attorney or

18    counsel, and that I am not financially interested in

19    the action.

20

21

22    JUDITH A. MARUCA, CCR

23    CCR License Number:  30XI00187300

24    Dated:  September 17, 2025

25
```

EXHIBIT
1
Laura Crossen
9/8/2025

## Falk, Turner N.

| | |
|---|---|
| **From:** | Steve Rubin <Steve.Rubin@artsana.com> |
| **Sent:** | Monday, January 9, 2023 2:52 PM |
| **To:** | TMSNE; Amy Cruz |
| **Subject:** | RE: Schneider Appointment Request |

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Nyree,

At this time, we have been asked to hold shipments to BBB.  As we get more information and things change, we will advise.

Thank you,

Steve Rubin

**From:** TMSNE <TMSNE@bedbath.com>
**Sent:** Monday, January 9, 2023 2:50 PM
**To:** Steve Rubin <Steve.Rubin@artsana.com>; Amy Cruz <Amy.Cruz@artsana.com>
**Subject:** FW: Schneider Appointment Request

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Hi Amy,

Can I ask why this load is cancelled?

Thanks,

Nyree Waters
Logistics Consultant, North East
Nyree.Waters@Consultant.Bedbath.com

**From:** STM BBBY <STMBBBY@schneider.com>
**Sent:** Monday, January 9, 2023 2:41 PM
**To:** 653 inbound <653inbound@bedbath.com>; STM BBBY <STMBBBY@schneider.com>; TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,

@TMSNE
@653 inbound

Shipper is advising they are cancelling these two shipments.

**MVDP7114460**
and
**MVDP7114450**

Please confirm we are good to remove from our system.

Drivers assigned have been informed to avoid any TONUs.

Thanks,
**Cody Kinley**
*Account Management*

**SCHNEIDER TRANSPORTATION MANAGEMENT**
**Midwest Regional Logistics Center**
**1 N Dearborn St Chicago IL 60602**
**New Direct Line: 920-357-2869**
Kinleyc1@schneider.com

View my profile on **Link**

**After hours support: (855) 476-4786**

**Schneider**
**FreightPower**

**Get unprecedented access to a vast network of shippers and quality freight with Schneider FreightPower®.**

Learn More

**All rate quotes are good for four (4) hours.
**All rates are good for thirty (30) days once accepted unless otherwise specified.
**All rate quotes include two (2) hours free load and unload.
**All rate quotes assume legal dimensions unless otherwise specified.
**LTL pickup/delivery dates cannot be guaranteed / Transit times are estimated and do not include the day of pickup or weekends.
** Volume expected is no more than five loads per day, unless otherwise specified.
**All rate quotes assume live load/live unload unless otherwise specified.
**Capacity is not guaranteed.  We work with outside carriers to provide capacity.
**Mexican rates and insurance coverage are limited depending on the product and applicable Mexican Regulations.
** The attached rates are based on current Federal Motor Carrier hours of service rules.  Should these regulations change, adjustments to our quoted rates may be necessary.
**STM, a division of Schneider Logistics, Inc. operates solely as a broker and shall not be held liable for any cargo claims or injuries to persons (including death) or property related to the movement of freight.

*The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies*

**From:** 653 inbound <653inbound@bedbath.com>
**Sent:** Friday, January 6, 2023 5:31 AM
**To:** STM BBBY <STMBBBY@schneider.com>; 653 inbound <653inbound@bedbath.com>

2

**Cc:** TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

> **CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning.
Your loads are scheduled for 01-12@06:00 AM.

Thank you

Esmeralda Sempertegui

---

**From:** STM BBBY <STMBBBY@schneider.com>
**Sent:** Thursday, January 5, 2023 3:23 PM
**To:** STM BBBY <STMBBBY@schneider.com>; 653 inbound <653inbound@bedbath.com>
**Cc:** TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,

Kindly following up.

Please see emails attached from the shipper.

They are requesting to push pickup for both the loads below till 1/11.

Please let us know if we can reset the delivery appointments to the loads below:

**MVDP7114460**
1/12 0600

**MVDP7114450**
1/12 0600

Please let us know, thanks!

**Cody Kinley**
*Account Management*

**SCHNEIDER TRANSPORTATION MANAGEMENT**
**Midwest Regional Logistics Center**
**1 N Dearborn St Chicago IL 60602**
**New Direct Line: 920-357-2869**
Kinleyc1@schneider.com

View my profile on **Link**

**After hours support: (855) 476-4786**

**Schneider**
**FreightPower**®

**Get unprecedented access to a vast network of shippers and quality freight with Schneider FreightPower®.**

**Learn More**

\*\*All rate quotes are good for four (4) hours.
\*\*All rates are good for thirty (30) days once accepted unless otherwise specified.
\*\*All rate quotes include two (2) hours free load and unload.
\*\*All rate quotes assume legal dimensions unless otherwise specified.
\*\*LTL pickup/delivery dates cannot be guaranteed / Transit times are estimated and do not include the day of pickup or weekends.
\*\* Volume expected is no more than five loads per day, unless otherwise specified.
\*\*All rate quotes assume live load/live unload unless otherwise specified.
\*\*Capacity is not guaranteed.  We work with outside carriers to provide capacity.
\*\*Mexican rates and insurance coverage are limited depending on the product and applicable Mexican Regulations.
\*\* The attached rates are based on current Federal Motor Carrier hours of service rules.  Should these regulations change, adjustments to our quoted rates may be necessary.
\*\*STM, a division of Schneider Logistics, Inc. operates solely as a broker and shall not be held liable for any cargo claims or injuries to persons (including death) or property related to the movement of freight.

*The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies*

**From:** STM BBBY <STMBBBY@schneider.com>
**Sent:** Thursday, January 5, 2023 11:48 AM
**To:** 653 inbound <653inbound@bedbath.com>
**Cc:** STM BBBY <STMBBBY@schneider.com>; TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

Hello,

Please see emails attached from the shipper.

They are requesting to push pickup for both the loads below till 1/11.

Please let us know if we can reset the delivery appointments to the loads below:

**MVDP7114460**
1/12 0600

**MVDP7114450**
1/12 0600

Please let us know, thanks!

**Cody Kinley**
*Account Management*

**SCHNEIDER TRANSPORTATION MANAGEMENT**
**Midwest Regional Logistics Center**
**1 N Dearborn St Chicago IL 60602**
**New Direct Line: 920-357-2869**
Kinleyc1@schneider.com

4



**After hours support: (855) 476-4786**

## Schneider
## FreightPower®

**Get unprecedented access to a vast network of shippers and quality freight with Schneider FreightPower®.**

<u>Learn More</u>

**All rate quotes are good for four (4) hours.
**All rates are good for thirty (30) days once accepted unless otherwise specified.
**All rate quotes include two (2) hours free load and unload.
**All rate quotes assume legal dimensions unless otherwise specified.
**LTL pickup/delivery dates cannot be guaranteed / Transit times are estimated and do not include the day of pickup or weekends.
** Volume expected is no more than five loads per day, unless otherwise specified.
**All rate quotes assume live load/live unload unless otherwise specified.
**Capacity is not guaranteed.  We work with outside carriers to provide capacity.
**Mexican rates and insurance coverage are limited depending on the product and applicable Mexican Regulations.
** The attached rates are based on current Federal Motor Carrier hours of service rules.  Should these regulations change, adjustments to our quoted rates may be necessary.
**STM, a division of Schneider Logistics, Inc. operates solely as a broker and shall not be held liable for any cargo claims or injuries to persons (including death) or property related to the movement of freight.

*The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies*

**From:** 653 inbound <<u>653inbound@bedbath.com</u>>
**Sent:** Monday, January 2, 2023 5:51 AM
**To:** Kinley, Cody <<u>kinleyc1@schneider.com</u>>; 653 inbound <<u>653inbound@bedbath.com</u>>
**Cc:** STM BBBY <<u>stmbbby@schneider.com</u>>
**Subject:** RE: Schneider Appointment Request

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning.

Your load has been scheduled for 01-10@6:00 AM.

Thank you

Esmeralda Sempertegui

**From:** <u>kinleyc1@schneider.com</u> <<u>kinleyc1@schneider.com</u>>
**Sent:** Saturday, December 31, 2022 1:24 PM
**To:** 653 inbound <<u>653inbound@bedbath.com</u>>
**Cc:** <u>stmbbby@schneider.com</u>
**Subject:** Schneider Appointment Request

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,

Please confirm the suggested appointment for the Schneider order(s) below and include any required appointment references. To accept the "Suggested Appt Start/End," please put Y/Yes in the column labeled "Confirm Appointment (Y/N)". If the appointment does not work for you, please put N/No in the column labeled "Confirm Appointment (Y/N)" and provide an "Alternative Suggestion" and we will respond with confirmation.

| Order Id | Stop Type | Suggested Appt Start DTTM | Suggested Appt End DTTM | Additional Information | Confirm Appointment (Y/N) | Alternative Suggestion | Appointment Reference | Master Bill of Lading | Purchase Order |
|---|---|---|---|---|---|---|---|---|---|
| 2044392780 | Delivery | 01/10/23 06:00 AM | 01/10/23 06:00 AM | | | | | MVDP7114450 | |

Thank you,
Cody Kinley

`For Schneider internal use only: correlation-key=2337479-6130818627475429445-1939457810836706923`

Appointment requests not responded to, or confirmed outside of the requested times, may be subject to additional fees to include ramp storage, trailer detention, or redelivery fees, based on your specific agreement with Schneider. The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies.

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

EXHIBIT
2
Laura Crossen
9/8/2025

**Falk, Turner N.**

| | |
|---|---|
| **From:** | Chad Taylor </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP /CN=RECIPIENTS/CN=C19789E09D9D47B78CD801E875CE9098-CHAD TAYLOR> on behalf of Chad Taylor <chad.taylor@buybuybaby.com> |
| **Sent:** | Tuesday, January 10, 2023 2:54 PM |
| **To:** | Christina Dibella |
| **Cc:** | Heather Hatfield; Erika Christiansen |
| **Subject:** | RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. |

Yes, there is a $1.2M payment we have requested for Caben/Artsana Asia. Still no confirmation of processing date.

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Tuesday, January 10, 2023 2:47 PM
**To:** Chad Taylor <chad.taylor@buybuybaby.com>
**Cc:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

@Chad Taylor can you answer the below question?

## Chrissy DiBella

Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Tuesday, January 10, 2023 1:25 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Cc:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Is the below $1.2M in addition to the payments we received yesterday for the domestic portion of the business?  The past due $2M is tied directly to the 46718 DI vendor number.

Please let me know.

Thanks

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Tuesday, January 10, 2023 12:39 PM
**To:** Josh Pahl <Josh.Pahl@artsana.com>

**Cc:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

We have heard $1.2M is to be paid early this week.  We'll keep following up on that until it happens.


## Chrissy DiBella

Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712


welcome to parenthood™
buybuy BABY

---

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Tuesday, January 10, 2023 12:34 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Cc:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.


CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Chrissy,

Can you please provide an update on the outstanding $2m payment?  There is another $1m that comes due at the end of next week bumping the total to $3m.

Possible to let me know by EOD?

Thanks,
Josh


Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------
From: Josh Pahl <Josh.Pahl@artsana.com>
Date: 1/9/23 10:57 AM (GMT-05:00)
To: Christina Dibella <Christina.DiBella@buybuybaby.com>
Cc: Heather Hatfield <Heather.Hatfield@buybuybaby.com>, Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
Subject: RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

Chrissy,

There is a total of $5.2m open for direct import and **$2.0m** is now past due.  Can you advise when we will receive the past due payment of $2.0M?

---

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Monday, January 9, 2023 10:04 AM
**To:** Josh Pahl <Josh.Pahl@artsana.com>
**Cc:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Josh can you shed some light here?  How much are you showing as past due?

## Chrissy DiBella

Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

---

**From:** Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>
**Sent:** Monday, January 9, 2023 10:02 AM
**To:** Rita.Shippee@us.yusen-logistics.com>; Christina Dibella <Christina.DiBella@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

@Lindsey Marden@Christina Dibella@Heather Hatfield@Erika Christiansen Yusen informed us that Artsana is holding PO's due to payment issues.  Are we on hold for overdue payments or negotiating new payment terms?  Can you please find our their lead time for shipping once payments are resolved.  Thank you.

---

**From:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>
**Sent:** Monday, January 9, 2023 8:57 AM
**To:** Paul Pastor <Paul.Pastor@bedbath.com>; Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>; Gregory Cooke <Gregory.Cooke@bedbath.com>; Timothy Stroever <Timothy.Stroever@bedbath.com>
**Cc:** Ian Pinchuk <Ian.Pinchuk@bedbath.com>; Laurie Staugaitis <laurie.staugaitis@us.yusen-logistics.com>; Seweryn Soban <seweryn.soban@bedbath.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hi Paul,

Noted.

*Best regards*

*Rita*

Rita Shippee  I  Client Management Specialist  I  Client Management & Operations  I  Order Management  I  Supply Chain Solutions

**Yusen Logistics (Americas) Inc.**  I  300 Lighting Way, 6th Floor  I  Secaucus, NJ 07094

C: 774.281.5043  I  E: Rita.Shippee@us.Yusen-Logistics.com  I  W: www.yusen-logistics.com



---

**From:** Paul Pastor <Paul.Pastor@bedbath.com>
**Sent:** Monday, January 9, 2023 8:55 AM
**To:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>; Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>; Gregory Cooke <Gregory.Cooke@bedbath.com>; Timothy Stroever <Timothy.Stroever@bedbath.com>
**Cc:** Ian Pinchuk <Ian.Pinchuk@bedbath.com>; Laurie Staugaitis <laurie.staugaitis@us.yusen-logistics.com>; Seweryn Soban <seweryn.soban@bedbath.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

Rita if there are charges we should try to push back on vendor.  Thanks

---

**From:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>
**Sent:** Monday, January 9, 2023 8:54 AM
**To:** Paul Pastor <Paul.Pastor@bedbath.com>; Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>; Gregory Cooke <Gregory.Cooke@bedbath.com>; Timothy Stroever <Timothy.Stroever@bedbath.com>
**Cc:** Ian Pinchuk <Ian.Pinchuk@bedbath.com>; Laurie Staugaitis <laurie.staugaitis@us.yusen-logistics.com>; Seweryn Soban <seweryn.soban@bedbath.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hi Paul,

It was not mentioned, but I'll check and let you know.

Thanks.

*Best regards,*

*Rita*

Rita Shippee  I  Client Management Specialist  I  Client Management & Operations  I  Order Management  I  Supply Chain Solutions

**Yusen Logistics (Americas) Inc.**  I  300 Lighting Way, 6th Floor  I  Secaucus, NJ 07094

C: 774.281.5043  I  E: Rita.Shippee@us.Yusen-Logistics.com  I  W: www.yusen-logistics.com



**From:** Paul Pastor <Paul.Pastor@bedbath.com>
**Sent:** Monday, January 9, 2023 8:49 AM
**To:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>; Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>; Gregory Cooke <Gregory.Cooke@bedbath.com>; Timothy Stroever <Timothy.Stroever@bedbath.com>
**Cc:** Ian Pinchuk <Ian.Pinchuk@bedbath.com>; Laurie Staugaitis <laurie.staugaitis@us.yusen-logistics.com>; Seweryn Soban <seweryn.soban@bedbath.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

Thanks Rita, 3 of the orders have booking numbers

Any concern with charges from carrier?

| VENDOR NAME | P.O. # | PO STATUS | PORT OF LADING | PORT OF DISCHARGE | DC | |
|---|---|---|---|---|---|---|
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RQ | Planned to Ship | YANTIAN | LOS ANGELES, CA | 3601 IMPORTS/SOUTHWEST | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RT | Planned to Ship | YANTIAN | LOS ANGELES, CA | 3601 IMPORTS/SOUTHWEST | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RM | Planned to Ship | YANTIAN | LOS ANGELES, CA | 3601 IMPORTS/SOUTHWEST | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RS | Planned to Ship | YANTIAN | NEWARK, NJ | 1590 NE IMPORT TRANSLOAD VIRT | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RU | Planned to Ship | YANTIAN | SAVANNAH, GA | 3666 IMPORTS/SOUTHEAST | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RP | Planned to Ship | YANTIAN | NEWARK, NJ | 1590 NE IMPORT TRANSLOAD VIRT | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RR | Planned to Ship | YANTIAN | SAVANNAH, GA | 3666 IMPORTS/SOUTHEAST | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RY | Planned to Ship | YANTIAN | NEWARK, NJ | 1590 NE IMPORT TRANSLOAD VIRT | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RZ | Planned to Ship | YANTIAN | LOS ANGELES, CA | 3601 IMPORTS/SOUTHWEST | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2SA | Planned to Ship | YANTIAN | SAVANNAH, GA | 3666 IMPORTS/SOUTHEAST | |

**From:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>
**Sent:** Monday, January 9, 2023 8:00 AM
**To:** Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>; Gregory Cooke <Gregory.Cooke@bedbath.com>; Timothy Stroever <Timothy.Stroever@bedbath.com>; Paul Pastor <Paul.Pastor@bedbath.com>
**Cc:** Ian Pinchuk <Ian.Pinchuk@bedbath.com>; Laurie Staugaitis <laurie.staugaitis@us.yusen-logistics.com>; Seweryn Soban <seweryn.soban@bedbath.com>
**Subject:** BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Good morning,

The vendor is holding the below po's due to payment issues.

Please keep us posted with any updates on these po's.

Thank you.

| VENDOR NAME | P.O. # | BUYER NAME | DEP |
|-------------|--------|------------|-----|
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RM | CHRISTINA DIBELLA | 88 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RT | CHRISTINA DIBELLA | 88 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RQ | CHRISTINA DIBELLA | 88 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RY | CHRISTINA DIBELLA | 88 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RZ | CHRISTINA DIBELLA | 88 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2SA | CHRISTINA DIBELLA | 88 |

| VENDOR NAME | P.O. # | PORT OF LADING | PORT DISCH |
|-------------|--------|----------------|-------------|
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RS | YANTIAN | NEWA |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RU | YANTIAN | SAVA |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RP | YANTIAN | NEWA |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RR | YANTIAN | SAVA |



Best regards,
Rita

Rita Shippee  I  Client Management Specialist  I  Client Management & Operations  I  Order Management  I  Supply Chain Solutions
**Yusen Logistics (Americas) Inc.**  I  300 Lighting Way, 6th Floor  I  Secaucus, NJ 07094
C: 774.281.5043  I  E: Rita.Shippee@us.Yusen-Logistics.com  I  W:  www.yusen-logistics.com



*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or*

*email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

**EXHIBIT 3**

Laura Crossen
9/8/2025

**Falk, Turner N.**

| | |
|---|---|
| **From:** | Josh Pahl <Josh.Pahl@artsana.com> |
| **Sent:** | Monday, February 27, 2023 2:13 PM |
| **To:** | Chrissy Dibella; 'Nora.Shoots@buybuybaby.com'; 'Heather Hatfield' |
| **Cc:** | Steve McLaughlin |
| **Subject:** | RE: Chicco Buy |
| **Attachments:** | BBB DED 1.PDF; BBB DED 2.PDF; BBB DED 3.PDF; BBB DED 4.PDF |

Hi Chrissy,

Thank you for the heads up and confirming we did see payment in the system this morning. A few things I would like to align on moving forward.

1. We contacted BBB routing for the orders we received, and they said they will not be routing until Thursday/Friday of this week. Giving you a heads up as this means the product will not ship until mid/late next week based on history. Not sure if there is anything we can do to have the BBB team accept routing early this week?

2. Attached/below are the deductions we received for 2022 program against the old invoices that were paid.

| | | |
|---|---|---|
| ADR534789 | 01/12/2023 | -$4,600.48 |
| ADR534790 | 01/12/2023 | -$2,542.38 |
| FRT534639 | 01/11/2023 | -$52,838.13 |
| FRT534753 | 01/12/2023 | -$26,540.78 |
| REB534166 | 01/11/2023 | -$95,241.03 |
| REB534417 | 01/11/2023 | -$34,403.02 |
| SMD534091 | 01/11/2023 | -$18,720.17 |
| SMD534390 | 01/11/2023 | -$10,345.41 |

  - **Can you please confirm that moving forward, no additional deductions for program (Mkt, Supply Chain, Growth, Defective) will be taken. It is my understanding that the only deduction that would be taken is the 5.75% freight allowance.**
  - **Can you also please confirm that the freight deduction will be taken on a quarterly basis?**

3. Order Candence – Are you able to share your order cadence for Chicco? My plan is to put together a working document and send to you weekly with order recco's based on BBB current inventory, Chicco stock availability & ROS. We will plan to use the last document you sent over as the base spreadsheet to keep it consistent.

4. Lastly, the below 4 items were ordered. The 3 highlighted in yellow are discontinued, and the FastLock 360 is unfortunately OOS for 2-3 months. How do you want to handle this? Would you like to order more of other existing items to use the $68,108.72 for this rd of orders or should we apply a credit to your account for the $68,108.72 for future orders?

| | | |
|---|---|---|
| 05079666080070 | QUICKSEAT HOOK ON CHAIR POETIC USA | $ 6,749.26 |
| 05079771410070 | FIT2 REAR-FACING B.CAR SEAT FLEUR USA | $ 8,284.85 |
| 06079014750070 | KIDFIT BELT P.BOOSTER SEAT GRAVITY USA | $ 2,463.65 |
| 06079852070070 | NEXTFIT ZIP BABY CAR SEAT GEO USA | $ 19,737.60 |

| 00079676940070 | FASTLOCK 360 HOOK ON CHAIR CHARCOAL USA | $ 30,873.36 |
| Total | | $ 68,108.72 |

Please let me know on the above as soon as you can!

Thanks Chrissy!
Josh

---

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Monday, February 27, 2023 9:03 AM
**To:** Josh Pahl <Josh.Pahl@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Cc:** Nora Shoots <Nora.Shoots@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Subject:** RE: Chicco Buy

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

ACH payment, you should see this by today . . .



# Payment: 823031 ⑦

| | |
|---|---|
| Payee | ARTSANA USA INC |
| Payment Date | 2/27/23 |
| Status | Negotiable |
| Accounting Status | Unaccounted |
| Reconciled | No |
| Type | Payment Process Request |

**Payment Details**  Paid Invoices  History  Conversion  Other

**Payee**

| | |
|---|---|
| Current Name | |
| Payee Site | ⌐018595 |
| Remit-to Address | ⌐1826 WILLIAM PENN WAY, LANCASTER, LancasterPA 17601 |
| Payment Function | Payables disbursements |

**Processing Details**

| | |
|---|---|
| Disbursement Bank Account | BBB CONTROLLED DISB TRADE 27509 |
| Payment Method | Electronic |
| Bill Payable | No |
| Payment Process Profile | JPMC PPP JPMC ACCOUNT |

**General Information**

| | |
|---|---|
| Payment Description | |
| Reference Number | 74259 |

## Chrissy DiBella

Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

**From:** Christina Dibella
**Sent:** Tuesday, February 21, 2023 2:30 PM

**To:** Josh Pahl <Josh.Pahl@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Cc:** Nora Shoots <Nora.Shoots@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Subject:** RE: Chicco Buy

@Steve McLaughlin attached is the list that we discussed

## Chrissy DiBella
Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

---

**From:** Christina Dibella
**Sent:** Tuesday, February 21, 2023 12:21 PM
**To:** Josh Pahl <Josh.Pahl@artsana.com>
**Cc:** Nora Shoots <Nora.Shoots@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Subject:** RE: Chicco Buy

Thanks, we need confirmation today to pay on Thursday and ship next week

No pressure 😊

## Chrissy DiBella
Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

---

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Tuesday, February 21, 2023 11:06 AM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Cc:** Nora Shoots <Nora.Shoots@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Subject:** Re: Chicco Buy

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hi Chrissy,

Sorry for delay. We are working through it and should definitely have feedback a little later today.

Thanks,
Josh

Sent from my iPhone

On Feb 21, 2023, at 9:38 AM, Christina Dibella <Christina.DiBella@buybuybaby.com> wrote:

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Hey Josh, just a reminder that we'd like to get your feedback here ASAP so we can get back to ordering. Thanks,

Chrissy DiBella
Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

---

**From:** Nora Shoots <Nora.Shoots@buybuybaby.com>
**Sent:** Friday, February 17, 2023 2:15 PM
**To:** Josh.Pahl@artsana.com
**Cc:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Subject:** RE: Call Follow Up - Chicco

Hi Josh

Here is the sku list for feeding:

|  |  |  |  | Unit Total | Retail Total | Cost To |
|---|---|---|---|---|---|---|
| 68776879 | 68776879 (CUP SILI SPT TRNS GRL 7OZ CHCO) | 872 | 438 | $ 3,062 | $ 1,621 |
| 68776886 | 68776886 (CUP SILI SPT TRNS BOY 7OZ CHCO) | 872 | 384 | $ 2,684 | $ 1,421 |
| 68776893 | 68776893 (CUP SPOUT TRNR GRL 7Z2P CHCCO) | 872 | 207 | $ 2,068 | $ 1,139 |
| 69936827 | 69936827 (CUP SPT TRNS SIPY 7Z GRN CHCCO) | 872 | 204 | $ 1,426 | $ 785 |
| 69936829 | 69936829 (CUP SPT TRNS SIPY 7Z PNK CHCCO) | 872 | 126 | $ 881 | $ 485 |
| 69936828 | 69936828 (CUP SPT TRNS SIPY 7Z BLU CHCCO) | 872 | 114 | $ 797 | $ 439 |
| 69688846 | 69688846 (NIPPLE DUO FAST 2PK CHICCO) | 872 | 468 | $ 2,803 | $ 1,498 |
| 69688847 | 69688847 (NIPPLE DUO MED 2PK CHICCO) | 872 | 612 | $ 3,666 | $ 1,958 |
| 69688848 | 69688848 (BOTTLE DUO 9OZ 2PK CHICCO) | 872 | 200 | $ 3,998 | $ 2,160 |
| 69688849 | 69688849 (BOTTLE DUO 9OZ CHICCO) | 872 | 16 | $ 208 | $ 108 |
| 69688850 | 69688850 (BOTTLE DUO 5OZ 2PK PINK CHICCO) | 872 | 16 | $ 320 | $ 173 |
| 69688851 | 69688851 (NIPPLE DUO SLOW 2PK CHICCO) | 872 | 6 | $ 36 | $ 19 |
| 69688852 | 69688852 (BOTTLE DUO 9OZ 2PK PINK CHICCO) | 872 | 36 | $ 720 | $ 389 |
| 69688853 | 69688853 (BOTTLE DUO 5OZ 2PK CHICCO) | 872 | 52 | $ 1,039 | $ 562 |
| 69688854 | 69688854 (BOTTLE DUO 5OZ CHICCO) | 872 | 20 | $ 260 | $ 135 |
| 69689322 | 69689322 (GIFTSET DUO NEWBORN PNK CHICCO) | 872 | 6 | $ 300 | $ 163 |
| 69689323 | 69689323 (GIFTSET DUO NEWBORN CHICCO) | 872 | 114 | $ 5,699 | $ 3,104 |
| 69689324 | 69689324 (GIFTSET DUO DELUXE CHICCO) | 872 | 240 | $ 16,798 | $ 9,305 |
| 42391432 | 42391432 (PACI SIL CLR 0-6M 2PK CHICCO) | 872 | 228 | $ 1,366 | $ 695 |
| 69627168 | 69627168 (PACI SIL MINI PNK 0-2M 2P CHCO) | 872 | 204 | $ 1,426 | $ 738 |
| 69627169 | 69627169 (PACI SIL MINI CLR 0-2M 2P CHCO) | 872 | 150 | $ 1,049 | $ 543 |

Thanks!

Kind regards,

## nora shoots

Director, Category Management – Feeding, Safety, Baby Wellness, Consumables & Gift
nora.shoots@buybuybaby.com
650 Liberty Avenue
Union, NJ 07083
t: 908-855-2710

https://partners.bedbath.com/web/public

welcome to parenthood™
buybuy BABY

---

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Friday, February 17, 2023 2:00 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>; Nora Shoots
<Nora.Shoots@buybuybaby.com>
**Subject:** RE: Call Follow Up - Chicco

CAUTION: This email originated from outside your organization. Exercise caution when
opening attachments or clicking links, especially from unknown senders.

Hi,

Ok, thanks for sending. We will look at it and provide feedback.

Thanks!
Josh

---

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Friday, February 17, 2023 1:56 PM
**To:** Josh Pahl <Josh.Pahl@artsana.com>; Nora Shoots <Nora.Shoots@buybuybaby.com>
**Subject:** RE: Call Follow Up - Chicco

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links
or attachments

Hey Josh,

Here is the list for Gear of top selling skus that the planning team pulled for the first round of orders.
Please review the list and let me know if you are in agreement. We should be pulling off any items that
are going away in the near future and adding any new items that may be either available to ship or just
not hitting the top sellers because we haven't owned them.

Let me know if this makes sense or if you'd like to set up a call to review.

Thanks,

**Chrissy DiBella**
Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

---

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Friday, February 17, 2023 1:50 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>; Nora Shoots
<Nora.Shoots@buybuybaby.com>
**Subject:** Call Follow Up - Chicco

CAUTION: This email originated from outside your organization. Exercise caution when
opening attachments or clicking links, especially from unknown senders.

Hi Chrissy/Nora,

It was great seeing you guys on the call today 😊

Our office is closed on Monday for Presidents day, and we are having a call with our team on Tuesday,
2/21 regarding the initial buy plan. My plan is to have order recommendations over to you by item on
Wednesday. We can also hop on a call or come to your office to work through any questions if needed. I
will also include Heather on the buy plan.

Does that work for you guys?

Have a great weekend!
Josh

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

**EXHIBIT**
7
Laura Crossen
9/8/2025

## Falk, Turner N.

| | |
|---|---|
| **From:** | Amanda Plasterer <Amanda.Plasterer@artsana.com> |
| **Sent:** | Monday, November 14, 2022 9:08 AM |
| **To:** | Brian Cashman; Steve McLaughlin |
| **Cc:** | Josh Pahl; Steve Rubin; Greg Obetz |
| **Subject:** | RE: Buy Buy Baby Aging |

Hello Brian,

Following up from below.

Our current past due for domestic is $228,096. For Import, it is $627,492. Can you tell us when next payments will be going out?

Thank you,

**Amanda Plasterer**
Staff Accountant
Chicco USA │ Artsana USA
1826 William Penn Way │ Lancaster, PA 17601
p 717-517-5823 │ f 717-735-0888 │ chiccousa.com

---

**From:** Amanda Plasterer
**Sent:** Thursday, November 10, 2022 10:28 AM
**To:** Brian Cashman ; Steve McLaughlin
**Cc:** Josh Pahl ; Steve Rubin ; Greg Obetz
**Subject:** RE: Buy Buy Baby Aging

Good Morning Brian,

We see there was a payment posted in the portal today for $358K. With that payment factored in, the current past due balance for domestic is $100,682. For import, the past due balance is $180,010.

Thank you,

**Amanda Plasterer**
Staff Accountant
Chicco USA │ Artsana USA
1826 William Penn Way │ Lancaster, PA 17601
p 717-517-5823 │ f 717-735-0888 │ chiccousa.com

---

**From:** Brian Cashman <bcashman@thinkbrg.com>
**Sent:** Monday, October 31, 2022 1:28 PM
**To:** Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Cc:** Josh Pahl <Josh.Pahl@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Amanda Plasterer <Amanda.Plasterer@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>
**Subject:** Re: Buy Buy Baby Aging

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Steve,

A payment of $761k was issued this morning. I can get you the exact amount in a bit but wanted to pass this along. Is this the payment amount you were expecting to avoid any delay in shipping?

Brian

---

**From:** Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Sent:** Monday, October 31, 2022 9:16:43 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>
**Cc:** Josh Pahl <Josh.Pahl@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Amanda Plasterer <Amanda.Plasterer@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>
**Subject:** [EXT] RE: Buy Buy Baby Aging


Good morning, Brian. Following up on below – we have payables over a month behind and we will be evaluating releasing shipments this week.

Thanks for your reply.
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA ｜ Artsana USA

1826 William Penn Way ｜ Lancaster, PA 17601

p 717-735-6200 ｜ f 717-735-0888 ｜ chiccousa.com



---

**From:** Steve McLaughlin
**Sent:** Friday, October 28, 2022 9:47 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>
**Cc:** Josh Pahl <Josh.Pahl@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Amanda Plasterer <Amanda.Plasterer@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>
**Subject:** Buy Buy Baby Aging

Good morning, Brian.

I wanted to check in on status of aging payables. See below and attached from Amanda in our finance dept. We typically see payments on Friday, and nothing is showing in portal.

Please advise.

Thanks
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA │ Artsana USA

1826 William Penn Way │ Lancaster, PA 17601

p 717-735-6200 │ f 717-735-0888 │ chiccousa.com



---

**From:** Amanda Plasterer <Amanda.Plasterer@artsana.com>
**Sent:** Friday, October 28, 2022 8:12 AM
**To:** Steve McLaughlin <Steve.McLaughlin@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>
**Subject:** RE: Buy Buy Baby Aging

I just checked the Buy Buy portal, there are no payments showing (typically you can see payments on Friday's).

Here is the updated aging. There is $670K due now for domestic.

Also, caben is asking about $638K they are seeing in Nexus but isn't released. Both agings are in the attached file.

Thank you,

**Amanda Plasterer**
Staff Accountant
Chicco USA │ Artsana USA
1826 William Penn Way │ Lancaster, PA 17601
p 717-517-5823 │ f 717-735-0888 │ chiccousa.com

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

---

BERKELEY RESEARCH GROUP, LLC (TOGETHER WITH ITS AFFILIATES, "BRG") - NOTICE
THIS EMAIL TRANSMISSION AND ANY ATTACHMENTS HERETO CONTAIN INFORMATION FROM BRG WHICH MAY BE CONFIDENTIAL AND PRIVILEGED. THE INFORMATION IS INTENDED FOR THE SOLE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOUR USE, DISSEMINATION, FORWARDING, PRINTING OR COPYING OF THIS INFORMATION IS PROHIBITED.


TAX ADVICE DISCLOSURE
ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (I) AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OR (II) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

BRG IS (I) NOT A LAW FIRM AND DOES NOT PROVIDE LEGAL ADVICE AND (II) NOT A CPA FIRM AND DOES NOT PROVIDE AUDIT, ATTEST OR PUBLIC ACCOUNTING
SERVICES.

**EXHIBIT**
5
Laura Crossen
9/8/2025

## Falk, Turner N.

| | |
|---|---|
| **From:** | Steve McLaughlin <IMCEAEX-_o=ExchangeLabs_ou=Exchange+20Administrative+ 20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn= 58e11f0bd91a4de68b884de3ea85b487-Steve+ 20McLau@EURP251.PROD.OUTLOOK.COM> |
| **Sent:** | Wednesday, January 4, 2023 11:10 AM |
| **To:** | Chad Taylor |
| **Cc:** | Josh Pahl |
| **Subject:** | FW: Buy Buy Aging |

Chad – Happy New Year. Can you please assist in pushing the finance team on communication. Our team has seemed to have lost contact with BRG team and our HQ is pressuring stop ship.

Many Thanks for any assistance – trail below for your review.

Thanks,
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA │ Artsana USA

1826 William Penn Way │ Lancaster, PA 17601

p 717-735-6200 │ f 717-735-0888 │ chiccousa.com



---

**From:** Amanda Plasterer
**Sent:** Tuesday, January 3, 2023 11:49 AM
**To:** Greg Obetz ; Brian Cashman ; John Dery
**Cc:** Steve Rubin ; Steve McLaughlin ; Josh Pahl
**Subject:** RE: Buy Buy Aging

Hello John and Brian,

As of today, total due for Domestic is $287,903. Total due for Import is $750,041.

Thank you,

**Amanda Plasterer**
Staff Accountant
Chicco USA │ Artsana USA
1826 William Penn Way │ Lancaster, PA 17601
p 717-517-5823 │ f 717-735-0888 │ chiccousa.com

**From:** Greg Obetz <Greg.Obetz@artsana.com>
**Sent:** Tuesday, January 3, 2023 10:45 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>; John Dery <john.dery@bedbath.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** RE: Buy Buy Aging

Hi John and Brian,

Please give me an update. We have not been paid in over two weeks. When will we (both Artsana USA and Caben) receive our next payment?

Regards,

Greg

**Greg Obetz**
Controller

---

Chicco USA  |  Artsana USA

1826 William Penn Way  |  Lancaster, PA 17601

p 717-735-6200  |  f 717-735-0888  |  chiccousa.com





The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

---

**From:** Greg Obetz
**Sent:** Wednesday, December 28, 2022 9:24 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>; John Dery <john.dery@bedbath.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** RE: Buy Buy Aging

Hi John,

Please see below. Can you give me any update on a payment to Artsana USA or Caben Asia Pacific?

Regards,

Greg

---

**From:** Brian Cashman <bcashman@thinkbrg.com>
**Sent:** Wednesday, December 28, 2022 9:22 AM
**To:** Greg Obetz <Greg.Obetz@artsana.com>; John Dery <john.dery@bedbath.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** Re: Buy Buy Aging

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Greg,

Please work with John Dery going forward on status of payments. Thank you.

---

**From:** Greg Obetz <Greg.Obetz@artsana.com>
**Sent:** Wednesday, December 28, 2022 8:56:15 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** [EXT] RE: Buy Buy Aging

Dear Brian,

Do you have any update on this? We still not received a payment from Buy Buy Baby since the previous email.

Also, our sister company Caben Asia Pacific is asking about payment as well. Do you have any update on a payment to us (Artsana USA) or Caben?

Thanks,
Greg

**Greg Obetz**

_____ Controller

Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com

3





The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

**From:** Greg Obetz
**Sent:** Monday, December 19, 2022 9:00 AM
**To:** bcashman@thinkbrg.com
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** FW: Buy Buy Agingq

Dear Brian,

We have over $200k that is now past due from Buy Buy Baby. Can you please tell us if there is a payment coming soon to pay for these past due invoices?

Regards,
Greg

**Greg Obetz**
_____Controller

Chicco USA │ Artsana USA
1826 William Penn Way │ Lancaster, PA 17601
p 717-735-6200 │ f 717-735-0888 │ chiccousa.com





The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

**From:** Amanda Plasterer <Amanda.Plasterer@artsana.com>
**Sent:** Monday, December 19, 2022 8:55 AM
**To:** Steve McLaughlin <Steve.McLaughlin@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>
**Subject:** Buy Buy Agingq

**Amanda Plasterer**
Staff Accountant

Chicco USA │ Artsana USA
1826 William Penn Way │ Lancaster, PA 17601
p 717-517-5823 │ f 717-735-0888 │ chiccousa.com





The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

**BERKELEY RESEARCH GROUP, LLC (TOGETHER WITH ITS AFFILIATES, "BRG") - NOTICE**
THIS EMAIL TRANSMISSION AND ANY ATTACHMENTS HERETO CONTAIN INFORMATION FROM BRG WHICH MAY BE CONFIDENTIAL AND PRIVILEGED. THE INFORMATION IS INTENDED FOR THE SOLE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOUR USE, DISSEMINATION, FORWARDING, PRINTING OR COPYING OF THIS INFORMATION IS PROHIBITED.

**TAX ADVICE DISCLOSURE**
ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (I) AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OR (II) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

BRG IS (I) NOT A LAW FIRM AND DOES NOT PROVIDE LEGAL ADVICE AND (II) NOT A CPA FIRM AND DOES NOT PROVIDE AUDIT, ATTEST OR PUBLIC ACCOUNTING SERVICES.

EXHIBIT
6
Laura Crossen
9/8/2025

**Falk, Turner N.**

| | |
|---|---|
| **From:** | Jane Wang <Jane.Wang@artsana.com> |
| **Sent:** | Sunday, January 8, 2023 11:28 PM |
| **To:** | Steve Rubin; Steve McLaughlin; Pietro Colombo; Patrick Smith; Shirleen He; Tom Gwiazdowski |
| **Cc:** | Yammy Wong; Shandi Wong; Anna Chan; Nicole Wang; Marco Ottolini |
| **Subject:** | RE: DI USA - JAN 2023 BBB Urgent |
| **Attachments:** | BBB urgent - 01 2023 shipments and shifts - 09-01.xlsx |

Dear Steve, dear Pietro,
Attached the updates for BBB orders (sheet 1) :

- Part 1 – those were shipped out, we can't stop in origin port, if needed, could you pls check any possibility to change the consignee to Artsana USA (instead of BBB in the B/L) so Artsana USA could take those containers when arrival in destination port?
- Part 2 – goods are ready in factory, we've cancelled the loading and on-hold, we'll wait for USA team's further instruction what to do in the following,
- Part 3 – BBB blanket orders with goods ready in Apr & Jun, pls adv if to switch to other customers?
- No more outstanding orders for BBB except for above mentioned,

Thank you,
Jane

## Already shipped, can't hold in origin port

| ustom | SC | PO# | ITEM# | Description | SC date | Qty | Ext Value | Up |
|---|---|---|---|---|---|---|---|---|
| BUY BU | 1160137555 | NX5L4DG | 00079632920070 | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 02/01/2023 | 329 | 78.611 | Al |
| BUY BU | 1160138469 | NX5M2RE | 00079632920070 | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 03/01/2023 | 329 | 78.611 | Al |
| BUY BU | 1160138470 | NX5M2RF | 00079632920070 | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 03/01/2023 | 658 | 157.223 | Al |
| BUY BU | 1160138472 | NX5M2RG | 00079632920070 | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 03/01/2023 | 329 | 78.611 | Al |
| BUY BU | 1160138475 | NX5M2RN | 05079563770070 | CORSO LE TRAVEL SYSTEM HAMPTON USA | 10/01/2023 | 279 | 89.389 | Al |
| BUY BU | 1160138487 | NX5M2RL | 05079563770070 | CORSO LE TRAVEL SYSTEM HAMPTON USA | 10/01/2023 | 279 | 89.389 | Al |
| | | | | | Sub total | 2,203 | 571,834 | |

## Already On-hold to ship, goods ready in factory and waitng for USA team to adv what to do

| ustom | SC | PO# | ITEM# | Description | SC date | Qty | Ext Value | Up |
|---|---|---|---|---|---|---|---|---|
| BUY BU | 1160138474 | NX5M2RM | 05079563770070 | CORSO LE TRAVEL SYSTEM HAMPTON USA | 10/01/2023 | 558 | 178.778 | Or |
| BUY BU | 1160138463 | NX5M2RP | 04079682330070 | BRAVO PRIMO TRIO T.SYSTEM SPRINGHILL US | 17/01/2023 | 279 | 94.637 | Or |
| BUY BU | 1160138465 | NX5M2RQ | 04079682330070 | BRAVO PRIMO TRIO T.SYSTEM SPRINGHILL US | 17/01/2023 | 558 | 189.274 | Or |
| BUY BU | 1160138467 | NX5M2RR | 04079682330070 | BRAVO PRIMO TRIO T.SYSTEM SPRINGHILL US | 17/01/2023 | 279 | 94.637 | Or |
| BUY BU | 1160138478 | NX5M2RS | 06079625780070 | KEYFIT 35 BABY CAR SEAT ELEMENT USA | 18/01/2023 | 448 | 63.737 | Or |
| BUY BU | 1160138479 | NX5M2RT | 06079625780070 | KEYFIT 35 BABY CAR SEAT ELEMENT USA | 18/01/2023 | 896 | 127.474 | Or |
| BUY BU | 1160138480 | NX5M2RU | 06079625780070 | KEYFIT 35 BABY CAR SEAT ELEMENT USA | 18/01/2023 | 448 | 63.737 | Or |
| BUY BU | 1160138468 | NX5M2RY | 00079632920070 | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 24/01/2023 | 329 | 78.611 | Or |
| BUY BU | 1160138471 | NX5M2RZ | 00079632920070 | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 24/01/2023 | 658 | 157.223 | Or |
| BUY BU | 1160138473 | NX5M2SA | 00079632920070 | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 24/01/2023 | 329 | 78.611 | Or |
| | | | | | Sub total | 4,782 | 1,126,718 | |

## BBB Blanket orders, goods ready date in Apr & Jun, pls adv if on-hold production or not?

| ustom | SC | PO# | ITEM# | Description | Goods rea | Qty | Ext Value | Up |
|---|---|---|---|---|---|---|---|---|
| BUY BU | 502202482 | | 05087002560070 | KEYFIT 30 CLEARTEX B.CAR SEAT PEWTER USA | 01/06/2023 | 575 | | BBI |
| BUY BU | 502206893 | | 07079734270070 | MYFIT CLEARTEX BABY CAR SEAT SHADOW USA | 06/04/2023 | 1.116 | | BBI |
| BUY BU | 502207947 | | 05079560650070 | MYFIT ZIP BABY CAR SEAT GRANITE USA | 06/04/2023 | 1.116 | | BBI |
| BUY BU | 502207947 | | 06079625780070 | KEYFIT 35 BABY CAR SEAT ELEMENT USA | 06/04/2023 | 1.344 | | BBI |
| BUY BU | 502300044 | | 04079682330070 | BRAVO PRIMO TRIO T.SYSTEM SPRINGHILL US | 28/04/2023 | 3.348 | | BBI |
| | | | | | Sub total | 7,499 | | |

**From:** Steve Rubin
**Sent:** 07 January 2023 22:59
**To:** Jane Wang ; Steve McLaughlin ; Pietro Colombo ; Patrick Smith ; Shirleen He ; Tom Gwiazdowski
**Cc:** Yammy Wong ; Shandi Wong ; Anna Chan
**Subject:** RE: DI USA - JAN 2023 BBB Urgent

Jane and Caben Team,

Unfortunately we need to ask you to halt/stop shipping all the Buy Buy Baby orders.

Please do whatever you can to hold the remaing shipments.

Until we find out further information about their financial status we will not be shipping.

Please follow up with us to let us know the status of the remaining shipments.

Any question please ask.

Steve Rubin


Sent from my Verizon, Samsung Galaxy smartphone


-------- Original message --------
From: Jane Wang <Jane.Wang@artsana.com>
Date: 1/5/23 5:48 AM (GMT-05:00)
To: Steve Rubin <Steve.Rubin@artsana.com>, Steve McLaughlin <Steve.McLaughlin@artsana.com>, Pietro Colombo <Pietro.Colombo@artsana.com>, Greg Obetz <Greg.Obetz@artsana.com>, Amanda Plasterer <Amanda.Plasterer@artsana.com>, Sandy Storm <Sandy.Storm@artsana.com>, Patrick Smith <patrick.smith@artsana.com>
Cc: Yammy Wong <yammy.wong@artsana.com>, Shandi Wong <Shandi.Wong@artsana.com>, Anna Chan <anna.chan@artsana.com>
Subject: DI USA - JAN 2023

Dear all,
As attached the update for JAN orders FYI, thank you,

| DI USA - V1 JAN 2023 | Sum of Ext Value |
|---|---|
| awaiting the SO from the forwarder | 2,577,349 |
| AMAZON.COM | 626,675 |
| BUY BUY BABY INC | 631,193 |
| EI BRAND MANAGEMENT | 56,143 |
| Target Global Sourci | 973,311 |
| WAL-MART.COM | 290,028 |
| Invoiced in Jan 2023 | 626,900 |
| BUY BUY BABY INC | 393,056 |
| EI BRAND MANAGEMENT | 27,300 |
| Target Global Sourci | 165,559 |
| WAL-MART.COM | 40,986 |
| NO issue to invoice in Jan 2023 | 4,728,961 |
| AMAZON.COM | 2,271,512 |
| BUY BUY BABY INC | 674,303 |
| EI BRAND MANAGEMENT | 48,828 |
| Target Global Sourci | 1,462,210 |
| WAL-MART.COM | 272,109 |
| Grand Total | 7,933,211 |

EXHIBIT
Laura Crossen
9/8/2025

**Falk, Turner N.**

| | |
|---|---|
| **From:** | Steve McLaughlin <IMCEAEX-_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-Steve+20McLau@EURP251.PROD.OUTLOOK.COM> |
| **Sent:** | Friday, February 24, 2023 11:59 AM |
| **To:** | Josh Pahl; Tom Gwiazdowski; Greg Obetz; Steve Rubin |
| **Subject:** | RE: This Week's Order and Payment |

Great, thanks for the update.

**Steve McLaughlin**
Vice President of Sales

Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com



**From:** Josh Pahl
**Sent:** Friday, February 24, 2023 11:59 AM
**To:** Steve McLaughlin ; Tom Gwiazdowski ; Greg Obetz ; Steve Rubin
**Subject:** RE: This Week's Order and Payment

I just heard from Chrissy again and Heather is writing the order today

**From:** Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Sent:** Friday, February 24, 2023 10:57 AM
**To:** Tom Gwiazdowski <Tom.Gwiazdowski@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>
**Cc:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** FW: This Week's Order and Payment

FYI

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Friday, February 24, 2023 10:03 AM
**To:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** This Week's Order and Payment

EXTERNAL EMAIL – Prestare attenzione a eventuali collegamenti o allegati – Be careful with links or attachments

1

| Vendor # | Vendor Name | Payment Type | Cost NEW ORDERS | Repay | Total Cost |
|---|---|---|---|---|---|
| 18595 | ARTSANA USA INC/JUVENILE | ACH | $1,065,040 | $532,520 | $1,597,560 |

**Chrissy DiBella**

Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY



EXHIBIT
8
Laura Crossen
9/8/2025



ORACLE

**Payment: 823031** ⑦

| | | | |
|---|---|---|---|
| Payee | ARTSANA USA INC | Payment Amount | 1,603,440.30 |
| Payment Date | 2/27/23 | | USD |
| Status | Negotiable | Withheld Amount | 0.00 |
| Accounting Status | Unaccounted | | USD |
| Reconciled | No | Business Unit | US BU |
| Type | Payment Process Request | Legal Entity | Bed Bath & Beyond Inc. |
| | | Stop Date | |
| | | Void Date | |
| | | Attachments | None ➕ |

**Payment Details**   Paid Invoices   History   Conversion   Other

**Payee**

| | | | |
|---|---|---|---|
| Current Name | | Remit-to Account | XXXXXXXX2539 |
| Payee Site | ⚑018595 | IBAN | |
| Remit-to Address | ⚑1826 WILLIAM PENN WAY, LANCASTER, LancasterPA 17601 | BIC | |
| Payment Function | Payables disbursements | Remit-to Bank Name | WELLS FARGO BANK |
| | | Remit-to Branch Name | 031000503 |

**Processing Details**

| | | | |
|---|---|---|---|
| Disbursement Bank Account | BBB CONTROLLED DISB TRADE 27509 | Payment Process Request | MERCH BTR 02.27.23 |
| Payment Method | Electronic | Payment Document | JPMC Mixed Payments |
| Bill Payable | No | Payment File Reference | 436023 |
| Payment Process Profile | JPMC PPP JPMC ACCOUNT | Reference Assigned by Administrator | MERCH BTR 02.27.23 |

**General Information**

| | | | |
|---|---|---|---|
| Payment Description | | Context | |
| Reference Number | 74259 | Regional Information | |

EXHIBIT
Laura Crossen
9/8/2025

**Falk, Turner N.**

| | |
|---|---|
| **From:** | Steve McLaughlin <IMCEAEX-_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-Steve+20McLau@EURP251.PROD.OUTLOOK.COM> |
| **Sent:** | Tuesday, January 10, 2023 2:09 PM |
| **To:** | Chad Taylor; Nora.Shoots@buybuybaby.com; christina.dibella@buybuybaby.com |
| **Cc:** | Josh Pahl |
| **Subject:** | Chicco |
| **Attachments:** | BBB AGING 1-10-2023.xlsx |

Good afternoon team,

Considering recent news, we regret to inform you that we will be moving our terms to prepayment effective immediately on invoices dated 1/10/2023 or later. We understand this move is not ideal and can review as more information on the state of the business is released.

I have attached the current aging report prepared by our finance team for your review. Our expectation is that payments will continue as outlined for anything invoiced prior to 1/10/2023 according to our current terms agreement.

We appreciate your partnership as we navigate this challenging time.

Regards,
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA  |  Artsana USA

1826 William Penn Way  |  Lancaster, PA 17601

p 717-735-6200  |  f 717-735-0888  |  chiccousa.com



**EXHIBIT**

**10**

Laura Crossen
9/8/2025

## Falk, Turner N.

| | |
|---|---|
| **From:** | Chad Taylor <chad.taylor@buybuybaby.com> |
| **Sent:** | Wednesday, January 18, 2023 11:37 AM |
| **To:** | Steve McLaughlin; John Dery |
| **Cc:** | Christina Dibella; Josh Pahl; Greg Obetz |
| **Subject:** | RE: Buy Buy Aging |

**EXTERNAL EMAIL** – Prestare attenzione a eventuali collegamenti o allegati – Be careful with links or attachments

Hi Steve

Thank you for reaching out.

We (merchant team), have given the greenlight and prioritized weekly payments for you in both the domestic and DI sides, but can confirm I don't see any payments going out after last Monday to you. I'm reaching out to our AP team on this and am hoping for a payment date confirmation.

-Chad

**From:** Steve McLaughlin
**Sent:** Wednesday, January 18, 2023 9:37 AM
**To:** John Dery ; Chad Taylor
**Cc:** Christina Dibella ; Josh.Pahl@artsana.com; Greg Obetz
**Subject:** Buy Buy Aging

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Good Morning,

Please find attached Artsana aging report. We are currently close to $3M in past due invoices. I know last week this was brought up on your end. Can you please provide an update on payment?

Thanks,
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com



*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

EXHIBIT

Laura Crossen
9/8/2025

**Falk, Turner N.**

| | |
|---|---|
| **From:** | Juan Guerrero <Juan.Guerrero@bedbath.com> |
| **Sent:** | Wednesday, March 15, 2023 12:49 PM |
| **To:** | Joel Bettinger |
| **Subject:** | FW: URGENT - Load status needed |

Is this what you were refereeing to re: Central?  Juan

---

**From:** Patty Wu <patty.wu@bedbath.com>
**Sent:** Wednesday, March 15, 2023 12:15 PM
**To:** Jenny Son <Jenny.Son@buybuybaby.com>; Juan Guerrero <Juan.Guerrero@bedbath.com>; John Yacka <John.Yacka@bedbath.com>
**Cc:** Robert Westbay <Robert.Westbay@buybuybaby.com>; Christina Dibella <Christina.DiBella@buybuybaby.com>; Yenumula, Rahul <ryenumula@alixpartners.com>
**Subject:** RE: URGENT - Load status needed

Juan & John – need to connect ASAP.  Texting you both now…

---

**From:** Jenny Son <Jenny.Son@buybuybaby.com>
**Sent:** Wednesday, March 15, 2023 12:13 PM
**To:** Juan Guerrero <Juan.Guerrero@bedbath.com>; John Yacka <John.Yacka@bedbath.com>
**Cc:** Patty Wu <patty.wu@bedbath.com>; Robert Westbay <Robert.Westbay@buybuybaby.com>; Christina Dibella <Christina.DiBella@buybuybaby.com>; Yenumula, Rahul <ryenumula@alixpartners.com>
**Subject:** URGENT - Load status needed
**Importance:** High

Hello Juan,

Please see below – our supplier partner Artsana (Chicco) has forwarded the response from CT carrier that they have their goods and are holding until they are made current on past due invoices.
They have also started selling off goods – as they refer to this as salvage.  We made payment to Artsana the week of 2/20 for over $1M of new product.
Please advise if CT is in the pipeline to get paid for shipping – also is there any recourse for the goods they are selling off?

Thank you,
Jenny

**jenny son**
Vice President, GMM Category Management
jenny.son@buybuybaby.com
650 Liberty Avenue
Union, NJ 07083
t: 908-557-3115
c: 201-889-1419

**welcome to parenthood™**
**buybuy BABY**



**From:** Steve Rubin <Steve.Rubin@artsana.com>
**Sent:** Wednesday, March 15, 2023 12:03 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Josh.Pahl@artsana.com; John Yacka <John.Yacka@bedbath.com>; Robert Westbay <Robert.Westbay@buybuybaby.com>; Jenny Son <Jenny.Son@buybuybaby.com>
**Subject:** RE: Load status needed

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Ye they need payment.  I just spoke to them and they have had no communications at all.  Also, mentioned we are not the only vendor they have shipments for and had to send other to salvage already.

This is 26 pallets, 6 VDPs worth of merchandise.  As you know we were paid for this merchandise already and your systems routed these with Central.


Thank you,

Steve Rubin

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Wednesday, March 15, 2023 11:55 AM
**To:** Steve Rubin <Steve.Rubin@artsana.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Josh Pahl <Josh.Pahl@artsana.com>; John Yacka <John.Yacka@bedbath.com>; Robert Westbay <Robert.Westbay@buybuybaby.com>; Jenny Son <Jenny.Son@buybuybaby.com>
**Subject:** RE: Load status needed

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Steve, what exactly does Central need, payment?  Can you please clarify so we can elevate?

## Chrissy DiBella
Buyer, Gear & Playroom
Christina.DiBella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™

2

buybuy BABY

---

**From:** Steve Rubin <Steve.Rubin@artsana.com>
**Sent:** Wednesday, March 15, 2023 11:53 AM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Josh.Pahl@artsana.com; John Yacka <John.Yacka@bedbath.com>; Robert Westbay <Robert.Westbay@buybuybaby.com>; Jenny Son <Jenny.Son@buybuybaby.com>
**Subject:** RE: Load status needed

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

FYI latest communication.  Just so everyone is aware when they say salvage, they will sell the merchandise off.  We need a resolution quickly.

There has been no communication for resolution. Freight will prep and route for salvage Friday if the resolution continues to not be supplied.

*Thank you,*

*Rhonda*
Driver Collect Team Lead
P: (586) 939-7000 Ext. 0236
F: 586-819-0837
cs.customerbillingsupport@centraltransport.com



Visit us on  *Facebook* • *Twitter* • *LinkedIn*

**Confidentiality Notice/Disclaimer:** This e-mail message and any attachments accompanying this transmission (the "Communication"), is intended for use only by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient (or the person, employee, or agent responsible for delivering this Communication to the intended recipient), you are hereby notified that disclosure,  distribution, printing, or action taken in reliance on the contents of this Communication is strictly prohibited. If you have received this Communication in error, please immediately **NOTIFY** the sender by reply e-mail or phone and **DELETE** the Communication, including printouts or copies if any.

**From:** Kevin Bardascini <kevin.bardascini@consultant.bedbath.com>
**Sent:** Wednesday, March 15, 2023 11:37 AM
**To:** CS.CustomerBillingSupport <cs.customerbillingsupport@centraltransport.com>; 'Steve Rubin' <Steve.Rubin@artsana.com>; 'Amy Cruz' <Amy.Cruz@artsana.com>; Kim Tomlinson <ktomlinson@centraltransport.com>; Samantha Gurney <sgurney@centraltransport.com>
**Cc:** 'Richard Sweeney' <Richard.Sweeney@artsana.com>; TMSNE <TMSNE@bedbath.com>; Josh.Pahl@artsana.com
**Subject:** [EXTERNAL] RE: **URGENT** 6 shipments - 26 skids - freight on hold - rc

******EXTERNAL email. Always use extra caution when opening attachments or links******

!

Good morning,

All Central issues are being addressed at BBB management level.

**Kevin Bardascini**
Logistics Consultant
Kevin.bardascini@consultant.bedbath.com


Thank you,

Steve Rubin

---

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Wednesday, March 15, 2023 11:31 AM
**To:** Steve Rubin <Steve.Rubin@artsana.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Josh Pahl <Josh.Pahl@artsana.com>; John Yacka <John.Yacka@bedbath.com>; Robert Westbay <Robert.Westbay@buybuybaby.com>; Jenny Son <Jenny.Son@buybuybaby.com>
**Subject:** RE: Load status needed

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

@Jenny Son for visibility

## Chrissy DiBella
Buyer, Gear & Playroom
Christina.DiBella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

---

**From:** Steve Rubin <Steve.Rubin@artsana.com>
**Sent:** Wednesday, March 15, 2023 11:18 AM
**To:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Christina Dibella <Christina.DiBella@buybuybaby.com>; Josh.Pahl@artsana.com; John Yacka <John.Yacka@bedbath.com>; Robert Westbay <Robert.Westbay@buybuybaby.com>
**Subject:** RE: Load status needed


CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

BBB team please see latest note.  Nothing has been done yet.

Please advise.

Steve

4

**From:** CS.CustomerBillingSupport cs.customerbillingsupport@centraltransport.com
**Sent:** Wednesday, March 15, 2023 11:15 AM
**To:** 'Kevin Bardascini' kevin.bardascini@consultant.bedbath.com; Steve Rubin Steve.Rubin@artsana.com; Amy Cruz
Amy.Cruz@artsana.com; Kim Tomlinson ktomlinson@centraltransport.com; Samantha Gurney
sgurney@centraltransport.com
**Cc:** Richard Sweeney Richard.Sweeney@artsana.com; 'TMSNE' TMSNE@bedbath.com; Josh Pahl Josh.Pahl@artsana.com
**Subject:** RE: **URGENT** 6 shipments - 26 skids - freight on hold - rc

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or
attachments

Good Morning,
         Please advise if there has been any movement in resolution from Artsana? Freight is prepping for salvage on
Friday 3/17/2023


Thank you,

Steve Rubin

---

**From:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Sent:** Tuesday, March 14, 2023 3:01 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>; Josh Pahl <Josh.Pahl@artsana.com>; John Yacka
<John.Yacka@bedbath.com>; Robert Westbay <Robert.Westbay@buybuybaby.com>
**Cc:** Steve Rubin <Steve.Rubin@artsana.com>
**Subject:** RE: Load status needed

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or
attachments

+@Robert too

Thank you!

Heather Hatfield
Demand & Inventory Planner | Gear & Feeding
heather.hatfield@buybuybaby.com
t: 908.855.2219
welcome to parenthood™
buybuy BABY

---

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Tuesday, March 14, 2023 2:43 PM
**To:** Josh.Pahl@artsana.com; John Yacka <John.Yacka@bedbath.com>
**Cc:** Steve Rubin <Steve.Rubin@artsana.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Subject:** RE: Load status needed

@John Yacka

Chrissy DiBella
Buyer, Gear & Playroom
Christina.DiBella@buybuybaby.com
t: 908.855.2712

5

welcome to parenthood™
buybuy BABY

---

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Tuesday, March 14, 2023 2:42 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Cc:** Steve Rubin <Steve.Rubin@artsana.com>
**Subject:** FW: Load status needed


CAUTION: This email originated from outside your organization. Exercise caution when opening
attachments or clicking links, especially from unknown senders.


Hi Chrissy/Heather,

I wanted to make you aware of an urgent situation on the most recent shipments.  Our ops team is working with Kevin
Bardascini on the below shipments, but it seems to be taking longer than it should and we just got notice from the
freight company that if it doesn't leave their facility by Friday they will sell it off.

Are you guys able to reach out to Kevin and make him aware?

Please let me know.

Thanks,
Josh

---

**From:** Steve Rubin <Steve.Rubin@artsana.com>
**Sent:** Tuesday, March 14, 2023 2:35 PM
**To:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** FW: Load status needed



Thank you,

Steve Rubin

---

**From:** Kevin Bardascini <kevin.bardascini@consultant.bedbath.com>
**Sent:** Monday, March 13, 2023 8:32 AM
**To:** Steve Rubin <Steve.Rubin@artsana.com>; Amy Cruz <Amy.Cruz@artsana.com>; Cynthia Pineda
<Cynthia.Pineda@artsana.com>
**Cc:** Richard Sweeney <Richard.Sweeney@artsana.com>; TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Load status needed

EXTERNAL EMAIL - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or
attachments

Good morning Steve,
We are working with Central to get the freight to the cosignees as soon as possible.

*Kevin Bardascini*

Logistics Consultant
Kevin.bardascini@consultant.bedbath.com

---

**From:** Steve Rubin <Steve.Rubin@artsana.com>
**Sent:** Monday, March 13, 2023 7:29 AM
**To:** Amy Cruz <Amy.Cruz@artsana.com>; Kevin Bardascini <kevin.bardascini@consultant.bedbath.com>; Cynthia Pineda <Cynthia.Pineda@artsana.com>
**Cc:** Richard Sweeney <Richard.Sweeney@artsana.com>; TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Load status needed

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Kevin and BBB team,

Please advise how you want to handle?

Thank you,

Steve Rubin

---

**From:** Steve Rubin
**Sent:** Friday, March 10, 2023 4:30 PM
**To:** Amy Cruz <Amy.Cruz@artsana.com>; Kevin Bardascini <kevin.bardascini@consultant.bedbath.com>; Cynthia Pineda <Cynthia.Pineda@artsana.com>
**Cc:** Richard Sweeney <Richard.Sweeney@artsana.com>; TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Load status needed

Kevin,

BBB routed the freight with central.  How are we supposed to know?

Please advise how you are going to handle.  We are not going to be responsible for the central freight and they are holding it now.

| | | | | | | |
|---|---|---|---|---|---|---|
| Pool ID: 2690 | | | | | | |
| | MVDP7120542 | SPR Westfield, … | 1130005317 | 03/02/2023 10:31 AM | 1617.0 | 310.0 |
| Pool ID: 2693 | | | | | | |
| | MVDP7120552 | FRA Frackville, … | 1130005307 | 03/03/2023 12:00 AM | 3361.0 | 724.0 |
| Pool ID: 2694 | | | | | | |
| | MVDP7120549 | LIS Old Bethpa… | 1130005310 | 03/03/2023 12:00 AM | 1655.0 | 344.0 |
| Pool ID: 2659 | | | | | | |

| | | | MVDP7120558 | BAL Odenton, ... | 1130005301 | 03/06/2023 12:00 AM | 1824.0 | 321.0 |

**Pool ID: 2668**

**Pool ID: 2625**

| | | | MVDP7120557 | CHI Carol Strea... | 1130005302 | 03/06/2023 12:00 AM | 1330.0 | 288.0 |

**Pool ID: 2647**

| | | | MVDP7120553 | DET Livonia, MI... | 1130005306 | 03/06/2023 12:00 AM | 1482.0 | 303.0 |

**Pool ID: 2687**

**Steve Rubin**

Thank you,

Steve Rubin

---

**From:** Amy Cruz <Amy.Cruz@artsana.com>
**Sent:** Friday, March 10, 2023 6:55 AM
**To:** Kevin Bardascini <kevin.bardascini@consultant.bedbath.com>; Cynthia Pineda <Cynthia.Pineda@artsana.com>
**Cc:** Steve Rubin <Steve.Rubin@artsana.com>; Richard Sweeney <Richard.Sweeney@artsana.com>
**Subject:** RE: Load status needed

Good Morning Kevin,
Unfortunately, these left on Monday the 6th.
Going forward I will monitor this closely to make sure it doesn't happen again!

Thank you,
**Amy Cruz**
Warehouse Coordinator
*"Of all the paths you take in life, make sure a few of them are dirt."* – John Muir

---

**From:** Kevin Bardascini <kevin.bardascini@consultant.bedbath.com>
**Sent:** Thursday, March 9, 2023 3:17 PM
**To:** Cynthia Pineda <Cynthia.Pineda@artsana.com>; Amy Cruz <Amy.Cruz@artsana.com>
**Subject:** RE: Load status needed

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Central is not to pick up BBB freight. These loads are to all ship via YRC. Did Central already pick up these loads?

*Kevin Bardascini*
Logistics Consultant
Kevin.bardascini@consultant.bedbath.com

---

**From:** Cynthia Pineda <Cynthia.Pineda@artsana.com>
**Sent:** Thursday, March 9, 2023 3:12 PM
**To:** Amy Cruz <Amy.Cruz@artsana.com>; Kevin Bardascini <kevin.bardascini@consultant.bedbath.com>
**Subject:** RE: Load status needed

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,

Please see below:

I do want to advise that at the moment of checking booked carriers for the below loads 3 out of 6 were assigned to Central when we checked (sometime last week). Do you know if it's a possibility that carriers get switched after the fact that they are booked through an assigned? I am only asking because now that I went to check in the BBB portal they are booked through YRC?

| Load Number | Status | Carrier Name | Origin Name | Origin City | Origin State | Dest Code |
|---|---|---|---|---|---|---|
| MVDP7120542 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | SPR |
| MVDP7120543 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | SLC |
| MVDP7120546 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | ORL |
| MVDP7120547 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | MIA |
| MVDP7120549 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | LIS |
| MVDP7120552 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | FRA |

*Thank you,*
*Cynthia Pineda*

**From:** Amy Cruz <Amy.Cruz@artsana.com>
**Sent:** Thursday, March 9, 2023 2:30 PM
**To:** Cynthia Pineda <Cynthia.Pineda@artsana.com>
**Subject:** Fwd: Load status needed

Sent from my iPhone

Begin forwarded message:

> **From:** Kevin Bardascini <kevin.bardascini@consultant.bedbath.com>
> **Date:** March 9, 2023 at 2:15:33 PM EST
> **To:** Steve Rubin <Steve.Rubin@artsana.com>, Amy Cruz <Amy.Cruz@artsana.com>
> **Subject: Load status needed**
>
> EXTERNAL EMAIL - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments
>
> Hello,
> Can you advise if these loads have shipped, if so the pro# for the load?
> Thank you

| Load Number | Status | Carrier Name | Origin Name | Origin City | Origin State | D |
|---|---|---|---|---|---|---|
| MVDP7120542 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | SPR |
| MVDP7120543 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | SLC |
| MVDP7120546 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | ORL |
| MVDP7120547 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | MIA |
| MVDP7120549 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | LIS |
| MVDP7120552 | Booked | Yellow Freight Lines | Artsana - 17601 | Lancaster | PA | FRA |

*Kevin Bardascini*
Logistics Consultant
[Kevin.bardascini@consultant.bedbath.com](mailto:Kevin.bardascini@consultant.bedbath.com)

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

# Exhibit D

Thomas Gwiazdowski
September 29, 2025

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

\* \* \*

```
IN RE:  BED BATH & BEYOND, :   Chapter 11
INC., et al             :
            Debtors,  :   Case No. 23-13359(VFP)
----------------------------------------------------
MICHAEL GOLDBERG, as Plan :
Administrator for 20230930-:
DK-Butterfly-1, Inc., f/k/a:   Adv. No. 24-01336-VFP
BED BATH BEYOND, INC.,    :
            Plaintiff,  :
          - vs -        :
ARTSANA USA, INC.,        :
            Defendant.  :
```

\* \* \*

Oral deposition of THOMAS GWIAZDOWSKI,

taken at the law offices of SAUL EWING, LLP, 1200

Liberty Ridge Drive, Suite 200, Wayne, Pennsylvania,

19087, on Monday, September 29, 2025, beginning at

approximately 9:00 a.m., before Lisa M. Cooper, Court

Reporter.

\* \* \*

U.S. LEGAL SUPPORT
Northeast Processing Center
1818 Market Street, Suite 1400
Philadelphia, Pennsylvania  19103
(877) 479-2484

1  A P P E A R A N C E S :

2

3           ASK, LLP
            BY:  NICHOLAS BROWN, ESQUIRE
4           2600 Eagan Woods Drive, Suite 400
            Eagan, Minnesota  55121
5           nbrown@askllp.com
            -- Attorney for the Plan Administrator
6

7           SAUL EWING, LLP
            BY:  TURNER N. FALK, ESQUIRE
8           1200 Liberty Ridge Drive, Suite 200
            Wayne, Pennsylvania  19087
9           turner.falk@saul.com
            -- Attorney for the Defendant

10                      *    *    *

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Thomas Gwiazdowski
September 29, 2025

```
1                    I N D E X

2

3   WITNESS                              PAGE

4

5   THOMAS GWIAZDOWSKI

6

7          By:   Mr. Brown                    5

8          By:   Mr. Falk                    77

9                     *    *    *

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

Thomas Gruszowski
September 29, 2025

```
 1                       E X H I B I T S

 2

 3    NUMBER                   DESCRIPTION           PAGE REF'D

 4              (Binder with Exhibits Premarked)

 5    Tab-1                Notice of Deposition

 6    Tab-2                (Blank Page)

 7    Tab-3                Excel Spreadsheet          11

 8    Tab-4                buybuy Baby Invoice        14

 9    Tab-5                E-mails                    29

10    Tab-6                E-mails                    45

11    Tab-7                (Blank page)

12    Tab-8                E-mails                    47

13    Tab-9                E-mails                    47

14    Tab-10               E-mails                    53

15    Tab-11               E-mails                    54

16    Tab-12               E-mails                    54

17    Tab-13               E-mails                    55

18    Tab-14               E-mails                    57

19    Tab-15               E-mails                    60

20    Tab-16               E-mails                    61

21    Tab-17               (Blank page)

22

23                        *    *    *

24

25
```

Thomas Gwiazdowski
September 29, 2025

```
 1                        *    *    *

 2                    PROCEEDINGS

 3                        *    *    *

 4                   (It is hereby stipulated by and

 5              between counsel for the respective parties

 6              that signing, sealing, certification, and

 7              filing are waived, and that all objections,

 8              except as to the form of the question, are

 9              reserved until the time of trial.)

10                        *    *    *

11                   THOMAS GWIAZDOWSKI,

12              after having been first duly sworn, was

13              examined and testified as follows:

14                        *    *    *

15   BY MR. BROWN:

16   Q.        Good morning.  Could you please state your

17   name for the record?

18   A.        Sure.  Tom Gwiazdowski.

19   Q.        Gwiazdowski?

20   A.        Gwiazdowski.

21   Q.        Got it.  Okay.  My name is Nick Brown.  I'm

22   the attorney for the Plan Administrator in the Bed Bath

23   & Beyond bankruptcy cases.  Do you understand that

24   you're here today to participate in a deposition in

25   a bankruptcy case involving Bed Bath & Beyond?
```

Thomas Gruszowski
September 29, 2025

1    A.         Yes.

2    Q.         And were you designated by Artsana USA, Inc.

3    as a witness for today?

4    A.         Yes.

5    Q.         And so you're here on behalf of Artsana USA,

6    Inc., is that right?

7    A.         Yes.

8    Q.         Have you ever had your deposition before?

9    A.         In this case?  I'm sorry.

10   Q.         Sure, in the Bed Bath & Beyond case?

11   A.         No.

12   Q.         What about in general?

13   A.         Yes.

14   Q.         When was the last time you had your

15   deposition taken?

16   A.         Within six months.

17   Q.         Was it related to a bankruptcy case?

18   A.         No.

19   Q.         Have you ever had your deposition taken in a

20   bankruptcy case before?

21   A.         No.

22   Q.         And have you ever had your deposition taken

23   in connection with the Bed Bath & Beyond payments to

24   Artsana that we're going to be talking about today?

25   A.         No.

Thomas Gruszkowski
September 29, 2025

1   Q.        All right.  So you're familiar with this, I

2   assume.  And just to, I guess, make sure that we're all

3   on the same page, everything that we're saying today

4   will be transcribed.  Recorded and transcribed.  So in

5   order to have a clean record, to the extent possible,

6   we should avoid speaking over each other.  So if I'm

7   asking a question, please wait until I complete my

8   question and then you can answer.

9           If you need a break at any time, just ask.

10  It's not a problem.  I only ask that you finish -- if

11  you're in the middle of answering the question, please

12  finish answering the question and then we can take a

13  break.  Is there any reason, that you know of, why you

14  wouldn't be able to understand my questions or

15  participate in this deposition today?

16  A.        No.

17  Q.        I recall you saying beforehand that you're

18  coming over a cold, but that's not anything that would

19  prevent you from participating today, right?

20  A.        Yes.

21  Q.        Do you have any questions before we get

22  started?

23  A.        No.

24  Q.        All right.  What is your role with Artsana

25  USA, Incorporated?

1    A.        President and CEO.

2    Q.        How long have you been the president and CEO?

3    A.        CEO, the last eight years.

4    Q.        And president as well?

5    A.        President, like six years.

6    Q.        Okay.  And are you familiar with the

7    Complaint that the Plan Administrator in the Bed Bath &

8    Beyond bankruptcy case filed against Artsana USA,

9    Incorporated earlier this calendar year?

10   A.        Yes.

11   Q.        Have you had a chance to actually look at the

12   Complaint and the exhibit attached to the Complaint?

13   A.        Note the actual Complaint, I haven't looked

14   at recently, no.

15   Q.        I'd like to refer you to a collection of

16   pages at the front of your binder.  It's actually in

17   the little cover slip there.  And I'll represent to you

18   that this is Exhibit-A to the Complaint.  And you'll

19   see, if you flip through it is -- it's a list of mostly

20   invoices and a payment.  Have you seen these pages

21   before?

22   A.        Yes.

23   Q.        All right.  And what is your understanding

24   about what these pages show?

25   A.        I'm not sure the timing of this document.

```
 1    Oh, this is the entire preference period documents?

 2    Q.        Yes.  So this was the exhibit that was

 3    attached to the Complaint.  Have you seen this before?

 4    A.        Yes.

 5    Q.        Okay.  Have you had an opportunity to review

 6    this exhibit?

 7    A.        Yes.

 8    Q.        And do you understand that the Plan

 9    Administrator contends that a payment of invoices in

10    the total sum of about $538,400.30 was made around the

11    end of February of 2023?

12    A.        Yes.

13    Q.        And anything about that do you disagree with?

14    Or do you agree that a payment in that amount was made

15    around the end of February 2023?

16    A.        I believe this is part of a -- a total

17    payment, yes.

18    Q.        All right.  And have you actually had a

19    chance to look through the exhibit and confirm that

20    each of the invoices here was in fact paid at the end

21    of February 2023?

22    A.        I didn't look at it in detail, no.

23    Q.        All right.  Did you or someone at Artsana

24    review its own records to confirm what invoices were

25    paid by that end of February 2023 payment?
```

Thomas Gruzlewski
September 29, 2025

```
1    A.        Yes.

2    Q.        And did you have the opportunity to compare

3    your information about what invoices were paid, with

4    the information that the Plan Administrator has about

5    what invoices were paid?

6    A.        Did I personally?  Or did someone?

7    Q.        Did you or someone at Artsana.

8    A.        Yes.

9    Q.        Do you know if there's any discrepancies in

10   the parties' respective information about which

11   invoices were paid by the February 2023 payment?

12   A.        I don't believe there -- I believe we have an

13   agreement on the basic amount and what was dictated

14   from Bed Bath.

15   Q.        Okay.  So largely, it sounds like, tell me if

16   I'm right here, that we are in agreement that, maybe

17   with possible minor exceptions, the invoices that are

18   appearing on this exhibit were in fact paid at the end

19   of February 2023?

20   A.        Yes.

21   Q.        Is there anything in this exhibit, that

22   you're aware of, that you or someone -- or -- or

23   Artsana disagrees with, as far as what this exhibit is

24   showing about what invoices were paid at the end of

25   February 2023?
```

Thomas Guzzardi
September 29, 2025

```
 1   A.          Not that I'm aware of.

 2   Q.          Could you turn to what's marked Tab 3 of your

 3   book there.  So I'll represent to you that as part of

 4   the exchange of information that your counsel and

 5   myself have had, I received an Excel spreadsheet with

 6   about three tabs on it.  And it may not be apparent

 7   from looking at it in its printed out form, but this is

 8   that Excel spreadsheet.  So Tab 1 is the first page,

 9   Tab 2 is a number of pages that you'll see right after

10   that with yellow -- with a yellow highlighted column.

11   And I believe there may have been a Tab 3 as well, that

12   -- where there's no yellow highlight.  But have you

13   seen this document in its Excel spreadsheet form?

14   A.          Yes.

15   Q.          Do you know who prepared this document?

16   A.          Yes.

17   Q.          Who was that?

18   A.          Corey Eshelman.

19   Q.          Who is that?

20   A.          He's our controller.

21   Q.          And so do you understand what this -- why

22   Corey prepared this document?

23   A.          Upon request, I'm sure.

24   Q.          And what is the -- what is the intention of

25   this document?  As far as, what is it showing?
```

Thomas Gruszowski
September 29, 2025

1    A.       I think he's just trying to show the

2    reconciling.  The total amount of payment that we

3    received on the 27th of February of 2023, I believe.

4    Q.       Okay.  And so this first page here, can you

5    -- it looks like a summary of some fashion.  Can you

6    tell me what it's showing here on the first page?

7    A.       It's showing the amount paid.  And how it's

8    broken down.

9    Q.       The February 27 date, is that February 27,

10   2023?

11   A.       I believe so.

12   Q.       And so is Artsana conveying, with this

13   document, that it, in fact, does have a record of

14   receiving about $1.6 million from Bed Bath & Beyond --

15   A.       Yes.

16   Q.       -- around February 27th?

17   A.       Sorry.  Yes.

18   Q.       You're fine.  Okay.  And then immediately

19   below the 1.6 million number are two numbers.  Is that

20   a breakdown of the 1.6 million?

21   A.       Yes.

22   Q.       And I see the 538,400 number that we were

23   just talking about, correct?

24   A.       Yes.

25   Q.       And what is -- what is that number?

Thomas Gruzlewski
September 29, 2025

```
 1   A.          That represents the amount that is tied to
 2   the detail of what was paid as per Bed Bath's
 3   instructions.
 4   Q.          And that payment paid invoices, correct?
 5   A.          The 538,000?
 6   Q.          Yes.
 7   A.          Yes.
 8   Q.          And were those invoices past due at the time
 9   of the payment?
10   A.          I believe so, yes.
11   Q.          And then what is this other number, the 1
12   million 65 thousand number?
13   A.          It's a prepayment.
14   Q.          And so at the time of that payment, which was
15   also on February 27th, correct?
16   A.          Yes.
17   Q.          At the time of that payment, no invoices had
18   been issued as to that amount, is that correct?
19   A.          No invoices, yes.
20   Q.          And so the prepayment was in fact intended to
21   pay for future goods and invoices issued for those
22   goods, is that right?
23   A.          Identified orders, yes.
24   Q.          And do you know if that payment was in fact
25   applied to the subsequently provided goods and
```

Thomas Gruszowski
September 29, 2025

```
 1   identified orders?

 2   A.         Was it applied?

 3   Q.         Yes.

 4   A.         Yes.

 5   Q.         All right.  And if you can turn to Tab 4.

 6   Have you seen this document, or a document like this,

 7   before?

 8   A.         Yes.

 9   Q.         What is this document?

10   A.         Looks like an invoice to buybuy Baby.

11   Q.         And was this invoice produced by your

12   company?

13   A.         It appears to be, yes.

14   Q.         Have you had a chance, in connection with

15   your preparation for today's deposition, to review

16   invoices that were issued by Artsana to Bed Bath &

17   beyond or its affiliates?

18   A.         No.

19   Q.         You haven't -- you haven't -- have you

20   reviewed any invoices like this, in preparation for

21   today?

22   A.         No.

23   Q.         Okay.  Are you generally familiar with what

24   the invoices would look like, and the process that

25   Artsana has in issuing invoices, in general?
```

Thomas Gruszowski
September 29, 2025

```
1    A.        Yes.

2    Q.        Any reason to believe that this was not the

3    set of invoices issued to Bed Bath & Beyond or its

4    affiliates?

5    A.        No.

6    Q.        And could you help me understand, based on

7    your familiarity with Artsana's invoices, what is this

8    an invoice for?

9    A.        Product.

10   Q.        In particular, what?

11   A.        Looks like pacifiers and some booster seats.

12   Q.        Is that the type of product that Artsana

13   would sell to Bed Bath & Beyond?

14   A.        Yes.

15   Q.        Okay.  And do -- is it your understanding

16   that the invoices that were paid by that $538,000

17   payment were for, or related to, goods such as

18   pacifiers and booster seats, or things of that nature?

19   A.        Yes.

20   Q.        And so do you believe that -- so this is just

21   one representative copy, but do you believe that all of

22   the invoices that were paid by that $538,000 payment

23   would have been issued and would look relatively

24   similar to this particular example invoice?

25   A.        Yes.
```

1    Q.        What is Chicco?

2    A.        Chicco is the brand.

3    Q.        And so that's not actually a company, that's

4    just a brand name, right?

5    A.        Correct.

6    Q.        And that brand was owned by Artsana USA,

7    Inc.?

8    A.        No.

9    Q.        Who owns that brand?

10   A.        The parent company.

11   Q.        What's the name of the parent company?

12   A.        Artsana SPA.

13   Q.        So taking a step back from the exhibits for a

14   minute.  Do you know when the relationship between

15   Artsana and Bed Bath & Beyond first began?

16   A.        Probably in 2003.

17   Q.        And at that time, what was the nature of that

18   relationship?

19   A.        Supplying products to a baby retailer.

20   Q.        Was it Bed Bath & Beyond?  Or was it buybuy

21   Baby?  Or -- do you know?

22   A.        I believe at that time it was buybuy Baby.  A

23   division -- I think they were technically a division

24   of, or a subsidiary of Bed Bath & Beyond.  I don't know

25   their exact corporate structure, to be honest with you,

Thomas Gruszowski
September 29, 2025

1   at that time.

2   Q.        Would it have been things like booster seats

3   and pacifiers?  Or similar product?

4   A.        In 2003.

5   Q.        Um-hum.

6   A.        We didn't sell -- there's -- the business

7   morphed into something different.  We were very narrow

8   back in 2003.  So probably just strollers, to be honest

9   with you.

10  Q.        And then how did the business relationship

11  between the two companies change over the next 20 or so

12  years?  I realize that's a huge amount of time.  But

13  just generally speaking?

14  A.        Generally, it grew based on our product

15  portfolio offering expansion.

16  Q.        And so Artsana was supplying more product?

17  Different types of product and quantities, is that

18  right?

19  A.        Yes.

20  Q.        Did Artsana's own operations expand during

21  the course of that time?

22  A.        Artsana USA?

23  Q.        Not so much geographically, but as far as the

24  quantity and types of product that it was offering --

25  A.        Yes.

Thomas Gruszowski
September 29, 2025

```
 1   Q.        -- and selling?  And so did the Artsana

 2   business relationship with Bed Bath & Beyond grow

 3   during that time?

 4   A.        Buybuy Baby.  We don't -- we don't refer to

 5   them as Bed Bath & Beyond, just because we didn't sell

 6   to Bed Bath & Beyond.  But I'm just trying to make sure

 7   I'm clearer.  Yes, with buybuy Baby specifically.

 8   Q.        Okay.  So would it be more accurate for me to

 9   refer to the -- the Bed Bath & Beyond entity that

10   Artsana was doing business with as buybuy Baby?

11   A.        Yes.

12   Q.        Okay.  I'll try to do that going forward.

13   A.        No worries.

14   Q.        And so the -- so let's focus more now on 2020

15   and -- and a couple years after that, before buybuy

16   Baby filed for bankruptcy.  At that time, is it the

17   case that Artsana was supplying baby products to buybuy

18   Baby all over the continental U.S.?

19   A.        Yes.

20   Q.        And was it shipping -- could you help me

21   understand, during that course of time in particular,

22   where the products were sourced, and how they were

23   delivered to Bed -- to buybuy Baby?

24   A.        Where our products are sourced?

25   Q.        Yeah.  Like, for example, what -- take
```

Thomas Gruzowski
September 29, 2025

1  strollers for example.  Were they imported from outside

2  of the U.S., or were they manufactured in the U.S, by

3  and large?

4  A.        They were sourced outside of the USA and

5  Asia.

6  Q.        Okay.  Was there product that Artsana was

7  selling to buybuy Baby that was manufactured within the

8  United States?

9  A.        No.

10  Q.        So every -- all the product would have been

11  imported?

12  A.        From outside of the U.S.  Some -- we had some

13  Italian manufacturing as well.

14  Q.        Okay.  And so when an order was placed by

15  buybuy Baby, what would happen next for Artsana to be

16  able to fulfill that order?

17  A.        Most likely, they -- well, I know they were

18  using an EDI system which electronically sends orders

19  to us.

20  Q.        What does EDI stand for?

21  A.        Electronic Data Interchange.

22  Q.        So Bed Bath would be using that program, is

23  that right?

24  A.        It's -- it's customary.  CPG companies,

25  they're using the ERP systems, we're using the ERP

Thomas Gruszowski
September 29, 2025

1   system.  They're communicating via what's called EDI

2   Interchange.  And they're writing orders to our system

3   that's -- I don't want to get into the details of this,

4   but they're translating the order so that we can accept

5   it.  And then we're confirming back, via EDI, to them.

6   Q.        Is it -- are there people on either side that

7   are communicating, or is it more just --

8   A.        There's management of electronic records,

9   let's say.  If there's issues, things error out.  But

10  there are people managing on both sides.

11  Q.        Okay.  And then, so once an order is placed,

12  and I guess is it the case that Artsana would, more or

13  less, accept that order through the EDI system?

14  A.        Yes.

15  Q.        And then once that happened, what would be

16  the next step, as far as how that order would be

17  fulfilled?

18  A.        Well we -- we would obviously process it

19  through our ERP system, which is our -- our bay system.

20  We process it and look into the system to see if the

21  product was available for shipping and then coordinate

22  -- it's a whole cycle process, where it goes to

23  warehouse logistics and then it goes to dispatch.  In

24  this case, Bed Bath & Beyond, or buybuy Baby, has their

25  own, what's called preferred shipper, and you would

Thomas Grazadowski
September 29, 2025

1    coordinate shipping the product via their shipper, I

2    believe.  I don't know who it was.  But they had their

3    own arrangements.

4    Q.        At what point in the process would an invoice

5    be issued?

6    A.        Once the product left our dock.

7    Q.        Okay.  So it would be imported first?

8    A.        It depends.  So there's two different methods

9    by which buybuy Baby received product from us.  One was

10   what we call domestic shipments, which is what I just

11   described.  Processing orders, coordinating logistics

12   and shipping from our warehouse in Lancaster,

13   Pennsylvania to their stores, typically.  Their process

14   was not one of distribution channels.  Our distribution

15   warehouse.  They preferred what they call ship to store

16   methodology.  In -- in what I consider domestic

17   shipments.

18           Import shipments, or what is commonly

19   referred to as FOB shipments in the CPG world, consumer

20   products Good World, goes directly from the

21   manufacturer in Asia to a distribution center owned by

22   buybuy Baby.

23   Q.        And where would that typically be, that

24   distribution center?

25   A.        I'm not sure where those are.  They have a --

Thomas Skiarzowski
September 29, 2025

```
 1    they have a handful of them.  Not many.  Two or three,
 2    to be honest.
 3    Q.         And so -- all right.  So you would have
 4    product shipped or delivered under both scenarios?
 5    A.         Yes.
 6    Q.         Was there a particular product that -- that
 7    buybuy Baby preferred be handled via import shipment
 8    than different product that was done by domestic
 9    shipment?  Or how did that work?
10    A.         Yes.  High volume items, typically.  Things
11    that turn quickly.
12    Q.         Which would be which one?
13    A.         Import.  What's referred to as FOB shipments.
14    Q.         Can you give me an example or two of high
15    volume product?
16    A.         Yes.  Car seat bases that are universal to
17    our car seats, so they fit three, four, five different
18    models.  Those would turn at a high volume, high rate.
19    This -- from a productivity standpoint, it makes more
20    sense for us to ship large volumes direct to them than
21    small volumes to -- to store shipments.
22    Q.         Okay.  But in either case, the -- the timing
23    of the invoice would be connected to the -- basically
24    whenever the product was shipped, is that fair to say?
25    A.         Yes.
```

1   Q.          All right.  Now, are you aware that -- or

2   just as a reminder, buybuy Baby, Bed Bath & Beyond

3   filed bankruptcy in April 2023, correct?

4   A.          That's my understanding, yes.

5   Q.          Did the quantity or types of product that

6   buybuy Baby was ordering in the one year or six month

7   time frame -- let's say, within one year prior to

8   bankruptcy did buybuy Baby's behavior, as far as what

9   it was ordering, change, to your knowledge?  Or was it

10  pretty consistent?

11  A.          Well, I think it was fairly consistent.

12  According to what I understand.  I mean, their -- they

13  need to flow product, so they were ordering

14  consistently, it seemed.  I didn't analyze it

15  personally.

16  Q.          Okay.  And then prior to the bankruptcy, and

17  just generally speaking, I imagine that you were not,

18  you personally were not, in the -- in the -- overseeing

19  the details about the Artsana, Bed Bath, buybuy Baby

20  relationship, were you?  Or were you?

21  A.          No.

22  Q.          Okay.  Who would you say was sort of the

23  oversight manager for that relationship?

24  A.          I mean, it depends what area of the business

25  you're talking about.  Just general relationship of the

Thomas Grzazdowski
September 29, 2025

```
 1   business with buybuy?

 2   Q.        Yeah.  Was there anyone in particular?

 3   A.        Probably the vice president of sales would be

 4   responsible in that area.

 5   Q.        Who was that?

 6   A.        Steve McLaughlin.

 7   Q.        And he's no longer with your company, right?

 8   A.        Correct.

 9   Q.        When did he leave the company?

10   A.        May of 2024, I believe.

11   Q.        In 2020, 2021, 2022, was buybuy Baby one of

12   Artsana's bigger customers?

13   A.        Yes.

14   Q.        And was it its biggest customer?

15   A.        No.

16   Q.        Where would you rank it, if you could, as far

17   as on the customer scale?

18   A.        Top three.

19   Q.        Okay.  Were there any other individuals at

20   Artsana that you would say had a -- a large role in

21   overseeing the relationship between Artsana and buybuy

22   Baby?

23   A.        Yes.

24   Q.        Who would those individuals be?

25   A.        Josh Pahl would be one.
```

Thomas Gruszowski
September 29, 2025

1    Q.        What did he do for Artsana?

2    A.        He was the national account manager.

3    Q.        What role did he have with respect to buybuy

4    Baby?

5    A.        That was his role.  National account manager

6    for buybuy Baby, amongst other accounts.

7    Q.        Can you give me a little more information?

8    Like what -- what was he doing specific to buybuy Baby

9    that was important and helpful to Artsana?

10   A.        He was the point person between the buyer and

11   our team.  Responsible for strategizing, merchandizing.

12   Primarily a sales role.

13   Q.        So he would be maintaining a -- a

14   relationship, from a sales perspective, with people at

15   buybuy Baby, is that right?

16   A.        Yes.

17   Q.        Was there someone in particular at buybuy

18   Baby that he was talking to the most?

19   A.        Probably the -- the senior buyer, Chrissy

20   DiBella.

21   Q.        So notwithstanding that the company's had a

22   long lasting relationship and handled a lot of their

23   business via the Electronic Data Interchange platform,

24   was it still the case that Josh or Steve, or someone

25   else, that had a direct line of communication with

1   buybuy Baby would -- would maintain a communication

2   channel with buybuy Baby for purposes of merchandizing

3   and sales?

4   A.       Is that what you're asking me?  If Steve and

5   Josh would have been communicating with them.

6   Q.       Or someone like that, yeah.  I guess -- let

7   me rephrase.  Notwithstanding -- it sounds to me like a

8   lot of the parties' business was able to be

9   accomplished just by electronic means?

10  A.       Not -- not exactly.

11  Q.       Okay.

12  A.       That's just the means with which -- that we

13  were interacting, you know, documents.  But classic CPG

14  relationship was our sales team interacting with their

15  buying team on a constant basis.

16  Q.       Okay.  Thank you.  And so that was important

17  for Artsana to interact with buybuy Baby on a

18  consistent basis?

19  A.       Yes.

20  Q.       And typically those interactions would

21  involve things like what kind of product is buybuy Baby

22  interested in, what quantity, and things like that?  Is

23  that right?

24  A.       Yes.

25  Q.       Were there any other sort of subjects that

Thomas Gruszowski
September 29, 2025

 1 | the two companies would communicate about on a regular

 2 | basis?

 3 | A.        Classic promotional strategy.  New launches.

 4 | Product development.  You know, ways to grow the

 5 | business for both our teams.

 6 | Q.        Okay.  Understood.  So now I want to ask you

 7 | about buybuy Baby's ability to pay, basically.  And its

 8 | history of making payments.  So you got a 20-year or so

 9 | relationship here.  Have you had a chance, or do you

10 | even have the ability, to go back and look at the

11 | history of buybuy Baby's ability to pay invoices on

12 | time?

13 | A.        Did I go back and look at the history?

14 | Q.        Yes.

15 | A.        No.

16 | Q.        Do you have an understanding about how -- how

17 | typical it was for buybuy Baby to pay its invoices to

18 | Artsana on time?

19 | A.        Do I have an understanding of the payment

20 | method?  I mean, we had a terms agreement that they,

21 | historically, as I understand it, paid somewhat late.

22 | If you looked at the entire -- we didn't go back 20

23 | years, probably five years historically classic five to

24 | ten days late, based on terms.

25 | Q.        What were the terms for payments in the five

Thomas Gruszowski
September 29, 2025

1    years before bankruptcy, do you know?

2    A.        60, I believe.

3    Q.        Did that waiver change at all?

4    A.        Well, I think in January of '23 we moved to

5    a prepayment term based on, you know, not being paid

6    according to -- to the original terms.

7    Q.        Was there a single contract between the two

8    that governed the payment terms?  Or did the parties

9    have multiple contracts?

10   A.        I'm not sure of that, to be honest with you.

11   But I think in their -- that they had a portal -- their

12   online portal.  I think that was the contract that

13   dictated terms.

14   Q.        Okay.  Now, in your review -- let me ask, did

15   you review, in preparation for today, e-mail

16   correspondence that had transpired between Artsana and

17   buybuy Baby?

18   A.        I looked over some of those.  I guess you're

19   talking about the discovery documents of the e-mails?

20   Q.        Yeah.

21   A.        I looked at some of those, yes.

22   Q.        Okay.  And in particular, did you review

23   e-mail correspondence regarding inquiries into buybuy

24   Baby's failure to pay invoices on time?

25   A.        I think there was an e-mail about that.  If

Thomas Gazzolowski
September 29, 2025

1  -- if you're referring to an e-mail from, I think it

2  was one of our team members to buybuy.

3  Q.        Yes.  So let's look at some e-mails, if you

4  don't mind.

5  A.        Please.

6  Q.        Let's start at Tab-5.  And so the way that

7  these e-mails are printed out, you know the most recent

8  exchange is going to appear first, right?  And it

9  chronologically goes backward.  So I'd like to turn

10  your attention to the second to last page of this

11  exhibit here.  You will see the subject is buybuy

12  Asian.  And I think if you look at the e-mail from Greg

13  Obetz to B. Cashman, December 19th, 2022, do you see

14  that?

15  A.        Yes.

16  Q.        Greg says, We have over 200,000 that is now

17  past due for buybuy Baby.  Can you please tell us if

18  there is a payment coming soon to pay for those past

19  due invoices?  So what is Greg Obetz' role at Artsana?

20  A.        He was the controller.

21  Q.        I -- I think you said -- you gave me another

22  name of a controller?

23  A.        Current controller was Corey Eshelman.

24  Q.        So Greg was the controller at the time?

25  A.        Yes.

Thomas Szuazewski
September 29, 2025

1    Q.        And so was Greg -- was one of Greg's roles to

2    monitor past dues owing by customers?

3    A.        Oversee, monitor, yes.  It's fair.

4    Q.        And so what -- why is Greg reaching out or

5    e-mailing B. Cashman here?

6    A.        This is the gentleman that buybuy put in

7    place to manage receivables.  I'm not sure what their

8    process was at that time, but I think they -- I mean,

9    looking at it, he doesn't have a buybuy e-mail, so they

10   must have outsourced that -- that role at that time.

11   I'm not sure who Brian Cashman is, other than I know

12   that name and I know he was designated.   That's why

13   we're corresponding here with him.

14   Q.        Do you know when buybuy Baby designated an

15   outside person to be the point of contact for Artsana?

16   A.        No.

17   Q.        Was it the case, historically, that if

18   Artsana had a question about a past due invoice, they

19   would reach out to an employee of buybuy Baby?

20   A.        No.

21   Q.        It's not the case that Artsana had a buybuy

22   Baby employee contact for those types of things?

23   A.        No.

24   Q.        What was -- who was the contact,

25   historically, for Artsana?

Thomas Gruzalowski
September 29, 2025

```
 1   A.        There was a contact that was -- we -- the

 2   procedure, as I understand it, you had to send

 3   documentation about aged invoices in the mail, snail

 4   mail.  If you wanted, you know, information about past

 5   due, you had to send documentation or proof of delivery

 6   or whatever.  It was a very arduous, cumbersome task,

 7   in my opinion.

 8   Q.        And who would that mail be directed to?

 9   A.        I'm not sure.  I think it was a generic box.

10   Q.        Was it a buybuy Baby address?

11   A.        Yes.

12   Q.        So it wasn't as simple as just sending an

13   e-mail or picking up the phone?

14   A.        No.

15   Q.        When did that change?  Or did it change?

16   A.        I have no idea.

17   Q.        At least with respect to this December 19th,

18   2022 time frame, it looks like that process was not

19   being taken, is that right?

20   A.        I think -- I think they changed the

21   methodology, maybe, and put this person in place to --

22   to try to handle that.  I don't know if the other part

23   actually changed, to be honest with you.  I don't know

24   that.

25   Q.        Okay.
```

Thomas Gruszowski
September 29, 2025

```
 1   A.        I don't think the entire process changed.

 2   Let's just say they introduced a new process.

 3   Q.        Have you seen any examples -- in the course

 4   of your reviewing e-mails in preparation for today,

 5   have you seen any examples prior to this December 2022

 6   example where someone from Artsana was reaching out by

 7   e-mail, rather than by snail mail, about a past due

 8   invoice?

 9   A.        Well, yeah.  Our sales team would obviously

10   be involved.  There's different levels of, you know,

11   attention.  So sales team would help.  Try to help.  So

12   they, of course, would try to reach out to the -- their

13   counterparts.  Specifically probably starting with

14   Chrissy DiBella.  So there's e-mail exchanges in

15   different areas, for sure.

16   Q.        Now, what about the controller's involvement

17   specifically, in the course of your preparation for

18   today, did you see any examples, prior to December

19   2022, when Artsana's controller was cor -- or

20   contacting buybuy Baby by e-mail about a past due

21   invoice?

22   A.        I didn't see any of those.

23   Q.        Real quick, you've already described some of

24   the people that are cc'd on this e-mail.  But could you

25   explain, who is Steve Rubin?
```

Thomas Gruszowski
September 29, 2025

```
 1    A.        He's our operation director.

 2    Q.        And why, if you know, was he included on this

 3    e-mail?

 4    A.        He's part of that -- you know, that team.

 5    Q.        Which team?

 6    A.        The finance and ops.  Steve Rubin is on our

 7    team.  He's part of our finance and -- he's in charge

 8    of operations.

 9    Q.        And Amanda Plasterer?

10    A.        She's -- she was credit and collections

11    manager at that time.

12    Q.        This particular e-mail is representing about

13    $200,000 in past dues, correct?

14    A.        Which part?  I mean there's different --

15    Q.        Yeah.  This is -- I'm still on this Greg

16    Obetz e-mail, December 19th, where he says, We have

17    over $200,000 that is now past due.  Do you see that?

18    A.        No.

19    Q.        Okay.  Sorry.

20    A.        Which page?  The original --

21    Q.        So this exhibit is --

22    A.        The next to last page you're back to?

23    Q.        That's correct, yeah.

24    A.        Okay.  Yes.

25    Q.        Greg Obetz to B.Cashman, December 19th.  And
```

Thomas Gruszowski
September 29, 2025

1    Greg references over $200,000 in past dues.  Do you see

2    that?

3    A.        Yes.

4    Q.        It looks like -- so I guess my question is,

5    so there's different people on the team, the Artsana

6    team, that are included in this e-mail.  For example,

7    Ms. Plasterer, who's the credit and collections

8    manager.  Do you know why it is that the controller is

9    the one that is sending this e-mail rather than someone

10   like Ms. Plasterer or Mr. Rubin, or somebody else at

11   Artsana?

12   A.        Do I know why he sent this?

13   Q.        Yes.

14   A.        No.

15   Q.        Is it the case that someone at a lower level

16   than the controller would typically be contacting a

17   customer about a past due invoice?

18   A.        I mean the situ -- it depends on the dollars

19   and the situation, of course.  I mean, credit and

20   collections managers don't have -- I mean, if you want

21   to get someone's attention you escalate things, right?

22   So --

23   Q.        Is that --

24   A.        -- I'm sure that's what Greg was doing here.

25   Q.        Is this an example where Artsana is

Thomas Gluzlowski
September 29, 2025

```
 1   escalating the situation?

 2   A.         Yes.

 3   Q.         Is over $200,000 of past dues a lot, in

 4   comparison to the history between these parties, as far

 5   as how much is past due at a given time?

 6   A.         I mean, a lot is a relative term.

 7   Q.         Agree.

 8   A.         It's --

 9   Q.         Is it a lot compared to how much was

10   typically, or commonly, outstanding by buybuy Baby?

11   A.         Outstanding at any given moment in the

12   relationship, no.

13   Q.         All right.  Let's go forward in this chain.

14   The next e-mail in this chain is December 28, also by

15   Mr. Obetz.  Also to Brian Cashman.  Do you see that?

16   December 28th at 8:56 a.m.

17   A.         Yeah.  There's two, but go ahead.  Same day.

18   Q.         Right.  He mentions something about a sister

19   company, Caben, is that right?

20   A.         Yes.

21   Q.         What was Caben's role with buybuy Baby?

22   A.         In the FOB transactions, they're the billing

23   entity.  In other words, domestics shipments billed by

24   us at Artsana USA, FOB shipments billed by Caben Asia

25   Pacific, Limited.
```

Thomas Gruszowski
September 29, 2025

1   Q.       What is -- is it FLB, is that right?

2   A.       FLB?

3   Q.       FOB, is that the acronym?

4   A.       No.  FOB.  F-O-B, Freight on Board?

5   Q.       FOB, all right.

6   A.       Yes.

7   Q.       So is it the case that the FOB goods were

8   supplied by Caben?

9   A.       FOB China.  Yes.

10  Q.       Do you know if -- remember the $538,000

11  payment?

12  A.       Yes.

13  Q.       Do you know if any of the goods that were --

14  invoices that were paid by that payment were Caben FOB

15  goods?

16  A.       I don't recall.

17  Q.       Would I be able to figure that out by looking

18  at the copies of invoices that were paid by that

19  payment?

20  A.       Yes.

21  Q.       So invoices were either issued by Caben or by

22  Artsana USA, is that right?

23  A.       Yes.

24  Q.       Okay.  Do you happen to know if the 538,000

25  was actually paid to Artsana USA versus Caben Asia?

Thomas Gruszowski
September 29, 2025

1    A.        That was part of payments all to Artsana,

2    Incorporated.

3    Q.        And was the prepayment also paid to Artsana

4    USA?

5    A.        Yes.

6    Q.        Now, if you could turn to -- flip forward to

7    the first page of this exhibit.  At the bottom there's

8    an e-mail from Mr. Obetz, January 3rd at 10:35 a.m.  Do

9    you see that?

10   A.        Yes.

11   Q.        And he says -- he's asking for an update.  We

12   have not been paid in over two weeks, he said.  Do you

13   know if it was unusual for buybuy Baby to go two or

14   more weeks without a responding inquiry about past due

15   invoices?

16   A.        If it was inconsistent?  I'm sorry, can you

17   repeat the question.

18   Q.        Do you know if it was unusual for buybuy Baby

19   to go two or more weeks without responding to an

20   inquiry by Artsana about past due invoices?

21   A.        No.

22   Q.        You don't know?  Or it was not unusual?

23   A.        No, I don't -- I don't know.

24   Q.        And then up at the top, the very first e-mail

25   on this chain, do you recall seeing this e-mail in your

Thomas Gruszowski
September 29, 2025

1   preparation for today?

2   A.          This same chain?

3   Q.          Well, in particular, the first e-mail at the

4   top.

5   A.          Yes.

6   Q.          Okay.  And if you need a minute to, like,

7   read it again, please do so.  But I want to ask you,

8   because Mr. McLaughlin is sending the e-mail now,

9   correct?

10  A.          Yes.

11  Q.          And he's sending it to someone who I don't

12  think appears in the prior chain, which is Chad Taylor.

13  Do you see that?

14  A.          Yes.

15  Q.          So do you know why we have Mr. McLaughlin now

16  reaching out to Mr. Taylor instead of Mr. Obetz

17  corresponding with Mr. Cashman?

18  A.          Do I know why?

19  Q.          Yes.

20  A.          No.

21  Q.          If you look at the e-mail, Mr. McLaughlin

22  says, Our team has seemed to have lost contact with the

23  BRG team.  Is he referring to Mr. Cashman?

24  A.          I believe so.

25  Q.          And our HQ is pressuring stop ship.  What

1   does that last part mean?

2   A.        I mean sure, the receivables, you know, start

3   looking past due, so that, you know, there's probably

4   some correspondence between myself and headquarters

5   about it.

6   Q.        What is headquarters referring to?

7   A.        Probably my boss.  And I report to the group

8   CEO.  The global CEO.

9   Q.        Do you recall at what point in time you and

10  your boss began discussing buybuy Baby's past due

11  situation?

12  A.        No.

13  Q.        Would it have been around the time of this

14  January 2023 e-mail?

15  A.        I'm sure.  I mean, I don't recall exactly

16  when, but I'm sure this is not a -- don't forget, sales

17  people like to tell tales, but so -- this is

18  interesting.  I read this before and, you know, this

19  probably came up in a business review or something with

20  headquarters, and so we discuss our options.

21  Q.        When you say "we discuss", who are you

22  referring to?

23  A.        My -- my team.

24  Q.        Including yourself and Mr. McLaughlin?

25  A.        Yes.

Thomas Gruazdowski
September 29, 2025

1   Q.        And so I notice that you are not personally

2   included on these e-mails, correct?

3   A.        Yes.

4   Q.        But is it the case that someone from your

5   team was keeping you informed about the past due

6   situation with buybuy Baby around this time?

7   A.        Yes.

8   Q.        Do you recall what those conversations were

9   like?

10   A.        What they were like?

11   Q.        Yeah.  I know that's a pretty vague question,

12   but, I guess, what was Mr. McLaughlin or Mr. Obetz

13   discussing with you about it at that time?

14   A.        I'm sure they were just keeping me up to date

15   with what's going on.

16   Q.        Did you have any -- did you give them any

17   direction about how they should handle the -- their

18   communications with buybuy Baby around this time?

19   A.        Any direction on how they should handle it?

20   Q.        Um-hum.

21   A.        No.

22   Q.        So at this time was it more of they were

23   reporting to you and keeping you updated on the status

24   of the past dues?

25   A.        Yes.

Thomas Gruzdowski
September 29, 2025

1   Q.        I'm sure -- is it the case that you were

2   encouraging them to collect the past dues?

3   A.        Yes.

4   Q.        Did you offer them any direction as far as

5   how to accomplish that task?

6   A.        In the normal course of business, of course.

7   Q.        Such as?

8   A.        I have many years of experience in this -- in

9   this world, so I'm sure I counseled them on, you know,

10  what our options are, what -- you know, what -- what we

11  should do in this case.  I've been here before.  So I'm

12  sure I -- I gave input onto the situation.

13  Q.        Do you recall whether your boss or someone at

14  headquarters had mentioned to you, or suggested to you

15  that Artsana stop shipping product to buybuy Baby?

16  A.        No.

17  Q.        You don't recall or did not -- or did that

18  not happen?

19  A.        I don't recall that.

20  Q.        Do you have any reason to believe, based on

21  Mr. McLaughlin's reference to HQ pressuring stop ship,

22  that Mr. McLaughlin's statement there is -- is based on

23  truth?

24  A.        Well, I mean, it's based on our discussions.

25  Q.        Okay.  So as far as you know, you had a

Thomas Szulcawski
September 29, 2025

```
 1   discussion with Mr. McLaughlin about the possibility of

 2   stopping shipments to buybuy Baby around this time?

 3   A.        I don't recall one -- a discussion.  There

 4   were many discussions, I'm sure.  And I'm sure that was

 5   one of the possibilities.

 6   Q.        Prior to this December 2022, January 2023

 7   time frame, do you recall having discussions with

 8   anyone on your team about the possibility of stopping

 9   shipments to buybuy Baby?

10   A.        No.

11   Q.        Do you know if that ever happened prior to

12   this time frame that we're looking at?

13   A.        You -- what happened?  Stopped shipments?

14   Q.        Discussing the possibility of stopping

15   shipments?

16   A.        I don't recall.

17   Q.        Would it surprise you if no such discussions

18   had taken place in your team prior to this time frame?

19   A.        Would it surprise me?

20   Q.        Yes.

21   A.        I mean, it's -- I mean, yeah, I guess it

22   would.  But I don't recall a specific conversation

23   having that exact discussion.

24   Q.        So what I'm trying to get at is, I see this

25   representation here by Mr. McLaughlin, as someone at
```

1   buybuy Baby, at least representing the possibility of

2   stopping shipments, correct?

3   A.         Yes.

4   Q.         Okay.  Do you believe, based on your

5   experience at the company of Artsana, and your

6   familiarity with its relationship with buybuy Baby,

7   that there had been prior representations, at any point

8   in time in the parties' business relationship, where

9   Artsana was considering stopping shipments?

10   A.         I don't recall that.  I'm sure there was --

11   there's discussions about lots of different things to

12   do in these situations, and I'm sure that subject came

13   up.

14   Q.         Came up within your team or between Artsana

15   and --

16   A.         I'm sure it came up within our team.

17   Q.         What about -- so I think you can appreciate

18   that it's wanting to talk about it internally, right?

19   A.         Um-hum.

20   Q.         For example, this customer is -- has this

21   past due balance that keeps growing and we're getting

22   concerned about it.  We got to talk about our options

23   to bring this amount down to collect what is owed to

24   us.  You know, let's go through some possibilities.

25   One of them could be stopping shipments.  Discussions

Thomas Gluzaowski
September 29, 2025

```
 1  internally is one thing, but to actually communicate

 2  that out loud, or by e-mail in this case, to the

 3  customer, I feel like that is the initial step.  Do you

 4  agree?  Because at that point you're actually telling

 5  the customer, Hey, this is something we're considering

 6  doing.  That's sort of a next level.  I don't know how

 7  you would describe it, but.

 8  A.        Well, that's your opinion.  It's the senior

 9  buyer you don't forget.  You don't know who Chad Taylor

10  is?

11  Q.        Do you know who Chad Taylor is?

12  A.        Yes.  He's the senior buyer at that time.  He

13  took the place of Chrissy DiBella.

14  Q.        And so how does that factor into your --

15  A.        I'm saying, those are salespeople having

16  discussions.

17  Q.        Okay.  So do you know -- and is -- but Mr.

18  McLaughlin's on your team, right?

19  A.        Yes.

20  Q.        Okay.  And do you know if, prior to this time

21  frame, in December 2022, January 2023 time frame, do

22  you know if the sales team of Artsana had communicated

23  to anyone at buybuy Baby about the possibility of

24  stopping shipments?

25  A.        Do I know of any other time than this e-mail?
```

1   Q.        Prior to.

2   A.        I'm not aware.

3   Q.        Let's turn to Tab 6, if you don't mind?

4   A.        Yep.

5   Q.        Second page is the first e-mail on this

6   e-mail chain.  Here we have a person named Jane Wang.

7   Do you know what her role was with Artsana?

8   A.        Yes.

9   Q.        What was it?

10  A.        She was -- I believe she's in logistics and

11  operations at Caben Asia Pacific.

12  Q.        Okay.  Then let's turn to the next e-mail up,

13  which starts on the first page on the bottom from Mr.

14  Rubin, where he says, Unfortunately, we need to ask you

15  to halt/stop shipment on the buybuy Baby orders.  Do

16  you see that?

17  A.        Yes.

18  Q.        He continues on, Please do whatever you can

19  to hold the remaining shipments.  Until we find out

20  further information about their financial status we

21  will not be shipping.  Please follow up with us to let

22  us know the status of the remaining shipments.  Do you

23  see that?

24  A.        Yes.

25  Q.        So what -- what is the significance of Mr.

Thomas Szulazewski
September 29, 2025

 1   Rubin communicating this to Ms. Wang?  Why does this

 2   need to be communicated to Ms. Wang?

 3   A.       Why does it?  We made a decision to stop

 4   shipping.

 5   Q.       Who made the decision?

 6   A.       I'm sure ultimately I did.

 7   Q.       Okay.  So you made the decision to stop

 8   shipments to buybuy Baby around this time, correct?

 9   A.       Yes.

10   Q.       And then Mr. Rubin communicated that decision

11   to Ms. Wang?

12   A.       Yes.

13   Q.       And, in other words, Caben was being informed

14   to stop shipments?

15   A.       Yes.

16   Q.       Is that essentially what is happening here?

17   A.       Yes.

18   Q.       Would that include the orders that are

19   referenced in Ms. Wang's January 5th e-mail, which is

20   the first e-mail that we looked at in this chain.

21   A.       It appears so.

22   Q.       Do you recall the -- when a decision was made

23   by you on your team to officially stop shipments on all

24   buybuy Baby orders?

25   A.       No.

Thomas Gruszowski
September 29, 2025

1  Q.        But you agree that that did in fact happen,

2  correct?

3  A.        Yes.

4  Q.        And then the first e-mail in this chain, or

5  the most recent e-mail, is this Ms. Wang communicating

6  the status of buybuy Baby orders?

7  A.        Yes.

8  Q.        Okay.  Please turn to Tab 8 -- or Tab 7.  I

9  think you alluded to previously there being third party

10  shippers that are involved in delivering the product

11  from Artsana to buybuy Baby, correct?

12  A.        Yes.

13  Q.        Is J.B. Hunt one of those?

14  A.        I'm not sure.

15  Q.        I'm going to move on from that one.  Let's go

16  to the next tab, Tab 9.  So this -- the date of this

17  e-mail, Tab 9, is January 10th, which is, I think, the

18  day after the e-mail from Mr. Rubin to Ms. Wang that we

19  were just looking at.  And this is an e-mail from Mr.

20  McLaughlin to the buybuy Baby team, correct?

21  A.        The same team, yes.

22  Q.        Okay.  And what is the -- what is the general

23  purpose of Mr. McLaughlin's e-mail here that we're

24  looking at?

25  A.        He's informing them of a prepayment term

Thomas Skulazowski
September 29, 2025

1   effective immediately.

2   Q.        So this is different from the communication

3   that we were just looking at about stopping shipments.

4   This is about changing the terms of payment moving

5   forward in the parties' relationship, correct?

6   A.        Yes.

7   Q.        Did a change to the parties' contract take

8   place to memorialize this change in payment terms?

9   A.        I'm not sure.

10  Q.        Do you recall if you or someone on your team

11  looked at the parties' contract to confirm if this was

12  something that can be effectuated by e-mail, or if it

13  needed to be more formally carried out?

14  A.        I don't know.

15  Q.        So earlier I was asking you if you recalled

16  making a decision to stop shipments, right?  Do you

17  recall me asking about that?

18  A.        Yes.

19  Q.        And I think, more or less, I think you said

20  you don't specifically recall.  Is that right?

21  A.        Yes.

22  Q.        What about the decision to move to prepay, do

23  you recall making that decision?

24  A.        Yes.

25  Q.        What do you remember about making that

Thomas Gruszowski
September 29, 2025

```
 1   decision?

 2   A.        Generally, reviewing our options and coming

 3   to a decision.  I don't remember the discussion or the

 4   meetings.

 5   Q.        What was it about the status of Artsana's

 6   relationship with buybuy Baby at that time that caused

 7   you to decide, we've got to prepay?

 8   A.        There's not one thing.  It's a business

 9   decision that, you know, we have to make based on all

10   the information, all the facts, everything we know.

11   Q.        What were some of the factors that you recall

12   considering in making the decision to move to prepay?

13   A.        Lack of communication, lack of information,

14   lack of responsiveness.  And obviously lack of payment

15   with past dues.

16   Q.        What was the lack of information you felt

17   like Artsana was experiencing?  Was it --

18   A.        We're asking for information and there's no

19   response for weeks.

20   Q.        Was it a lack of information as far as when

21   buybuy Baby expected to make payment?  Or was it

22   failing to provide you with any information in

23   particular beyond that?

24   A.        I mean generically, it's lack of response.

25   In a business relationship, you know, if you're not
```

Thomas Gruszowski
September 29, 2025

1    communicating, that's a poor -- that's a poor

2    relationship.

3    Q.        Do you recall having a feeling, or do you

4    recall knowing about how much time had transpired

5    around this time that there had been a failure of

6    communication with buybuy Baby?

7    A.        Not exactly.  I mean, no.

8    Q.        Did you feel, at this particular time, in

9    January of 2023, that you knew who the point of contact

10   at buybuy Baby should be?  In other words -- let me

11   rephrase.  Did you have a feeling like you weren't sure

12   who to communicate with buybuy Baby to get your

13   invoices paid, around this time?

14   A.        No.

15   Q.        Who did you think you should be communicating

16   with around that time?

17   A.        In a normal world we -- we multi prong

18   communicate.  In other words, you communicate with

19   finance ops separately and sales team at another prong.

20   So you -- you try to communicate with all the avenues

21   that are available.

22   Q.        Okay.  We've seen correspondence with people

23   on the sales side, I think.  Chrissy DiBella, Chad

24   Taylor, for example, correct?

25   A.        Yes.

Thomas Szuszowski
September 29, 2025

```
1    Q.         Who do you recall would be the point of

2    contact for buybuy Baby on the finance side?  Was that

3    Brian Cashman?

4    A.         I'm not sure who that is.

5    Q.         Remember Brian Cashman at BRG?

6    A.         Yes.

7    Q.         We were looking at his e-mails before.  Was

8    that an example of someone on the finance side for

9    buybuy Baby?

10   A.         Yes.

11   Q.         Okay.  Do you recall if you had any -- if you

12   gave buybuy Baby any advance notice that Artsana was

13   considering moving to prepay ahead of sending this

14   e-mail to buybuy Baby?

15   A.         I'm unaware of that.

16   Q.         Do you recall if -- let me back up.  I

17   remember you saying that for the five years prior the

18   parties' payment terms were Net 60, correct?

19   A.         I believe so.  Yes.

20   Q.         And so, in other words, they were never

21   prepay?

22   A.         Yes.

23   Q.         And do you -- was there any point in the

24   parties' relationship, and I understand you haven't

25   looked back 20 years, I don't expect you to have, but
```

Thomas Gruszowski
September 29, 2025

1   are you aware of any time in the parties' relationship,

2   prior to 2023, where Artsana asked buybuy Baby to ship

3   to prepay for goods?

4   A.        Not that I'm aware.

5   Q.        Would it be surprising to you if there was

6   such a prior incident where buybuy Baby was on prepay

7   terms?

8   A.        Yes.

9   Q.        And at the time of the relationship between

10   Artsana and buybuy Baby, is it the case that buybuy

11   Baby was one of Artsana's top three customers?

12   A.        Yes.

13   Q.        With respect to the other two, and I'm not

14   asking you to name them, but had Artsana shifted the

15   payment terms of those other two top customers to

16   prepay at any time?

17   A.        No.

18   Q.        Do you recall what, if any, response buybuy

19   Baby gave to Artsana upon learning that its payment

20   terms were being moved to prepay?

21   A.        No.

22   Q.        Did you have any direct communication, either

23   by e-mail or phone, with an employee or representative

24   of buybuy Baby about the prepayment payment terms?

25   A.        I don't recall.

Thomas Gruszowski
September 29, 2025

1   Q.        Do you recall if a member of your team

2   informed you about a call or e-mail that they would

3   have had with buybuy Baby about specifically shifting

4   to prepay?

5   A.        I don't recall.

6   Q.        If you could move to Tab 10.  So this is -- I

7   don't think we need to go through the whole thing, but

8   I will represent to you that this is e-mail

9   correspondence of Schneider.  Was Schneider one of the

10  third party ship -- like shipping companies that the

11  parties used to deliver product?

12  A.        I believe so.  Yes.

13  Q.        And do you happen to know, on the first page

14  here, one of the Artsana employees is Amy Cruz.  Do you

15  happen to know her role with Artsana?

16  A.        She's a warehouse clerk.

17  Q.        Okay.  And do you know what the e-mail

18  address tmsne@bedbath.com refers to?

19  A.        No.

20  Q.        What about at the bottom of the first page,

21  there's an e-mail address stmbbby@scheider.com.  Do you

22  know what that e-mail address refers to?

23  A.        No.

24  Q.        Do you know if Schneider was one of the

25  companies that was involved in the shipment of product

1    of Artsana's to buybuy Baby?

2    A.          I believe so.  Yes.

3    Q.          Okay.  Let's move to Tab 11.  Are you

4    familiar with the company Yusen?

5    A.          No.

6    Q.          Y-U-S-E-N, you're not familiar with them?

7    A.          No.

8    Q.          What about Yusen Logistics?

9    A.          No.

10   Q.          Let's move on.  Tab 12, please.  This is a

11   one page e-mail exchange exhibit.  Do you recall that

12   we were just recently looking at a communication

13   involving a shift to prepay that -- that e-mail was

14   dated January 10th, do you recall that?

15   A.          Yes.

16   Q.          And then this particular exhibit on tab 12 is

17   on -- this e-mail is also dated January 10th.  And I'm

18   looking at the bottom half of this first page here.  Do

19   you see that?

20   A.          Yes.

21   Q.          Mr. McLaughlin is writing to other members of

22   your team, notifying them that he had a recent call

23   with Chad Taylor of buybuy Baby and -- or on the

24   subject of shifting to prepay going forward.  Is that a

25   fair characterization of this e-mail?

1    A.        Yes.

2    Q.        So is it the case that the decision to shift

3    to prepay was -- was a decision that you communicated

4    -- you personally communicated to Mr. McLaughlin and

5    then he informed the rest of your team?

6    A.        Well, collaborative decision making, I'm

7    sure.

8    Q.        As far as --

9    A.        What's the question?  Who made the decision?

10   Or?

11   Q.        I'm wondering -- I'm basically wondering --

12   I'm assuming, based on this e-mail, that the folks on

13   this team were not aware -- may not have known for sure

14   that the shift to prepay was happening until Mr.

15   McLaughlin informed them of such by this e-mail.  Is

16   that right or is that not right?

17   A.        I have no idea.

18   Q.        Okay I'm just trying to get a sense of

19   whether this was something where Mr. McLaughlin

20   communicated with you about it and then he communicated

21   to the rest of the team about it?  Or is that not what

22   transpired here?

23   A.        I'm not sure of the timing.

24   Q.        Okay.  I guess I misspoke, because there's a

25   second page to this exhibit.  But that is an e-mail

Thomas Gruszowski
September 29, 2025

```
 1   that we already reviewed.  Let's move to Tab 13.  Mr.

 2   Pahl is writing to you, Patrick Smith and Mr. Colombo

 3   on January 11th in this e-mail exchange.  Do you see

 4   that?

 5   A.        Yes.

 6   Q.        DI -- it says -- the subject is Open DI PO's.

 7   What is DI referring to, Domestic Import?

 8   A.        Direct import.

 9   Q.        Direct Import.  Is that domestic import?  Or

10   what is that?

11   A.        Direct import.  FOB.

12   Q.        FOB?

13   A.        It's synonymous with FOB.  There's

14   different --

15   Q.        I understand.

16   A.        -- ways to describe it, let's say.

17   Q.        Do you know who, or what role, I should say,

18   Patrick Smith and Pietro Colombo serve in Artsana?

19   A.        They're in our procurement demand planning

20   department.

21   Q.        So what is their relationship, as far as

22   buybuy Baby is concerned?  What do they do?

23   A.        Think manage product flow.

24   Q.        Why, if you know, is Mr. Pahl asking for

25   copies of purchase orders that are not to be shipped
```

Thomas Grzazowski
September 29, 2025

1   here?

2   A.          I don't know.  He's in sales.  He wants to

3   know maybe what's not shipping.  What's shipping.

4   Q.          And do you know if there was anything

5   shipping by Artsana to buybuy Baby at this time?

6   January 11th, 2023.

7   A.          I don't know.  I mean, maybe that's, I'm

8   guessing, what he's trying to determine.

9   Q.          All right.  Please turn your attention to the

10  next tab, which is Tab 14.  Now we're about a week

11  after the January 10th prepay notice and, I think it

12  was, January 9th stop shipment notice.  This is January

13  18th.  Mr. McLaughlin's writing to John Dery and Chad

14  Taylor.  By the way, do you know who John Dery is?

15  A.          I do not.

16  Q.          The subject is buybuy Aging, and he's --

17  looks like he's sending an Artsana Aging Report.  At

18  least he's referring to one.  Is that right?

19  A.          Yes.

20  Q.          We are currently close to 3 million in past

21  due invoices.  So you and I were talking about a

22  reference to an outstanding past due balance of

23  something like -- something over $200,000.  Do you

24  remember that?

25  A.          In this specific e-mail, yes.

Thomas Szlazdowski
September 29, 2025

```
 1   Q.        Yes.  And that was probably in December of

 2   2022, I think is when we saw that.  But this number

 3   here is considerably higher, correct?

 4   A.        Yes.

 5   Q.        So do you recall this point in time and do

 6   you recall watching the past due balance, more or less,

 7   balloon from 200,000 to 3 million?

 8   A.        Do I recall watching it?

 9   Q.        Well --

10   A.        This is not -- I mean, I don't watch it.

11   Q.        Well, do you recall this taking place?  Did

12   you have any reaction, around this time, to this

13   obvious ballooning of past due balance on the part of

14   buybuy Baby?

15   A.        When you say ballooning, it doesn't -- we can

16   ship $3 million in one week and 75 days, or 60 days

17   prior -- you have to understand how the business

18   operates.  It can -- that can be one week's worth of

19   the shipments.  So it doesn't all of a sudden balloon.

20   It trends and it doesn't just switch from 200 to 3

21   million.  It doesn't work that way.  Significant

22   shipments cause, you know, significant dollars.

23   Q.        Do you know if -- it says currently close to

24   3 million, so I guess it's slightly under 3 million.

25   But do you know if, this point in time, right, we know
```

1   at this point in time past dues are close to 3 million.

2   Do you know if that is the highest past due balance

3   that buybuy Baby has had outstanding to Artsana in

4   their relationship?

5   A.          I have no idea.

6   Q.          Is that -- in your opinion, is that figure,

7   close to 3 million in past dues, is that figure higher

8   than what you would deem to be typical of the buybuy

9   Baby/Artsana relationship?

10  A.          I have no idea.

11  Q.          And then Mr. McLaughlin says, his second

12  sentence or third sentence, he says, I know last week

13  this was brought up on your end.  Can you please

14  provide an update on payment?  Do you know what he's

15  referring to, "I know last week this was brought up on

16  your end", was there some sort of call or meeting

17  between the two?

18  A.          I don't know.  I don't know what he's

19  referring to, to be honest with you.

20  Q.          Okay.  And by the way, have you had a chance

21  to communicate with Mr. McLaughlin, between the time

22  that the Plan Administrator's lawsuit was filed and

23  today, about buybuy Baby?

24  A.          No.

25  Q.          Okay.  So then the first e-mail, which is the

Thomas Gruszowski
September 29, 2025

```
 1    top of this page, it's from Mr. Taylor in response to

 2    Mr. McLaughlin.  He says, We, merchant team, have given

 3    the green light and prioritize weekly payments in both

 4    the domestic and DI sides.  Those are the two different

 5    import scenarios you were experiencing earlier,

 6    correct?

 7    A.        Yes.

 8    Q.        So he mentions prioritizing weekly payments.

 9    Do you know if one side or the other, referring to

10    Artsana and buybuy Baby, suggested the idea of making

11    weekly payments?

12    A.        Suggested?  No.  I think that's probably

13    their classic payment method.  I'm fairly certain.

14    That's the way it had consistently happened in

15    pasttimes.

16    Q.        Okay.  So your understanding is that buybuy

17    Baby would generally pay on a weekly basis?

18    A.        I believe it was typical.  I don't think it

19    was absolute, let's say.

20    Q.        But it's also the case, at this point in

21    time, January 18th, that it had been a few weeks, at

22    least, since any payment had been made, is that

23    correct?

24    A.        I believe so.

25    Q.        All right.  Let's refer to Tab 15.  It's a
```

Thomas Gruszowski
September 29, 2025

```
 1   one page exhibit.  And now we're in the end of February

 2   2023.  Ms. DiBella, at the bottom of this page, is

 3   e-mailing Mr. Pahl.  The subject is This Week's Order

 4   and Payment, do you see that?

 5   A.        Yes.

 6   Q.        And there's a reference to an ACH payment.

 7   Do you see that, in the table?

 8   A.        Yes.

 9   Q.        Do you know what that payment is referring

10   to?  What that references?

11   A.        Yes.

12   Q.        What is that payment?

13   A.        As stated, about a million in new orders and

14   500 in change in repay, as they called it.

15   Q.        And is that the same payment that we were

16   reviewing at the beginning of our deposition, the end

17   of February, the $1.6 million payment?

18   A.        I believe so, yes.

19   Q.        The number is slightly different, but it's

20   about the same.  Is it your understanding that that is

21   referring to -- that this e-mail is referring to the

22   same payment that was ultimately made at the end of

23   February 2023 for 1.6?

24   A.        Yes.

25   Q.        There was no other $1.6 million payment
```

1   around that time, is that fair?

2   A.        No.

3   Q.        All right.  So middle of January, the last

4   exhibit, we're seeing a reference to a $3 million past

5   due balance.  What I'm not seeing in that e-mail

6   discussion is any information about how that balance

7   was going to be paid or paid down.  And now here we

8   are, at the end of February 2023, where buybuy Baby is

9   confirming a payment is going to be made that at least

10  is paying, in part, its past due balance, correct?

11  A.        Yes.

12  Q.        And is also making a payment for new orders,

13  correct?

14  A.        Yes.

15  Q.        So what transpired, based on your

16  recollection and your review of documents in

17  preparation for today, between the middle of January

18  and the end of February, to cause -- to allow this

19  payment by buybuy Baby to be made?

20  A.        What transpired?

21  Q.        Yeah.  How did this come to be?  Were there

22  communications by you or a member of your team with

23  buybuy Baby?  Were there calls?  Were there meetings?

24  A.        I don't recall exactly what was happening,

25  but I'm sure we had calls with their merchant team to

Thomas Gruszowski
September 29, 2025

1   make this happen.

2   Q.        Would it have been --

3   A.        Chad.

4   Q.        -- Chad Taylor?  Would that have been the

5   point of contact at this time?

6   A.        I don't recall if it was him or Chrissy.

7   They both -- Chrissy DiBella was on the merchant team.

8   Chad was on the merchant team.  He may have left by

9   then.  There was some transition in that team.  So I

10  don't know exactly who it was with, but it would have

11  been, more than likely, one of those two people.

12  Q.        And who, primarily, on your team was doing

13  the communicating with those individuals at this time?

14  A.        Steve McLaughlin.

15  Q.        So were there -- were there negotiations

16  taking place between the two?

17  A.        I don't -- I wouldn't characterize it as

18  negotiations.  Let's -- you need product, we have

19  product.  Let's figure out a way to make it happen.

20  I'm sure that was the crux of the discussion.

21  Q.        So your recollection is that buybuy Baby was

22  communicating a desire for new product, right?

23  A.        Yes.

24  Q.        And is it also the case that Artsana was

25  communicating its desire to get paid on its past due

Thomas Gruszowski
September 29, 2025

```
 1   outstanding sum?

 2   A.        Yes.

 3   Q.        And is it your understanding that Artsana

 4   communicated to buybuy Baby that in order to get new

 5   product from us, you will need to pay down part of your

 6   past due balance?

 7   A.        I don't think that there was a

 8   characterization of what you're saying.  This sort of

 9   blackmail of you have to do this.  But let's work

10   together to pay some of this balance.  And you need new

11   product, so let's figure out a way to have that happen

12   too on your side.

13   Q.        Were the discussions regarding providing new

14   product occurring at the same time as the discussions

15   about making a payment on the past due balance?

16   A.        I don't -- I don't know.

17   Q.        Were -- were those communications both

18   happening?

19   A.        I mean, I wasn't involved in the actual

20   communications, so I don't know exactly what was talked

21   about.  But you can see the result of the discussion.

22   Q.        And do you recall meeting with Mr.

23   McLaughlin, either in person, by phone, or e-mail, to

24   talk about, both, providing new product and getting

25   paid on the past due balance?
```

Thomas Gruzdowski
September 29, 2025

1   A.        Not specifically.

2   Q.        Do you recall meeting or speaking with Mr.

3   McLaughlin about one or the other?  Meaning, either

4   providing new product or collecting payment on past

5   dues?

6   A.        Again, not specifically.

7   Q.        But more generally, do you believe that such

8   a meeting or conversation with Mr. Mc -- between Mr.

9   McLaughlin and yourself did take place around this

10  time?

11  A.        I'm sure we had some types of discussion.  I

12  just can't recall exact verbiage or what was spoken.

13  Q.        Do you know -- okay.  Let me back up.  Is it

14  correct that Artsana agreed to provide new product at a

15  cost to the customer, buybuy Baby, of around $1

16  million?

17  A.        Yes.  That's what the e-mail says.

18  Q.        So do you recall how Artsana reached the

19  decision that it was comfortable providing about $1

20  million of new product to buybuy Baby at this time?

21  A.        No.

22  Q.        What about the past due partial payment of a

23  little over $500,000, do you recall how that sum was

24  determined?

25  A.        No.

Thomas Szczepowski
September 29, 2025

1    Q.        Do you know if Mr. McLaughlin, or someone

2    else on your team, had specific discussions with buybuy

3    Baby about what amount was to be paid on past dues?

4    A.        No.

5    Q.        Do you believe that that number was a

6    completely arbitrary number?  Or do you recall there

7    being some sort of discussion of -- that -- that

8    resulted in that specific amount being paid?

9    A.        I don't think it's arbitrary, but I'm sure it

10   came from buybuy's side.

11   Q.        And in other words, do you believe that

12   buybuy Baby determined how much it was going to pay?

13   A.        Yes.

14   Q.        You'll notice that the new orders cost here

15   showing as 1,065,040 is twice the amount of the past

16   due payment, 532,520.  Do you see that?

17   A.        Simple math says approximately, yes.

18   Q.        Do you recall discussing, or reviewing, that

19   concept of basically a -- a 2 for 1 sort of ratio?

20   A.        No.

21   Q.        You don't recall that being part of this

22   arrangement?

23   A.        I don't.

24   Q.        When you were preparing for this deposition,

25   did you have the opportunity to speak with any of the

1   other members on your team that are appearing on these

2   e-mails, as far as the buybuy Baby relationship goes?

3   A.        I speak to them every day.  About buybuy?

4   Q.        Yeah.  So specifically --

5   A.        No.

6   Q.        -- did you speak to anyone on your team to

7   help you in preparing for today?  Whether maybe it was

8   helping to refresh your recollection about things?

9   A.        Yes.

10  Q.        Okay.  And did you speak to anyone on your

11  team specifically about this payment that is at issue

12  in this litigation, the $1.6 million payment?

13  A.        Yes.

14  Q.        And in those discussions did anyone convey to

15  you that they recalled how the amount was determined,

16  or -- or, you know, the prepay versus past due payment?

17  How that was determined?  Anything like that?

18  A.        No.

19  Q.        Did they communicate to you that they

20  couldn't remember?  Or you just didn't go to that level

21  of detail with your team, in preparation for today?

22  A.        To be honest, they weren't involved.  The

23  person involved is no longer -- two people involved are

24  no longer with the company.

25  Q.        Who is that?

Thomas Gruzdowski
September 29, 2025

```
 1   A.        The controller, the prior controller, and the

 2   VP of sales.

 3   Q.        Mr. McLaughlin?

 4   A.        Steve McLaughlin and Greg Obetz.

 5   Q.        Okay.  Do you know where Mr. Obetz is now?

 6   A.        Yes.

 7   Q.        Where is he?

 8   A.        I don't think I should be giving you that

 9   information.  You can find it out, but.

10   Q.        Oh, is it --

11   A.        He's local, but.

12   Q.        Okay.  But he serves a similar role in a

13   different company?

14   A.        Yes.

15   Q.        Since when?

16   A.        I can't recall.  Several years ago.

17   Q.        Okay.  And then Mr. McLaughlin, where is he,

18   do you know?

19   A.        Again, I'm not going to give his personal

20   information out.

21   Q.        Is he working for a company in a similar

22   role?

23   A.        Yes.

24   Q.        Did you have a chance to talk with Josh Pahl

25   or Steve Rubin in preparation for today?
```

1   A.          Steve Rubin, yes.

2   Q.          And did you speak to him specifically about

3   this payment and how the amounts were determined, or

4   anything like that?

5   A.          No.

6   Q.          What is your belief as to why it took about

7   -- well, from January to the end of February, so you

8   recall January 10th was around the time that Artsana

9   informed buybuy Baby about the shift to prepay,

10  correct?

11  A.          Around January 10th?

12  Q.          Yes.

13  A.          Yes.

14  Q.          What is your belief as to why five or six

15  weeks went by between the notice of the prepay and the

16  actual prepay payment?  Why -- why did it take six

17  weeks for buybuy Baby to make a prepayment?

18  A.          I have no idea.

19  Q.          Did buybuy Baby communicate to you, or your

20  team, as far as you know, whether it was intending to

21  make a prepayment and or why it took five or six weeks

22  to make a prepayment?

23  A.          I don't recall that.

24  Q.          Okay.  Can you turn to Tab 16.  So if you go

25  to the last page of this exhibit.  Sorry, second to

1   last page.  It's the first e-mail from Mr. Pahl to Ms.

2   DiBella and Ms. Shoots.  Was Ms. Shoots also a member

3   of the sales team?

4   A.        Yes.

5   Q.        Sorry, the buy time for buybuy Baby?

6   A.        Yes.

7   Q.        You'll see that Mr. Pahl's referring to a

8   call on Friday, February 17th.  So that's prior to the

9   prepayment, right?

10  A.        Yes.

11  Q.        Do you know what they're discussing on

12  February 17th?

13  A.        In this call he's referring to?

14  Q.        Yes.

15  A.        No.

16  Q.        If you cycle through this e-mail chain, if

17  you wouldn't mind doing that and reading the

18  correspondence and then I'll ask you if that helps you

19  to better understand what discussions the parties were

20  having in the days leading up to the prepayment.

21  A.        Can you restate the question, please?

22  Q.        Yeah.  I'm just wondering what communications

23  -- so earlier I was asking you what was transpiring,

24  essentially, between the notice of the prepay on

25  January 10th and then the actual occurrence of the

Thomas Gruszowski
September 29, 2025

```
 1   prepay on February 27th.  And here we have, in this
 2   last tab, some e-mail correspondence that was taking
 3   place in mid February.  I'm just -- I'm asking you to
 4   sort of summarize the nature of the communications
 5   between the two parties prior to the prepayment, based
 6   on what you're seeing in this Tab 17?
 7   A.          You want my opinion on what was going on back
 8   and forth here?
 9   Q.          And by the way, just to clear the record,
10   it's Tab 16.  Yes.
11   A.          So it looks like the sales teams on each
12   side, the buying and merchant team on buybuy and our
13   sales team were trying to understand if we were going
14   to have an order, and, if so, what was going to be in
15   that order.  The items.  So I'm sure they're looking at
16   what types of products and what quantities they were
17   going to buy on the prepayment, whenever that came
18   about.  But there's lots of, obviously, back and forth
19   about the payment, the orders, the items, et cetera.
20   Q.          So, essentially, this was sort of planning
21   for the -- in the event that a prepayment was made and
22   the goods were being shipped, is that correct?
23   A.          It appears to be that, yes.
24   Q.          I think you already confirmed this, but
25   following the prepayment, new goods were in fact
```

Thomas Gnazowski
September 29, 2025

```
 1  provided by Artsana to buybuy Baby, correct?

 2  A.        Yes.

 3  Q.        Are you aware that Artsana filed a claim in

 4  the bankruptcy case in the amount that was unpaid?

 5  A.        Yes.

 6  Q.        Do you recall approximately how much Artsana

 7  believes it is owed by the bankruptcy estates for Bed

 8  Bath & Beyond and buybuy Baby?

 9  A.        I think the claim was for around 6 million, I

10  believe.

11  Q.        Yeah, I don't have it in front of me.  It's

12  okay if you don't know it.  But I thought I saw a claim

13  that was filed by Artsana for something like 800,000.

14  A.        Yeah.

15  Q.        And then I also saw a $6 million claim.  Do

16  you know why there's --

17  A.        Well, there are -- because Caben Asia Pacific

18  and Artsana USA, Incorporated, one was shipping

19  domestically, one was shipping direct import FOB.  So

20  that's why those claims combined, in my mind, are

21  approximately 6 million.

22  Q.        Okay.

23            MR. BROWN:  Why don't we go ahead and

24            take a short break.  Let's go off the record.

25                         *   *   *
```

Thomas Gruzalowski
September 29, 2025

```
 1                    (Whereupon, a short break was taken.)

 2                           *    *    *

 3    BY MR. BROWN:

 4    Q.        So I wanted to ask you, you had said you've

 5    been president or CEO at Artsana for the last eight

 6    years, is that about right?

 7    A.        Yes.

 8    Q.        Prior to that, what was your role of the

 9    company?  Or were you somewhere else?

10    A.        I was CFO for the previous 14 years,

11    approximately.

12    Q.        Have you worked for another company similar

13    to Artsana at any point?

14    A.        No.

15    Q.        Now, the e-mail communications that we've

16    been reviewing today have primarily covered a period of

17    December 2022 to February 2023, does that sound right?

18    A.        Yes.

19    Q.        During that time, or immediately prior to

20    that time, what, if any, efforts were you taking to

21    determine buybuy Baby's financial status as a going

22    concerned company?

23    A.        What was I doing personally?

24    Q.        Were you --

25    A.        In my role?  Please.
```

Thomas Szczawski
September 29, 2025

1    Q.        Yeah.  I mean that's where I'm going with it.

2    In your role, were you taking any efforts to

3    understand, for example, if there were any -- if the --

4    the fact that buybuy Baby had this past due balance

5    with Artsana was part of a bigger problem that buybuy

6    Baby was experiencing with its overall financial

7    status?

8    A.        In my opinion?  I mean, I'm not an expert in

9    finance -- public companies financials, but, I mean, of

10   course I was reviewing and looking at information, you

11   know, both internal and external.

12   Q.        What sort of information were you looking at

13   to try to understand what buybuy Baby was -- was going

14   through?

15   A.        Well, I mean, public information that was

16   available, from an external standpoint.  And internal,

17   our classic, you know, analysis of, whether it's, you

18   know, weekly reporting or monthly reporting, of their

19   -- of all of our customers' accounts receivable status.

20   Q.        And do you recall, the end of 2022, early

21   2023 time frame, we touched on it a little bit, right.

22   With some of the numbers we saw past dues were over

23   200,000 at one point to approaching 3 million at one

24   point.  So is that an example of the sort of internal

25   receivables monitoring you were undertaking or your

1  team was undertaking to understand buybuy Baby's

2  financial status?

3  A.        I mean, you're using two very specific time

4  frames but it was fairly common and consistent to

5  review receivables at a high level in my position.

6  Q.        I would think so.  And then from a public

7  information perspective, what -- let me ask, where do

8  you typically go to find publicly available information

9  about a customer, for example?

10 A.        Online publications.  Specifically, Wall

11 Street Journal, things of that nature

12 Q.        FCC filings, for example?

13 A.        They're available.  I would access those, on

14 occasion, on some of our customers that are public and

15 also competitors.

16 Q.        Now, do you recall accessing Wall Street

17 Journal articles, or similar type articles, and/or FCC

18 filing information regarding buybuy Baby around the end

19 of 2022 or early 2023, specifically?

20 A.        Not specifically, no.

21 Q.        Do you recall, in or around the time of the

22 decision to shift to prepay, that you felt like you had

23 an understanding as to buybuy Baby's overall financial

24 well-being?

25 A.        No.

Thomas Szarzowski
September 29, 2025

```
 1    Q.        You don't recall having an understanding one

 2    way or the other about it?

 3    A.        I wouldn't have an understanding of their

 4    internal financial picture, no.

 5    Q.        Well, what about their financial picture as,

 6    can they, from publicly available information?

 7    A.        I mean, I'm reading information just like

 8    everyone else and have to make a determination for our

 9    company.

10    Q.        So there is -- if there is an article on a

11    customer like buybuy Baby about them undergoing or --

12    or suffering from financial distress, if there was such

13    an article that was published by a well known

14    publication like the Wall Street Journal, or New York

15    Times, or something like that, is that something that

16    would likely not have escaped you?

17    A.        Remember, this is Bed Bath & Beyond, so

18    you're -- you're speaking about buybuy, but those

19    publications wouldn't have determined -- they would say

20    Bed Bath & Beyond.  So there was very little

21    information about the subset of buybuy.  But, in

22    general, the is, yes, that wouldn't have escaped me.

23    Q.        And you would have been looking out for -- or

24    interested in articles about Bed Bath & Beyond, not

25    just buybuy Baby, correct?
```

Thomas Gruszowski
September 29, 2025

```
 1   A.        Yes.

 2   Q.        Did -- did Artsana have a credit -- like a

 3   credit line set up with buybuy Baby?  In other words,

 4   was there a certain ceiling, as far as the amount of

 5   past dues that -- like a credit limit?

 6   A.        No.

 7   Q.        There was no credit limit in place?

 8   A.        No.

 9   Q.        Okay.  Okay.  So those are all the questions

10   I have on direct.  I'll invite your attorney to ask any

11   questions he may have at this time.

12   A.        Sure.

13             MR. FALK:  I just have little lines of

14             clarification.

15                         *   *   *

16                      EXAMINATION

17                         *   *   *

18   BY MR. FALK:

19   Q.        So I want to get real specific about the

20   concept of past due.  When -- when you say good amount

21   is past due, what exactly does that mean?

22   A.        The definition is determined based on terms

23   in the system.  As -- as we talked about, Net 60 means

24   60.  Past due is 61, technically.  So when reports come

25   out they specifically delineate between, you know, 61
```

```
1    is past due, you know, when you're looking at a report,

2    and so on.  So past due is just dictated by the terms

3    driven by the system.

4    Q.        And earlier we discussed a December 2022

5    e-mail that mentions $200,000 was past due.  Do you

6    recall that?

7    A.        Yes.

8    Q.        And so at the time of that e-mail, $200,000

9    was unpaid for more than 60 days from the invoice date,

10   correct?

11   A.        I believe so, yes.

12   Q.        And there could have been some other amount

13   that had been invoiced, but 60 days since invoicing had

14   not yet passed?

15   A.        Yes.

16   Q.        And that amount could have been maybe a

17   million dollars or more, correct?

18   A.        Yes.

19   Q.        And if -- if that's the case, a week or two

20   goes by and that million dollars could have then become

21   past due?

22   A.        Yes.  Easily.

23   Q.        And I want to understand the sort of orders

24   throughput between these two companies.  Over the

25   course of a month, would it have been unusual for the
```

1  Bed Bath companies to order a million dollars worth of

2  product from Artsana?

3  A.        No.  Not unusual.

4  Q.        Would it have been unusual for them to order,

5  say, less than $200,000 from Artsana in a month?

6  A.        Yes.

7  Q.        So a $200,000 past due like we were

8  discussing, that represents, likely, a portion of a

9  month's worth of the orders?

10  A.        A very small portion.

11  Q.        I see.  And you testified earlier that, at

12  the start of the relationship between these companies,

13  in say 2003, Artsana was offering a smaller collection

14  of products, correct?

15  A.        Yes.

16  Q.        And then that collection expanded over time

17  as Artsana began to offer more products?

18  A.        Yes.

19  Q.        And between, say, the beginning of 2022 and

20  the bankruptcy filing date in April 2023, did Artsana

21  start offering the -- many new products?  Or was it

22  really already in its, sort of, final form in the

23  beginning of 2022?

24  A.        In the same form.

25  Q.        So there wasn't meaningful relationship

Thomas Gruszowski
September 29, 2025

1    expansion between 2022 and 2023 in this business

2    relationship?

3    A.       Correct.

4    Q.       I have no further questions.

5             MR. BROWN:  Neither do I.  That

6        concludes our deposition.  Thank you very

7        much.

8             THE COURT REPORTER:  Counsel, please

9        put your transcript order on the record.

10            MR. BROWN:  Yes.  Electronic.  No rush.

11            MR. FALK:  Same.

12                      *    *    *

13            (Witness excused.)

14                      *    *    *

15            (Whereupon, the deposition was concluded

16        at 11:09 a.m.)

17

18

19

20

21

22

23

24

25

Thomas Grudzowski
September 29, 2025

```
 1              C E R T I F I C A T I O N

 2

 3              I, Lisa M. Cooper, a Court Reporter and

 4     Notary Public, do hereby certify the foregoing to

 5     be a true and accurate transcript of my original

 6     stenographic notes taken at the time and place

 7     hereinbefore set forth.

 8              Witness my hand and official seal this

 9     29th day of September A.D. 2025.

10

11

12

13

14                  Lisa M Cooper

15              -------------------------------
                Lisa M. Cooper
16              Court Reporter and Notary Public

17

18

19

20              (The foregoing certification of this

21     transcript does not apply to any reproduction of

22     the same by any names, unless under the direct

23     control and/or supervision of the certifying

24     reporter.)

25
```

---

**Exhibits**

EX 0001 PWMK
Artsana USA,
  In 092925
EX 0003 PWMK
Artsana USA,
  In 092925
EX 0004 PWMK
Artsana USA,
  In 092925
EX 0005 PWMK
Artsana USA,
  In 092925
EX 0006 PWMK
Artsana USA,
  In 092925
EX 0008 PWMK
Artsana USA,
  In 092925
EX 0009 PWMK
Artsana USA,
  In 092925
EX 0010 PWMK
Artsana USA,
  In 092925
EX 0011 PWMK
Artsana USA,
  In 092925
EX 0012 PWMK
Artsana USA,
  In 092925
EX 0013 PWMK
Artsana USA,
  In 092925
EX 0014 PWMK
Artsana USA,
  In 092925
EX 0015 PWMK
Artsana USA,
  In 092925
EX 0016 PWMK
Artsana USA,
  In 092925

---

**$**

$1
  65:15,19
$1.6
  12:14 61:17,
  25 67:12
$200,000
  33:13,17
  34:1 35:3
  57:23 78:5,8
  79:5,7
$3
  58:16 62:4
$500,000
  65:23
$538,000
  15:16,22
  36:10
$538,400.30
  9:10
$6
  72:15

---

**1**

---

1
  11:8 13:11
  66:19
1,065,040
  66:15
1.6
  12:19,20
  61:23
10
  53:6
10:35
  37:8
10th
  47:17 54:14,
  17 57:11
  69:8,11
  70:25
11
  54:3

**11:09**
  80:16
**11th**
  56:3 57:6
**12**
  54:10,16
**13**
  56:1
**14**
  57:10 73:10
**15**
  60:25
**16**
  69:24 71:10
**17**
  71:6
**17th**
  70:8,12
**18th**
  57:13 60:21
**19th**
  29:13 31:17
  33:16,25

---

**2**

---

2
  11:9 66:19
20
  17:11 27:22
  51:25
20-year
  27:8
200
  58:20
200,000
  29:16 58:7
  74:23
2003
  16:16 17:4,8
  79:13
2020
  18:14 24:11
2021
  24:11

**2022**
  24:11 29:13
  31:18 32:5,
  19 42:6
  44:21 58:2
  73:17 74:20
  75:19 78:4
  79:19,23
  80:1
**2023**
  9:11,15,21,
  25 10:11,19,
  25 12:3,10
  23:3 39:14
  42:6 44:21
  50:9 52:2
  57:6 61:2,23
  62:8 73:17
  74:21 75:19
  79:20 80:1
**2024**
  24:10
**23**
  28:4
**27**
  12:9
**27th**
  12:3,16
  13:15 71:1
**28**
  35:14
**28th**
  35:16

---

**3**

---

3
  11:2,11
  57:20 58:7,
  20,24 59:1,7
  74:23
3rd
  37:8

Thomas Guzowski
September 29, 2025

**4**

4
  14:5

**5**

500
  61:14
532,520
  66:16
538,000
  13:5 36:24
538,400
  12:22
5th
  46:19

**6**

6
  45:3 72:9,21
60
  28:2 51:18
  58:16 77:23,
  24 78:9,13
61
  77:24,25
65
  13:12

**7**

7
  47:8
75
  58:16

**8**

8
  47:8
800,000
  72:13

8:56
  35:16

**9**

9
  47:16,17
9th
  57:12

**A**

a.m.
  35:16 37:8
  80:16
ability
  27:7,10,11
able
  7:14 19:16
  26:8 36:17
absolute
  60:19
accept
  20:4,13
access
  75:13
accessing
  75:16
accomplish
  41:5
accomplished
  26:9
account
  25:2,5
accounts
  25:6 74:19
accurate
  18:8
ACH
  61:6
acronym
  36:3
actual
  8:13 64:19
  69:16 70:25

address
  31:10 53:18,
  21,22
Administrator
  5:22 8:7 9:9
  10:4
Administrator
's
  59:22
advance
  51:12
affiliates
  14:17 15:4
aged
  31:3
Aging
  57:16,17
ago
  68:16
agree
  9:14 35:7
  44:4 47:1
agreed
  65:14
agreement
  10:13,16
  27:20
ahead
  35:17 51:13
  72:23
allow
  62:18
alluded
  47:9
Amanda
  33:9
amount
  9:14 10:13
  12:2,7 13:1,
  18 17:12
  43:23 66:3,
  8,15 67:15
  72:4 77:4,20
  78:12,16
amounts
  69:3

Amy
  53:14
analysis
  74:17
analyze
  23:14
and/or
  75:17
answer
  7:8
answering
  7:11,12
anyone
  24:2 42:8
  44:23 67:6,
  10,14
apparent
  11:6
appearing
  10:18 67:1
appears
  14:13 38:12
  46:21 71:23
applied
  13:25 14:2
appreciate
  43:17
approaching
  74:23
approximately
  66:17 72:6,
  21 73:11
April
  23:3 79:20
arbitrary
  66:6,9
arduous
  31:6
area
  23:24 24:4
areas
  32:15
around
  9:10,15
  12:16 39:13
  40:6,18 42:2
  46:8 50:5,

13,16 58:12
62:1 65:9,15
69:8,11 72:9
75:18,21
**arrangement**
66:22
**arrangements**
21:3
**article**
76:10,13
**articles**
75:17 76:24
**Artsana**
6:2,5,24
7:24 8:8
9:23 10:7,23
12:12 14:16,
25 15:12
16:6,12,15
17:16,22
18:1,10,17
19:6,15
20:12 23:19
24:20,21
25:1,9 26:17
27:18 28:16
29:19 30:15,
18,21,25
32:6 34:5,
11,25 35:24
36:22,25
37:1,3,20
41:15 43:5,
9,14 44:22
45:7 47:11
49:17 51:12
52:2,10,14,
19 53:14,15
56:18 57:5,
17 59:3
60:10 63:24
64:3 65:14,
18 69:8
72:1,3,6,13,
18 73:5,13
74:5 77:2
79:2,5,13,
17,20

**Artsana's**
15:7 17:20
24:12 32:19
49:5 52:11
54:1
**Asia**
19:5 21:21
35:24 36:25
45:11 72:17
**Asian**
29:12
**asked**
52:2
**asking**
7:7 26:4
37:11 48:15,
17 49:18
52:14 56:24
70:23 71:3
**assume**
7:2
**assuming**
55:12
**attached**
8:12 9:3
**attention**
29:10 32:11
34:21 57:9
**attorney**
5:22 77:10
**available**
20:21 50:21
74:16 75:8,
13 76:6
**avenues**
50:20
**avoid**
7:6
**aware**
10:22 11:1
23:1 45:2
52:1,4 55:13
72:3

———————————

**B**

———————————

**B.cashman**
33:25
**baby**
14:10 16:19,
21,22 18:4,
7,10,16,17,
18,23 19:7,
15 20:24
21:9,22 22:7
23:2,6,19
24:11,22
25:4,6,8,15,
18 26:1,2,
17,21 27:17
28:17 29:17
30:14,19,22
31:10 32:20
35:10,21
37:13,18
40:6,18
41:15 42:2,9
43:1,6 44:23
45:15 46:8,
24 47:6,11,
20 49:6,21
50:6,10,12
51:2,9,12,14
52:2,6,10,
11,19,24
53:3 54:1,23
56:22 57:5
58:14 59:3,
23 60:10,17
62:8,19,23
63:21 64:4
65:15,20
66:3,12 67:2
69:9,17,19
70:5 72:1,8
74:4,6,13
75:18 76:11,
25 77:3
**Baby's**
23:8 27:7,11
28:24 39:10

73:21 75:1,
23
**Baby/artsana**
59:9
**back**
16:13 17:8
20:5 27:10,
13,22 33:22
51:16,25
65:13 71:7,
18
**backward**
29:9
**balance**
43:21 57:22
58:6,13 59:2
62:5,6,10
64:6,10,15,
25 74:4
**balloon**
58:7,19
**ballooning**
58:13,15
**bankruptcy**
5:23,25
6:17,20 8:8
18:16 23:3,
8,16 28:1
72:4,7 79:20
**based**
15:6 17:14
27:24 28:5
41:20,22,24
43:4 49:9
55:12 62:15
71:5 77:22
**bases**
22:16
**basic**
10:13
**basically**
22:23 27:7
55:11 66:19
**basis**
26:15,18
27:2 60:17

**Bath**
  5:22,25
  6:10,23 8:7
  10:14 12:14
  14:16 15:3,
  13 16:15,20,
  24 18:2,5,6,
  9 19:22
  20:24 23:2,
  19 72:8
  76:17,20,24
  79:1
**Bath's**
  13:2
**bay**
  20:19
**Bed**
  5:22,25
  6:10,23 8:7
  10:14 12:14
  13:2 14:16
  15:3,13
  16:15,20,24
  18:2,5,6,9,
  23 19:22
  20:24 23:2,
  19 72:7
  76:17,20,24
  79:1
**began**
  16:15 39:10
  79:17
**beginning**
  61:16 79:19,
  23
**behalf**
  6:5
**behavior**
  23:8
**belief**
  69:6,14
**believe**
  9:16 10:12
  11:11 12:3,
  11 13:10
  15:2,20,21
  16:22 21:2
  24:10 28:2

  38:24 41:20
  43:4 45:10
  51:19 53:12
  54:2 60:18,
  24 61:18
  65:7 66:5,11
  72:10 78:11
**believes**
  72:7
**below**
  12:19
**better**
  70:19
**bigger**
  24:12 74:5
**biggest**
  24:14
**billed**
  35:23,24
**billing**
  35:22
**binder**
  8:16
**bit**
  74:21
**blackmail**
  64:9
**Board**
  36:4
**book**
  11:3
**booster**
  15:11,18
  17:2
**boss**
  39:7,10
  41:13
**bottom**
  37:7 45:13
  53:20 54:18
  61:2
**box**
  31:9
**brand**
  16:2,4,6,9
**break**
  7:9,13 72:24

  73:1
**breakdown**
  12:20
**BRG**
  38:23 51:5
**Brian**
  30:11 35:15
  51:3,5
**bring**
  43:23
**broken**
  12:8
**brought**
  59:13,15
**Brown**
  5:15,21
  72:23 73:3
  80:5,10
**business**
  17:6,10
  18:2,10
  23:24 24:1
  25:23 26:8
  27:5 39:19
  41:6 43:8
  49:8,25
  58:17 80:1
**buy**
  70:5 71:17
**buybuy**
  14:10 16:20,
  22 18:4,7,
  10,15,17,23
  19:7,15
  20:24 21:9,
  22 22:7
  23:2,6,8,19
  24:1,11,21
  25:3,6,8,15,
  17 26:1,2,
  17,21 27:7,
  11,17 28:17,
  23 29:2,11,
  17 30:6,9,
  14,19,21
  31:10 32:20
  35:10,21
  37:13,18

  39:10 40:6,
  18 41:15
  42:2,9 43:1,
  6 44:23
  45:15 46:8,
  24 47:6,11,
  20 49:6,21
  50:6,10,12
  51:2,9,12,14
  52:2,6,10,
  18,24 53:3
  54:1,23
  56:22 57:5,
  16 58:14
  59:3,8,23
  60:10,16
  62:8,19,23
  63:21 64:4
  65:15,20
  66:2,12
  67:2,3 69:9,
  17,19 70:5
  71:12 72:1,8
  73:21 74:4,
  5,13 75:1,
  18,23 76:11,
  18,21,25
  77:3
**buybuy's**
  66:10
**buyer**
  25:10,19
  44:9,12
**buying**
  26:15 71:12

—————————

          C

**Caben**
  35:19,24
  36:8,14,21,
  25 45:11
  46:13 72:17
**Caben's**
  35:21
**calendar**
  8:9

call
21:10,15
53:2 54:22
59:16 70:8,
13
called
20:1,25
61:14
calls
62:23,25
car
22:16,17
carried
48:13
case
5:25 6:9,10,
17,20 8:8
18:17 20:12,
24 22:22
25:24 30:17,
21 34:15
36:7 40:4
41:1,11 44:2
52:10 55:2
60:20 63:24
72:4 78:19
cases
5:23
Cashman
29:13 30:5,
11 35:15
38:17,23
51:3,5
caused
49:6
cc'd
32:24
ceiling
77:4
center
21:21,24
CEO
8:1,2,3 39:8
73:5
certain
60:13 77:4

certification
5:6
cetera
71:19
CFO
73:10
Chad
38:12 44:9,
11 50:23
54:23 57:13
63:3,4,8
chain
35:13,14
37:25 38:2,
12 45:6
46:20 47:4
70:16
chance
8:11 9:19
14:14 27:9
59:20 68:24
change
17:11 23:9
28:3 31:15
48:7,8 61:14
changed
31:20,23
32:1
changing
48:4
channel
26:2
channels
21:14
characterizat
ion
54:25 64:8
characterize
63:17
charge
33:7
Chicco
16:1,2
China
36:9
Chrissy
25:19 32:14

44:13 50:23
63:6,7
chronological
ly
29:9
claim
72:3,9,12,15
claims
72:20
clarification
77:14
classic
26:13 27:3,
23 60:13
74:17
clean
7:5
clear
71:9
clearer
18:7
clerk
53:16
close
57:20 58:23
59:1,7
cold
7:18
collaborative
55:6
collect
41:2 43:23
collecting
65:4
collection
8:15 79:13,
16
collections
33:10 34:7,
20
Colombo
56:2,18
column
11:10
combined
72:20

come
62:21 77:24
comfortable
65:19
common
75:4
commonly
21:18 35:10
communicate
27:1 44:1
50:12,18,20
59:21 67:19
69:19
communicated
44:22 46:2,
10 55:3,4,20
64:4
communicating
20:1,7 26:5
46:1 47:5
50:1,15
63:13,22,25
communication
25:25 26:1
48:2 49:13
50:6 52:22
54:12
communication
s
40:18 62:22
64:17,20
70:22 71:4
73:15
companies
17:11 19:24
27:1 53:10,
25 74:9
78:24 79:1,
12
company
14:12 16:3,
10,11 24:7,9
35:19 43:5
54:4 67:24
68:13,21
73:9,12,22
76:9

company's
  25:21
compare
  10:2
compared
  35:9
comparison
  35:4
competitors
  75:15
Complaint
  8:7,12,13,18
  9:3
complete
  7:7
completely
  66:6
concept
  66:19 77:20
concerned
  43:22 56:22
  73:22
concluded
  80:15
concludes
  80:6
confirm
  9:19,24
  48:11
confirmed
  71:24
confirming
  20:5 62:9
connected
  22:23
connection
  6:23 14:14
consider
  21:16
considerably
  58:3
considering
  43:9 44:5
  49:12 51:13
consistent
  23:10,11
  26:18 75:4

consistently
  23:14 60:14
constant
  26:15
consumer
  21:19
contact
  30:15,22,24
  31:1 38:22
  50:9 51:2
  63:5
contacting
  32:20 34:16
contends
  9:9
continental
  18:18
continues
  45:18
contract
  28:7,12
  48:7,11
contracts
  28:9
controller
  11:20 29:20,
  22,23,24
  32:19 34:8,
  16 68:1
controller's
  32:16
conversation
  42:22 65:8
conversations
  40:8
convey
  67:14
conveying
  12:12
coordinate
  20:21 21:1
coordinating
  21:11
copies
  36:18 56:25
copy
  15:21

cor
  32:19
Corey
  11:18,22
  29:23
corporate
  16:25
correct
  12:23 13:4,
  15,18 16:5
  23:3 24:8
  33:13,23
  38:9 40:2
  43:2 46:8
  47:2,11,20
  48:5 50:24
  51:18 58:3
  60:6,23
  62:10,13
  65:14 69:10
  71:22 72:1
  76:25 78:10,
  17 79:14
  80:3
correspondenc
  e
  28:16,23
  39:4 50:22
  53:9 70:18
  71:2
corresponding
  30:13 38:17
cost
  65:15 66:14
counsel
  5:5 11:4
  80:8
counseled
  41:9
counterparts
  32:13
couple
  18:15
course
  17:21 18:21
  32:3,12,17
  34:19 41:6

  74:10 78:25
COURT
  80:8
cover
  8:17
covered
  73:16
CPG
  19:24 21:19
  26:13
credit
  33:10 34:7,
  19 77:2,3,5,
  7
crux
  63:20
Cruz
  53:14
cumbersome
  31:6
Current
  29:23
customary
  19:24
customer
  24:14,17
  34:17 43:20
  44:3,5 65:15
  75:9 76:11
customers
  24:12 30:2
  52:11,15
  75:14
customers'
  74:19
cycle
  20:22 70:16

                D

Data
  19:21 25:23
date
  12:9 40:14
  47:16 78:9
  79:20

dated
  54:14,17
day
  35:17 47:18
  67:3
days
  27:24 58:16
  70:20 78:9,
  13
December
  29:13 31:17
  32:5,18
  33:16,25
  35:14,16
  42:6 44:21
  58:1 73:17
  78:4
decide
  49:7
decision
  46:3,5,7,10,
  22 48:16,22,
  23 49:1,3,9,
  12 55:2,3,6,
  9 65:19
  75:22
deem
  59:8
definition
  77:22
delineate
  77:25
deliver
  53:11
delivered
  18:23 22:4
delivering
  47:10
delivery
  31:5
demand
  56:19
department
  56:20
depends
  21:8 23:24
  34:18

deposition
  5:24 6:8,15,
  19,22 7:15
  14:15 61:16
  66:24 80:6,
  15
Dery
  57:13,14
describe
  44:7 56:16
described
  21:11 32:23
designated
  6:2 30:12,14
desire
  63:22,25
detail
  9:22 13:2
  67:21
details
  20:3 23:19
determination
  76:8
determine
  57:8 73:21
determined
  65:24 66:12
  67:15,17
  69:3 76:19
  77:22
development
  27:4
DI
  56:6,7 60:4
Dibella
  25:20 32:14
  44:13 50:23
  61:2 63:7
  70:2
dictated
  10:13 28:13
  78:2
different
  17:7,17 21:8
  22:8,17
  32:10,15
  33:14 34:5

43:11 48:2
56:14 60:4
61:19 68:13
direct
  22:20 25:25
  52:22 56:8,
  9,11 72:19
  77:10
directed
  31:8
direction
  40:17,19
  41:4
directly
  21:20
director
  33:1
disagree
  9:13
disagrees
  10:23
discovery
  28:19
discrepancies
  10:9
discuss
  39:20,21
discussed
  78:4
discussing
  39:10 40:13
  42:14 66:18
  70:11 79:8
discussion
  42:1,3,23
  49:3 62:6
  63:20 64:21
  65:11 66:7
discussions
  41:24 42:4,
  7,17 43:11,
  25 44:16
  64:13,14
  66:2 67:14
  70:19
dispatch
  20:23

distress
  76:12
distribution
  21:14,21,24
division
  16:23
dock
  21:6
document
  8:25 11:13,
  15,22,25
  12:13 14:6,9
documentation
  31:3,5
documents
  9:1 26:13
  28:19 62:16
doing
  18:10 25:8
  34:24 44:6
  63:12 70:17
  73:23
dollars
  34:18 58:22
  78:17,20
  79:1
domestic
  21:10,16
  22:8 56:7,9
  60:4
domestically
  72:19
domestics
  35:23
driven
  78:3
due
  13:8 29:17,
  19 30:18
  31:5 32:7,20
  33:17 34:17
  35:5 37:14,
  20 39:3,10
  40:5 43:21
  57:21,22
  58:6,13 59:2
  62:5,10

63:25 64:6,
15,25 65:22
66:16 67:16
74:4 77:20,
21,24 78:1,
2,5,21 79:7

**dues**
30:2 33:13
34:1 35:3
40:24 41:2
49:15 59:1,7
65:5 66:3
74:22 77:5

**duly**
5:12

---

**E**

---

**e-mail**
28:15,23,25
29:1,12 30:9
31:13 32:7,
14,20,24
33:3,12,16
34:6,9 35:14
37:8,24,25
38:3,8,21
39:14 44:2,
25 45:5,6,12
46:19,20
47:4,5,17,
18,19,23
48:12 51:14
52:23 53:2,
8,17,21,22
54:11,13,17,
25 55:12,15,
25 56:3
57:25 59:25
61:21 62:5
64:23 65:17
70:1,16 71:2
73:15 78:5,8

**e-mailing**
30:5 61:3

**e-mails**
28:19 29:3,7
32:4 40:2

51:7 67:2

**earlier**
8:9 48:15
60:5 70:23
78:4 79:11

**early**
74:20 75:19

**Easily**
78:22

**EDI**
19:18,20
20:1,5,13

**effective**
48:1

**effectuated**
48:12

**efforts**
73:20 74:2

**eight**
8:3 73:5

**either**
20:6 22:22
36:21 52:22
64:23 65:3

**electronic**
19:21 20:8
25:23 26:9
80:10

**electronically**
19:18

**employee**
30:19,22
52:23

**employees**
53:14

**encouraging**
41:2

**end**
9:11,15,20,
25 10:18,24
59:13,16
61:1,16,22
62:8,18 69:7
74:20 75:18

**entire**
9:1 27:22

32:1

**entity**
18:9 35:23

**ERP**
19:25 20:19

**error**
20:9

**escalate**
34:21

**escalating**
35:1

**escaped**
76:16,22

**Eshelman**
11:18 29:23

**essentially**
46:16 70:24
71:20

**estates**
72:7

**et**
71:19

**event**
71:21

**everyone**
76:8

**exact**
16:25 42:23
65:12

**exactly**
26:10 39:15
50:7 62:24
63:10 64:20
77:21

**EXAMINATION**
77:16

**examined**
5:13

**examples**
32:3,5,18

**Excel**
11:5,8,13

**exceptions**
10:17

**exchange**
11:4 29:8
54:11 56:3

**exchanges**
32:14

**excused**
80:13

**exhibit**
8:12 9:2,6,
19 10:18,21,
23 29:11
33:21 37:7
54:11,16
55:25 61:1
62:4 69:25

**Exhibit-a**
8:18

**exhibits**
16:13

**expand**
17:20

**expanded**
79:16

**expansion**
17:15 80:1

**expect**
51:25

**expected**
49:21

**experience**
41:8 43:5

**experiencing**
49:17 60:5
74:6

**expert**
74:8

**explain**
32:25

**extent**
7:5

**external**
74:11,16

---

**F**

---

**F-O-B**
36:4

**fact**
9:20 10:18
12:13 13:20,

24 47:1
71:25 74:4

**factor**
44:14

**factors**
49:11

**facts**
49:10

**failing**
49:22

**failure**
28:24 50:5

**fair**
22:24 30:3
54:25 62:1

**fairly**
23:11 60:13
75:4

**FALK**
77:13,18
80:11

**familiar**
7:1 8:6
14:23 54:4,6

**familiarity**
15:7 43:6

**far**
10:23 11:25
17:23 20:16
23:8 24:16
35:4 41:4,25
49:20 55:8
56:21 67:2
69:20 77:4

**fashion**
12:5

**FCC**
75:12,17

**February**
9:11,15,21,
25 10:11,19,
25 12:3,9,16
13:15 61:1,
17,23 62:8,
18 69:7
70:8,12
71:1,3 73:17

**feel**
44:3 50:8

**feeling**
50:3,11

**felt**
49:16 75:22

**figure**
36:17 59:6,7
63:19 64:11

**filed**
8:8 18:16
23:3 59:22
72:3,13

**filing**
5:7 75:18
79:20

**filings**
75:12

**final**
79:22

**finance**
33:6,7 50:19
51:2,8 74:9

**financial**
45:20 73:21
74:6 75:2,23
76:4,5,12

**financials**
74:9

**find**
45:19 68:9
75:8

**fine**
12:18

**finish**
7:10,12

**first**
5:12 11:8
12:4,6 16:15
21:7 29:8
37:7,24 38:3
45:5,13
46:20 47:4
53:13,20
54:18 59:25
70:1

**fit**
22:17

**five**
22:17 27:23,
25 51:17
69:14,21

**FLB**
36:1,2

**flip**
8:19 37:6

**flow**
23:13 56:23

**FOB**
21:19 22:13
35:22,24
36:3,4,5,7,
9,14 56:11,
12,13 72:19

**focus**
18:14

**folks**
55:12

**follow**
45:21

**following**
71:25

**follows**
5:13

**forget**
39:16 44:9

**form**
5:8 11:7,13
79:22,24

**formally**
48:13

**forth**
71:8,18

**forward**
18:12 35:13
37:6 48:5
54:24

**four**
22:17

**frame**
23:7 31:18
42:7,12,18
44:21 74:21

**frames**
75:4

**Freight**
36:4

**Friday**
70:8

**front**
8:16 72:11

**fulfill**
19:16

**fulfilled**
20:17

**future**
13:21

---

### G

**gave**
29:21 41:12
51:12 52:19

**general**
6:12 14:25
23:25 47:22
76:22

**generally**
14:23 17:13,
14 23:17
49:2 60:17
65:7

**generic**
31:9

**generically**
49:24

**gentleman**
30:6

**geographically**
17:23

**getting**
43:21 64:24

**give**
22:14 25:7
40:16 68:19

**given**
35:5,11 60:2

**giving**
68:8

**global**
39:8
**goes**
20:22,23
21:20 29:9
67:2 78:20
**going**
6:24 18:12
29:8 40:15
47:15 54:24
62:7,9 66:12
68:19 71:7,
13,14,17
73:21 74:1,
13
**good**
5:16 21:20
77:20
**goods**
13:21,22,25
15:17 36:7,
13,15 52:3
71:22,25
**governed**
28:8
**green**
60:3
**Greg**
29:12,16,19,
24 30:1,4
33:15,25
34:1,24 68:4
**Greg's**
30:1
**grew**
17:14
**group**
39:7
**grow**
18:2 27:4
**growing**
43:21
**guess**
7:2 20:12
26:6 28:18
34:4 40:12
42:21 55:24

58:24
**guessing**
57:8
**Gwiazdowski**
5:11,18,19,
20

___

**H**

___

**half**
54:18
**halt/stop**
45:15
**handful**
22:1
**handle**
31:22 40:17,
19
**handled**
22:7 25:22
**happen**
19:15 36:24
41:18 47:1
53:13,15
63:1,19
64:11
**happened**
20:15 42:11,
13 60:14
**happening**
46:16 55:14
62:24 64:18
**headquarters**
39:4,6,20
41:14
**help**
15:6 18:20
32:11 67:7
**helpful**
25:9
**helping**
67:8
**helps**
70:18
**Hey**
44:5

**high**
22:10,14,18
75:5
**higher**
58:3 59:7
**highest**
59:2
**highlight**
11:12
**highlighted**
11:10
**historically**
27:21,23
30:17,25
**history**
27:8,11,13
35:4
**hold**
45:19
**honest**
16:25 17:8
22:2 28:10
31:23 59:19
67:22
**HQ**
38:25 41:21
**huge**
17:12
**Hunt**
47:13

___

**I**

___

**idea**
31:16 55:17
59:5,10
60:10 69:18
**identified**
13:23 14:1
**imagine**
23:17
**immediately**
12:18 48:1
73:19
**import**
21:18 22:7,
13 56:7,8,9,

11 60:5
72:19
**important**
25:9 26:16
**imported**
19:1,11 21:7
**incident**
52:6
**include**
46:18
**included**
33:2 34:6
40:2
**Including**
39:24
**inconsistent**
37:16
**Incorporated**
7:25 8:9
37:2 72:18
**individuals**
24:19,24
63:13
**information**
10:3,4,10
11:4 25:7
31:4 45:20
49:10,13,16,
18,20,22
62:6 68:9,20
74:10,12,15
75:7,8,18
76:6,7,21
**informed**
40:5 46:13
53:2 55:5,15
69:9
**informing**
47:25
**initial**
44:3
**input**
41:12
**inquiries**
28:23
**inquiry**
37:14,20

**instructions**
13:3
**intended**
13:20
**intending**
69:20
**intention**
11:24
**interact**
26:17
**interacting**
26:13,14
**interactions**
26:20
**Interchange**
19:21 20:2
25:23
**interested**
26:22 76:24
**interesting**
39:18
**internal**
74:11,16,24
76:4
**internally**
43:18 44:1
**introduced**
32:2
**invite**
77:10
**invoice**
14:10,11
15:8,24 21:4
22:23 30:18
32:8,21
34:17 78:9
**invoiced**
78:13
**invoices**
8:20 9:9,20,
24 10:3,5,
11,17,24
13:4,8,17,
19,21 14:16,
20,24,25
15:3,7,16,22
27:11,17

28:24 29:19
31:3 36:14,
18,21 37:15,
20 50:13
57:21
**invoicing**
78:13
**involve**
26:21
**involved**
32:10 47:10
53:25 64:19
67:22,23
**involvement**
32:16
**involving**
5:25 54:13
**issue**
67:11
**issued**
13:18,21
14:16 15:3,
23 21:5
36:21
**issues**
20:9
**issuing**
14:25
**Italian**
19:13
**items**
22:10 71:15,
19

---

**J**

**J.B.**
47:13
**Jane**
45:6
**January**
28:4 37:8
39:14 42:6
44:21 46:19
47:17 50:9
54:14,17
56:3 57:6,

11,12 60:21
62:3,17
69:7,8,11
70:25
**John**
57:13,14
**Josh**
24:25 25:24
26:5 68:24
**Journal**
75:11,17
76:14

---

**K**

**keeping**
40:5,14,23
**kind**
26:21
**knew**
50:9
**know**
7:13 10:9
11:15 13:24
16:14,21,24
19:17 21:2
26:13 27:4
28:1,5 29:7
30:11,12,14
31:4,22,23
32:10 33:2,4
34:8,12
36:10,13,24
37:13,18,22,
23 38:15,18
39:2,3,18
40:11 41:9,
10,25 42:11
43:24 44:6,
9,11,17,20,
22,25 45:7,
22 48:14
49:9,10,25
53:13,15,17,
22,24 56:17,
24 57:2,3,4,
7,14 58:22,
23,25 59:2,

12,14,15,18
60:9 61:9
63:10 64:16,
20 65:13
66:1 67:16
68:5,18
69:20 70:11
72:12,16
74:11,17,18
77:25 78:1
**knowing**
50:4
**knowledge**
23:9
**known**
55:13 76:13

---

**L**

**lack**
49:13,14,16,
20,24
**Lancaster**
21:12
**large**
19:3 22:20
24:20
**largely**
10:15
**lasting**
25:22
**late**
27:21,24
**launches**
27:3
**lawsuit**
59:22
**leading**
70:20
**learning**
52:19
**leave**
24:9
**left**
21:6 63:8
**level**
34:15 44:6

67:20  75:5

**levels**
32:10

**light**
60:3

**limit**
77:5,7

**Limited**
35:25

**line**
25:25  77:3

**lines**
77:13

**list**
8:19

**litigation**
67:12

**little**
8:17  25:7
65:23  74:21
76:20  77:13

**local**
68:11

**logistics**
20:23  21:11
45:10  54:8

**long**
8:2  25:22

**longer**
24:7  67:23,
24

**look**
8:11  9:19,22
14:24  15:23
20:20  27:10,
13  29:3,12
38:21

**looked**
8:13  27:22
28:18,21
46:20  48:11
51:25

**looking**
11:7  30:9
36:17  39:3
42:12  47:19,
24  48:3  51:7

54:12,18
71:15  74:10,
12  76:23
78:1

**looks**
12:5  14:10
15:11  31:18
34:4  57:17
71:11

**lost**
38:22

**lot**
25:22  26:8
35:3,6,9

**lots**
43:11  71:18

**loud**
44:2

**lower**
34:15

---

**M**

---

**made**
9:10,14
46:3,5,7,22
55:9  60:22
61:22  62:9,
19  71:21

**mail**
31:3,4,8
32:7

**maintain**
26:1

**maintaining**
25:13

**make**
7:2  18:6
49:9,21
63:1,19
69:17,21,22
76:8

**makes**
22:19

**making**
27:8  48:16,
23,25  49:12

55:6  60:10
62:12  64:15

**manage**
30:7  56:23

**management**
20:8

**manager**
23:23  25:2,5
33:11  34:8

**managers**
34:20

**managing**
20:10

**manufactured**
19:2,7

**manufacturer**
21:21

**manufacturing**
19:13

**marked**
11:2

**math**
66:17

**Mc**
65:8

**Mclaughlin**
24:6  38:8,
15,21  39:24
40:12  42:1,
25  47:20
54:21  55:4,
15,19  59:11,
21  60:2
63:14  64:23
65:3,9  66:1
68:3,4,17

**Mclaughlin's**
41:21,22
44:18  47:23
57:13

**mean**
23:12,24
27:20  30:8
33:14  34:18,
19,20  35:6
39:1,2,15
41:24  42:21

49:24  50:7
57:7  58:10
64:19  74:1,
8,9,15  75:3
76:7  77:21

**Meaning**
65:3

**meaningful**
79:25

**means**
26:9,12
77:23

**meeting**
59:16  64:22
65:2,8

**meetings**
49:4  62:23

**member**
53:1  62:22
70:2

**members**
29:2  54:21
67:1

**memorialize**
48:8

**mentioned**
41:14

**mentions**
35:18  60:8
78:5

**merchandizing**
25:11  26:2

**merchant**
60:2  62:25
63:7,8  71:12

**method**
27:20  60:13

**methodology**
21:16  31:21

**methods**
21:8

**mid**
71:3

**middle**
7:11  62:3,17

**million**
12:14,19,20

13:12 57:20
58:7,16,21,
24 59:1,7
61:13,17,25
62:4 65:16,
20 67:12
72:9,15,21
74:23 78:17,
20 79:1

**mind**
29:4 45:3
70:17 72:20

**minor**
10:17

**minute**
16:14 38:6

**misspoke**
55:24

**models**
22:18

**moment**
35:11

**monitor**
30:2,3

**monitoring**
74:25

**month**
23:6 78:25
79:5

**month's**
79:9

**monthly**
74:18

**months**
6:16

**morning**
5:16

**morphed**
17:7

**move**
47:15 48:22
49:12 53:6
54:3,10 56:1

**moved**
28:4 52:20

**moving**
48:4 51:13

**multi**
50:17

**multiple**
28:9

---

## N

**name**
5:17,21
16:4,11
29:22 30:12
52:14

**named**
45:6

**narrow**
17:7

**national**
25:2,5

**nature**
15:18 16:17
71:4 75:11

**need**
7:9 23:13
38:6 45:14
46:2 53:7
63:18 64:5,
10

**needed**
48:13

**negotiations**
63:15,18

**Net**
51:18 77:23

**never**
51:20

**Nick**
5:21

**normal**
41:6 50:17

**Note**
8:13

**notice**
40:1 51:12
57:11,12
66:14 69:15
70:24

**notifying**
54:22

**notwithstanding**
25:21 26:7

**number**
11:9 12:19,
22,25 13:11,
12 58:2
61:19 66:5,6

**numbers**
12:19 74:22

---

## O

**Obetz**
29:13 33:16,
25 35:15
37:8 38:16
40:12 68:4,5

**Obetz'**
29:19

**objections**
5:7

**obvious**
58:13

**obviously**
20:18 32:9
49:14 71:18

**occasion**
75:14

**occurrence**
70:25

**occurring**
64:14

**offer**
41:4 79:17

**offering**
17:15,24
79:13,21

**officially**
46:23

**okay**
5:21 8:6 9:5
10:15 12:4,
18 14:23
15:15 18:8,

12 19:6,14
20:11 21:7
22:22 23:16,
22 24:19
26:11,16
27:6 28:14,
22 31:25
33:19,24
36:24 38:6
41:25 43:4
44:17,20
45:12 46:7
47:8,22
50:22 51:11
53:17 54:3
55:18,24
59:20,25
60:16 65:13
67:10 68:5,
12,17 69:24
72:12,22
77:9

**once**
20:11,15
21:6

**one**
15:21 21:9,
14 22:12
23:6,7
24:11,25
29:2 30:1
34:9 42:3,5
43:25 44:1
47:13,15
49:8 52:11
53:9,14,24
54:11 57:18
58:16,18
60:9 61:1
63:11 65:3
72:18,19
74:23 76:1

**online**
28:12 75:10

**Open**
56:6

**operates**
58:18

**operation**
33:1

**operations**
17:20 33:8
45:11

**opinion**
31:7 44:8
59:6 71:7
74:8

**opportunity**
9:5 10:2
66:25

**ops**
33:6 50:19

**options**
39:20 41:10
43:22 49:2

**order**
7:5 19:14,16
20:4,11,13,
16 61:3 64:4
71:14,15
79:1,4 80:9

**ordering**
23:6,9,13

**orders**
13:23 14:1
19:18 20:2
21:11 45:15
46:18,24
47:6 56:25
61:13 62:12
66:14 71:19
78:23 79:9

**original**
28:6 33:20

**outside**
19:1,4,12
30:15

**outsourced**
30:10

**outstanding**
35:10,11
57:22 59:3
64:1

**Oversee**
30:3

**overseeing**
23:18 24:21

**oversight**
23:23

**owed**
43:23 72:7

**owing**
30:2

**owned**
16:6 21:21

**owns**
16:9

---

**P**

**Pacific**
35:25 45:11
72:17

**pacifiers**
15:11,18
17:3

**page**
7:3 11:8
12:4,6 29:10
33:20,22
37:7 45:5,13
53:13,20
54:11,18
55:25 60:1
61:1,2 69:25
70:1

**pages**
8:16,20,24
11:9

**Pahl**
24:25 56:2,
24 61:3
68:24 70:1

**Pahl's**
70:7

**paid**
9:20,25
10:3,5,11,
18,24 12:7
13:2,4
15:16,22
27:21 28:5

**parent**
16:10,11

**part**
9:16 11:3
31:22 33:4,
7,14 37:1
39:1 58:13
62:10 64:5
66:21 74:5

**partial**
65:22

**participate**
5:24 7:15

**participating**
7:19

**particular**
15:10,24
18:21 22:6
24:2 25:17
28:22 33:12
38:3 49:23
50:8 54:16

**parties**
5:5 28:8
35:4 53:11
70:19 71:5

**parties'**
10:10 26:8
43:8 48:5,7,
11 51:18,24
52:1

**party**
47:9 53:10

**passed**
78:14

**past**
13:8 29:17,
18 30:2,18
31:4 32:7,20
33:13,17
34:1,17
35:3,5

36:14,18,25
37:3,12
50:13 62:7
63:25 64:25
66:3,8

**pasttimes**
60:15

**Patrick**
56:2,18

**pay**
13:21 27:7,
11,17 28:24
29:18 60:17
64:5,10
66:12

**paying**
62:10

**payment**
8:20 9:9,14,
17,25 10:11
12:2 13:4,9,
14,17,24
15:17,22
27:19 28:8
29:18 36:11,
14,19 48:4,8
49:14,21
51:18 52:15,
19,24 59:14
60:13,22
61:4,6,9,12,
15,17,22,25
62:9,12,19
64:15 65:4,
22 66:16
67:11,12,16
69:3,16
71:19

37:14,20
39:3,10
40:5,24 41:2
43:21 49:15
57:20,22
58:6,13
59:1,2,7
62:4,10
63:25 64:6,
15,25 65:4,
22 66:3,15
67:16 74:4,
22 77:5,20,
21,24 78:1,
2,5,21 79:7

**payments**
  6:23 27:8,25
  37:1 60:3,8,
  11
**Pennsylvania**
  21:13
**people**
  20:6,10
  25:14 32:24
  34:5 39:17
  50:22 63:11
  67:23
**period**
  9:1 73:16
**person**
  25:10 30:15
  31:21 45:6
  64:23 67:23
**personal**
  68:19
**personally**
  10:6 23:15,
  18 40:1 55:4
  73:23
**perspective**
  25:14 75:7
**phone**
  31:13 52:23
  64:23
**picking**
  31:13
**picture**
  76:4,5
**Pietro**
  56:18
**place**
  30:7 31:21
  42:18 44:13
  48:8 58:11
  63:16 65:9
  71:3 77:7
**Plan**
  5:22 8:7 9:8
  10:4 59:22
**planning**
  56:19 71:20

**Plasterer**
  33:9 34:7,10
**platform**
  25:23
**please**
  5:16 7:7,11
  29:5,17 38:7
  45:18,21
  47:8 54:10
  57:9 59:13
  70:21 73:25
  80:8
**PO's**
  56:6
**point**
  21:4 25:10
  30:15 39:9
  43:7 44:4
  50:9 51:1,23
  58:5,25 59:1
  60:20 63:5
  73:13 74:23,
  24
**poor**
  50:1
**portal**
  28:11,12
**portfolio**
  17:15
**portion**
  79:8,10
**position**
  75:5
**possibilities**
  42:5 43:24
**possibility**
  42:1,8,14
  43:1 44:23
**possible**
  7:5 10:17
**preference**
  9:1
**preferred**
  20:25 21:15
  22:7
**preparation**
  14:15,20

  28:15 32:4,
  17 38:1
  62:17 67:21
  68:25
**prepared**
  11:15,22
**preparing**
  66:24 67:7
**prepay**
  48:22 49:7,
  12 51:13,21
  52:3,6,16,20
  53:4 54:13,
  24 55:3,14
  57:11 67:16
  69:9,15,16
  70:24 71:1
  75:22
**prepayment**
  13:13,20
  28:5 37:3
  47:25 52:24
  69:17,21,22
  70:9,20
  71:5,17,21,
  25
**president**
  8:1,2,4,5
  24:3 73:5
**pressuring**
  38:25 41:21
**pretty**
  23:10 40:11
**prevent**
  7:19
**previous**
  73:10
**previously**
  47:9
**primarily**
  25:12 63:12
  73:16
**printed**
  11:7 29:7
**prior**
  23:7,16
  32:5,18

  38:12 42:6,
  11,18 43:7
  44:20 45:1
  51:17 52:2,6
  58:17 68:1
  70:8 71:5
  73:8,19
**prioritize**
  60:3
**prioritizing**
  60:8
**probably**
  16:16 17:8
  24:3 25:19
  27:23 32:13
  39:3,7,19
  58:1 60:12
**problem**
  7:10 74:5
**procedure**
  31:2
**PROCEEDINGS**
  5:2
**process**
  14:24 20:18,
  20,22 21:4,
  13 30:8
  31:18 32:1,2
**Processing**
  21:11
**procurement**
  56:19
**produced**
  14:11
**product**
  15:9,12
  17:3,14,16,
  17,24 19:6,
  10 20:21
  21:1,6,9
  22:4,6,8,15,
  24 23:5,13
  26:21 27:4
  41:15 47:10
  53:11,25
  56:23 63:18,
  19,22 64:5,

11,14,24
65:4,14,20
79:2
**productivity**
22:19
**products**
16:19 18:17,
22,24 21:20
71:16 79:14,
17,21
**program**
19:22
**promotional**
27:3
**prong**
50:17,19
**proof**
31:5
**provide**
49:22 59:14
65:14
**provided**
13:25 72:1
**providing**
64:13,24
65:4,19
**public**
74:9,15
75:6,14
**publication**
76:14
**publications**
75:10 76:19
**publicly**
75:8 76:6
**published**
76:13
**purchase**
56:25
**purpose**
47:23
**purposes**
26:2
**put**
30:6 31:21
80:9

---

**Q**

---

**quantities**
17:17 71:16
**quantity**
17:24 23:5
26:22
**question**
5:8 7:7,8,
11,12 30:18
34:4 37:17
40:11 55:9
70:21
**questions**
7:14,21
77:9,11 80:4
**quick**
32:23
**quickly**
22:11

---

**R**

---

**rank**
24:16
**rate**
22:18
**ratio**
66:19
**reach**
30:19 32:12
**reached**
65:18
**reaching**
30:4 32:6
38:16
**reaction**
58:12
**read**
38:7 39:18
**reading**
70:17 76:7
**real**
32:23 77:19

**realize**
17:12
**reason**
7:13 15:2
41:20
**recall**
7:17 36:16
37:25 39:9,
15 40:8
41:13,17,19
42:3,7,16,22
43:10 46:22
48:10,17,20,
23 49:11
50:3,4 51:1,
11,16 52:18,
25 53:1,5
54:11,14
58:5,6,8,11
62:24 63:6
64:22 65:2,
12,18,23
66:6,18,21
68:16 69:8,
23 72:6
74:20 75:16,
21 76:1 78:6
**recalled**
48:15 67:15
**receivable**
74:19
**receivables**
30:7 39:2
74:25 75:5
**received**
11:5 12:3
21:9
**receiving**
12:14
**recent**
29:7 47:5
54:22
**recently**
8:14 54:12
**recollection**
62:16 63:21
67:8

**reconciling**
12:2
**record**
5:17 7:5
12:13 71:9
72:24 80:9
**Recorded**
7:4
**records**
9:24 20:8
**refer**
8:15 18:4,9
60:25
**reference**
41:21 57:22
61:6 62:4
**referenced**
46:19
**references**
34:1 61:10
**referred**
21:19 22:13
**referring**
29:1 38:23
39:6,22 56:7
57:18 59:15,
19 60:9
61:9,21
70:7,13
**refers**
53:18,22
**refresh**
67:8
**regarding**
28:23 64:13
75:18
**regular**
27:1
**related**
6:17 15:17
**relationship**
16:14,18
17:10 18:2
23:20,23,25
24:21 25:14,
22 26:14
27:9 35:12

43:6,8 48:5
49:6,25 50:2
51:24 52:1,9
56:21 59:4,9
67:2 79:12,
25 80:2

**relative**
35:6

**remaining**
45:19,22

**remember**
36:10 48:25
49:3 51:5,17
57:24 67:20
76:17

**reminder**
23:2

**repay**
61:14

**repeat**
37:17

**rephrase**
26:7 50:11

**report**
39:7 57:17
78:1

**REPORTER**
80:8

**reporting**
40:23 74:18

**reports**
77:24

**represent**
8:17 11:3
53:8

**representation**
42:25

**representations**
43:7

**representative**
15:21 52:23

**representing**
33:12 43:1

**represents**
13:1 79:8

**request**
11:23

**reserved**
5:9

**respect**
25:3 31:17
52:13

**respective**
5:5 10:10

**responding**
37:14,19

**response**
49:19,24
52:18 60:1

**responsible**
24:4 25:11

**responsiveness**
49:14

**rest**
55:5,21

**restate**
70:21

**result**
64:21

**resulted**
66:8

**retailer**
16:19

**review**
9:5,24 14:15
28:14,15,22
39:19 62:16
75:5

**reviewed**
14:20 56:1

**reviewing**
32:4 49:2
61:16 66:18
73:16 74:10

**right**
6:6 7:1,19,
24 8:23
9:18,23
10:16 11:9

13:22 14:5
16:4 17:18
19:23 22:3
23:1 24:7
25:15 26:23
29:8 31:19
34:21 35:13,
18,19 36:1,
5,22 43:18
44:18 48:16,
20 55:16
57:9,18
58:25 60:25
62:3 63:22
70:9 73:6,17
74:21

**role**
7:24 24:20
25:3,5,12
29:19 30:10
35:21 45:7
53:15 56:17
68:12,22
73:8,25 74:2

**roles**
30:1

**Rubin**
32:25 33:6
34:10 45:14
46:1,10
47:18 68:25
69:1

**rush**
80:10

---

**S**

**sales**
24:3 25:12,
14 26:3,14
32:9,11
39:16 44:22
50:19,23
57:2 68:2
70:3 71:11,
13

**salespeople**
44:15

**saying**
7:3,17 44:15
51:17 64:8

**says**
29:16 33:16
37:11 38:22
45:14 56:6
58:23 59:11,
12 60:2
65:17 66:17

**scale**
24:17

**scenarios**
22:4 60:5

**Schneider**
53:9,24

**sealing**
5:6

**seat**
22:16

**seats**
15:11,18
17:2 22:17

**second**
29:10 45:5
55:25 59:11
69:25

**see**
8:19 11:9
12:22 20:20
29:11,13
32:18,22
33:17 34:1
35:15 37:9
38:13 42:24
45:16,23
54:19 56:3
61:4,7 64:21
66:16 70:7
79:11

**seeing**
37:25 62:4,5
71:6

**sell**
15:13 17:6
18:5

selling
  18:1 19:7
send
  31:2,5
sending
  31:12 34:9
  38:8,11
  51:13 57:17
sends
  19:18
senior
  25:19 44:8,
  12
sense
  22:20 55:18
sentence
  59:12
separately
  50:19
serve
  56:18
serves
  68:12
set
  15:3 77:3
Several
  68:16
shift
  54:13 55:2,
  14 69:9
  75:22
shifted
  52:14
shifting
  53:3 54:24
ship
  21:15 22:20
  38:25 41:21
  52:2 53:10
  58:16
shipment
  22:7,9 45:15
  53:25 57:12
shipments
  21:10,17,18,
  19 22:13,21
  35:23,24

42:2,9,13,15
43:2,9,25
44:24 45:19,
22 46:8,14,
23 48:3,16
58:19,22
shipped
  22:4,24
  56:25 71:22
shipper
  20:25 21:1
shippers
  47:10
shipping
  18:20 20:21
  21:1,12
  41:15 45:21
  46:4 53:10
  57:3,5
  72:18,19
Shoots
  70:2
short
  72:24 73:1
show
  8:24 12:1
showing
  10:24 11:25
  12:6,7 66:15
side
  20:6 50:23
  51:2,8 60:9
  64:12 66:10
  71:12
sides
  20:10 60:4
significance
  45:25
significant
  58:21,22
signing
  5:6
similar
  15:24 17:3
  68:12,21
  73:12 75:17

simple
  31:12 66:17
single
  28:7
sister
  35:18
situ
  34:18
situation
  34:19 35:1
  39:11 40:6
  41:12
situations
  43:12
slightly
  58:24 61:19
slip
  8:17
small
  22:21 79:10
smaller
  79:13
Smith
  56:2,18
snail
  31:3 32:7
someone's
  34:21
sort
  23:22 26:25
  44:6 59:16
  64:8 66:7,19
  71:4,20
  74:12,24
  78:23 79:22
sound
  73:17
sounds
  10:15 26:7
sourced
  18:22,24
  19:4
SPA
  16:12
speak
  66:25 67:3,
  6,10 69:2

speaking
  7:6 17:13
  23:17 65:2
  76:18
specific
  25:8 42:22
  57:25 66:2,8
  75:3 77:19
specifically
  18:7 32:13,
  17 48:20
  53:3 65:1,6
  67:4,11 69:2
  75:10,19,20
  77:25
spoken
  65:12
spreadsheet
  11:5,8,13
stand
  19:20
standpoint
  22:19 74:16
start
  29:6 39:2
  79:12,21
started
  7:22
starting
  32:13
starts
  45:13
state
  5:16
stated
  61:13
statement
  41:22
States
  19:8
status
  40:23 45:20,
  22 47:6 49:5
  73:21 74:7,
  19 75:2
step
  16:13 20:16

44:3

**Steve**
24:6 25:24
26:4 32:25
33:6 63:14
68:4,25 69:1

**stipulated**
5:4

**stmbbby@
scheider.com.**
53:21

**stop**
38:25 41:15,
21 46:3,7,
14,23 48:16
57:12

**Stopped**
42:13

**stopping**
42:2,8,14
43:2,9,25
44:24 48:3

**store**
21:15 22:21

**stores**
21:13

**strategizing**
25:11

**strategy**
27:3

**Street**
75:11,16
76:14

**strollers**
17:8 19:1

**structure**
16:25

**subject**
29:11 43:12
54:24 56:6
57:16 61:3

**subjects**
26:25

**subsequently**
13:25

**subset**
76:21

**subsidiary**
16:24

**sudden**
58:19

**suffering**
76:12

**suggested**
41:14 60:10,
12

**sum**
9:10 64:1
65:23

**summarize**
71:4

**summary**
12:5

**supplied**
36:8

**supplying**
16:19 17:16
18:17

**sure**
5:18 6:10
7:2 8:25
11:23 18:6
21:25 28:10
30:7,11 31:9
32:15 34:24
39:2,15,16
40:14 41:1,
9,12 42:4
43:10,12,16
46:6 47:14
48:9 50:11
51:4 55:7,
13,23 62:25
63:20 65:11
66:9 71:15
77:12

**surprise**
42:17,19

**surprising**
52:5

**switch**
58:20

**sworn**
5:12

**synonymous**
56:13

**system**
19:18 20:1,
2,13,19,20
77:23 78:3

**systems**
19:25

---

**T**

---

**tab**
11:2,8,9,11
14:5 45:3
47:8,16,17
53:6 54:3,
10,16 56:1
57:10 60:25
69:24 71:2,
6,10

**Tab-5**
29:6

**table**
61:7

**tabs**
11:6

**take**
7:12 18:25
48:7 65:9
69:16 72:24

**taken**
6:15,19,22
31:19 42:18
73:1

**taking**
16:13 58:11
63:16 71:2
73:20 74:2

**tales**
39:17

**talk**
43:18,22
64:24 68:24

**talked**
64:20 77:23

**talking**
6:24 12:23

23:25 25:18
28:19 57:21

**task**
31:6 41:5

**Taylor**
38:12,16
44:9,11
50:24 54:23
57:14 60:1
63:4

**team**
25:11 26:14,
15 29:2
32:9,11
33:4,5,7
34:5,6
38:22,23
39:23 40:5
42:8,18
43:14,16
44:18,22
46:23 47:20,
21 48:10
50:19 53:21
54:22 55:5,
13,21 60:2
62:22,25
63:7,8,9,12
66:2 67:1,6,
11,21 69:20
70:3 71:12,
13 75:1

**teams**
27:5 71:11

**technically**
16:23 77:24

**tell**
10:15 12:6
29:17 39:17

**telling**
44:4

**ten**
27:24

**term**
28:5 35:6
47:25

**terms**
27:20,24,25

28:6,8,13
48:4,8 51:18
52:7,15,20,
24 77:22
78:2
**testified**
5:13 79:11
**Thank**
26:16 80:6
**thing**
44:1 49:8
53:7
**things**
15:18 17:2
20:9 22:10
26:21,22
30:22 34:21
43:11 67:8
75:11
**think**
12:1 16:23
23:11 28:4,
11,12,25
29:1,12,21
30:8 31:9,20
32:1 38:12
43:17 47:9,
17 48:19
50:15,23
53:7 56:23
57:11 58:2
60:12,18
64:7 66:9
68:8 71:24
72:9 75:6
**third**
47:19 53:10
59:12
**THOMAS**
5:11
**thought**
72:12
**thousand**
13:12
**three**
11:6 22:1,17
24:18 52:11

**throughput**
78:24
**tied**
13:1
**time**
5:9 6:14 7:9
13:8,14,17
16:17,22
17:1,12,21
18:3,16,21
23:7 27:12,
18 28:24
29:24 30:8,
10 31:18
33:11 35:5
39:9,13
40:6,13,18,
22 42:2,7,
12,18 43:8
44:12,20,21,
25 46:8 49:6
50:4,5,8,13,
16 52:1,9,16
57:5 58:5,
12,25 59:1,
21 60:21
62:1 63:5,13
64:14 65:10,
20 69:8 70:5
73:19,20
74:21 75:3,
21 77:11
78:8 79:16
**Times**
76:15
**timing**
8:25 22:22
55:23
**tmsne@**
**bedbath.com**
53:18
**today**
5:24 6:3,24
7:3,15,19
14:21 28:15
32:4,18 38:1
59:23 62:17
67:7,21

68:25 73:16
**today's**
14:15
**Tom**
5:18
**top**
24:18 37:24
38:4 52:11,
15 60:1
**total**
9:10,16 12:2
**touched**
74:21
**transactions**
35:22
**transcribed**
7:4
**transcript**
80:9
**transition**
63:9
**translating**
20:4
**transpired**
28:16 50:4
55:22 62:15,
20
**transpiring**
70:23
**trends**
58:20
**trial**
5:9
**truth**
41:23
**try**
18:12 31:22
32:11,12
50:20 74:13
**trying**
12:1 18:6
42:24 55:18
57:8 71:13
**turn**
11:2 14:5
22:11,18
29:9 37:6

45:3,12 47:8
57:9 69:24
**twice**
66:15
**two**
12:19 17:11
21:8 22:1,14
27:1 28:7
35:17 37:12,
13,19 52:13,
15 59:17
60:4 63:11,
16 67:23
71:5 75:3
78:19,24
**type**
15:12 75:17
**types**
17:17,24
23:5 30:22
65:11 71:16
**typical**
27:17 59:8
60:18
**typically**
21:13,23
22:10 26:20
34:16 35:10
75:8

---

**U**

**U.s**
19:2
**U.S.**
18:18 19:2,
12
**ultimately**
46:6 61:22
**Um-hum**
17:5 40:20
43:19
**unaware**
51:15
**undergoing**
76:11

**understand**
5:23 7:14
9:8 11:21
15:6 18:21
23:12 27:21
31:2 51:24
56:15 58:17
70:19 71:13
74:3,13 75:1
78:23
**understanding**
8:23 15:15
23:4 27:16,
19 60:16
61:20 64:3
75:23 76:1,3
**Understood**
27:6
**undertaking**
74:25 75:1
**United**
19:8
**universal**
22:16
**unpaid**
72:4 78:9
**unusual**
37:13,18,22
78:25 79:3,4
**update**
37:11 59:14
**updated**
40:23
**USA**
6:2,5 7:25
8:8 16:6
17:22 19:4
35:24 36:22,
25 37:4
72:18

---

**V**

**vague**
40:11
**verbiage**
65:12

**versus**
36:25 67:16
**vice**
24:3
**volume**
22:10,15,18
**volumes**
22:20,21
**VP**
68:2

---

**W**

**wait**
7:7
**waived**
5:7
**waiver**
28:3
**Wall**
75:10,16
76:14
**Wang**
45:6 46:1,2,
11 47:5,18
**Wang's**
46:19
**want**
20:3 27:6
34:20 38:7
71:7 77:19
78:23
**wanted**
31:4 73:4
**wanting**
43:18
**warehouse**
20:23 21:12,
15 53:16
**watch**
58:10
**watching**
58:6,8
**way**
29:6 57:14
58:21 59:20
60:14 63:19

64:11 71:9
76:2
**ways**
27:4 56:16
**week**
57:10 58:16
59:12,15
78:19
**week's**
58:18 61:3
**weekly**
60:3,8,11,17
74:18
**weeks**
37:12,14,19
49:19 60:21
69:15,17,21
**well-being**
75:24
**went**
69:15
**witness**
6:3 80:13
**wondering**
55:11 70:22
**words**
35:23 46:13
50:10,18
51:20 66:11
77:3
**work**
22:9 58:21
64:9
**worked**
73:12
**working**
68:21
**world**
21:19,20
41:9 50:17
**worries**
18:13
**worth**
58:18 79:1,9
**writing**
20:2 54:21
56:2 57:13

---

**Y**

**Y-U-S-E-N**
54:6
**yeah**
18:25 24:2
26:6 28:20
32:9 33:15,
23 35:17
40:11 42:21
62:21 67:4
70:22 72:11,
14 74:1
**year**
8:19 23:6,7
**years**
8:3,5 17:12
18:15 27:23
28:1 41:8
51:17,25
68:16 73:6,
10
**yellow**
11:10,12
**York**
76:14
**Yusen**
54:4,8

| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT**<br>**DISTRICT OF NEW JERSEY** | |
| **Caption in Compliance with D.N.J. LBR 9004-1(b)**<br>Marianna Udem<br>Brigette McGrath<br>ASK LLP<br>60 East 42nd Street, 46th Floor<br>New York, NY 10165<br>Telephone: (212) 267-7342<br>Facsimile: (212) 918-3427<br>mudem@askllp.com<br>bmcgrath@askllp.com<br><br>*Special Counsel to the Plan Administrator* | |
| In re:<br><br>BED BATH & BEYOND, INC., *et al.*,[1]<br><br>                   Debtor. | Chapter 11<br><br>Case No. 23-13359 (VFP)<br><br>(Jointly Administered) |
| Michael Goldberg, as Plan Administrator for<br>20230930-DK-Butterfly-1, Inc. (f/k/a/ Bed Bath &<br>Beyond Inc.),[2]<br>                   Plaintiff,<br><br>v.<br><br>Artsana USA, Inc.,<br><br>                   Defendant. | Adv. No. 24-01336-VFP |

## NOTICE OF DEPOSITION OF DESIGNATED PERSON(S) MOST KNOWLEDGEABLE ON BEHALF OF DEFENDANT ARTSANA USA, INC.

---

[1] The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2] Pursuant to the *Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc.*, which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to *20230930-DK-Butterfly, Inc.* [Filing ID No. 230921001833 DOS ID 315602].

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Bankruptcy Procedure 7030 and Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6), Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. f/k/a Bed Bath & Beyond Inc. (the "Plan Administrator" or "Plaintiff")[3] in the bankruptcy cases filed by Bed Bath & Beyond Inc. and its affiliated debtors (collectively, the "Debtors"), through his attorneys, will take the deposition upon oral examination of the person or persons designated by defendant Artsana USA, Inc. ("Defendant"), as most knowledgeable with respect to the matters set forth in Exhibit "A" attached hereto on Monday, September 29 beginning at 9:00 a.m. (Eastern Time) at the offices of Saul Ewing LLP at 1200 Liberty Ridge Drive, Suite 200, Wayne, PA 19087, or such other date, time and location as the parties may agree in writing.

**PLEASE TAKE FURTHER NOTICE** that, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, Defendant is required to designate one or more officers, directors, managing agents or other persons to testify who have knowledge about the topics set forth in Exhibit "A" attached hereto.[4]

**PLEASE TAKE FURTHER NOTICE** that the deposition will be recorded and transcribed by video and stenographic means before a notary public or officer authorized by law to take the deposition. The deposition will continue from day to day until completed, excepting Saturdays, Sundays and Court observed holidays. You are invited to attend and cross-examine.

Dated:  September 23, 2025

**ASK LLP**

By:  _/s/ Brigette McGrath_
Brigette McGrath, Esq., NJ SBN 01000-2011
Nicholas C. Brown Esq., VA SBN 99898
2600 Eagan Woods Drive, Suite 400
St. Paul, MN  55121
Telephone: 651-289-3854
Email: bmcgrath@askllp.com
        nbrown@askllp.com

_-and-_

---

[3]  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the First Amended Complaint (the "Amended Complaint) filed in the above-captioned adversary proceeding.

[4]  Plaintiff reserves its right to amend the list of topics set forth in Exhibit "A" at any time prior to the date of deposition and in any manner.

Marianna Udem, Esq., NJ SBN 03659-2006
60 East 42nd Street, 46th Fl.
New York, NY  10165
Telephone: 212-267-7342
Fax: 212-918-3427

*Counsel for the Plan Administrator*

## Exhibit A

PLEASE TAKE NOTICE, that pursuant to Federal Rules of Civil Procedure 30(b)(1) and 30(b)(6), defendant, Artsana USA, Inc. ("Defendant"), is hereby requested to designate and produce for deposition one or more of its employees, officers, agents or other persons duly authorized to testify about and produce all documents regarding the following matters:

1. The general business relationship between Defendant and the Debtors between the period of January 1, 2022 and April 23, 2023.

2. All payments received by you from one or more of the Debtors between the period of January 1, 2022 and April 23, 2023, including but not limited to the payments listed in Exhibit A to the Amended Complaint.

3. The obligations paid or otherwise satisfied by the payments referenced in paragraph 3.

4. All oral and written correspondence (including but not limited to in-person meetings, video meetings, telephonic conversations, emails, text messages, and messaging and social media applications) between the Debtors and Defendant between January 1, 2023 and April 23, 2023.

5. All oral and written correspondence (including but not limited to in-person meetings, video meetings, telephonic conversations, emails, text messages, and messaging and social media applications) among your officers, employees and/or agents regarding the Debtors between January 1, 2023 and April 23, 2023.

6. The payment terms in effect between the Debtors and Defendant between January 1, 2022 and April 23, 2023.

7. The credit limit in effect between the Debtors and Defendant between January 1, 2022 and April 23, 2023.

8. Any and all credit holds, purchase order holds, and/or shipment holds involving the

Debtors, in effect at any time between January 1, 2022 and April 23, 2023.

9. The Debtors' accounts payable history including accounts payable balance between January 1, 2022 and April 23, 2023.

10. The identities and roles of each of your officers, employees, and/or agents who communicated with the Debtors regarding the Defendant-Debtor business relationship, between January 1, 2022 and April 23, 2023.

11. The identities and roles of each of the Debtors' officers, employees, and/or agents with whom Defendant communicated regarding the Defendant-Debtor business relationship, between January 1, 2022 and April 23, 2023.

12. The identities and roles of each of your officers, employees, and/or agents who communicated with the Debtors regarding the Debtors' payment obligations to Defendant, between January 1, 2022 and April 23, 2023.

13. The substance of the communications referenced in Paragraphs 11, 12, and 13.

14. Any claim(s) Defendant contends to have against the Debtors or their bankruptcy estates.

15. The goods, services, or other value Defendant provided to the Debtors during the Preference Period, including the dollar amount and timing of such goods, services, or other value.

16. All facts of which you are aware indicating that the Transfers were made in the ordinary course of business or financial affairs of the Debtors and/or you.

17. All facts supporting any other affirmative defenses you have asserted or intend to assert in this action.

18. All facts concerning the invoices, purchase orders and/or shipments paid for by the Transfers.

19. All facts including the circumstances surrounding the Debtors' payment of

$1,603,440.30 to Defendant on or about February 27, 2023.

20. The occurrence of any prepayments (as opposed to payments on credit) by the Debtors to Defendant at any time between January 1, 2022 and April 23, 2023, including but not limited to any prepayment of invoices on or about February 27, 2023.

21. All facts regarding past due balances and invoices owing by the Debtors to Defendant at any time between January 1, 2022 and April 23, 2023, including but not limited to Defendant's efforts to collect amounts past due.

22. Your written responses to Plaintiff's *First Set of Interrogatories, Requests for Production and Requests for Admission Propounded by Plaintiff.*

23. All documents produced in response to Plaintiff's *First Set of Interrogatories, Requests for Production and Requests for Admission Propounded by Plaintiff.*

Exhibit 3

| 27-Feb | 1,603,440.30 | Bed Bath & Beyon Payments 230227 823031 Artsana USA Inc | Ties to bank statement |
| | | | |
| | 1,065,040.00 | Prepayment | See yellow highlight on 2nd tab |
| | 538,400.30 | Remainder - Payment for Open invoices at the time | |

| Invoice# | Invoice Date | PO# | Store | Description | Invoice Amount | Discount Amount | Net Amount |
|---|---|---|---|---|---|---|---|
| 5213129685RP | 05/09/2022 | JL8L4QL00 | 3101 | BAD ASN | $134.52 | $2.29 | $132.23 |
| 5213129685RP | 05/09/2022 | JL8L4QL00 | 3101 | RECONFIRMED SHTG | -$134.52 | -$2.28 | -$132.24 |
| 5213165112 | 09/19/2022 | JP6U6NM00 | 3088 | EDI TRAN ID: 000018595 | $472.43 | $8.03 | $464.40 |
| 5213165112 | 09/19/2022 | JP6U6NM00 | 3088 | ALL SHORT | -$472.43 | -$8.03 | -$464.40 |
| 5213165771RP | 09/20/2022 | JQ5C4WA00 | 3053 | | $520.61 | $8.85 | $511.76 |
| 5213169672 | 10/11/2022 | JQ8F3YS00 | 3069 | EDI TRAN ID: 000018595 | $850.61 | $14.46 | $836.15 |
| 5213169672 | 10/11/2022 | JQ8F3YS00 | 3069 | ALL SHORT | -$850.61 | -$14.46 | -$836.15 |
| 5213169724 | 10/11/2022 | JQ9U4CP00 | 3016 | EDI TRAN ID: 000018595 | $22.20 | $0.38 | $21.83 |
| 5213169724 | 10/11/2022 | JQ9U4CP00 | 3016 | ALL SHORT | -$22.20 | -$0.37 | -$21.83 |
| 5213170373 | 10/12/2022 | JQ8F3TL00 | 3024 | JQ8F3TL- | $208.58 | $3.55 | $205.03 |
| 5213170373 | 10/12/2022 | JQ8F3TL00 | 3024 | INVALID INV DATA | -$208.58 | -$3.54 | -$205.04 |
| 5213170404 | 10/12/2022 | JQ2N8HD00 | 3111 | EDI TRAN ID: 000018595 | $545.86 | $9.28 | $536.58 |
| 5213170406 | 10/12/2022 | JQ8U4AC00 | 3111 | | $5,627.37 | $95.67 | $5,531.70 |
| 5213170412RP | 10/12/2022 | JQ8F4AF00 | 3091 | | $449.71 | $7.65 | $442.06 |
| 5213170426RP | 10/12/2022 | JR2X4UT00 | 3091 | | $334.97 | $5.69 | $329.28 |
| 5213170427RP | 10/12/2022 | JR2J2KV00 | 3091 | | $443.37 | $7.54 | $435.83 |
| 5213170439 | 10/12/2022 | JQ8F3ZK00 | 3079 | EDI TRAN ID: 000018595 | $144.78 | $2.46 | $142.32 |
| 5213170439 | 10/12/2022 | JQ8F3ZK00 | 3079 | ALL SHORT | -$144.78 | -$2.46 | -$142.32 |
| 5213170440 | 10/12/2022 | JQ9U4EL00 | 3079 | EDI TRAN ID: 000018595 | $38.40 | $0.65 | $37.75 |
| 5213170440 | 10/12/2022 | JQ9U4EL00 | 3079 | ALL SHORT | -$38.40 | -$0.65 | -$37.75 |
| 5213170463 | 10/12/2022 | JQ8F3YQ00 | 3068 | EDI TRAN ID: 000018595 | $715.79 | $12.17 | $703.62 |
| 5213170463 | 10/12/2022 | JQ8F3YQ00 | 3068 | ALL SHORT | -$715.79 | -$12.16 | -$703.63 |
| 5213170519RP | 10/12/2022 | JQ8F3WS00 | 3048 | | $566.97 | $9.64 | $557.33 |
| 5213170589RP | 10/12/2022 | JQ8S6MD00 | 3086 | | $134.52 | $2.29 | $132.23 |
| 5213171572 | 10/17/2022 | JN8X8PV00 | 3143 | NSD 15.0% 30 DAYS | $37.20 | $6.21 | $30.99 |
| 5213171572 | 10/17/2022 | JN8X8PV00 | 3143 | ALL SHORT | -$37.20 | -$6.21 | -$30.99 |
| 5213172101 | 10/18/2022 | JR4F3LX00 | 328 | EDI TRAN ID: 000018595 | $220.49 | $3.75 | $216.74 |
| 5213172101 | 10/18/2022 | JR4F3LX00 | 328 | ALL SHORT | -$220.49 | -$3.74 | -$216.75 |
| 5213172107 | 10/18/2022 | JR4F4AG00 | 3131 | EDI TRAN ID: 000018595 | $71.49 | $1.22 | $70.27 |
| 5213172107 | 10/18/2022 | JR4F4AG00 | 3131 | ALL SHORT | -$71.49 | -$1.21 | -$70.28 |
| 5213174046 | 10/31/2022 | JR5X8CM00 | 3145 | NSD 15.0% 30 DAYS | $23.10 | $3.86 | $19.24 |
| 5213174046 | 10/31/2022 | JR5X8CM00 | 3145 | ALL SHORT | -$23.10 | -$3.85 | -$19.25 |
| 5213174483 | 11/01/2022 | JR6R8BP00 | 3051 | | $2,433.86 | $41.38 | $2,392.48 |
| 5213174533 | 11/01/2022 | JR6A7QE00 | 3009 | | $670.51 | $11.40 | $659.11 |
| 5213174543 | 11/01/2022 | JQ6Q3QQ00 | 3069 | EDI TRAN ID: 000018595 | $652.00 | $11.08 | $640.92 |
| 5213174543 | 11/01/2022 | JQ6Q3QQ00 | 3069 | ALL SHORT | -$652.00 | -$11.08 | -$640.92 |
| 5213174580RP | 11/01/2022 | JR6P9DZ00 | 3024 | | $308.80 | $5.25 | $303.55 |

| ID | Date | Code | Num | Description | Amount 1 | Amount 2 | Amount 3 |
|---|---|---|---|---|---|---|---|
| 5213174759 | 11/02/2022 | JR5L2UC00 | 3075 | EDI TRAN ID: 000018595 | $81.50 | $1.39 | $80.11 |
| 5213174759 | 11/02/2022 | JR5L2UC00 | 3075 | ALL SHORT | -$81.50 | -$1.38 | -$80.12 |
| 5213174787 | 11/02/2022 | JQ6Q3UT00 | 3129 | EDI TRAN ID: 000018595 | $81.50 | $1.39 | $80.11 |
| 5213174788 | 11/02/2022 | JR5L2VX00 | 3129 | EDI TRAN ID: 000018595 | $81.50 | $1.39 | $80.11 |
| 5213174789 | 11/02/2022 | JR6A8FN00 | 3129 | EDI TRAN ID: 000018595 | $203.30 | $3.46 | $199.84 |
| 5213174821RP | 11/02/2022 | JQ6Q3UQ00 | 3126 | | $326.00 | $5.54 | $320.46 |
| 5213175085A | 11/03/2022 | JR6G4TC00 | 657 | EDI TRAN ID: 000018595 | $23,416.95 | $398.09 | $23,018.86 |
| 5213175085A | 11/03/2022 | JR6G4TC00 | 657 | CONCEALED SHORT | -$120.30 | -$2.04 | -$118.26 |
| 5213175134 | 11/03/2022 | JQ6Q3QP00 | 3068 | EDI TRAN ID: 000018595 | $652.00 | $11.08 | $640.92 |
| 5213175134 | 11/03/2022 | JQ6Q3QP00 | 3068 | ALL SHORT | -$652.00 | -$11.08 | -$640.92 |
| 5213175143 | 11/03/2022 | JQ4B3VX00 | 3082 | EDI TRAN ID: 000018595 | $1,104.87 | $18.78 | $1,086.09 |
| 5213175143 | 11/03/2022 | JQ4B3VX00 | 3082 | ALL SHORT | -$1,104.87 | -$18.78 | -$1,086.09 |
| 5213175150 | 11/03/2022 | JQ4B3VS00 | 3068 | EDI TRAN ID: 000018595 | $1,104.87 | $18.78 | $1,086.09 |
| 5213175150 | 11/03/2022 | JQ4B3VS00 | 3068 | ALL SHORT | -$1,104.87 | -$18.78 | -$1,086.09 |
| 5213175213 | 11/03/2022 | JQ6Q3RG00 | 3079 | EDI TRAN ID: 000018595 | $652.00 | $11.08 | $640.92 |
| 5213175213 | 11/03/2022 | JQ6Q3RG00 | 3079 | ALL SHORT | -$652.00 | -$11.08 | -$640.92 |
| 5213175216 | 11/03/2022 | JQ4B3VW00 | 3079 | EDI TRAN ID: 000018595 | $1,104.87 | $18.78 | $1,086.09 |
| 5213175216 | 11/03/2022 | JQ4B3VW00 | 3079 | ALL SHORT | -$1,104.87 | -$18.78 | -$1,086.09 |
| 5213177098 | 11/15/2022 | JR7P3GH00 | 3129 | | $194.83 | $3.31 | $191.52 |
| 5213177109 | 11/15/2022 | JR8SBW00 | 3129 | EDI TRAN ID: 000018595 | $208.41 | $3.54 | $204.87 |
| 5213177403 | 11/16/2022 | JR7P3FN00 | 3120 | | $891.95 | $15.16 | $876.79 |
| 5213177406 | 11/16/2022 | JR3G8TR00 | 3042 | EDI TRAN ID: 000018595 | $16.50 | $0.28 | $16.22 |
| 5213177407 | 11/16/2022 | JR5G4VT00 | 3042 | EDI TRAN ID: 000018595 | $16.50 | $0.28 | $16.22 |
| 5213177412 | 11/16/2022 | JR7P3FN00 | 3120 | | $54.46 | $0.93 | $53.53 |
| 5213177418 | 11/16/2022 | JQ5B7BG00 | 3042 | EDI TRAN ID: 000018595 | $257.19 | $4.37 | $252.82 |
| 5213177421 | 11/16/2022 | JR8S5WM00 | 3042 | EDI TRAN ID: 000018595 | $208.41 | $3.54 | $204.87 |
| 5213177422 | 11/16/2022 | JR9V9ED00 | 3042 | | $3,065.49 | $52.11 | $3,013.38 |
| 5213177423 | 11/16/2022 | JR8Y2AK00 | 3042 | | $2,115.23 | $35.96 | $2,079.27 |
| 5213177444 | 11/16/2022 | JR8K3BH00 | 3052 | EDI TRAN ID: 000018595 | $251.98 | $4.28 | $247.70 |
| 5213177445 | 11/16/2022 | JR7P2XL00 | 3052 | EDI TRAN ID: 000018595 | $461.41 | $7.84 | $453.57 |
| 5213177446 | 11/16/2022 | JR8K2YV00 | 3027 | EDI TRAN ID: 000018595 | $1,454.79 | $24.73 | $1,430.06 |
| 5213177447 | 11/16/2022 | JR7S4VM00 | 3027 | EDI TRAN ID: 000018595 | $541.52 | $9.21 | $532.31 |
| 5213177448 | 11/16/2022 | JR7P2TE00 | 3027 | EDI TRAN ID: 000018595 | $1,561.58 | $26.55 | $1,535.03 |
| 5213177452 | 11/16/2022 | JR8K2YD00 | 3021 | EDI TRAN ID: 000018595 | $561.70 | $9.55 | $552.15 |
| 5213177453 | 11/16/2022 | JR7P2RW00 | 3021 | EDI TRAN ID: 000018595 | $401.33 | $6.82 | $394.51 |
| 5213177454 | 11/16/2022 | JR7U7MH00 | 3106 | EDI TRAN ID: 000018595 | $552.28 | $9.39 | $542.89 |
| 5213177455 | 11/16/2022 | JR7P3DS00 | 3106 | EDI TRAN ID: 000018595 | $1,494.30 | $25.40 | $1,468.90 |
| 5213177456 | 11/16/2022 | JR8K2ZS00 | 3039 | EDI TRAN ID: 000018595 | $263.73 | $4.48 | $259.25 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5213177457 | 11/16/2022 | JR7P2VX00 | 3039 | EDI TRAN ID: 000018595 | $564.90 | $9.60 | $555.30 |
| 5213177458 | 11/16/2022 | JR8K3KQ00 | 3135 | EDI TRAN ID: 000018595 | $377.98 | $6.43 | $371.55 |
| 5213177459 | 11/16/2022 | JR7Z2ZU00 | 3135 | EDI TRAN ID: 000018595 | $547.94 | $9.31 | $538.63 |
| 5213177460 | 11/16/2022 | JR7V8MQ00 | 3134 | EDI TRAN ID: 000018595 | $450.82 | $7.66 | $443.16 |
| 5213177460 | 11/16/2022 | JR7V8MQ00 | 3134 | TOLERANCE | -$2.94 | -$0.04 | -$2.90 |
| 5213177461 | 11/16/2022 | JR7P3GV00 | 3134 | EDI TRAN ID: 000018595 | $349.24 | $5.94 | $343.30 |
| 5213177462 | 11/16/2022 | JR9V9FE00 | 3052 | | $610.16 | $10.37 | $599.79 |
| 5213177464 | 11/16/2022 | JR9V9CP00 | 3027 | EDI TRAN ID: 000018595 | $321.45 | $5.46 | $315.99 |
| 5213177465 | 11/16/2022 | JR8U6WU00 | 3027 | EDI TRAN ID: 000018595 | $2,723.28 | $46.30 | $2,676.98 |
| 5213177466 | 11/16/2022 | JR9V9FJ00 | 3054 | EDI TRAN ID: 000018595 | $71.49 | $1.22 | $70.27 |
| 5213177467 | 11/16/2022 | JR8K2YD00 | 3021 | EDI TRAN ID: 000018595 | $257.19 | $4.37 | $252.82 |
| 5213177468 | 11/16/2022 | JR8S5U200 | 3021 | EDI TRAN ID: 000018595 | $1,543.14 | $26.23 | $1,516.91 |
| 5213177469 | 11/16/2022 | JR9V9BZ00 | 3021 | EDI TRAN ID: 000018595 | $123.93 | $2.11 | $121.82 |
| 5213177470 | 11/16/2022 | JR7U7MH00 | 3106 | EDI TRAN ID: 000018595 | $54.46 | $0.93 | $53.53 |
| 5213177471 | 11/16/2022 | JR7P3DS00 | 3106 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213177472 | 11/16/2022 | JR9V9DY00 | 3039 | EDI TRAN ID: 000018595 | $560.82 | $9.53 | $551.29 |
| 5213177473 | 11/16/2022 | JR8Z6HP00 | 3039 | EDI TRAN ID: 000018595 | $1,889.72 | $32.13 | $1,857.59 |
| 5213177502 | 11/16/2022 | JR8K2ZL00 | 3034 | EDI TRAN ID: 000018595 | $22.20 | $0.38 | $21.82 |
| 5213177502 | 11/16/2022 | JR8K2ZL00 | 3034 | ALL SHORT | -$22.20 | -$0.37 | -$21.83 |
| 5213177504 | 11/16/2022 | JR7P2UT00 | 3034 | | $1,761.35 | $29.94 | $1,731.41 |
| 5213177524 | 11/16/2022 | JR9A5BT00 | 3055 | | $1,419.11 | $24.12 | $1,394.99 |
| 5213177611 | 11/16/2022 | JR7P2NX00 | 1331 | EDI TRAN ID: 000018595 | $512.50 | $8.71 | $503.79 |
| 5213177626 | 11/16/2022 | JQ5Q3BH00 | 3082 | EDI TRAN ID: 000018595 | $514.38 | $8.74 | $505.64 |
| 5213177626 | 11/16/2022 | JQ5Q3BH00 | 3082 | ALL SHORT | -$514.38 | -$8.74 | -$505.64 |
| 5213177638 | 11/16/2022 | JR8S5TZ00 | 1331 | EDI TRAN ID: 000018595 | $138.94 | $2.36 | $136.58 |
| 5213178078 | 11/16/2022 | JR7P2ZU00 | 3075 | EDI TRAN ID: 000018595 | $135.82 | $2.31 | $133.51 |
| 5213178078 | 11/16/2022 | JR7P2ZU00 | 3075 | ALL SHORT | -$135.82 | -$2.30 | -$133.52 |
| 5213178089 | 11/16/2022 | JR9V9HH00 | 3075 | EDI TRAN ID: 000018595 | $509.84 | $8.67 | $501.17 |
| 5213178089 | 11/16/2022 | JR9V9HH00 | 3075 | ALL SHORT | -$509.84 | -$8.66 | -$501.18 |
| 5213178091 | 11/16/2022 | JR8U6UP00 | 3075 | EDI TRAN ID: 000018595 | $500.99 | $8.52 | $492.47 |
| 5213178091 | 11/16/2022 | JR8U6UP00 | 3075 | ALL SHORT | -$500.99 | -$8.51 | -$492.48 |
| 5213178439 | 11/17/2022 | JR6A7YQ00 | 3073 | EDI TRAN ID: 000018595 | $16.50 | $0.28 | $16.22 |
| 5213178440 | 11/17/2022 | JR8K3DM00 | 3073 | EDI TRAN ID: 000018595 | $125.99 | $2.14 | $123.85 |
| 5213178441 | 11/17/2022 | JR7P2ZM00 | 3073 | EDI TRAN ID: 000018595 | $318.20 | $5.41 | $312.79 |
| 5213178450 | 11/17/2022 | JR8K3CV00 | 3065 | EDI TRAN ID: 000018595 | $1,300.07 | $22.10 | $1,277.97 |
| 5213178451 | 11/17/2022 | JR7P2YR00 | 3065 | EDI TRAN ID: 000018595 | $810.34 | $13.78 | $796.56 |
| 5213178456 | 11/17/2022 | JR9V9HC00 | 3073 | EDI TRAN ID: 000018595 | $859.62 | $14.61 | $845.01 |
| 5213178463 | 11/17/2022 | JR9V9DW00 | 3038 | EDI TRAN ID: 000018595 | $286.39 | $4.87 | $281.52 |

| Invoice | Date | Code | Num | Description | Amount 1 | Amount 2 | Amount 3 |
|---|---|---|---|---|---|---|---|
| 5213178467 | 11/17/2022 | JR9V9GB00 | 3065 | EDI TRAN ID: 000018595 | $162.38 | $2.76 | $159.62 |
| 5213178489 | 11/17/2022 | JQ8F3YS00 | 3069 | EDI TRAN ID: 000018595 | $514.38 | $8.74 | $505.64 |
| 5213178470 | 11/17/2022 | JQ8F3YS00 | 3069 | ALL SHORT | -$514.38 | -$8.74 | -$505.64 |
| 5213178489 | 11/17/2022 | JR8K3GX00 | 3112 | EDI TRAN ID: 000018595 | $21.72 | $0.37 | $21.35 |
| 5213178499 | 11/17/2022 | JR8K3GX00 | 3112 | ALL SHORT | -$21.72 | -$0.36 | -$21.36 |
| 5213178511 | 11/17/2022 | JR7P3CF00 | 3096 | EDI TRAN ID: 000018595 | $1,317.57 | $22.40 | $1,295.17 |
| 5213178511 | 11/17/2022 | JR8K3FC00 | 3095 | EDI TRAN ID: 000018595 | $6.40 | $0.11 | $6.29 |
| 5213178511 | 11/17/2022 | JR8K3FC00 | 3095 | ALL SHORT | -$6.40 | -$0.10 | -$6.30 |
| 5213180068 | 11/23/2022 | JS3B8XW00 | 657 | EDI TRAN ID: 000018595 | $45,281.43 | $769.78 | $44,511.65 |
| 5213180068 | 11/23/2022 | JS3B8XW00 | 657 | PRICE DIFF CB | -$717.44 | -$12.19 | -$705.25 |
| 5213180068 | 11/23/2022 | JS3B8XW00 | 657 | PPD SHORT | -$403.56 | -$6.86 | -$396.70 |
| 5213180069 | 11/23/2022 | JS3B8YA00 | 677 | EDI TRAN ID: 000018595 | $15,609.99 | $265.37 | $15,344.62 |
| 5213182858 | 11/30/2022 | JR5L3AR00 | 677 | EDI TRAN ID: 000018595 | $4,129.02 | $70.19 | $4,058.83 |
| 5213182858 | 11/30/2022 | JR5L3AR00 | 677 | ITEM SUBSTIT | -$22.33 | -$0.37 | -$21.96 |
| 5213182858 | 11/30/2022 | JR5L3AR00 | 677 | PPD CARRIER DAM | -$436.45 | -$7.41 | -$429.04 |
| 5213182859 | 11/30/2022 | JR9V9AE00 | 677 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213182860 | 11/30/2022 | JS3B8YA00 | 677 | EDI TRAN ID: 000018595 | $38.40 | $0.65 | $37.75 |
| 5213182861 | 11/30/2022 | JS4U3KS00 | 677 | EDI TRAN ID: 000018595 | $2,245.50 | $38.17 | $2,207.33 |
| 5213182862 | 11/30/2022 | JS3B8ZN00 | 3029 | EDI TRAN ID: 000018595 | $138.94 | $2.36 | $136.58 |
| 5213182863 | 11/30/2022 | JS2B7HV00 | 3029 | EDI TRAN ID: 000018595 | $683.26 | $11.62 | $671.64 |
| 5213182864 | 11/30/2022 | JS3B9GH00 | 3074 | EDI TRAN ID: 000018595 | $557.20 | $9.47 | $547.73 |
| 5213182865 | 11/30/2022 | JS3B9GP00 | 3072 | EDI TRAN ID: 000018595 | $656.76 | $11.16 | $645.60 |
| 5213182866 | 11/30/2022 | JS3B9GE00 | 3071 | EDI TRAN ID: 000018595 | $758.28 | $12.89 | $745.39 |
| 5213182867 | 11/30/2022 | JR9V9CX00 | 3029 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213182868 | 11/30/2022 | JS4U3NZ00 | 3029 | EDI TRAN ID: 000018595 | $40.50 | $0.69 | $39.81 |
| 5213182869 | 11/30/2022 | JS4U3UU00 | 3072 | EDI TRAN ID: 000018595 | $2,168.78 | $36.87 | $2,131.91 |
| 5213182870 | 11/30/2022 | JS3R8FR00 | 3072 | EDI TRAN ID: 000018595 | $899.55 | $15.29 | $884.26 |
| 5213182871 | 11/30/2022 | JS4U3VC00 | 3074 | EDI TRAN ID: 000018595 | $557.48 | $9.48 | $548.00 |
| 5213182872 | 11/30/2022 | JS3R8JA00 | 3074 | EDI TRAN ID: 000018595 | $552.84 | $9.40 | $543.44 |
| 5213182873 | 11/30/2022 | JS4U3UM00 | 3071 | EDI TRAN ID: 000018595 | $2,670.28 | $45.39 | $2,624.89 |
| 5213182874 | 11/30/2022 | JQ3D4HX00 | 655 | EDI TRAN ID: 000018595 | $7,569.87 | $128.69 | $7,441.18 |
| 5213182875 | 11/30/2022 | JR9V8YB00 | 655 | EDI TRAN ID: 000018595 | $38.40 | $0.65 | $37.75 |
| 5213182876 | 11/30/2022 | JS3B8XJ00 | 655 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213182877 | 11/30/2022 | JS4U3JX00 | 655 | EDI TRAN ID: 000018595 | $18,650.99 | $317.07 | $18,333.92 |
| 5213183108 | 12/01/2022 | JS4U3VG00 | 3076 | EDI TRAN ID: 000018595 | $2,900.51 | $49.31 | $2,851.20 |
| 5213183108 | 12/01/2022 |  |  | CONCEALED SHORT | -$43.20 | -$0.73 | -$42.47 |
| 5213183108 | 12/01/2022 | JS4U3XF00 | 3095 | EDI TRAN ID: 000018595 | $2,044.63 | $34.76 | $2,009.87 |
| 5213183110 | 12/01/2022 | JS4U3XV00 | 3099 | EDI TRAN ID: 000018595 | $2,186.30 | $37.17 | $2,149.13 |

| Account | Date | Code | Num | Amount | EDI TRAN ID | Amount | Amount |
|---|---|---|---|---|---|---|---|
| 5213183111 | 12/01/2022 | JS4U3GP00 | 20 | $155.96 | EDI TRAN ID: 000018595 | $2.65 | $153.31 |
| 5213183112 | 12/01/2022 | JS4U3QY00 | 3043 | $43.20 | EDI TRAN ID: 000018595 | $0.73 | $42.47 |
| 5213183113 | 12/01/2022 | JS3X5PV00 | 3043 | $706.06 | EDI TRAN ID: 000018595 | $12.00 | $694.06 |
| 5213183114 | 12/01/2022 | JS4U3ZB00 | 3112 | $564.84 | EDI TRAN ID: 000018595 | $9.60 | $555.24 |
| 5213183115 | 12/01/2022 | JS4U3TQ00 | 3063 | $2,527.56 | | $42.97 | $2,484.59 |
| 5213183116 | 12/01/2022 | JS4U3WA00 | 3084 | $243.57 | EDI TRAN ID: 000018595 | $4.14 | $239.43 |
| 5213183117 | 12/01/2022 | JS4U3ZN00 | 3118 | $1,656.93 | | $28.17 | $1,628.76 |
| 5213183118 | 12/01/2022 | JS4U3XK00 | 3096 | $2,960.10 | EDI TRAN ID: 000018595 | $50.32 | $2,909.78 |
| 5213183119 | 12/01/2022 | JS4U3XN00 | 3097 | $1,523.19 | | $25.89 | $1,497.30 |
| 5213183121 | 12/01/2022 | JS3K8FL00 | 3136 | $324.76 | EDI TRAN ID: 000018595 | $5.52 | $319.24 |
| 5213183122 | 12/01/2022 | JS4N7QQ00 | 3136 | $244.50 | EDI TRAN ID: 000018595 | $4.16 | $240.34 |
| 5213183123 | 12/01/2022 | JS4U4BR00 | 3136 | $18.30 | EDI TRAN ID: 000018595 | $0.31 | $17.99 |
| 5213183124 | 12/01/2022 | JS3B8YR00 | 3015 | $77.98 | EDI TRAN ID: 000018595 | $1.33 | $76.65 |
| 5213183125 | 12/01/2022 | JS2K3PS00 | 3025 | $1,976.44 | EDI TRAN ID: 000018595 | $33.60 | $1,942.84 |
| 5213183126 | 12/01/2022 | JS3B9CL00 | 3049 | $634.44 | EDI TRAN ID: 000018595 | $10.79 | $623.65 |
| 5213183127 | 12/01/2022 | JS2E6QL00 | 3049 | $522.63 | EDI TRAN ID: 000018595 | $8.88 | $513.75 |
| 5213183128 | 12/01/2022 | JS4U3MC00 | 3015 | $616.14 | EDI TRAN ID: 000018595 | $10.47 | $605.67 |
| 5213183129 | 12/01/2022 | JS4U3NL00 | 3025 | $251.98 | EDI TRAN ID: 000018595 | $4.28 | $247.70 |
| 5213183130 | 12/01/2022 | JR9V9FB00 | 3049 | $19.20 | EDI TRAN ID: 000018595 | $0.33 | $18.87 |
| 5213183131 | 12/01/2022 | JS4U3RS00 | 3049 | $736.58 | EDI TRAN ID: 000018595 | $12.52 | $724.06 |
| 5213183132 | 12/01/2022 | JS3Q8EG00 | 3049 | $5,562.16 | EDI TRAN ID: 000018595 | $94.56 | $5,467.60 |
| 5213183134 | 12/01/2022 | JS3B9PA00 | 3120 | $125.96 | EDI TRAN ID: 000018595 | $2.14 | $123.82 |
| 5213183135 | 12/01/2022 | JS3B9NB00 | 3110 | $1,014.33 | EDI TRAN ID: 000018595 | $17.24 | $997.09 |
| 5213183136 | 12/01/2022 | JS3B9BJ00 | 3042 | $911.41 | | $15.49 | $895.92 |
| 5213183137 | 12/01/2022 | JS4U3GX00 | 321 | $155.96 | EDI TRAN ID: 000018595 | $2.65 | $153.31 |
| 5213183138 | 12/01/2022 | JS4U3ZX00 | 3120 | $43.92 | EDI TRAN ID: 000018595 | $0.75 | $43.17 |
| 5213183139 | 12/01/2022 | JS4U3YV00 | 3110 | $21.72 | EDI TRAN ID: 000018595 | $0.37 | $21.35 |
| 5213183140 | 12/01/2022 | JS4U3QU00 | 3042 | $1,594.63 | | $27.11 | $1,567.52 |
| 5213183141 | 12/01/2022 | JS3B9GL00 | 3073 | $524.99 | | $8.92 | $516.07 |
| 5213183142 | 12/01/2022 | JS3B8YK00 | 3009 | $342.80 | EDI TRAN ID: 000018595 | $5.83 | $336.97 |
| 5213183143 | 12/01/2022 | JS3B8YT00 | 3017 | $207.29 | EDI TRAN ID: 000018595 | $3.52 | $203.77 |
| 5213183144 | 12/01/2022 | JS3B8YD00 | 1308 | $324.76 | EDI TRAN ID: 000018595 | $5.52 | $319.24 |
| 5213183145 | 12/01/2022 | JS3B9BD00 | 3040 | $629.96 | EDI TRAN ID: 000018595 | $10.71 | $619.25 |
| 5213183146 | 12/01/2022 | JS3B9ET00 | 3065 | $767.95 | EDI TRAN ID: 000018595 | $13.06 | $754.89 |
| 5213183147 | 12/01/2022 | JS3B9EL00 | 3064 | $49.28 | EDI TRAN ID: 000018595 | $0.84 | $48.44 |
| 5213183148 | 12/01/2022 | JS3B9QG00 | 3140 | $452.52 | EDI TRAN ID: 000018595 | $7.69 | $444.83 |
| 5213183149 | 12/01/2022 | JS3B9GL00 | 3073 | $19.20 | | $0.33 | $18.87 |
| 5213183150 | 12/01/2022 | JS4U3UY00 | 3073 | $870.86 | EDI TRAN ID: 000018595 | $14.80 | $856.06 |

| ID | Date | Code | Num | EDI TRAN ID | Gross | Fee | Net |
|---|---|---|---|---|---|---|---|
| 5213183151 | 12/01/2022 | JS4U3LH00 | 3009 | EDI TRAN ID: 000018595 | $369.30 | $6.28 | $363.02 |
| 5213183152 | 12/01/2022 | JS4U3MM00 | 3017 | EDI TRAN ID: 000018595 | $377.97 | $6.43 | $371.54 |
| 5213183153 | 12/01/2022 | JS3V3XJ00 | 3017 | EDI TRAN ID: 000018595 | $986.92 | $16.78 | $970.14 |
| 5213183154 | 12/01/2022 | JS4U3QB00 | 3038 | EDI TRAN ID: 000018595 | $96.28 | $1.64 | $94.64 |
| 5213183155 | 12/01/2022 | JS4U3QQ00 | 3040 | EDI TRAN ID: 000018595 | $273.00 | $4.64 | $268.36 |
| 5213183156 | 12/01/2022 | JS4U3TX00 | 3065 | EDI TRAN ID: 000018595 | $1,417.29 | $24.09 | $1,393.20 |
| 5213183157 | 12/01/2022 | JS4U3TU00 | 3064 | EDI TRAN ID: 000018595 | $363.84 | $6.19 | $357.65 |
| 5213183158 | 12/01/2022 | JS4N7QX00 | 3140 | EDI TRAN ID: 000018595 | $244.50 | $4.16 | $240.34 |
| 5213183159 | 12/01/2022 | JS3L7VK00 | 3139 | EDI TRAN ID: 000018595 | $198.64 | $3.38 | $195.26 |
| 5213183160 | 12/01/2022 | JS3B9MD00 | 3100 | EDI TRAN ID: 000018595 | $18.30 | $0.31 | $17.99 |
| 5213183161 | 12/01/2022 | JS3B9KA00 | 3086 | EDI TRAN ID: 000018595 | $72.76 | $1.24 | $71.52 |
| 5213183162 | 12/01/2022 | JS3B82X00 | 3031 | EDI TRAN ID: 000018595 | $62.98 | $1.07 | $61.91 |
| 5213183163 | 12/01/2022 | JS2D9WF00 | 3031 | EDI TRAN ID: 000018595 | $514.79 | $8.75 | $506.04 |
| 5213183164 | 12/01/2022 | JS3B9DN00 | 3056 | EDI TRAN ID: 000018595 | $71.49 | $1.22 | $70.27 |
| 5213183165 | 12/01/2022 | JS4U3XY00 | 3100 | EDI TRAN ID: 000018595 | $57.60 | $0.98 | $56.62 |
| 5213183166 | 12/01/2022 | JS4U3WJ00 | 3086 | EDI TRAN ID: 000018595 | $43.20 | $0.73 | $42.47 |
| 5213183167 | 12/01/2022 | JS4U3PC00 | 3031 | EDI TRAN ID: 000018595 | $598.46 | $10.17 | $588.29 |
| 5213183168 | 12/01/2022 | JS4U3SN00 | 3056 | EDI TRAN ID: 000018595 | $2,444.13 | $41.55 | $2,402.58 |
| 5213183169 | 12/01/2022 | JS3B9HA00 | 3080 | EDI TRAN ID: 000018595 | $81.19 | $1.38 | $79.81 |
| 5213183170 | 12/01/2022 | JS3B8YF00 | 3001 | EDI TRAN ID: 000018595 | $756.02 | $12.85 | $743.17 |
| 5213183171 | 12/01/2022 | JS3B8YJ00 | 3008 | EDI TRAN ID: 000018595 | $156.95 | $2.67 | $154.28 |
| 5213183172 | 12/01/2022 | JS2G6TU00 | 3085 | EDI TRAN ID: 000018595 | $2,830.03 | $48.11 | $2,781.92 |
| 5213183173 | 12/01/2022 | JS3B9JW00 | 3085 | EDI TRAN ID: 000018595 | $157.24 | $2.67 | $154.57 |
| 5213183174 | 12/01/2022 | JS3B9NN00 | 3113 | EDI TRAN ID: 000018595 | $1,050.41 | $17.86 | $1,032.55 |
| 5213183175 | 12/01/2022 | JS3B8YG00 | 3005 | EDI TRAN ID: 000018595 | $246.66 | $4.19 | $242.47 |
| 5213183176 | 12/01/2022 | JS3B9DT00 | 3059 | EDI TRAN ID: 000018595 | $62.40 | $1.06 | $61.34 |
| 5213183177 | 12/01/2022 | JS3B9GV00 | 3076 | EDI TRAN ID: 000018595 | $785.04 | $13.35 | $771.69 |
| 5213183177 | 12/01/2022 | JS3B9GV00 | 3076 | CONCEALED SHORT | -$108.60 | -$1.84 | -$106.76 |
| 5213183178 | 12/01/2022 | JS3B9LE00 | 3095 | EDI TRAN ID: 000018595 | $419.64 | $7.13 | $412.51 |
| 5213183179 | 12/01/2022 | JS2B2HU00 | 3095 | EDI TRAN ID: 000018595 | $701.82 | $11.93 | $689.89 |
| 5213183180 | 12/01/2022 | JS3B9MA00 | 3099 | EDI TRAN ID: 000018595 | $1,700.49 | $28.91 | $1,671.58 |
| 5213183181 | 12/01/2022 | JS2B52F00 | 3099 | EDI TRAN ID: 000018595 | $651.67 | $11.08 | $640.59 |
| 5213183182 | 12/01/2022 | JS3B8UV00 | 20 | EDI TRAN ID: 000018595 | $155.96 | $2.65 | $153.31 |
| 5213183183 | 12/01/2022 | JS2G8HH00 | 3043 | EDI TRAN ID: 000018595 | $4,364.80 | $74.20 | $4,290.60 |
| 5213183184 | 12/01/2022 | JS3B9NK00 | 3112 | EDI TRAN ID: 000018595 | $367.42 | $6.25 | $361.17 |
| 5213183185 | 12/01/2022 | JS3B9EF00 | 3063 | EDI TRAN ID: 000018595 | $1,911.44 | $32.49 | $1,878.95 |
| 5213183186 | 12/01/2022 | JS3B9JQ00 | 3084 | EDI TRAN ID: 000018595 | $146.42 | $2.49 | $143.93 |
| 5213183187 | 12/01/2022 | JS3B9NU00 | 3118 | EDI TRAN ID: 000018595 | $161.14 | $2.74 | $158.40 |

| ID | Date | Code | Num | Description | Amount 1 | Amount 2 | Amount 3 |
|---|---|---|---|---|---|---|---|
| 5213183188 | 12/01/2022 | JS3B9LJ00 | 3096 | | $3,317.88 | $56.40 | $3,261.48 |
| 5213183189 | 12/01/2022 | JS3B9LP00 | 3097 | | $52.68 | $0.90 | $51.78 |
| 5213183190 | 12/01/2022 | JS2M5RVW00 | 3136 | EDI TRAN ID: 000018595 | $723.87 | $12.31 | $711.56 |
| 5213183191 | 12/01/2022 | JS4U3VM00 | 3080 | EDI TRAN ID: 000018595 | $549.97 | $9.35 | $540.62 |
| 5213183192 | 12/01/2022 | JS4U3KZ00 | 3001 | EDI TRAN ID: 000018595 | $1,504.89 | $25.58 | $1,479.31 |
| 5213183193 | 12/01/2022 | JS3J6NZ00 | 3008 | EDI TRAN ID: 000018595 | $860.10 | $14.62 | $845.48 |
| 5213183194 | 12/01/2022 | JS4U3LD00 | 3008 | EDI TRAN ID: 000018595 | $103.70 | $1.76 | $101.94 |
| 5213183195 | 12/01/2022 | JS3K8JL00 | 3085 | EDI TRAN ID: 000018595 | $532.15 | $9.05 | $523.10 |
| 5213183196 | 12/01/2022 | JS4U3WE00 | 3113 | EDI TRAN ID: 000018595 | $155.96 | $2.65 | $153.31 |
| 5213183197 | 12/01/2022 | JS4U3ZE00 | 3059 | EDI TRAN ID: 000018595 | $22.20 | $0.38 | $21.82 |
| 5213183198 | 12/01/2022 | JR9V9FS00 | 3059 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183199 | 12/01/2022 | JS4U3SZ00 | 653 | EDI TRAN ID: 000018595 | $1,100.69 | $18.71 | $1,081.98 |
| 5213183281 | 12/01/2022 | JQ3D4HV00 | 653 | EDI TRAN ID: 000018595 | $9,863.77 | $167.68 | $9,696.09 |
| 5213183282 | 12/01/2022 | JR8K2SH00 | 653 | EDI TRAN ID: 000018595 | $1,146.95 | $19.50 | $1,127.45 |
| 5213183283 | 12/01/2022 | JS3B8UZ00 | 653 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183284 | 12/01/2022 | JS4U3HD00 | 657 | EDI TRAN ID: 000018595 | $27,897.26 | $474.25 | $27,423.01 |
| 5213183285 | 12/01/2022 | JQ3D4JB00 | 657 | EDI TRAN ID: 000018595 | $8,946.21 | $152.09 | $8,794.12 |
| 5213183285 | 12/01/2022 | JQ3D4JB00 | 657 | PPD CARRIER DAM | -$229.39 | -$3.89 | -$225.50 |
| 5213183286 | 12/01/2022 | JR8K2VK00 | 657 | EDI TRAN ID: 000018595 | $917.56 | $15.60 | $901.96 |
| 5213183287 | 12/01/2022 | JR9V8ZF00 | 657 | EDI TRAN ID: 000018595 | $76.80 | $1.31 | $75.49 |
| 5213183288 | 12/01/2022 | JS3B8XW00 | 657 | EDI TRAN ID: 000018595 | $38.40 | $0.65 | $37.75 |
| 5213183289 | 12/01/2022 | JS4U3KJ00 | 657 | EDI TRAN ID: 000018595 | $22,734.72 | $386.49 | $22,348.23 |
| 5213183451 | 12/02/2022 | JS4V9JC00 | 650 | EDI TRAN ID: 000018595 | $18,855.34 | $320.54 | $18,534.80 |
| 5213183452 | 12/02/2022 | JS4T8AM00 | 650 | EDI TRAN ID: 000018595 | $3,681.42 | $62.58 | $3,618.84 |
| 5213183505 | 12/02/2022 | JS3B8ZB00 | 3024 | EDI TRAN ID: 000018595 | $77.98 | $1.33 | $76.65 |
| 5213183506 | 12/02/2022 | JS3B9CP00 | 3050 | EDI TRAN ID: 000018595 | $279.58 | $4.75 | $274.83 |
| 5213183507 | 12/02/2022 | JS3B9AA00 | 3032 | EDI TRAN ID: 000018595 | $85.42 | $1.45 | $83.97 |
| 5213183508 | 12/02/2022 | JS3B8YW00 | 3019 | EDI TRAN ID: 000018595 | $277.88 | $4.72 | $273.16 |
| 5213183509 | 12/02/2022 | JS2H8SC00 | 3019 | EDI TRAN ID: 000018595 | $527.76 | $8.97 | $518.79 |
| 5213183510 | 12/02/2022 | JS2A3SY00 | 3115 | JS2A3SY - | $606.46 | $10.31 | $596.15 |
| 5213183510 | 12/02/2022 | JS2A3SY00 | 3024 | CONCEALED SHORT | -$260.34 | -$4.42 | -$255.92 |
| 5213183511 | 12/02/2022 | JS3B8ZB00 | 3024 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183512 | 12/02/2022 | JS4U3NG00 | 3050 | EDI TRAN ID: 000018595 | $416.08 | $7.07 | $409.01 |
| 5213183513 | 12/02/2022 | JS4U3RV00 | 3050 | EDI TRAN ID: 000018595 | $414.12 | $7.04 | $407.08 |
| 5213183514 | 12/02/2022 | JS3S4NH00 | 3032 | EDI TRAN ID: 000018595 | $601.42 | $10.22 | $591.20 |
| 5213183515 | 12/02/2022 | JS4U3PH00 | 3019 | EDI TRAN ID: 000018595 | $69.47 | $1.18 | $68.29 |
| 5213183516 | 12/02/2022 | JS4U3MV00 | 3019 | EDI TRAN ID: 000018595 | $208.41 | $3.54 | $204.87 |
| 5213183517 | 12/02/2022 | JR8Z7QU00 | 3115 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |

| ID | Date | Code | Num | Description | Amount 1 | Amount 2 | Amount 3 |
|---|---|---|---|---|---|---|---|
| 5213183518 | 12/02/2022 | JS3K4MC00 | 3115 | JS3K4MC - | $576.00 | $9.79 | $566.21 |
| 5213183518 | 12/02/2022 | JS3K4MC00 | 3115 | CONCEALED SHORT | -$387.31 | -$6.58 | -$380.73 |
| 5213183519 | 12/02/2022 | JS4U4BM00 | 3131 | EDI TRAN ID: 000018595 | $71.49 | $1.22 | $70.27 |
| 5213183520 | 12/02/2022 | JS4U4BZ00 | 3142 | EDI TRAN ID: 000018595 | $43.20 | $0.73 | $42.47 |
| 5213183521 | 12/02/2022 | JS3S2XJ00 | 3142 | EDI TRAN ID: 000018595 | $648.20 | $11.02 | $637.18 |
| 5213183522 | 12/02/2022 | JS3B9AN00 | 3036 | EDI TRAN ID: 000018595 | $112.67 | $1.92 | $110.75 |
| 5213183523 | 12/02/2022 | JS3B8ZJ00 | 3028 | EDI TRAN ID: 000018595 | $424.16 | $7.21 | $416.95 |
| 5213183523 | 12/02/2022 | JS3B8ZJ00 | 3028 | CONCEALED SHORT | -$69.47 | -$1.18 | -$68.29 |
| 5213183524 | 12/02/2022 | JS3B9DZ00 | 3060 | EDI TRAN ID: 000018595 | $942.55 | $16.02 | $926.53 |
| 5213183525 | 12/02/2022 | JS4U3PS00 | 3036 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183526 | 12/02/2022 | JS4U3NW00 | 3028 | EDI TRAN ID: 000018595 | $149.36 | $2.54 | $146.82 |
| 5213183527 | 12/02/2022 | JS4U3TE00 | 3060 | EDI TRAN ID: 000018595 | $169.06 | $2.87 | $166.19 |
| 5213183528 | 12/02/2022 | JS3B8YN00 | 3012 | EDI TRAN ID: 000018595 | $461.37 | $7.84 | $453.53 |
| 5213183529 | 12/02/2022 | JS3B8YM00 | 3011 | EDI TRAN ID: 000018595 | $319.56 | $5.43 | $314.13 |
| 5213183530 | 12/02/2022 | JS3B9CE00 | 3047 | EDI TRAN ID: 000018595 | $411.83 | $7.00 | $404.83 |
| 5213183531 | 12/02/2022 | JS3B9CS00 | 3051 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183532 | 12/02/2022 | JS3B8YS00 | 3016 | EDI TRAN ID: 000018595 | $203.50 | $3.46 | $200.04 |
| 5213183533 | 12/02/2022 | JS3B9PZ00 | 3137 | EDI TRAN ID: 000018595 | $18.30 | $0.31 | $17.99 |
| 5213183534 | 12/02/2022 | JS2B9PV00 | 3137 | EDI TRAN ID: 000018595 | $2,326.56 | $39.55 | $2,287.01 |
| 5213183535 | 12/02/2022 | JR9A3PF00 | 3012 | EDI TRAN ID: 000018595 | $38.40 | $0.65 | $37.75 |
| 5213183536 | 12/02/2022 | JS4U3LR00 | 3012 | EDI TRAN ID: 000018595 | $169.90 | $2.89 | $167.01 |
| 5213183537 | 12/02/2022 | JS4U3LP00 | 3011 | EDI TRAN ID: 000018595 | $65.40 | $1.11 | $64.29 |
| 5213183538 | 12/02/2022 | JS4U3RL00 | 3047 | EDI TRAN ID: 000018595 | $38.16 | $0.65 | $37.51 |
| 5213183539 | 12/02/2022 | JS4U3RY00 | 3051 | EDI TRAN ID: 000018595 | $223.72 | $3.80 | $219.92 |
| 5213183540 | 12/02/2022 | JS3R4MT00 | 3051 | EDI TRAN ID: 000018595 | $944.86 | $16.06 | $928.80 |
| 5213183541 | 12/02/2022 | JS4U3MF00 | 3016 | EDI TRAN ID: 000018595 | $150.74 | $2.56 | $148.18 |
| 5213183542 | 12/02/2022 | JS3K8FR00 | 3137 | EDI TRAN ID: 000018595 | $324.76 | $5.52 | $319.24 |
| 5213183543 | 12/02/2022 | JS4U4BT00 | 3137 | EDI TRAN ID: 000018595 | $18.30 | $0.31 | $17.99 |
| 5213183544 | 12/02/2022 | JS3W6AY00 | 3137 | EDI TRAN ID: 000018595 | $652.00 | $11.08 | $640.92 |
| 5213183545 | 12/02/2022 | JS3B9KY00 | 3093 | EDI TRAN ID: 000018595 | $271.18 | $4.61 | $266.57 |
| 5213183546 | 12/02/2022 | JS3B9PP00 | 3129 | EDI TRAN ID: 000018595 | $71.49 | $1.22 | $70.27 |
| 5213183547 | 12/02/2022 | JS3B9BX00 | 3044 | EDI TRAN ID: 000018595 | $1,124.72 | $19.12 | $1,105.60 |
| 5213183548 | 12/02/2022 | JS2M5RY00 | 3116 | EDI TRAN ID: 000018595 | $527.11 | $8.96 | $518.15 |
| 5213183549 | 12/02/2022 | JS3B8YP00 | 3013 | EDI TRAN ID: 000018595 | $71.49 | $1.22 | $70.27 |
| 5213183550 | 12/02/2022 | JS2G5HX00 | 3013 | EDI TRAN ID: 000018595 | $1,471.09 | $25.01 | $1,446.08 |
| 5213183551 | 12/02/2022 | JS4U3WZ00 | 3093 | EDI TRAN ID: 000018595 | $105.06 | $1.79 | $103.27 |
| 5213183552 | 12/02/2022 | JS4U4AZ00 | 3129 | EDI TRAN ID: 000018595 | $27.08 | $0.46 | $26.62 |
| 5213183553 | 12/02/2022 | JS4U3RB00 | 3044 | EDI TRAN ID: 000018595 | $859.69 | $14.61 | $845.08 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5213183554 | 12/02/2022 | JS4A9YL00 | 3044 | EDI TRAN ID: 000018595 | $1,327.88 | $22.57 | $1,305.31 |
| 5213183555 | 12/02/2022 | JR9V9NF00 | 3116 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183556 | 12/02/2022 | JS4U3ZG00 | 3116 | EDI TRAN ID: 000018595 | $69.47 | $1.18 | $68.29 |
| 5213183557 | 12/02/2022 | JS3B8YP00 | 3013 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183558 | 12/02/2022 | JS4U3LT00 | 3013 | EDI TRAN ID: 000018595 | $1,085.22 | $18.45 | $1,066.77 |
| 5213183559 | 12/02/2022 | JS3B9FH00 | 3067 | EDI TRAN ID: 000018595 | $988.06 | $16.80 | $971.26 |
| 5213183560 | 12/02/2022 | JS3B8YU00 | 3018 | EDI TRAN ID: 000018595 | $27.08 | $0.46 | $26.62 |
| 5213183561 | 12/02/2022 | JS2L6PD00 | 3018 | EDI TRAN ID: 000018595 | $1,478.72 | $25.14 | $1,453.58 |
| 5213183562 | 12/02/2022 | JS3B9MZ00 | 3109 | JS3B9MZ - | $1,151.92 | $19.58 | $1,132.34 |
| 5213183563 | 12/02/2022 | JS2G9MA00 | 3109 | EDI TRAN ID: 000018595 | $863.76 | $14.68 | $849.08 |
| 5213183564 | 12/02/2022 | JS3B9NF00 | 3111 | EDI TRAN ID: 000018595 | $129.35 | $2.20 | $127.15 |
| 5213183565 | 12/02/2022 | JS2G9JF00 | 3111 | EDI TRAN ID: 000018595 | $881.96 | $14.99 | $866.97 |
| 5213183566 | 12/02/2022 | JS3B9PD00 | 3122 | EDI TRAN ID: 000018595 | $400.81 | $6.81 | $394.00 |
| 5213183567 | 12/02/2022 | JS3B9NR00 | 3117 | EDI TRAN ID: 000018595 | $455.95 | $7.75 | $448.20 |
| 5213183568 | 12/02/2022 | JS3B9KU00 | 3091 | EDI TRAN ID: 000018595 | $81.50 | $1.39 | $80.11 |
| 5213183569 | 12/02/2022 | JS2G4JL00 | 3091 | EDI TRAN ID: 000018595 | $588.69 | $10.01 | $578.68 |
| 5213183570 | 12/02/2022 | JS3B9PK00 | 3125 | EDI TRAN ID: 000018595 | $742.52 | $12.62 | $729.90 |
| 5213183571 | 12/02/2022 | JS2W8TC00 | 3125 | EDI TRAN ID: 000018595 | $1,110.98 | $18.89 | $1,092.09 |
| 5213183572 | 12/02/2022 | JS4U3UD00 | 3067 | EDI TRAN ID: 000018595 | $1,354.08 | $23.02 | $1,331.06 |
| 5213183573 | 12/02/2022 | JS4I3MS00 | 3018 | EDI TRAN ID: 000018595 | $1,889.72 | $32.13 | $1,857.59 |
| 5213183574 | 12/02/2022 | JS3B9MZ00 | 3109 | JS3B9MZ - | $19.20 | $0.33 | $18.87 |
| 5213183575 | 12/02/2022 | JS4U3YS00 | 3109 | EDI TRAN ID: 000018595 | $1,340.96 | $22.80 | $1,318.16 |
| 5213183576 | 12/02/2022 | JS4U3YX00 | 3111 | EDI TRAN ID: 000018595 | $521.23 | $8.86 | $512.37 |
| 5213183577 | 12/02/2022 | JS3S5NF00 | 3111 | EDI TRAN ID: 000018595 | $2,124.42 | $36.12 | $2,088.30 |
| 5213183578 | 12/02/2022 | JS4U4AC00 | 3122 | EDI TRAN ID: 000018595 | $2,476.11 | $42.09 | $2,434.02 |
| 5213183579 | 12/02/2022 | JS3X6VL00 | 3122 | EDI TRAN ID: 000018595 | $1,707.72 | $29.03 | $1,678.69 |
| 5213183580 | 12/02/2022 | JS4U3ZK00 | 3117 | EDI TRAN ID: 000018595 | $717.68 | $12.20 | $705.48 |
| 5213183581 | 12/02/2022 | JS3S4WG00 | 3117 | EDI TRAN ID: 000018595 | $688.37 | $11.70 | $676.67 |
| 5213183582 | 12/02/2022 | JS2G4JL00 | 3091 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183583 | 12/02/2022 | JS4U3WU00 | 3091 | EDI TRAN ID: 000018595 | $1,455.45 | $24.74 | $1,430.71 |
| 5213183584 | 12/02/2022 | JS4U4AT00 | 3126 | EDI TRAN ID: 000018595 | $1,873.24 | $31.85 | $1,841.39 |
| 5213183584 | 12/02/2022 | JS4U4AT00 | 3126 | CONCEALED SHORT | -$329.96 | -$5.60 | -$324.36 |
| 5213183585 | 12/02/2022 | JR8X8TD00 | 3125 | EDI TRAN ID: 000018595 | $38.40 | $0.65 | $37.75 |
| 5213183586 | 12/02/2022 | JS4U4AM00 | 3125 | EDI TRAN ID: 000018595 | $3,214.42 | $54.65 | $3,159.77 |
| 5213183809 | 12/05/2022 | JS3B9MP00 | 3105 | EDI TRAN ID: 000018595 | $468.10 | $7.96 | $460.14 |
| 5213183810 | 12/05/2022 | JR7P3GR00 | 3132 | EDI TRAN ID: 000018595 | $38.40 | $0.65 | $37.75 |
| 5213183811 | 12/05/2022 | JS3B9PX00 | 3132 | EDI TRAN ID: 000018595 | $146.13 | $2.48 | $143.65 |
| 5213183812 | 12/05/2022 | JS3B9QD00 | 3138 | EDI TRAN ID: 000018595 | $36.60 | $0.62 | $35.98 |

| ID | Date | Code | Ref | EDI TRAN ID | Amount | Fee | Net |
|---|---|---|---|---|---|---|---|
| 5213183813 | 12/05/2022 | JS4U3YM00 | 3105 | EDI TRAN ID: 000018595 | $610.66 | $10.38 | $600.28 |
| 5213183814 | 12/05/2022 | JS3K8FG00 | 3132 | EDI TRAN ID: 000018595 | $162.38 | $2.76 | $159.62 |
| 5213183815 | 12/05/2022 | JS4U4BP00 | 3132 | EDI TRAN ID: 000018595 | $69.47 | $1.18 | $68.29 |
| 5213183816 | 12/05/2022 | JS3L9KS00 | 3132 | EDI TRAN ID: 000018595 | $357.45 | $6.08 | $351.37 |
| 5213183817 | 12/05/2022 | JS4N7QT00 | 3138 | EDI TRAN ID: 000018595 | $244.50 | $4.16 | $240.34 |
| 5213183818 | 12/05/2022 | JS4U4BW00 | 3138 | EDI TRAN ID: 000018595 | $140.96 | $2.40 | $138.56 |
| 5213183820 | 12/05/2022 | JS3B8YQ00 | 3014 | EDI TRAN ID: 000018595 | $144.29 | $2.45 | $141.84 |
| 5213183821 | 12/05/2022 | JS2D9YP00 | 3014 | EDI TRAN ID: 000018595 | $503.22 | $8.55 | $494.67 |
| 5213183822 | 12/05/2022 | JS3B9HY00 | 3083 | EDI TRAN ID: 000018595 | $600.41 | $10.21 | $590.20 |
| 5213183823 | 12/05/2022 | JS2E2UL00 | 3083 | EDI TRAN ID: 000018595 | $819.96 | $13.94 | $806.02 |
| 5213183824 | 12/05/2022 | JS4U3LY00 | 3014 | EDI TRAN ID: 000018595 | $1,699.29 | $28.89 | $1,670.40 |
| 5213183825 | 12/05/2022 | JS2E2UL00 | 3083 | EDI TRAN ID: 000018595 | $38.40 | $0.65 | $37.75 |
| 5213183826 | 12/05/2022 | JS4U3VW00 | 3083 | EDI TRAN ID: 000018595 | $1,072.84 | $18.24 | $1,054.60 |
| 5213183827 | 12/05/2022 | JR9V9CB00 | 3022 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183828 | 12/05/2022 | JS3B8YX00 | 3022 | EDI TRAN ID: 000018595 | $1,795.26 | $30.52 | $1,764.74 |
| 5213183829 | 12/05/2022 | JS2J3MK00 | 3022 | EDI TRAN ID: 000018595 | $820.69 | $13.95 | $806.74 |
| 5213183830 | 12/05/2022 | JS3B8Y200 | 3023 | EDI TRAN ID: 000018595 | $90.69 | $1.54 | $89.15 |
| 5213183831 | 12/05/2022 | JS3B9NX00 | 3119 | EDI TRAN ID: 000018595 | $18.30 | $0.31 | $17.99 |
| 5213183832 | 12/05/2022 | JS4U3MZ00 | 3022 | EDI TRAN ID: 000018595 | $379.96 | $6.46 | $373.50 |
| 5213183833 | 12/05/2022 | JS4U3ND00 | 3023 | EDI TRAN ID: 000018595 | $397.17 | $6.75 | $390.42 |
| 5213183834 | 12/05/2022 | JS4U3ZS00 | 3119 | EDI TRAN ID: 000018595 | $1,013.85 | $17.24 | $996.61 |
| 5213183836 | 12/05/2022 | JS3B9FE00 | 3087 | EDI TRAN ID: 000018595 | $27.08 | $0.46 | $26.62 |
| 5213183837 | 12/05/2022 | JS2F6PK00 | 3066 | EDI TRAN ID: 000018595 | $1,091.45 | $18.55 | $1,072.90 |
| 5213183838 | 12/05/2022 | JS2F6PK00 | 3066 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183839 | 12/05/2022 | JS4U3UA00 | 3066 | EDI TRAN ID: 000018595 | $43.20 | $0.73 | $42.47 |
| 5213183840 | 12/05/2022 | JS4Q6AN00 | 3066 | EDI TRAN ID: 000018595 | $1,003.13 | $17.05 | $986.08 |
| 5213183841 | 12/05/2022 | JS3B9DA00 | 3053 | JS3B9DA - | $506.08 | $8.60 | $497.48 |
| 5213183842 | 12/05/2022 | JS2B5UD00 | 3053 | EDI TRAN ID: 000018595 | $517.88 | $8.80 | $509.08 |
| 5213183843 | 12/05/2022 | JS3B9ML00 | 3104 | EDI TRAN ID: 000018595 | $69.47 | $1.18 | $68.29 |
| 5213183844 | 12/05/2022 | JS2F7SP00 | 3104 | EDI TRAN ID: 000018595 | $513.06 | $8.72 | $504.34 |
| 5213183845 | 12/05/2022 | JS3B9KJ00 | 3090 | EDI TRAN ID: 000018595 | $213.70 | $3.63 | $210.07 |
| 5213183846 | 12/05/2022 | JS3B9EB00 | 3062 | EDI TRAN ID: 000018595 | $208.41 | $3.54 | $204.87 |
| 5213183847 | 12/05/2022 | JS3B9MF00 | 3101 | EDI TRAN ID: 000018595 | $799.47 | $13.59 | $785.88 |
| 5213183848 | 12/05/2022 | JS3B9DR00 | 3057 | EDI TRAN ID: 000018595 | $251.98 | $4.28 | $247.70 |
| 5213183849 | 12/05/2022 | JS2H9LG00 | 3057 | EDI TRAN ID: 000018595 | $694.70 | $11.81 | $682.89 |
| 5213183850 | 12/05/2022 | JS3B9FX00 | 3070 | JS3B9FX - | $353.37 | $6.01 | $347.36 |
| 5213183851 | 12/05/2022 | JS2K2ZY00 | 3070 | JS2K2ZY - | $950.50 | $16.16 | $934.34 |

| Account | Date | Code | Num | Amount | EDI TRAN ID | Amount | Amount |
|---|---|---|---|---|---|---|---|
| 5213183852 | 12/05/2022 | JS4U3SC00 | 3053 | $347.35 | EDI TRAN ID: 000018595 | $5.90 | $341.45 |
| 5213183853 | 12/05/2022 | JR9A2AG00 | 3104 | $19.20 | EDI TRAN ID: 000018595 | $0.33 | $18.87 |
| 5213183854 | 12/05/2022 | JS4U3YJ00 | 3104 | $81.50 | EDI TRAN ID: 000018595 | $1.39 | $80.11 |
| 5213183855 | 12/05/2022 | JS4U3TK00 | 3062 | $944.86 | EDI TRAN ID: 000018595 | $16.06 | $928.80 |
| 5213183856 | 12/05/2022 | JS4U3YC00 | 3101 | $666.38 | EDI TRAN ID: 000018595 | $11.33 | $655.05 |
| 5213183857 | 12/05/2022 | JS4U3SS00 | 3057 | $61.50 | EDI TRAN ID: 000018595 | $1.05 | $60.45 |
| 5213183858 | 12/05/2022 | JS4U3UH00 | 3070 | $286.39 | EDI TRAN ID: 000018595 | $4.87 | $281.52 |
| 5213183859 | 12/05/2022 | JS3B9AG00 | 3034 | $293.81 | EDI TRAN ID: 000018595 | $4.99 | $288.82 |
| 5213183860 | 12/05/2022 | JS2C8FB00 | 3034 | $941.47 | EDI TRAN ID: 000018595 | $16.00 | $925.47 |
| 5213183861 | 12/05/2022 | JS3B9CH00 | 3048 | $394.21 | EDI TRAN ID: 000018595 | $6.70 | $387.51 |
| 5213183862 | 12/05/2022 | JS3B9DK00 | 3055 | $1,104.87 | EDI TRAN ID: 000018595 | $18.78 | $1,086.09 |
| 5213183863 | 12/05/2022 | JS3B9MT00 | 3108 | $1,055.30 | EDI TRAN ID: 000018595 | $17.94 | $1,037.36 |
| 5213183864 | 12/05/2022 | JS3B9KF00 | 3088 | $1,949.60 | EDI TRAN ID: 000018595 | $33.14 | $1,916.46 |
| 5213183865 | 12/05/2022 | JS3B9AG00 | 3034 | $19.20 | EDI TRAN ID: 000018595 | $0.33 | $18.87 |
| 5213183866 | 12/05/2022 | JS4U3PN00 | 3034 | $1,935.10 | EDI TRAN ID: 000018595 | $32.90 | $1,902.20 |
| 5213183867 | 12/05/2022 | JS4U3RP00 | 3048 | $738.13 | EDI TRAN ID: 000018595 | $12.55 | $725.58 |
| 5213183868 | 12/05/2022 | JS4U3SK00 | 3055 | $1,474.65 | EDI TRAN ID: 000018595 | $25.07 | $1,449.58 |
| 5213183869 | 12/05/2022 | JS4U3SV00 | 3058 | $557.36 | EDI TRAN ID: 000018595 | $9.48 | $547.88 |
| 5213183870 | 12/05/2022 | JS3Q6MN00 | 3058 | $2,047.42 | EDI TRAN ID: 000018595 | $34.81 | $2,012.61 |
| 5213183871 | 12/05/2022 | JS4U3YQ00 | 3108 | $305.34 | EDI TRAN ID: 000018595 | $5.19 | $300.15 |
| 5213183872 | 12/05/2022 | JS4U3WQ00 | 3088 | $2,482.15 | EDI TRAN ID: 000018595 | $42.20 | $2,439.95 |
| 5213183873 | 12/05/2022 | JS3B9LV00 | 3098 | $1,514.47 | EDI TRAN ID: 000018595 | $25.75 | $1,488.72 |
| 5213183874 | 12/05/2022 | JS3B9PG00 | 3124 | $691.92 | EDI TRAN ID: 000018595 | $11.76 | $680.16 |
| 5213183875 | 12/05/2022 | JS3B9PN00 | 3128 | $344.30 | EDI TRAN ID: 000018595 | $5.85 | $338.45 |
| 5213183876 | 12/05/2022 | JS4U3XR00 | 3098 | $1,814.16 | EDI TRAN ID: 000018595 | $30.84 | $1,783.32 |
| 5213183877 | 12/05/2022 | JS4U4AG00 | 3124 | $896.79 | EDI TRAN ID: 000018595 | $15.25 | $881.54 |
| 5213183878 | 12/05/2022 | JS4U4AW00 | 3128 | $110.39 | EDI TRAN ID: 000018595 | $1.88 | $108.51 |
| 5213183879 | 12/05/2022 | JS3B9CW00 | 3052 | $611.37 | EDI TRAN ID: 000018595 | $10.39 | $600.98 |
| 5213183879 | 12/05/2022 | JS3B8YS00 | 3052 | -$472.43 | CONCEALED SHORT | -$8.03 | -$464.40 |
| 5213183880 | 12/05/2022 | JS3B9DE00 | 3027 | $7,011.64 | EDI TRAN ID: 000018595 | $119.20 | $6,892.44 |
| 5213183881 | 12/05/2022 | JS2K4BV00 | 3054 | $545.34 | EDI TRAN ID: 000018595 | $9.27 | $536.07 |
| 5213183882 | 12/05/2022 | JS3B9AX00 | 3021 | $703.95 | EDI TRAN ID: 000018595 | $11.97 | $691.98 |
| 5213183883 | 12/05/2022 | JS2M3QN00 | 3039 | $617.62 | EDI TRAN ID: 000018595 | $10.50 | $607.12 |
| 5213183884 | 12/05/2022 | JS2L2MK00 | 3135 | $661.06 | EDI TRAN ID: 000018595 | $11.24 | $649.82 |
| 5213183885 | 12/05/2022 | JS2L2MK00 | 3134 | $523.05 | EDI TRAN ID: 000018595 | $8.89 | $514.16 |
| 5213183885 | 12/05/2022 | JS4U3RZ00 | 3134 | -$479.85 | CONCEALED SHORT | -$8.15 | -$471.70 |
| 5213183886 | 12/05/2022 | JS4U3RZ00 | 3052 | $1,950.87 | EDI TRAN ID: 000018595 | $33.16 | $1,917.71 |
| 5213183886 | 12/05/2022 | JS4U3RZ00 | 3052 | -$19.20 | CONCEALED SHORT | -$0.32 | -$18.88 |

| ID | Date | Code | Num | Description | Amount 1 | Amount 2 | Amount 3 |
|---|---|---|---|---|---|---|---|
| 5213183887 | 12/05/2022 | JR8U6WU00 | 3027 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183888 | 12/05/2022 | JS4U3SF00 | 3054 | EDI TRAN ID: 000018595 | $738.44 | $12.55 | $725.89 |
| 5213183889 | 12/05/2022 | JS3L5JY00 | 3021 | EDI TRAN ID: 000018595 | $611.37 | $10.39 | $600.98 |
| 5213183890 | 12/05/2022 | JS4U3QK00 | 3039 | EDI TRAN ID: 000018595 | $1,950.04 | $33.15 | $1,916.89 |
| 5213183891 | 12/05/2022 | JS3X6UC00 | 3135 | EDI TRAN ID: 000018595 | $786.05 | $13.36 | $772.69 |
| 5213183892 | 12/05/2022 | JS3B9LC00 | 3094 | EDI TRAN ID: 000018595 | $220.96 | $3.76 | $217.20 |
| 5213183893 | 12/05/2022 | JS3B9AT00 | 3037 | EDI TRAN ID: 000018595 | $550.41 | $9.36 | $541.05 |
| 5213183895 | 12/05/2022 | JS3B8YH00 | 3006 | EDI TRAN ID: 000018595 | $148.14 | $2.52 | $145.62 |
| 5213183896 | 12/05/2022 | JR9V9AV00 | 3003 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183897 | 12/05/2022 | JS2B4NW00 | 3003 | EDI TRAN ID: 000018595 | $600.64 | $10.21 | $590.43 |
| 5213183898 | 12/05/2022 | JS3B9HG00 | 3081 | EDI TRAN ID: 000018595 | $1,384.61 | $23.54 | $1,361.07 |
| 5213183899 | 12/05/2022 | JS3B9PS00 | 3130 | EDI TRAN ID: 000018595 | $2,018.88 | $34.32 | $1,984.56 |
| 5213183900 | 12/05/2022 | JS3B8ZG00 | 3026 | EDI TRAN ID: 000018595 | $672.88 | $11.44 | $661.44 |
| 5213183901 | 12/05/2022 | JS3B8YE00 | 1331 | EDI TRAN ID: 000018595 | $223.72 | $3.80 | $219.92 |
| 5213183902 | 12/05/2022 | JS3B9CB00 | 3046 | EDI TRAN ID: 000018595 | $819.56 | $13.93 | $805.63 |
| 5213183903 | 12/05/2022 | JS2G8KJ00 | 3092 | EDI TRAN ID: 000018595 | $527.75 | $8.97 | $518.78 |
| 5213183903 | 12/05/2022 | JS2G8KJ00 | 3092 | CONCEALED SHORT | -$64.46 | -$0.92 | -$53.54 |
| 5213183904 | 12/05/2022 | JS3B8YL00 | 3010 | EDI TRAN ID: 000018595 | $459.04 | $7.80 | $451.24 |
| 5213183905 | 12/05/2022 | JS4U3XC00 | 3094 | EDI TRAN ID: 000018595 | $1,152.35 | $19.59 | $1,132.76 |
| 5213183906 | 12/05/2022 | JS3Q7RM00 | 3094 | EDI TRAN ID: 000018595 | $775.40 | $13.18 | $762.22 |
| 5213183906 | 12/05/2022 | JS3Q7RM00 | 3094 | CONCEALED SHORT | -$77.54 | -$1.31 | -$76.23 |
| 5213183907 | 12/05/2022 | JS2B6RL00 | 3037 | EDI TRAN ID: 000018595 | $38.40 | $0.65 | $37.75 |
| 5213183907 | 12/05/2022 | JS2B6RL00 | 3037 | TOLERANCE | -$0.24 | $0.00 | -$0.24 |
| 5213183908 | 12/05/2022 | JS4U3PX00 | 3037 | EDI TRAN ID: 000018595 | $482.67 | $8.21 | $474.46 |
| 5213183910 | 12/05/2022 | JS2B4NW00 | 3003 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183911 | 12/05/2022 | JS4U3VS00 | 3081 | EDI TRAN ID: 000018595 | $695.27 | $11.82 | $683.45 |
| 5213183912 | 12/05/2022 | JS4U4BE00 | 3130 | EDI TRAN ID: 000018595 | $1,171.30 | $19.91 | $1,151.39 |
| 5213183913 | 12/05/2022 | JR9V9PR00 | 3130 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183914 | 12/05/2022 | JS4U3NS00 | 3026 | EDI TRAN ID: 000018595 | $526.92 | $8.96 | $517.96 |
| 5213183915 | 12/05/2022 | JS3B8YE00 | 1331 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183916 | 12/05/2022 | JS4U3KW00 | 1331 | EDI TRAN ID: 000018595 | $429.66 | $7.30 | $422.36 |
| 5213183917 | 12/05/2022 | JS4U3RE00 | 3046 | EDI TRAN ID: 000018595 | $768.90 | $13.07 | $755.83 |
| 5213183918 | 12/05/2022 | JS4U3WX00 | 3092 | EDI TRAN ID: 000018595 | $377.97 | $6.43 | $371.54 |
| 5213183919 | 12/05/2022 | JS3Q8V00 | 3092 | EDI TRAN ID: 000018595 | $549.77 | $9.35 | $540.42 |
| 5213183920 | 12/05/2022 | JS3B9MH00 | 3103 | EDI TRAN ID: 000018595 | $19.20 | $0.33 | $18.87 |
| 5213183921 | 12/05/2022 | JS4U3YG00 | 3103 | EDI TRAN ID: 000018595 | $563.95 | $9.59 | $554.36 |
| 5213183922 | 12/05/2022 | JS4U3LK00 | 3010 | EDI TRAN ID: 000018595 | $1,841.16 | $31.30 | $1,809.86 |
| 5213183923 | 12/05/2022 | JS7N6KA00 | 3053 | EDI TRAN ID: 000018595 | $76.18 | $1.30 | $74.88 |

| ID | Date | Code | Number | Description | Amount 1 | Amount 2 | Amount 3 |
|---|---|---|---|---|---|---|---|
| 5213183923 | 12/05/2022 | JST7N6KA00 | 3053 | CONCEALED SHORT | -$21.72 | -$0.36 | -$21.36 |
| 5213183925 | 12/05/2022 | JST7N6PS00 | 3090 | EDI TRAN ID: 000018595 | $469.44 | $7.98 | $461.46 |
| 5213183926 | 12/05/2022 | JST7N6PS00 | 3090 | CONCEALED SHORT | -$187.49 | -$3.18 | -$184.31 |
| 5213183927 | 12/05/2022 | JS5W2CD00 | 3062 | EDI TRAN ID: 000018595 | $844.84 | $14.36 | $830.48 |
| 5213183928 | 12/05/2022 | JST7N6QS00 | 3101 | EDI TRAN ID: 000018595 | $2,176.36 | $37.00 | $2,139.36 |
| 5213183928 | 12/05/2022 | JST7N6QS00 | 3101 | CONCEALED SHORT | -$21.72 | -$0.36 | -$21.36 |
| 5213183929 | 12/05/2022 | JST7N6KX00 | 3057 | EDI TRAN ID: 000018595 | $525.63 | $8.94 | $516.69 |
| 5213183929 | 12/05/2022 | JST7N6KX00 | 3057 | CONCEALED SHORT | -$157.34 | -$2.67 | -$154.67 |
| 5213183930 | 12/05/2022 | JST7N6MQ00 | 3070 | EDI TRAN ID: 000018595 | $233.39 | $3.97 | $229.42 |
| 5213183930 | 12/05/2022 | JST7N6MQ00 | 3070 | CONCEALED SHORT | -$44.40 | -$0.75 | -$43.65 |
| 5213184494 | 12/06/2022 | JST7N5YT00 | 321 | EDI TRAN ID: 000018595 | $432.49 | $7.35 | $425.14 |
| 5213184495 | 12/06/2022 | JST7N6TP00 | 3120 | EDI TRAN ID: 000018595 | $761.66 | $12.95 | $748.71 |
| 5213184496 | 12/06/2022 | JST7N6RT00 | 3110 | EDI TRAN ID: 000018595 | $963.16 | $16.37 | $946.79 |
| 5213184497 | 12/06/2022 | JS5D2AU00 | 3042 | EDI TRAN ID: 000018595 | $99.26 | $1.69 | $97.57 |
| 5213184499 | 12/06/2022 | JST7N6GT00 | 3036 | EDI TRAN ID: 000018595 | $1,979.39 | $33.65 | $1,945.74 |
| 5213184500 | 12/06/2022 | JST7N6FV00 | 3028 | EDI TRAN ID: 000018595 | $1,547.91 | $26.31 | $1,521.60 |
| 5213184501 | 12/06/2022 | JST7N6LQ00 | 3060 | EDI TRAN ID: 000018595 | $1,744.67 | $29.66 | $1,715.01 |
| 5213184502 | 12/06/2022 | JST7N6NT00 | 3076 | EDI TRAN ID: 000018595 | $701.88 | $11.93 | $689.95 |
| 5213184503 | 12/06/2022 | JST7N6QD00 | 3095 | EDI TRAN ID: 000018595 | $1,993.19 | $33.88 | $1,959.31 |
| 5213184504 | 12/06/2022 | JST7N6QN00 | 3099 | EDI TRAN ID: 000018595 | $2,113.44 | $35.93 | $2,077.51 |
| 5213184505 | 12/06/2022 | JST7N5X200 | 20 | EDI TRAN ID: 000018595 | $547.56 | $9.31 | $538.25 |
| 5213184506 | 12/06/2022 | JST7N6HM00 | 3043 | EDI TRAN ID: 000018595 | $1,537.30 | $26.13 | $1,511.17 |
| 5213184507 | 12/06/2022 | JST7N6SD00 | 3112 | EDI TRAN ID: 000018595 | $228.95 | $3.89 | $225.06 |
| 5213184508 | 12/06/2022 | JST7N6LX00 | 3063 | EDI TRAN ID: 000018595 | $2,679.48 | $45.55 | $2,633.93 |
| 5213184509 | 12/06/2022 | JST7N6PC00 | 3084 | EDI TRAN ID: 000018595 | $1,478.79 | $25.14 | $1,453.65 |
| 5213184510 | 12/06/2022 | JS5W2AR00 | 3084 | EDI TRAN ID: 000018595 | $698.48 | $11.87 | $686.61 |
| 5213184511 | 12/06/2022 | JST7N6TC00 | 3118 | EDI TRAN ID: 000018595 | $1,916.80 | $32.59 | $1,884.21 |
| 5213184512 | 12/06/2022 | JST7N6QF00 | 3096 | EDI TRAN ID: 000018595 | $1,258.08 | $21.39 | $1,236.69 |
| 5213184513 | 12/06/2022 | JST7N6QH00 | 3097 | EDI TRAN ID: 000018595 | $585.10 | $9.95 | $575.15 |
| 5213184514 | 12/06/2022 | JST7N6WF00 | 3136 | EDI TRAN ID: 000018595 | $109.89 | $1.87 | $108.02 |
| 5213184515 | 12/06/2022 | JS6H7LG00 | 3136 | EDI TRAN ID: 000018595 | $698.48 | $11.87 | $686.61 |
| 5213184516 | 12/06/2022 | JST7N6EF00 | 3015 | EDI TRAN ID: 000018595 | $170.75 | $2.90 | $167.85 |
| 5213184517 | 12/06/2022 | JST7N6FL00 | 3025 | EDI TRAN ID: 000018595 | $2,370.56 | $40.30 | $2,330.26 |
| 5213184518 | 12/06/2022 | JST7N6JC00 | 3049 | EDI TRAN ID: 000018595 | $18.30 | $0.31 | $17.99 |
| 5213184519 | 12/06/2022 | JS5W4HV00 | 3049 | EDI TRAN ID: 000018595 | $5,492.24 | $93.37 | $5,398.87 |
| 5213184520 | 12/06/2022 | JST7N6JR00 | 3052 | EDI TRAN ID: 000018595 | $1,625.70 | $27.64 | $1,598.06 |
| 5213184522 | 12/06/2022 | JST7N6KD00 | 3054 | EDI TRAN ID: 000018595 | $1,773.15 | $30.14 | $1,743.01 |
| 5213184523 | 12/06/2022 | JST7N6EV00 | 3021 | EDI TRAN ID: 000018595 | $1,990.86 | $33.84 | $1,957.02 |

| Account | Date | Code | Ref No. | EDI Tran ID | Amount 1 | Amount 2 | Amount 3 |
|---|---|---|---|---|---|---|---|
| 5213184524 | 12/06/2022 | JS7N6RE00 | 3106 | EDI TRAN ID: 000018595 | $1,625.70 | $27.64 | $1,598.06 |
| 5213184525 | 12/06/2022 | JS5F3AD00 | 3106 | EDI TRAN ID: 000018595 | $900.08 | $15.30 | $884.78 |
| 5213184526 | 12/06/2022 | JS7N6HE00 | 3039 | EDI TRAN ID: 000018595 | $472.43 | $8.03 | $464.40 |
| 5213184527 | 12/06/2022 | JS7N6VZ00 | 3134 | EDI TRAN ID: 000018595 | $155.96 | $2.65 | $153.31 |
| 5213184528 | 12/06/2022 | JS7N6NF00 | 3073 | EDI TRAN ID: 000018595 | $2,295.66 | $39.03 | $2,256.63 |
| 5213184529 | 12/06/2022 | JS7N6DF00 | 3009 | EDI TRAN ID: 000018595 | $1,081.41 | $18.38 | $1,063.03 |
| 5213184530 | 12/06/2022 | JS7N6EM00 | 3017 | EDI TRAN ID: 000018595 | $1,296.21 | $22.04 | $1,274.17 |
| 5213184531 | 12/06/2022 | JS7N6HB00 | 3038 | EDI TRAN ID: 000018595 | $944.86 | $16.06 | $928.80 |
| 5213184532 | 12/06/2022 | JS7N6HG00 | 3040 | EDI TRAN ID: 000018595 | $187.46 | $3.19 | $184.27 |
| 5213184533 | 12/06/2022 | JS7N6MG00 | 3065 | EDI TRAN ID: 000018595 | $1,506.65 | $25.61 | $1,481.04 |
| 5213184534 | 12/06/2022 | JS7N6MC00 | 3064 | EDI TRAN ID: 000018595 | $1,772.27 | $30.13 | $1,742.14 |
| 5213184535 | 12/06/2022 | JS7N6WS00 | 3140 | EDI TRAN ID: 000018595 | $82.18 | $1.40 | $80.78 |
| 5213184536 | 12/06/2022 | JS7N6QP00 | 3100 | EDI TRAN ID: 000018595 | $1,054.51 | $17.93 | $1,036.58 |
| 5213184537 | 12/06/2022 | JS7N6PJ00 | 3086 | EDI TRAN ID: 000018595 | $1,466.56 | $24.93 | $1,441.63 |
| 5213184538 | 12/06/2022 | JS7N6GE00 | 3031 | EDI TRAN ID: 000018595 | $1,315.56 | $22.36 | $1,293.20 |
| 5213184539 | 12/06/2022 | JS3X8GR00 | 3033 | EDI TRAN ID: 000018595 | $2,382.68 | $40.51 | $2,342.17 |
| 5213184540 | 12/06/2022 | JS7N6GL00 | 3033 | EDI TRAN ID: 000018595 | $2,129.09 | $36.19 | $2,092.90 |
| 5213184541 | 12/06/2022 | JS7N6KT00 | 3056 | EDI TRAN ID: 000018595 | $2,188.82 | $37.21 | $2,151.61 |
| 5213184542 | 12/06/2022 | JS5Y3KL00 | 3059 | EDI TRAN ID: 000018595 | $514.14 | $8.74 | $505.40 |
| 5213184543 | 12/06/2022 | JS7N6LH00 | | EDI TRAN ID: 000018595 | $622.05 | $10.57 | $611.48 |
| 5213184713 | 12/07/2022 | JS7N6D200 | 3012 | EDI TRAN ID: 000018595 | $1,314.51 | $22.35 | $1,292.16 |
| 5213184714 | 12/07/2022 | JR6A7QT00 | 3011 | EDI TRAN ID: 000018595 | $54.46 | $0.93 | $53.53 |
| 5213184715 | 12/07/2022 | JS7N6DN00 | 3011 | EDI TRAN ID: 000018595 | $532.68 | $9.06 | $523.62 |
| 5213184716 | 12/07/2022 | JS7N6HV00 | 3047 | EDI TRAN ID: 000018595 | $43.20 | $0.73 | $42.47 |
| 5213184717 | 12/07/2022 | JS7N6JL00 | 3051 | EDI TRAN ID: 000018595 | $460.39 | $7.83 | $452.56 |
| 5213184718 | 12/07/2022 | JS7N6EJ00 | 3016 | EDI TRAN ID: 000018595 | $1,862.99 | $31.67 | $1,831.32 |
| 5213184719 | 12/07/2022 | JS5G4SJ00 | 3137 | EDI TRAN ID: 000018595 | $944.86 | $16.06 | $928.80 |
| 5213184720 | 12/07/2022 | JS7N6NW00 | 3080 | EDI TRAN ID: 000018595 | $1,759.66 | $29.91 | $1,729.75 |
| 5213184721 | 12/07/2022 | JS7N6CN00 | 3001 | EDI TRAN ID: 000018595 | $561.27 | $9.54 | $551.73 |
| 5213184722 | 12/07/2022 | JS7N6CZ00 | 3008 | EDI TRAN ID: 000018595 | $590.93 | $10.05 | $580.88 |
| 5213184723 | 12/07/2022 | JS7N6PF00 | 3085 | EDI TRAN ID: 000018595 | $1,448.25 | $24.62 | $1,423.63 |
| 5213184724 | 12/07/2022 | JS7N6SM00 | 3113 | EDI TRAN ID: 000018595 | $38.40 | $0.65 | $37.75 |
| 5213184726 | 12/07/2022 | JS7N6PY00 | 3093 | EDI TRAN ID: 000018595 | $171.90 | $2.92 | $168.98 |
| 5213184727 | 12/07/2022 | JS7N6UX00 | 3129 | EDI TRAN ID: 000018595 | $154.17 | $2.62 | $151.55 |
| 5213184728 | 12/07/2022 | JS7N6HQ00 | 3044 | EDI TRAN ID: 000018595 | $162.38 | $2.76 | $159.62 |
| 5213184729 | 12/07/2022 | JS7N6SV00 | 3116 | EDI TRAN ID: 000018595 | $724.41 | $12.31 | $712.10 |
| 5213184730 | 12/07/2022 | JS7N6EB00 | 3013 | EDI TRAN ID: 000018595 | $349.24 | $5.94 | $343.30 |
| 5213184731 | 12/07/2022 | JS6D7QX00 | 3014 | EDI TRAN ID: 000018595 | $3,081.86 | $52.39 | $3,029.47 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 5213184732 | 12/07/2022 | JS7N6PA00 | 3083 | EDI TRAN ID: 000018595 | $1,420.56 | $24.15 | $1,396.41 |
| 5213184742 | 12/07/2022 | JS5H3QX00 | 3066 | EDI TRAN ID: 000018595 | $11,593.02 | $197.08 | $11,395.94 |
| 5213184742 | 12/07/2022 | JS5H3QX00 | 3066 | CONCEALED SHORT | -$19.20 | -$0.32 | -$18.88 |
| 5213184743 | 12/07/2022 | JS7N6GP00 | 3034 | EDI TRAN ID: 000018595 | $2,490.48 | $42.34 | $2,448.14 |
| 5213184744 | 12/07/2022 | JS5G4PK00 | 3034 | EDI TRAN ID: 000018595 | $1,249.51 | $21.24 | $1,228.27 |
| 5213184745 | 12/07/2022 | JS7N6HX00 | 3048 | EDI TRAN ID: 000018595 | $2,463.62 | $41.88 | $2,421.74 |
| 5213184746 | 12/07/2022 | JS7N6KN00 | 3055 | EDI TRAN ID: 000018595 | $1,323.00 | $22.49 | $1,300.51 |
| 5213184747 | 12/07/2022 | JS7N6LD00 | 3058 | EDI TRAN ID: 000018595 | $557.28 | $9.47 | $547.81 |
| 5213184748 | 12/07/2022 | JS7N6RH00 | 3108 | EDI TRAN ID: 000018595 | $1,771.98 | $30.12 | $1,741.86 |
| 5213184748 | 12/07/2022 | JS7N6RH00 | 3108 | CONCEALED SHORT | -$81.50 | -$1.38 | -$80.12 |
| 5213184749 | 12/07/2022 | JS7N6PP00 | 3088 | EDI TRAN ID: 000018595 | $1,436.39 | $24.42 | $1,411.97 |
| 5213184750 | 12/07/2022 | JS7L5EN00 | 3088 | EDI TRAN ID: 000018595 | $604.73 | $10.28 | $594.45 |
| 5213184751 | 12/07/2022 | JS7N6QA00 | 3094 | EDI TRAN ID: 000018595 | $1,876.76 | $31.90 | $1,844.86 |
| 5213184752 | 12/07/2022 | JS7N6GZ00 | 3037 | EDI TRAN ID: 000018595 | $247.17 | $4.20 | $242.97 |
| 5213184753 | 12/07/2022 | JS7N6CU00 | 3006 | EDI TRAN ID: 000018595 | $153.20 | $2.60 | $150.60 |
| 5213184754 | 12/07/2022 | JS7N6NZ00 | 3081 | EDI TRAN ID: 000018595 | $155.06 | $2.64 | $152.42 |
| 5213184755 | 12/07/2022 | JS7N6VF00 | 3130 | EDI TRAN ID: 000018595 | $130.32 | $2.22 | $128.10 |
| 5213184756 | 12/07/2022 | JS7N6FQ00 | 3026 | EDI TRAN ID: 000018595 | $1,159.21 | $19.71 | $1,139.50 |
| 5213184757 | 12/07/2022 | JS7N6CJ00 | 1331 | EDI TRAN ID: 000018595 | $2,381.98 | $40.49 | $2,341.49 |
| 5213184758 | 12/07/2022 | JS7N6HS00 | 3046 | EDI TRAN ID: 000018595 | $731.50 | $12.44 | $719.06 |
| 5213184759 | 12/07/2022 | JR5N7JF00 | 3092 | EDI TRAN ID: 000018595 | $54.46 | $0.93 | $53.53 |
| 5213184761 | 12/07/2022 | JS7N6PW00 | 3092 | EDI TRAN ID: 000018595 | $944.86 | $16.06 | $928.80 |
| 5213184761 | 12/07/2022 | JS5X6KM00 | 3092 | EDI TRAN ID: 000018595 | $930.33 | $15.82 | $914.51 |
| 5213184762 | 12/07/2022 | JS7N6QU00 | 3103 | EDI TRAN ID: 000018595 | $1,382.72 | $23.51 | $1,359.21 |
| 5213184763 | 12/07/2022 | JS7N6DJ00 | 3010 | EDI TRAN ID: 000018595 | $956.46 | $16.26 | $940.20 |
| 5213184780 | 12/07/2022 | JS7N6QK00 | 3098 | EDI TRAN ID: 000018595 | $491.63 | $8.36 | $483.27 |
| 5213184781 | 12/07/2022 | JS5W6TB00 | 3098 | EDI TRAN ID: 000018595 | $1,015.78 | $17.27 | $998.51 |
| 5213184782 | 12/07/2022 | JS7N6UE00 | 3124 | EDI TRAN ID: 000018595 | $743.91 | $12.65 | $731.26 |
| 5213184783 | 12/07/2022 | JS7N6UU00 | 3128 | EDI TRAN ID: 000018595 | $738.98 | $12.56 | $726.42 |
| 5213184784 | 12/07/2022 | JS6E8KU00 | 3128 | EDI TRAN ID: 000018595 | $573.40 | $9.75 | $563.65 |
| 5213184785 | 12/07/2022 | JS7N6GB00 | 3029 | EDI TRAN ID: 000018595 | $869.61 | $14.78 | $854.83 |
| 5213184786 | 12/07/2022 | JR6A7YL00 | 3072 | EDI TRAN ID: 000018595 | $54.46 | $0.93 | $53.53 |
| 5213184787 | 12/07/2022 | JS5D2AZ00 | 3072 | EDI TRAN ID: 000018595 | $133.36 | $2.27 | $131.09 |
| 5213184788 | 12/07/2022 | JS7N6NA00 | 3072 | EDI TRAN ID: 000018595 | $892.66 | $15.18 | $877.48 |
| 5213184789 | 12/07/2022 | JS7N6NN00 | 3074 | EDI TRAN ID: 000018595 | $1,269.43 | $21.58 | $1,247.85 |
| 5213184790 | 12/07/2022 | JS5U3YM00 | 3074 | EDI TRAN ID: 000018595 | $2,877.63 | $48.92 | $2,828.71 |
| 5213184791 | 12/07/2022 | JS5D2AX00 | 3071 | EDI TRAN ID: 000018595 | $320.11 | $5.44 | $314.67 |
| 5213184792 | 12/07/2022 | JS7N6MV00 | 3071 | EDI TRAN ID: 000018595 | $1,548.93 | $26.33 | $1,522.60 |

| Ref | Date | Code | Number | Description | Amount 1 | Amount 2 | Amount 3 |
|---|---|---|---|---|---|---|---|
| 5213184793 | 12/07/2022 | JS5X3QB00 | 3071 | EDI TRAN ID: 000018595 | $876.19 | $14.90 | $861.29 |
| 5213184794 | 12/07/2022 | JS7Q2MF00 | 650 | EDI TRAN ID: 000018595 | $1,831.26 | $31.13 | $1,800.13 |
| 5213184798 | 12/07/2022 | JS7N6FH00 | 3024 | EDI TRAN ID: 000018595 | $707.65 | $12.03 | $695.62 |
| 5213184799 | 12/07/2022 | JS7N6JE00 | 3050 | EDI TRAN ID: 000018595 | $1,552.37 | $26.39 | $1,525.98 |
| 5213184800 | 12/07/2022 | JS7N6GH00 | 3032 | EDI TRAN ID: 000018595 | $179.61 | $3.05 | $176.56 |
| 5213184801 | 12/07/2022 | JS7Q5FB00 | 3019 | EDI TRAN ID: 000018595 | $1,417.29 | $24.09 | $1,393.20 |
| 5213184802 | 12/07/2022 | JS7N6ES00 | 3019 | EDI TRAN ID: 000018595 | $699.14 | $11.89 | $687.25 |
| 5213184803 | 12/07/2022 | JS7N6SS00 | 3115 | EDI TRAN ID: 000018595 | $1,417.29 | $24.09 | $1,393.20 |
| 5213184804 | 12/07/2022 | JS7N6VP00 | 3131 | EDI TRAN ID: 000018595 | $220.96 | $3.76 | $217.20 |
| 5213184805 | 12/07/2022 | JS7N6RA00 | 3105 | FC# 12236152 | $1,454.58 | $24.73 | $1,429.85 |
| 5213184806 | 12/07/2022 | JS7N5YG00 | 194 | FC# 12236153 | $767.69 | $13.05 | $754.64 |
| 5213184807 | 12/07/2022 | JS7N6VU00 | 3132 | FC# 12236154 | $181.33 | $3.08 | $178.25 |
| 5213184808 | 12/07/2022 | JS7N6VM00 | 3138 | FC# 12236155 | $1,273.08 | $21.64 | $1,251.44 |
| 5213184809 | 12/07/2022 | JS7N6EZ00 | 3022 | FC# 12236156 | $1,631.76 | $27.74 | $1,604.02 |
| 5213184810 | 12/07/2022 | JS6H6HQ00 | 3022 | FC# 12236157 | $634.02 | $10.78 | $623.24 |
| 5213184811 | 12/07/2022 | JS7N6FC00 | 3023 | FC# 12236158 | $1,108.40 | $18.84 | $1,089.56 |
| 5213184812 | 12/07/2022 | JS7N6TJ00 | 3119 | FC# 12236159 | $377.79 | $6.42 | $371.37 |
| 5213184813 | 12/07/2022 | JS7K8BZ00 | 3119 | FC# 12236160 | $550.41 | $9.36 | $541.05 |
| 5213184814 | 12/07/2022 | JS7N6PL00 | 3087 | FC# 12236161 | $130.16 | $2.21 | $127.95 |
| 5213184815 | 12/07/2022 | JS7N5ZA00 | 653 | EDI TRAN ID: 000018595 | $60,288.96 | $1,024.91 | $59,264.05 |
| 5213184820 | 12/07/2022 | JS7N6BB00 | 657 | EDI TRAN ID: 000018595 | $52,359.44 | $890.11 | $51,469.33 |
| 5213184821 | 12/07/2022 | JS7K6KV00 | 657 | EDI TRAN ID: 000018595 | $1,146.95 | $19.50 | $1,127.45 |
| 5213184959 | 12/08/2022 | JS7N6BR00 | 677 | EDI TRAN ID: 000018595 | $32,818.65 | $557.92 | $32,260.73 |
| 5213184960 | 12/08/2022 | JS7K6KX00 | 677 | EDI TRAN ID: 000018595 | $9,634.38 | $163.78 | $9,470.60 |
| 5213185110 | 12/09/2022 | JS7N6AM00 | 655 | EDI TRAN ID: 000018595 | $39,609.53 | $673.36 | $38,936.17 |
| ADR534789 | 01/12/2023 | | 990 | | -$4,600.48 | $0.00 | -$4,600.48 |
| ADR534790 | 01/12/2023 | | 93990 | | -$2,542.38 | $0.00 | -$2,542.38 |
| FRT534639 | 01/11/2023 | | 990 | | -$52,838.13 | $0.00 | -$52,838.13 |
| FRT534753 | 01/12/2023 | | 93990 | | -$26,540.78 | $0.00 | -$26,540.78 |
| GC527571 | 09/15/2022 | | 93990 | STORE AUG 2022 | -$1,116.80 | $0.00 | -$1,116.80 |
| PPD022323T | 02/23/2023 | | 990 | Baby Special Buy Program | $1,065,040.00 | $0.00 | $1,065,040.00 |
| REB534166 | 01/11/2023 | | 990 | | -$95,241.03 | $0.00 | -$95,241.03 |
| REB534417 | 01/11/2023 | | 93990 | | -$34,403.02 | $0.00 | -$34,403.02 |
| SMD534091 | 01/11/2023 | | 990 | | -$18,720.17 | $0.00 | -$18,720.17 |
| SMD534390 | 01/11/2023 | | 93990 | | -$10,345.41 | $0.00 | -$10,345.41 |
| Total | | | | | $1,617,021.95 | $13,571.90 | $1,603,450.05 |

This detail was provided by BBB at the time of remittance.  Off by immaterial amount to wire received.

| Customer | DocumentNo | Typ | Pstng Date | Doc. Date | Net due dt | Date Paid | Days Outsta | Paid or Pa | Reference | Amount in DC Tx | Assignment | Clrng doc. | Clearing |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 214878 | 5313113328 | C8 | 3/2/2023 | 3/2/2023 | 5/1/2023 | 2/27/2023 | (3.00) | Yes | 5313113328 | 2,721.67 ** | 5313113328 | 2003536 | 3/13/2023 |
| 214878 | 5313113329 | C8 | 3/2/2023 | 3/2/2023 | 5/1/2023 | 2/27/2023 | (3.00) | Yes | 5313113329 | 3,736.53 ** | 5313113329 | 2003536 | 3/13/2023 |
| 214878 | 5313113330 | C8 | 3/2/2023 | 3/2/2023 | 5/1/2023 | 2/27/2023 | (3.00) | Yes | 5313113330 | 3,458.54 ** | 5313113330 | 2003536 | 3/13/2023 |
| 214878 | 5313113331 | C8 | 3/3/2023 | 3/2/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113331 | 4,824.79 ** | 5313113331 | 2003536 | 3/13/2023 |
| 214878 | 5313113332 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113332 | 4,695.97 ** | 5313113332 | 2003536 | 3/13/2023 |
| 214878 | 5313113333 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113333 | 1,395.86 ** | 5313113333 | 2003536 | 3/13/2023 |
| 214878 | 5313113334 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113334 | 2,963.51 ** | 5313113334 | 2003536 | 3/13/2023 |
| 214878 | 5313113335 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113335 | 5,009.40 ** | 5313113335 | 2003536 | 3/13/2023 |
| 214878 | 5313113336 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113336 | 3,702.63 ** | 5313113336 | 2003536 | 3/13/2023 |
| 214878 | 5313113337 | C8 | 3/3/2023 | 3/3/2023 | 5/1/2023 | 2/27/2023 | (3.00) | Yes | 5313113337 | 1,621.29 ** | 5313113337 | 2003536 | 3/13/2023 |
| 214878 | 5313113338 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113338 | 5,523.40 ** | 5313113338 | 2003536 | 3/13/2023 |
| 214878 | 5313113342 | C8 | 3/2/2023 | 3/2/2023 | 5/1/2023 | 2/27/2023 | (3.00) | Yes | 5313113342 | 3,105.67 ** | 5313113342 | 2003536 | 3/13/2023 |
| 214878 | 5313113348 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113348 | 61,974.96 O1 | 5313113348 | 2003536 | 3/13/2023 |
| 214878 | 5313113349 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113349 | 55,337.29 ** | 5313113349 | 2003536 | 3/13/2023 |
| 214878 | 5313113547 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113547 | 74,934.40 ** | 5313113547 | 2003536 | 3/13/2023 |
| 214878 | 5313113550 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113550 | 2,199.81 ** | 5313113550 | 2003536 | 3/13/2023 |
| 214878 | 5313113551 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113551 | 2,010.81 ** | 5313113551 | 2003536 | 3/13/2023 |
| 214878 | 5313113552 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113552 | 3,567.04 ** | 5313113552 | 2003536 | 3/13/2023 |
| 214878 | 5313113553 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113553 | 2,781.72 ** | 5313113553 | 2003536 | 3/13/2023 |
| 214878 | 5313113554 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113554 | 5,052.92 ** | 5313113554 | 2003536 | 3/13/2023 |
| 214878 | 5313113555 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113555 | 1,317.88 ** | 5313113555 | 2003536 | 3/13/2023 |
| 214878 | 5313113556 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113556 | 4,290.46 ** | 5313113556 | 2003536 | 3/13/2023 |
| 214878 | 5313113557 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113557 | 2,446.24 ** | 5313113557 | 2003536 | 3/13/2023 |
| 214878 | 5313113558 | C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313113558 | 3,885.54 ** | 5313113558 | 2003536 | 3/13/2023 |
| 214878 | 5313113559 | C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313113559 | 2,472.75 ** | 5313113559 | 2003536 | 3/13/2023 |
| 214878 | 5313113560 | C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313113560 | 2,552.17 ** | 5313113560 | 2003536 | 3/13/2023 |
| 214878 | 5313113561 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113561 | 5,036.88 ** | 5313113561 | 2003536 | 3/13/2023 |
| 214878 | 5313113562 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113562 | 5,320.34 ** | 5313113562 | 2003536 | 3/13/2023 |
| 214878 | 5313113563 | C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313113563 | 2,709.12 ** | 5313113563 | 2003536 | 3/13/2023 |
| 214878 | 5313113564 | C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313113564 | 2,841.16 ** | 5313113564 | 2003536 | 3/13/2023 |
| 214878 | 5313113565 | C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313113565 | 2,390.18 ** | 5313113565 | 2003536 | 3/13/2023 |
| 214878 | 5313113566 | C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313113566 | 94,322.36 ** | 5313113566 | 2003536 | 3/13/2023 |
| 214878 | 5313113572 | C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313113572 | 6,306.26 ** | 5313113572 | 2003536 | 3/13/2023 |
| 214878 | 5313113573 | C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313113573 | 3,096.60 ** | 5313113573 | 2003536 | 3/13/2023 |
| 214878 | 5313113574 | C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313113574 | 3,345.20 ** | 5313113574 | 2003536 | 3/13/2023 |
| 214878 | 5313113575 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113575 | 2,568.19 ** | 5313113575 | 2003536 | 3/13/2023 |
| 214878 | 5313113576 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113576 | 3,099.73 ** | 5313113576 | 2003536 | 3/13/2023 |
| 214878 | 5313113577 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113577 | 2,437.73 ** | 5313113577 | 2003536 | 3/13/2023 |
| 214878 | 5313113578 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113578 | 4,613.41 ** | 5313113578 | 2003536 | 3/13/2023 |
| 214878 | 5313113579 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113579 | 6,900.25 ** | 5313113579 | 2003536 | 3/13/2023 |
| 214878 | 5313113580 | C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113580 | 4,220.04 ** | 5313113580 | 2003536 | 3/13/2023 |

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 214878 | 5313113581 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113581 | 2,998.21 ** | 5313113581 | 2003536 | 3/13/2023 |
| 214878 | 5313113582 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113582 | 745.76 O3 | 5313113582 | 2003536 | 3/13/2023 |
| 214878 | 5313113583 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113583 | 2,094.85 ** | 5313113583 | 2003536 | 3/13/2023 |
| 214878 | 5313113584 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113584 | 2,294.78 ** | 5313113584 | 2003536 | 3/13/2023 |
| 214878 | 5313113585 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113585 | 1,382.88 ** | 5313113585 | 2003536 | 3/13/2023 |
| 214878 | 5313113586 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113586 | 5,553.32 ** | 5313113586 | 2003536 | 3/13/2023 |
| 214878 | 5313113587 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113587 | 4,424.90 ** | 5313113587 | 2003536 | 3/13/2023 |
| 214878 | 5313113588 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113588 | 2,227.76 ** | 5313113588 | 2003536 | 3/13/2023 |
| 214878 | 5313113589 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113589 | 1,770.93 ** | 5313113589 | 2003536 | 3/13/2023 |
| 214878 | 5313113590 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113590 | 4,739.35 ** | 5313113590 | 2003536 | 3/13/2023 |
| 214878 | 5313113591 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113591 | 4,606.94 ** | 5313113591 | 2003536 | 3/13/2023 |
| 214878 | 5313113592 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113592 | 2,292.30 ** | 5313113592 | 2003536 | 3/13/2023 |
| 214878 | 5313113593 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113593 | 4,788.40 ** | 5313113593 | 2003536 | 3/13/2023 |
| 214878 | 5313113595 C8 | 3/3/2023 | 3/3/2023 | 5/2/2023 | 2/27/2023 | (4.00) | Yes | 5313113595 | 70,549.92 ** | 5313113595 | 2003536 | 3/13/2023 |
| 214878 | 5313114313 C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313114313 | 78,204.82 ** | 5313114313 | 2003536 | 3/13/2023 |
| 214878 | 5313114315 C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313114315 | 72,645.62 ** | 5313114315 | 2003536 | 3/13/2023 |
| 214878 | 5313114596 C8 | 3/6/2023 | 3/6/2023 | 5/5/2023 | 2/27/2023 | (7.00) | Yes | 5313114596 | 70,284.95 ** | 5313114596 | 2003536 | 3/13/2023 |
| 214878 | 5313114826 C8 | 3/8/2023 | 3/8/2023 | 5/7/2023 | 2/27/2023 | (10.00) | Yes | 5313114826 | 2,556.27 ** | 5313114826 | 2003536 | 3/13/2023 |
| 214878 | 5313114827 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (9.00) | Yes | 5313114827 | 65,748.84 ** | 5313114827 | 2003536 | 3/13/2023 |
| 214878 | 5313114842 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313114842 | 4,967.93 ** | 5313114842 | 2003536 | 3/13/2023 |
| 214878 | 5313114843 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313114843 | 2,338.35 ** | 5313114843 | 2003536 | 3/13/2023 |
| 214878 | 5313114844 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313114844 | 3,078.21 ** | 5313114844 | 2003536 | 3/13/2023 |
| 214878 | 5313114845 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313114845 | 1,538.84 ** | 5313114845 | 2003536 | 3/13/2023 |
| 214878 | 5313114846 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313114846 | 2,856.60 ** | 5313114846 | 2003536 | 3/13/2023 |
| 214878 | 5313114847 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313114847 | 2,815.26 ** | 5313114847 | 2003536 | 3/13/2023 |
| 214878 | 5313114848 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313114848 | 4,087.07 ** | 5313114848 | 2003536 | 3/13/2023 |
| 214878 | 5313115102 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115102 | 383.44 O3 | 5313115102 | 2003536 | 3/13/2023 |
| 214878 | 5313115103 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115103 | 383.44 O3 | 5313115103 | 2003536 | 3/13/2023 |
| 214878 | 5313115104 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115104 | 546.44 O3 | 5313115104 | 2003536 | 3/13/2023 |
| 214878 | 5313115105 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115105 | 138.94 O3 | 5313115105 | 2003536 | 3/13/2023 |
| 214878 | 5313115106 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115106 | 546.44 O3 | 5313115106 | 2003536 | 3/13/2023 |
| 214878 | 5313115107 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115107 | 1,157.80 ** | 5313115107 | 2003536 | 3/13/2023 |
| 214878 | 5313115108 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115108 | 591.85 O3 | 5313115108 | 2003536 | 3/13/2023 |
| 214878 | 5313115109 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115109 | 138.94 O3 | 5313115109 | 2003536 | 3/13/2023 |
| 214878 | 5313115110 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115110 | 138.94 O3 | 5313115110 | 2003536 | 3/13/2023 |
| 214878 | 5313115111 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115111 | 424.9 ** | 5313115111 | 2003536 | 3/13/2023 |
| 214878 | 5313115112 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115112 | 710.86 ** | 5313115112 | 2003536 | 3/13/2023 |
| 214878 | 5313115113 C8 | 3/10/2023 | 3/10/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115113 | 138.94 O3 | 5313115113 | 2003536 | 3/13/2023 |
| 214878 | 5313115114 C8 | 3/10/2023 | 3/10/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115114 | 567.88 ** | 5313115114 | 2003536 | 3/13/2023 |
| 214878 | 5313115115 C8 | 3/10/2023 | 3/10/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115115 | 301.94 O3 | 5313115115 | 2003536 | 3/13/2023 |
| 214878 | 5313115116 C8 | 3/10/2023 | 3/10/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115116 | 1,519.89 ** | 5313115116 | 2003536 | 3/13/2023 |
| 214878 | 5313115127 C8 | 3/9/2023 | 3/9/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115127 | 86,857.67 ** | 5313115127 | 2003536 | 3/13/2023 |

| 214878 | Account | Date | Date | Date | Date | Date | Amount | Applied | Account | Account | Amount | Account | Ref | Ref Date |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 214878 | 5313115128 C8 | 3/9/2023 | 3/9/2023 | 2/27/2023 | 5/8/2023 | 2/27/2023 | (10.00) | Yes | 5313115128 | 5313115128 | 71,756.83 ** | 5313115128 | 2003536 | 3/13/2023 |
| 214878 | 5313115134 C8 | 3/10/2023 | 3/10/2023 | 2/27/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115134 | 5313115134 | 301.94 O3 | 5313115134 | 2003536 | 3/13/2023 |
| 214878 | 5313115135 C8 | 3/10/2023 | 3/10/2023 | 2/27/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115135 | 5313115135 | 138.94 O3 | 5313115135 | 2003536 | 3/13/2023 |
| 214878 | 5313115136 C8 | 3/10/2023 | 3/10/2023 | 2/27/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115136 | 5313115136 | 301.94 O3 | 5313115136 | 2003536 | 3/13/2023 |
| 214878 | 5313115137 C8 | 3/10/2023 | 3/10/2023 | 2/27/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115137 | 5313115137 | 138.94 O3 | 5313115137 | 2003536 | 3/13/2023 |
| 214878 | 5313115138 C8 | 3/10/2023 | 3/10/2023 | 2/27/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115138 | 5313115138 | 546.44 O3 | 5313115138 | 2003536 | 3/13/2023 |
| 214878 | 5313115139 C8 | 3/10/2023 | 3/10/2023 | 2/27/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115139 | 5313115139 | 138.94 O3 | 5313115139 | 2003536 | 3/13/2023 |
| 214878 | 5313115140 C8 | 3/10/2023 | 3/10/2023 | 2/27/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115140 | 5313115140 | 383.44 O3 | 5313115140 | 2003536 | 3/13/2023 |
| 214878 | 5313115141 C8 | 3/10/2023 | 3/10/2023 | 2/27/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115141 | 5313115141 | 383.44 O3 | 5313115141 | 2003536 | 3/13/2023 |
| 214878 | 5313115142 C8 | 3/10/2023 | 3/10/2023 | 2/27/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115142 | 5313115142 | 138.94 O3 | 5313115142 | 2003536 | 3/13/2023 |
| 214878 | 5313115143 C8 | 3/10/2023 | 3/10/2023 | 2/27/2023 | 5/9/2023 | 2/27/2023 | (11.00) | Yes | 5313115143 | 5313115143 | 138.94 O3 | 5313115143 | 2003536 | 3/13/2023 |
| 214878 | 5313115367 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (11.00) | Yes | 5313115367 | 5313115367 | 301.94 O3 | 5313115367 | 2003627 | 3/15/2023 |
| 214878 | 5313115368 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (11.00) | Yes | 5313115368 | 5313115368 | 1,423.74 ** | 5313115368 | 2003627 | 3/15/2023 |
| 214878 | 5313115372 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115372 | 5313115372 | 138.94 O3 | 5313115372 | 2003627 | 3/15/2023 |
| 214878 | 5313115373 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115373 | 5313115373 | 277.88 O3 | 5313115373 | 2003627 | 3/15/2023 |
| 214878 | 5313115374 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115374 | 5313115374 | 407.5 O3 | 5313115374 | 2003627 | 3/15/2023 |
| 214878 | 5313115375 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115375 | 5313115375 | 953.94 O3 | 5313115375 | 2003627 | 3/15/2023 |
| 214878 | 5313115376 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115376 | 5313115376 | 996.82 ** | 5313115376 | 2003627 | 3/15/2023 |
| 214878 | 5313115381 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115381 | 5313115381 | 708.84 ** | 5313115381 | 2003627 | 3/15/2023 |
| 214878 | 5313115382 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115382 | 5313115382 | 965.37 ** | 5313115382 | 2003627 | 3/15/2023 |
| 214878 | 5313115383 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115383 | 5313115383 | 383.44 O3 | 5313115383 | 2003627 | 3/15/2023 |
| 214878 | 5313115384 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115384 | 5313115384 | 138.94 O3 | 5313115384 | 2003627 | 3/15/2023 |
| 214878 | 5313115385 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115385 | 5313115385 | 710.86 ** | 5313115385 | 2003627 | 3/15/2023 |
| 214878 | 5313115386 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115386 | 5313115386 | 872.44 O3 | 5313115386 | 2003627 | 3/15/2023 |
| 214878 | 5313115387 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115387 | 5313115387 | 138.94 O3 | 5313115387 | 2003627 | 3/15/2023 |
| 214878 | 5313115388 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115388 | 5313115388 | 639.37 ** | 5313115388 | 2003627 | 3/15/2023 |
| 214878 | 5313115389 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115389 | 5313115389 | 244.5 O3 | 5313115389 | 2003627 | 3/15/2023 |
| 214878 | 5313115390 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115390 | 5313115390 | 138.94 O3 | 5313115390 | 2003627 | 3/15/2023 |
| 214878 | 5313115391 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115391 | 5313115391 | 138.94 O3 | 5313115391 | 2003627 | 3/15/2023 |
| 214878 | 5313115392 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115392 | 5313115392 | 383.44 O3 | 5313115392 | 2003627 | 3/15/2023 |
| 214878 | 5313115393 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115393 | 5313115393 | 208.41 O3 | 5313115393 | 2003627 | 3/15/2023 |
| 214878 | 5313115394 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115394 | 5313115394 | 679.41 ** | 5313115394 | 2003627 | 3/15/2023 |
| 214878 | 5313115395 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115395 | 5313115395 | 597.91 ** | 5313115395 | 2003627 | 3/15/2023 |
| 214878 | 5313115396 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115396 | 5313115396 | 277.88 O3 | 5313115396 | 2003627 | 3/15/2023 |
| 214878 | 5313115397 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115397 | 5313115397 | 208.41 O3 | 5313115397 | 2003627 | 3/15/2023 |
| 214878 | 5313115398 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115398 | 5313115398 | 208.41 O3 | 5313115398 | 2003627 | 3/15/2023 |
| 214878 | 5313115399 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313115399 | 5313115399 | 138.94 O3 | 5313115399 | 2003627 | 3/15/2023 |
| 214878 | 5313116256 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313116256 | 5313116256 | 383.44 O3 | 5313116256 | 2003627 | 3/15/2023 |
| 214878 | 5313116257 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313116257 | 5313116257 | 953.94 O3 | 5313116257 | 2003627 | 3/15/2023 |
| 214878 | 5313116258 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313116258 | 5313116258 | 163 O3 | 5313116258 | 2003627 | 3/15/2023 |
| 214878 | 5313116259 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313116259 | 5313116259 | 452.91 O3 | 5313116259 | 2003627 | 3/15/2023 |
| 214878 | 5313116260 C8 | 3/13/2023 | 3/13/2023 | 2/27/2023 | 5/12/2023 | 2/27/2023 | (14.00) | Yes | 5313116260 | 5313116260 | 285.96 O1 | 5313116260 | 2003627 | 3/15/2023 |

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 214878 | 5313116261 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116261 | 754.85 O3 | 5313116261 | 2003627 | 3/15/2023 |
| 214878 | 5313116262 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116262 | 383.44 O3 | 5313116262 | 2003627 | 3/15/2023 |
| 214878 | 5313116263 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116263 | 583.86 ** | 5313116263 | 2003627 | 3/15/2023 |
| 214878 | 5313116264 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116264 | 347.35 O3 | 5313116264 | 2003627 | 3/15/2023 |
| 214878 | 5313116265 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116265 | 639.37 ** | 5313116265 | 2003627 | 3/15/2023 |
| 214878 | 5313116266 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116266 | 281.92 ** | 5313116266 | 2003627 | 3/15/2023 |
| 214878 | 5313116267 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116267 | 357.45 O1 | 5313116267 | 2003627 | 3/15/2023 |
| 214878 | 5313116268 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116268 | 452.91 O3 | 5313116268 | 2003627 | 3/15/2023 |
| 214878 | 5313116269 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116269 | 301.94 O3 | 5313116269 | 2003627 | 3/15/2023 |
| 214878 | 5313116270 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116270 | 22,957.10 ** | 5313116270 | 2003627 | 3/15/2023 |
| 214878 | 5313116271 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116271 | 1,128.37 ** | 5313116271 | 2003627 | 3/15/2023 |
| 214878 | 5313116272 C8 | 3/13/2023 | 3/13/2023 | 5/12/2023 | 2/27/2023 | (14.00) Yes | 5313116272 | 1,062.25 ** | 5313116272 | 2003627 | 3/15/2023 |
| 214878 | 5313116276 C8 | 3/14/2023 | 3/14/2023 | 5/13/2023 | 2/27/2023 | (15.00) Yes | 5313116276 | 138.94 O3 | 5313116276 | 2003627 | 3/15/2023 |
| 214878 | 5313116278 C8 | 3/14/2023 | 3/14/2023 | 5/13/2023 | 2/27/2023 | (15.00) Yes | 5313116278 | 138.94 O3 | 5313116278 | 2003627 | 3/15/2023 |
| 214878 | 5313116279 C8 | 3/14/2023 | 3/14/2023 | 5/13/2023 | 2/27/2023 | (15.00) Yes | 5313116279 | 872.44 O3 | 5313116279 | 2003627 | 3/15/2023 |
| 214878 | 5313116280 C8 | 3/14/2023 | 3/14/2023 | 5/13/2023 | 2/27/2023 | (15.00) Yes | 5313116280 | 627.94 O3 | 5313116280 | 2003627 | 3/15/2023 |
| 214878 | 5313116281 C8 | 3/14/2023 | 3/14/2023 | 5/13/2023 | 2/27/2023 | (15.00) Yes | 5313116281 | 1,050.82 ** | 5313116281 | 2003627 | 3/15/2023 |
| 214878 | 5313116282 C8 | 3/14/2023 | 3/14/2023 | 5/13/2023 | 2/27/2023 | (15.00) Yes | 5313116282 | 597.91 ** | 5313116282 | 2003627 | 3/15/2023 |
| 214878 | 5313116283 C8 | 3/14/2023 | 3/14/2023 | 5/13/2023 | 2/27/2023 | (15.00) Yes | 5313116283 | 464.94 O3 | 5313116283 | 2003627 | 3/15/2023 |
| 214878 | 5313116284 C8 | 3/14/2023 | 3/14/2023 | 5/13/2023 | 2/27/2023 | (15.00) Yes | 5313116284 | 561.82 ** | 5313116284 | 2003627 | 3/15/2023 |
| 214878 | 5313116285 C8 | 3/14/2023 | 3/14/2023 | 5/13/2023 | 2/27/2023 | (15.00) Yes | 5313116285 | 138.94 O3 | 5313116285 | 2003627 | 3/15/2023 |
| 214878 | 5313116608 C8 | 3/14/2023 | 3/14/2023 | 5/13/2023 | 2/27/2023 | (15.00) Yes | 5313116608 | 9,409.72 ** | 5313116608 | 2003627 | 3/15/2023 |

**chicco**

ARTSANA USA, Inc.
1826 William Penn Way
Lancaster, PA 17601
tel:(717)735-6200
fax:(717)735-0888

| DOCUMENT | | NUMBER | DATE |
|---|---|---|---|
| **Invoice** | | 5213170373 | 10/11/2022 |
| DIVISION | CUSTOMER TAX NUMBER | | PAGE |
| P3 | | | 1/1 |
| SALES PERSON  800002798 | | | CURRENCY |
| HOUSE | | | USD |
| PAYMENT TERMS | | | CUSTOMER |
| 60 DAYS ID | | | 214878 |

**BILL TO PARTY**
BUY BUY BABY INC
LIBERTY PROCUREMENT CO INC
650 Liberty Ave
Union, NJ 07083-8107 US

**CUSTOMER ADDRESS**
BUY BUY BABY INC
LIBERTY PROCUREMENT CO INC
650 Liberty Ave
Union, NJ 07083-8107 US

| ITEM CODE | DESCRIPTION | U.M. | QTY | GROSS PRICE | DISCOUNT | NET PRICE | AMOUNT | CT |
|---|---|---|---|---|---|---|---|---|
| Number of Adherent 018595 | | | | | | | | |
| Delivery Address: 276886, BUY BUY BABY 3024 CHARLOTTE - 3024 - 9555 South Blvd 28273-6901 Charlotte NC US | | | | | | | | |
| | Sales Order N. 1661222522 Customer PO JQ8F3PG Customer PO JQ8F3PG  of 09/21/2022 | | | | | | | |
| | Delivery n. 3661296987 of the 09/28/2022- Shipper COLLECT | | | | | | | |
| 00007042120070 | SEMI SOFT SPOUT TRAINER GIRL 6M+  2P | CN | 3 | | | 5.50 | 16.50 | |
| 00073221110070 | SILICONE MINI PACIFIER PINK 0-2M 2P | CN | 6 | | | 3.62 | 21.72 | |
| 00079727840070 | BOOSTER SEAT TAKE-A SEAT GREY STAR | CN | 4 | | | 31.49 | 125.96 | |
| PAYMENT:  60 DAYS ID | | | | | | | | |
| PAYMENT DATE | | | | | | | | |

| TAX | | BASE AMOUNT | TAX AMOUNT | TAX | | BASE AMOUNT | TAX AMOUNT | NET AMOUNT |
|---|---|---|---|---|---|---|---|---|
| O1 | | 164.18 | 0.00 | | | | | 164.18 |

| OWNERSHIP RESERVE CLAUSE | | | TOT.BASE AMOUNT | TOT.TAX AMOUNT | TOT.INVOICE |
|---|---|---|---|---|---|
| | | | 164.18 | | 164.18 |

ORIGINAL

 Outlook

---

**FW: Buy Buy Aging**

From   Steve McLaughlin <IMCEAEX-
_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-
Steve+20McLau@EURP251.PROD.OUTLOOK.COM>

Date   Wed 1/4/2023 11:09 AM

To     Chad Taylor <chad.taylor@buybuybaby.com>

Cc     Josh Pahl <Josh.Pahl@artsana.com>

Chad – Happy New Year. Can you please assist in pushing the finance team on communication. Our team has seemed to have lost contact with BRG team and our HQ is pressuring stop ship.

Many Thanks for any assistance – trail below for your review.

Thanks,
Steve

**Steve McLaughlin**
Vice President of Sales
Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com



**From:** Amanda Plasterer
**Sent:** Tuesday, January 3, 2023 11:49 AM
**To:** Greg Obetz ; Brian Cashman ; John Dery
**Cc:** Steve Rubin ; Steve McLaughlin ; Josh Pahl
**Subject:** RE: Buy Buy Aging

Hello John and Brian,

As of today, total due for Domestic is $287,903. Total due for Import is $750,041.

Thank you,

**Amanda Plasterer**
Staff Accountant
Chicco USA | Artsana USA
1826 William Penn Way | Lancaster, PA 17601
p 717-517-5823 | f 717-735-0888 | chiccousa.com

**From:** Greg Obetz <Greg.Obetz@artsana.com>
**Sent:** Tuesday, January 3, 2023 10:45 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>; John Dery <john.dery@bedbath.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** RE: Buy Buy Aging

Hi John and Brian,

Please give me an update. We have not been paid in over two weeks. When will we (both Artsana USA and Caben) receive our next payment?

Regards,

Greg

**Greg Obetz**
_____Controller

Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

  
p 717-735-6200 | f 717-735-0888 | chiccousa.com





The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

**From:** Greg Obetz
**Sent:** Wednesday, December 28, 2022 9:24 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>; John Dery <john.dery@bedbath.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** RE: Buy Buy Aging

Hi John,

Please see below. Can you give me any update on a payment to Artsana USA or Caben Asia Pacific?

Regards,

Greg

**From:** Brian Cashman <bcashman@thinkbrg.com>
**Sent:** Wednesday, December 28, 2022 9:22 AM
**To:** Greg Obetz <Greg.Obetz@artsana.com>; John Dery <john.dery@bedbath.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** Re: Buy Buy Aging

EXTERNAL EMAIL - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Greg,

Please work with John Dery going forward on status of payments. Thank you.

**From:** Greg Obetz <Greg.Obetz@artsana.com>
**Sent:** Wednesday, December 28, 2022 8:56:15 AM
**To:** Brian Cashman <bcashman@thinkbrg.com>
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** [EXT] RE: Buy Buy Aging

Dear Brian,
Do you have any update on this? We still not received a payment from Buy Buy Baby since the previous email.
Also, our sister company Caben Asia Pacific is asking about payment as well. Do you have any update on a payment to us (Artsana USA) or Caben?
Thanks,
Greg
**Greg Obetz**
_____ Controller

Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com





The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

**From:** Greg Obetz
**Sent:** Monday, December 19, 2022 9:00 AM
**To:** bcashman@thinkbrg.com
**Cc:** Amanda Plasterer <Amanda.Plasterer@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** FW: Buy Buy Agingq

Dear Brian,
We have over $200k that is now past due from Buy Buy Baby. Can you please tell us if there is a payment coming soon to pay for these past due invoices?
Regards,
Greg

**Greg Obetz**

_____ Controller

Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com





The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

**From:** Amanda Plasterer <Amanda.Plasterer@artsana.com>
**Sent:** Monday, December 19, 2022 8:55 AM
**To:** Steve McLaughlin <Steve.McLaughlin@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Josh Pahl <Josh.Pahl@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>
**Subject:** Buy Buy Agingq

**Amanda Plasterer**
**Staff Accountant**
Chicco USA | Artsana USA
1826 William Penn Way | Lancaster, PA 17601
p 717-517-5823 | f 717-735-0888 | chiccousa.com





The information contained in this message may be privileged and confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by replying to the message and deleting it from your computer

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

**BERKELEY RESEARCH GROUP, LLC (TOGETHER WITH ITS AFFILIATES, "BRG") - NOTICE**
THIS EMAIL TRANSMISSION AND ANY ATTACHMENTS HERETO CONTAIN INFORMATION FROM BRG WHICH MAY BE CONFIDENTIAL AND PRIVILEGED. THE INFORMATION IS INTENDED FOR THE SOLE USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED. IF YOU ARE NOT THE INTENDED RECIPIENT, YOUR USE, DISSEMINATION, FORWARDING, PRINTING OR COPYING OF THIS INFORMATION IS PROHIBITED.

**TAX ADVICE DISCLOSURE**
ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (I) AVOIDING PENALTIES UNDER THE INTERNAL REVENUE CODE OR (II) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

BRG IS (I) NOT A LAW FIRM AND DOES NOT PROVIDE LEGAL ADVICE AND (II) NOT A CPA FIRM AND DOES NOT PROVIDE AUDIT, ATTEST OR PUBLIC ACCOUNTING SERVICES.

 Outlook

**RE: DI USA - JAN 2023 BBB Urgent**

**From** Jane Wang <Jane.Wang@artsana.com>

**Date** Sun 1/8/2023 11:27 PM

**To** Steve Rubin <Steve.Rubin@artsana.com>; Steve McLaughlin <IMCEAEX-_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-Steve+20McLau@EURP251.PROD.OUTLOOK.COM>; Pietro Colombo <Pietro.Colombo@artsana.com>; Patrick Smith <IMCEAEX-_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=cfffe0431d18443783362d629f1d626f-Patrick+20Smi@EURP251.PROD.OUTLOOK.COM>; Shirleen He <shirleen.he@artsana.com>; Tom Gwiazdowski <Tom.Gwiazdowski@artsana.com>

**Cc** Yammy Wong <yammy.wong@artsana.com>; Shandi Wong <IMCEAEX-_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=64c4d85775574be0857293093f96fa56-Shandi+20Wong@EURP251.PROD.OUTLOOK.COM>; Anna Chan <anna.chan@artsana.com>; Nicole Wang <Nicole.Wang@artsana.com>; Marco Ottolini <Marco.Ottolini@artsana.com>

📎 1 attachment (52 KB)

BBB urgent - 01 2023 shipments and shifts - 09-01.xlsx;

Dear Steve, dear Pietro,

Attached the updates for BBB orders (sheet 1) :

● Part 1 – those were shipped out, we can't stop in origin port, if needed, could you pls check any possibility to change the consignee to Artsana USA (instead of BBB in the B/L) so Artsana USA could take those containers when arrival in destination port?

● Part 2 – goods are ready in factory, we've cancelled the loading an on-hold, we'll wait for USA team's further instruction what to do in the following,

● Part 3 – BBB blanket orders with goods ready in Apr & Jun, pls adv if to switch to other customers?

● No more outstanding orders for BBB except for above mentioned,

Thank you,

Jane

| | A | B | C | D | E | F | G | H | A |
|---|---|---|---|---|---|---|---|---|---|
| | **Already shipped, can't hold in origin port** | | | | | | | | |
| | ustom | SC | PO# | ITEM# | Description | SC date | Qty | Ext Value | Updated on Jan 9 2023 |
| | BUY B | 1160137555 | NX5L4DG | 0007963292007C | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 02/01/2023 | 329 | 78 611 | Already shipped, can't hold in origin port |
| | BUY B | 1160138469 | NX5M2RE | 0007963292007C | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 03/01/2023 | 329 | 78 611 | Already shipped, can't hold in origin port |
| | BUY B | 1160138470 | NX5M2RF | 0007963292007C | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 03/01/2023 | 668 | 157 223 | Already shipped, can't hold in origin port |
| | BUY B | 1160138472 | NX5M2RG | 0007963292007C | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 03/01/2023 | 329 | 78 611 | Already shipped, can't hold in origin port |
| | BUY B | 1160138476 | NX5M2RN | 0607956377007C | CORSO LE TRAVEL SYSTEM HAMPTON USA | 10/01/2023 | 279 | 99 369 | Already shipped, can't hold in origin port |
| | BUY B | 1160138487 | NX5M2RL | 0607956377007C | CORSO LE TRAVEL SYSTEM HAMPTON USA | 10/01/2023 | 279 | 99 369 | Already shipped, can't hold in origin port |
| | | | | | | **Sub total** | 2,203 | 571,834 | |
| | **Already On-hold to ship, goods ready in factory and waitng for USA team to adv what to do?** | | | | | | | | |
| | ustom | SC | PO# | ITEM# | Description | SC date | Qty | Ext Value | Updated on Jan 9 2023 |
| | BUY B | 1160138474 | NX5M2RM | 0607956377007C | CORSO LE TRAVEL SYSTEM HAMPTON USA | 10/01/2023 | 558 | 178 778 | On-hold to ship |
| | BUY B | 1160138463 | NX5M2RP | 0407968233007C | BRAVO PRIMO TRIO T.SYSTEM SPRINGHILL US | 17/01/2023 | 279 | 94 687 | On-hold to ship |
| | BUY B | 1160138466 | NX5M2RQ | 0407968233007C | BRAVO PRIMO TRIO T.SYSTEM SPRINGHILL US | 17/01/2023 | 558 | 189 274 | On-hold to ship |
| | BUY B | 1160138467 | NX5M2RR | 0407968233007C | BRAVO PRIMO TRIO T.SYSTEM SPRINGHILL US | 17/01/2023 | 279 | 94 687 | On-hold to ship |
| | BUY B | 1160138478 | NX5M2RS | 0607962578007C | KEYFIT 35 BABY CAR SEAT ELEMENT USA | 18/01/2023 | 448 | 63 787 | On-hold to ship |
| | BUY B | 1160138479 | NX5M2RT | 0607962578007C | KEYFIT 35 BABY CAR SEAT ELEMENT USA | 18/01/2023 | 896 | 127 474 | On-hold to ship |
| | BUY B | 1160138480 | NX5M2RU | 0607962578007C | KEYFIT 35 BABY CAR SEAT ELEMENT USA | 18/01/2023 | 448 | 63 787 | On-hold to ship |
| | BUY B | 1160138468 | NX5M2RY | 0007963292007C | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 24/01/2023 | 329 | 78 611 | On-hold to ship |
| | BUY B | 1160138471 | NX5M2RZ | 0007963292007C | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 24/01/2023 | 668 | 157 223 | On-hold to ship |
| | BUY B | 1160138473 | NX5M2SA | 0007963292007C | BRAVO TRIO TRAVEL SYSTEM CAMDEN USA | 24/01/2023 | 329 | 78 611 | On-hold to ship |
| | | | | | | **Sub total** | 4,782 | 1,126,718 | |
| | **BBB Blanket orders, goods ready date in Apr & Jun, pls adv if on-hold production or not?** | | | | | | | | |
| | ustom | SC | PO# | ITEM# | Description | Goods rea | Qty | Ext Value | Updated on Jan 9 2023 |
| | BUY B | 5022024B2 | | 0608700256007C | KEYFIT 30 CLEARTEX B.CAR SEAT PEWTER USA | 01/06/2023 | 675 | | BBB Blanket orders |
| | BUY B | 5022206593 | | 0707973427007C | MYFIT CLEARTEX BABY CAR SEAT SHADOW USA | 06/06/2023 | 1 116 | | BBB Blanket orders |
| | BUY B | 5022207947 | | 0607966066007C | MYFIT ZIP BABY CAR SEAT GRANITE USA | 06/04/2023 | 1 116 | | BBB Blanket orders |
| | BUY B | 5022207947 | | 0607962578007C | KEYFIT 35 BABY CAR SEAT ELEMENT USA | 06/04/2023 | 1 344 | | BBB Blanket orders |
| | BUY B | 5023000A4 | | 0407968233007C | BRAVO PRIMO TRIO T.SYSTEM SPRINGHILL US | 06/04/2023 | 3 348 | | BBB Blanket orders |
| | | | | | | **Sub total** | 7,499 | | |

**From:** Steve Rubin

**Sent:** 07 January 2023 22:59

**To:** Jane Wang ; Steve McLaughlin ; Pietro Colombo ; Patrick Smith ; Shirleen He ; Tom Gwiazdowski

**Cc:** Yammy Wong ; Shandi Wong ; Anna Chan

**Subject:** RE: DI USA - JAN 2023 BBB Urgent

Jane and Caben Team,

Unfortunately we need to ask you to halt/stop shipping all the Buy Buy Baby orders.

Please do whatever you can to hold the remaing shipments.

Until we find out further information about their financial status we will not be shipping.

Please follow up with us to let us know the status of the remaining shipments.

Any question please ask.

Steve Rubin

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------

From: Jane Wang <Jane.Wang@artsana.com>

Date: 1/5/23 5:48 AM (GMT-05:00)

To: Steve Rubin <Steve.Rubin@artsana.com>, Steve McLaughlin <Steve.McLaughlin@artsana.com>, Pietro Colombo <Pietro.Colombo@artsana.com>, Greg Obetz <Greg.Obetz@artsana.com>, Amanda Plasterer <Amanda.Plasterer@artsana.com>, Sandy Storm <Sandy.Storm@artsana.com>, Patrick Smith <patrick.smith@artsana.com>

Cc: Yammy Wong <yammy.wong@artsana.com>, Shandi Wong <Shandi.Wong@artsana.com>, Anna Chan <anna.chan@artsana.com>

Subject: DI USA - JAN 2023

Dear all,

As attached the update for JAN orders FYI, thank you,

| DI USA - V1 JAN 2023 | Sum of Ext Value |
|---|---|
| ⊟ awaiting the SO from the forwarder | 2,577,349 |
| AMAZON.COM | 626.675 |
| BUY BUY BABY INC | 631.193 |
| EI BRAND MANAGEMENT | 56.143 |
| Target Global Sourci | 973.311 |
| WAL-MART.COM | 290.028 |
| ⊟ Invoiced in Jan 2023 | 626,900 |
| BUY BUY BABY INC | 393.056 |
| EI BRAND MANAGEMENT | 27.300 |
| Target Global Sourci | 165.559 |
| WAL-MART.COM | 40.986 |
| ⊟ NO issue to invoice in Jan 2023 | 4,728,961 |
| AMAZON.COM | 2.271.512 |
| BUY BUY BABY INC | 674.303 |
| EI BRAND MANAGEMENT | 48.828 |
| Target Global Sourci | 1.462.210 |
| WAL-MART.COM | 272.109 |
| Grand Total | 7,933,211 |

## Falk, Turner N.

| | |
|---|---|
| **From:** | TMSNE <TMSNE@bedbath.com> |
| **Sent:** | Monday, January 9, 2023 3:27 PM |
| **To:** | Hunter Miles; AMY CRUZ; ACE; TMSNE |
| **Cc:** | Cynthia Pineda; Steve Rubin; Richard Sweeney |
| **Subject:** | RE: Bed Bath and Beyond Pickup Appointment Request - ARLABP |

These loads have been cancelled

Thanks,

Nyree Waters
Logistics Consultant, North East
Nyree.Waters@Consultant.Bedbath.com

**From:** Hunter Miles <hunter.miles@jbhunt.com>
**Sent:** Monday, January 9, 2023 3:24 PM
**To:** AMY CRUZ <Amy.Cruz@artsana.com>; ACE <ACE@jbhunt.com>; TMSNE <TMSNE@bedbath.com>
**Cc:** Cynthia Pineda <Cynthia.Pineda@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Richard Sweeney <Richard.Sweeney@artsana.com>
**Subject:** RE: Bed Bath and Beyond Pickup Appointment Request - ARLABP

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Advised

Looping in @TMSNE for visibility

Thank you,

**How am I doing? Your feedback is important to me:**
Rate your customer experience with J.B. Hunt.

**Hunter Miles (He/Him)**
CE-Account Manager
833-676-1400 (59522)
My Hours: M-F 0700-1600 CST
For After Hours:
ACE@jbhunt.com
www.jbhunt.com



Intermodal | Dedicated | Final Mile | Flatbed | Truckload | Refrigerated | LTL | Managed Logistics

1

**From:** Amy Cruz
**Sent:** Monday, January 9, 2023 1:23 PM
**To:** Hunter Miles; ACE
**Cc:** Cynthia Pineda; Steve Rubin; Richard Sweeney
**Subject:** RE: Bed Bath and Beyond Pickup Appointment Request - ARLABP

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good afternoon,
Good afternoon,
At this time, we are unable to ship these two shipments. Please cancel the pick up.


Thank you,
**Amy Cruz**
Warehouse Coordinator
*"Of all the paths you take in life, make sure a few of them are dirt."* – John Muir

**From:** Hunter Miles <hunter.miles@jbhunt.com>
**Sent:** Thursday, January 5, 2023 12:34 PM
**To:** Amy Cruz <Amy.Cruz@artsana.com>; ACE <ACE@jbhunt.com>
**Cc:** Cynthia Pineda <Cynthia.Pineda@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Richard Sweeney <Richard.Sweeney@artsana.com>
**Subject:** RE: Bed Bath and Beyond Pickup Appointment Request - ARLABP

EXTERNAL EMAIL - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Copy that

Got yall reset

Thank you,

**How am I doing? Your feedback is important to me:**
Rate your customer experience with J.B. Hunt.

**J.B. HUNT**
**Intermodal**

**Hunter Miles (He/Him)**
CE-Account Manager
833-676-1400 (59522)
My Hours: M-F 0700-1600 CST
For After Hours:
ACE@jbhunt.com
www.jbhunt.com



Intermodal | Dedicated | Final Mile | Flatbed | Truckload | Refrigerated | LTL | Managed Logistics

**From:** Amy Cruz
**Sent:** Thursday, January 5, 2023 11:21 AM
**To:** Hunter Miles; ACE
**Cc:** Cynthia Pineda; Steve Rubin; Richard Sweeney
**Subject:** RE: Bed Bath and Beyond Pickup Appointment Request - ARLABP

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

It is due to a capacity issue and it won't be ready.

**From:** Hunter Miles <hunter.miles@jbhunt.com>
**Sent:** Thursday, January 5, 2023 11:55 AM
**To:** Amy Cruz <Amy.Cruz@artsana.com>; ACE <ACE@jbhunt.com>
**Cc:** Cynthia Pineda <Cynthia.Pineda@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>; Richard Sweeney <Richard.Sweeney@artsana.com>
**Subject:** RE: Bed Bath and Beyond Pickup Appointment Request - ARLABP

EXTERNAL EMAIL - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Good Morning

Can do, can you please advise as to the reason?

Thank you,

**How am I doing? Your feedback is important to me:**
Rate your customer experience with J.B. Hunt.



**Hunter Miles (He/Him)**
CE-Account Manager
833-676-1400 (59522)
My Hours: M-F 0700-1600 CST
For After Hours:
ACE@jbhunt.com
www.jbhunt.com



Intermodal | Dedicated | Final Mile | Flatbed | Truckload | Refrigerated | LTL | Managed Logistics

**From:** Amy Cruz
**Sent:** Thursday, January 5, 2023 10:54 AM
**To:** ACE; Hunter Miles
**Cc:** Cynthia Pineda; Steve Rubin; Richard Sweeney
**Subject:** RE: Bed Bath and Beyond Pickup Appointment Request - ARLABP

> **CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

3

Good morning,
Can we please push the following shipments out to the following dates and times:

Mvdp7114432 - 1/11 @ 0900
Mvdp7114429 - 1/11 @ 1000


Thank you,
Amy


**From:** ACE <ACE@jbhunt.com>
**Sent:** Monday, January 2, 2023 9:55 AM
**To:** Amy Cruz <Amy.Cruz@artsana.com>; Hunter Miles <hunter.miles@jbhunt.com>
**Cc:** Cynthia Pineda <Cynthia.Pineda@artsana.com>
**Subject:** RE: Bed Bath and Beyond Pickup Appointment Request - ARLABP

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Thanks Amy! I have these updated now.



**Dan Griesenauer**
Customer Experience Representative
ACE
**479-820-2243**
www.jbhunt.com



Intermodal | Dedicated | Final Mile | Flatbed | Truckload | Refrigerated | LTL | Managed Logistics


**From:** Amy Cruz <Amy.Cruz@artsana.com>
**Sent:** Monday, January 2, 2023 7:58 AM
**To:** Hunter Miles <hunter.miles@jbhunt.com>
**Cc:** ACE <ACE@jbhunt.com>; Cynthia Pineda <Cynthia.Pineda@artsana.com>
**Subject:** Re: Bed Bath and Beyond Pickup Appointment Request - ARLABP

**CAUTION:** This email originated from outside of the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning,
I can do the following:

Mvdp7114431 - 1/5 @ 1200
Mvdp7114432 - 1/6 @ 1300
Mvdp7114429 - 1/6 @ 1400

Please advise. They can also be pushed out.

Thank you,
Amy

4

Sent from my iPhone

On Dec 30, 2022, at 11:38 AM, Hunter Miles <hunter.miles@jbhunt.com> wrote:

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Hello,

The requested pickup time(s) below can be updated if needed. Please preload if you have a pool onsite.

| Load | Date | Appt | Stop# | Ship-ID | PO#'s | BOL# | ORD NBR | Mode | Destination State | Cases |
|------|------|------|-------|---------|-------|------|---------|------|-------------------|-------|
| 1HB2585 | 1/4 | 1100 | 1 of 1 | MVDP7114431 | MVDP7114431 | 1130005235 | | Rail | PENDERGRASS, GA | 629 |
| 1HB2611 | 1/5 | 1300 | 1 of 1 | MVDP7114432 | MVDP7114432 | 1130005236 | | Rail | PENDERGRASS, GA | 429 |
| 1HB2492 | 1/5 | 1400 | 1 of 1 | MVDP7114429 | MVDP7114429 | 1130005238 | | Rail | LEWISVILLE, TX | 590 |

**Please feel free to email us regarding any other info you are needing to set this appointment.**

Thanks,
Hunter Miles
J.B. Hunt Transport, Inc.
This email contains confidential material for the sole use of the intended recipient(s). Any review, use, distribution, or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

This email contains confidential material for the sole use of the intended recipient(s). Any review, use, distribution, or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

This email contains confidential material for the sole use of the intended recipient(s). Any review, use, distribution, or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

This email contains confidential material for the sole use of the intended recipient(s). Any review, use, distribution, or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

This email contains confidential material for the sole use of the intended recipient(s). Any review, use, distribution, or disclosure by others is strictly prohibited. If you are not the intended recipient (or authorized to receive for the recipient), please contact the sender by reply email and delete all copies of this message.

## Falk, Turner N.

| | |
|---|---|
| **From:** | Steve McLaughlin <IMCEAEX-_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-Steve+20McLau@EURP251.PROD.OUTLOOK.COM> |
| **Sent:** | Tuesday, January 10, 2023 2:09 PM |
| **To:** | Chad Taylor; Nora.Shoots@buybuybaby.com; christina.dibella@buybuybaby.com |
| **Cc:** | Josh Pahl |
| **Subject:** | Chicco |
| **Attachments:** | BBB AGING 1-10-2023.xlsx |

Good afternoon team,

Considering recent news, we regret to inform you that we will be moving our terms to prepayment effective immediately on invoices dated 1/10/2023 or later. We understand this move is not ideal and can review as more information on the state of the business is released.

I have attached the current aging report prepared by our finance team for your review. Our expectation is that payments will continue as outlined for anything invoiced prior to 1/10/2023 according to our current terms agreement.

We appreciate your partnership as we navigate this challenging time.

Regards,
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA | Artsana USA
1826 William Penn Way | Lancaster, PA 17601
p 717-735-6200 | f 717-735-0888 | chiccousa.com



1

 Outlook

---

## RE: Schneider Appointment Request

---

**From** Steve Rubin <Steve.Rubin@artsana.com>

**Date** Mon 1/9/2023 2:51 PM

**To** TMSNE <TMSNE@bedbath.com>; Amy Cruz <Amy.Cruz@artsana.com>

📎 2 attachments (12 KB)

image001.png; image002.png;

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Nyree,

At this time, we have been asked to hold shipments to BBB.  As we get more information and things change, we will advise.

Thank you,

Steve Rubin

**From:** TMSNE <TMSNE@bedbath.com>
**Sent:** Monday, January 9, 2023 2:50 PM
**To:** Steve Rubin <Steve.Rubin@artsana.com>; Amy Cruz <Amy.Cruz@artsana.com>
**Subject:** FW: Schneider Appointment Request

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Hi Amy,

Can I ask why this load is cancelled?

Thanks,

Nyree Waters
Logistics Consultant, North East
Nyree.Waters@Consultant.Bedbath.com

**From:** STM BBBY <STMBBBY@schneider.com>
**Sent:** Monday, January 9, 2023 2:41 PM
**To:** 653 inbound <653inbound@bedbath.com>; STM BBBY <STMBBBY@schneider.com>; TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,

@TMSNE
@653 inbound

Shipper is advising they are cancelling these two shipments.

**MVDP7114460**
and
**MVDP7114450**

Please confirm we are good to remove from our system.

Drivers assigned have been informed to avoid any TONUs.

Thanks,
**Cody Kinley**
*Account Management*

**SCHNEIDER TRANSPORTATION MANAGEMENT**
**Midwest Regional Logistics Center**
**1 N Dearborn St Chicago IL 60602**
**New Direct Line: 920-357-2869**
Kinleyc1@schneider.com



**After hours support: (855) 476-4786**

**Schneider FreightPower**

**Get unprecedented access to a vast network of shippers and quality freight with Schneider FreightPower®.**
**Learn More**

**All rate quotes are good for four (4) hours.
**All rates are good for thirty (30) days once accepted unless otherwise specified.
**All rate quotes include two (2) hours free load and unload.
**All rate quotes assume legal dimensions unless otherwise specified.
**LTL pickup/delivery dates cannot be guaranteed / Transit times are estimated and do not include the day of pickup or weekends.
** Volume expected is no more than five loads per day, unless otherwise specified.
**All rate quotes assume live load/live unload unless otherwise specified.
**Capacity is not guaranteed.  We work with outside carriers to provide capacity.
**Mexican rates and insurance coverage are limited depending on the product and applicable Mexican Regulations.
** The attached rates are based on current Federal Motor Carrier hours of service rules.  Should these regulations change, adjustments to our quoted rates may be necessary.
**STM, a division of Schneider Logistics, Inc. operates solely as a broker and shall not be held liable for any cargo claims or injuries to persons (including death) or property related to the movement of freight.

*The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies*

**From:** 653 inbound <653inbound@bedbath.com>
**Sent:** Friday, January 6, 2023 5:31 AM
**To:** STM BBBY <STMBBBY@schneider.com>; 653 inbound <653inbound@bedbath.com>
**Cc:** TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning.
Your loads are scheduled for 01-12@06:00 AM.

Thank you

Esmeralda Sempertegui

**From:** STM BBBY <STMBBBY@schneider.com>
**Sent:** Thursday, January 5, 2023 3:23 PM
**To:** STM BBBY <STMBBBY@schneider.com>; 653 inbound <653inbound@bedbath.com>
**Cc:** TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,

Kindly following up.

Please see emails attached from the shipper.

They are requesting to push pickup for both the loads below till 1/11.

Please let us know if we can reset the delivery appointments to the loads below:

**MVDP7114460**
1/12 0600

**MVDP7114450**
1/12 0600

Please let us know, thanks!

**Cody Kinley**
*Account Management*

**SCHNEIDER TRANSPORTATION MANAGEMENT**
**Midwest Regional Logistics Center**

1 N Dearborn St Chicago IL 60602
**New Direct Line: 920-357-2869**
Kinleyc1@schneider.com



**After hours support: (855) 476-4786**

## Schneider
## FreightPower®

**Get unprecedented access to a vast network of shippers and quality freight with Schneider FreightPower®.**

**Learn More**

\*\*All rate quotes are good for four (4) hours.

\*\*All rates are good for thirty (30) days once accepted unless otherwise specified.

\*\*All rate quotes include two (2) hours free load and unload.

\*\*All rate quotes assume legal dimensions unless otherwise specified.

\*\*LTL pickup/delivery dates cannot be guaranteed / Transit times are estimated and do not include the day of pickup or weekends.

\*\* Volume expected is no more than five loads per day, unless otherwise specified.

\*\*All rate quotes assume live load/live unload unless otherwise specified.

\*\*Capacity is not guaranteed.  We work with outside carriers to provide capacity.

\*\*Mexican rates and insurance coverage are limited depending on the product and applicable Mexican Regulations.

\*\* The attached rates are based on current Federal Motor Carrier hours of service rules.  Should these regulations change, adjustments to our quoted rates may be necessary.

\*\*STM, a division of Schneider Logistics, Inc. operates solely as a broker and shall not be held liable for any cargo claims or injuries to persons (including death) or property related to the movement of freight.

*The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies*

**From:** STM BBBY <STMBBBY@schneider.com>
**Sent:** Thursday, January 5, 2023 11:48 AM
**To:** 653 inbound <653inbound@bedbath.com>
**Cc:** STM BBBY <STMBBBY@schneider.com>; TMSNE <TMSNE@bedbath.com>
**Subject:** RE: Schneider Appointment Request

Hello,

Please see emails attached from the shipper.

They are requesting to push pickup for both the loads below till 1/11.

Please let us know if we can reset the delivery appointments to the loads below:

**MVDP7114460**
1/12 0600

**MVDP7114450**
1/12 0600

Please let us know, thanks!

**Cody Kinley**
*Account Management*

**SCHNEIDER TRANSPORTATION MANAGEMENT**
**Midwest Regional Logistics Center**
**1 N Dearborn St Chicago IL 60602**
**New Direct Line: 920-357-2869**
Kinleyc1@schneider.com



**After hours support: (855) 476-4786**

## Schneider
## FreightPower®

**Get unprecedented access to a vast network of shippers and quality freight with Schneider FreightPower®.**

**Learn More**

**All rate quotes are good for four (4) hours.
**All rates are good for thirty (30) days once accepted unless otherwise specified.
**All rate quotes include two (2) hours free load and unload.
**All rate quotes assume legal dimensions unless otherwise specified.
**LTL pickup/delivery dates cannot be guaranteed / Transit times are estimated and do not include the day of pickup or weekends.
** Volume expected is no more than five loads per day, unless otherwise specified.
**All rate quotes assume live load/live unload unless otherwise specified.
**Capacity is not guaranteed.  We work with outside carriers to provide capacity.
**Mexican rates and insurance coverage are limited depending on the product and applicable Mexican Regulations.
** The attached rates are based on current Federal Motor Carrier hours of service rules.  Should these regulations change, adjustments to our quoted rates may be necessary.
**STM, a division of Schneider Logistics, Inc. operates solely as a broker and shall not be held liable for any cargo claims or injuries to persons (including death) or property related to the movement of freight.

*The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies*

**From:** 653 inbound <653inbound@bedbath.com>
**Sent:** Monday, January 2, 2023 5:51 AM
**To:** Kinley, Cody <kinleyc1@schneider.com>; 653 inbound <653inbound@bedbath.com>
**Cc:** STM BBBY <stmbbby@schneider.com>
**Subject:** RE: Schneider Appointment Request

**CAUTION:** This email originated from outside the organization. Do not click links or open attachments unless you recognize the sender and know the content is safe.

Good morning.

Your load has been scheduled for 01-10@6:00 AM.

Thank you

Esmeralda Sempertegui

**From:** kinleyc1@schneider.com <kinleyc1@schneider.com>
**Sent:** Saturday, December 31, 2022 1:24 PM
**To:** 653 inbound <653inbound@bedbath.com>
**Cc:** stmbbby@schneider.com
**Subject:** Schneider Appointment Request

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hello,
Please confirm the suggested appointment for the Schneider order(s) below and include any required appointment references. To accept the "Suggested Appt Start/End," please put Y/Yes in the column labeled "Confirm Appointment (Y/N)". If the appointment does not work for you, please put N/No in the column labeled "Confirm Appointment (Y/N)" and provide an "Alternative Suggestion" and we will respond with confirmation.

| Order Id | Stop Type | Suggested Appt Start DTTM | Suggested Appt End DTTM | Additional Information | Confirm Appointment (Y/N) | Alternative Suggestion | Appointment Reference | Master Bill of Lading | Purchase Order |
|---|---|---|---|---|---|---|---|---|---|
| 2044392780 | Delivery | 01/10/23 06:00 AM | 01/10/23 06:00 AM | | | | | MVDP7114450 | |

Thank you,
Cody Kinley
For Schneider internal use only: correlation-key=2337479-6130818627475429445-1939457810836706923
 Appointment requests not responded to, or confirmed outside of the requested times, may be subject to additional fees to include ramp storage, trailer detention, or redelivery fees, based on your specific agreement with Schneider. The information contained in this email message may be privileged, confidential and protected from disclosure, and no waiver of any privilege is intended. If you are not the intended recipient, any dissemination, distribution or copying is strictly prohibited. If you think that you have received this email message in error, please email the sender and delete all copies.

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

Exhibit C Case 24-01336-VFP    Doc 21-1    Filed 03/13/26    Entered 03/13/26 15:16:51    Desc
Memorandum of Law in support of Motion for Summary Judgment.    Page 360 of 376

11/4/24, 2:59 PM    RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. - Nicholas C. Brown - Outlook

 Outlook

**RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.**

From Chad Taylor </O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=C19789E09D9D47B78CD801E875CE9098–CHAD TAYLOR>
on behalf of
Chad Taylor <chad.taylor@buybuybaby.com>
Date Tue 1/10/2023 2:53 PM
To    Christina Dibella <Christina.DiBella@buybuybaby.com>
Cc    Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>

Yes, there is a $1.2M payment we have requested for Caben/Artsana Asia. Still no confirmation of processing date.

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Tuesday, January 10, 2023 2:47 PM
**To:** Chad Taylor <chad.taylor@buybuybaby.com>
**Cc:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

@Chad Taylor can you answer the below question?

**Chrissy DiBella**
Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Tuesday, January 10, 2023 1:25 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Cc:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Is the below $1.2M in addition to the payments we received yesterday for the domestic portion of the business?  The past due $2M is tied directly to the 46718 DI vendor number.

Please let me know.

Thanks

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Tuesday, January 10, 2023 12:39 PM
**To:** Josh Pahl <Josh.Pahl@artsana.com>
**Cc:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

EXTERNAL EMAIL - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

We have heard $1.2M is to be paid early this week.  We'll keep following up on that until it happens.

**Chrissy DiBella**
Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Tuesday, January 10, 2023 12:34 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Cc:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

11/4/24, 2:59 PM                                RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. - Nicholas C. Brown - Outlook

Chrissy,

Can you please provide an update on the outstanding $2m payment?  There is another $1m that comes due at the end of next week bumping the total to $3m.

Possible to let me know by EOD?

Thanks,
Josh

Sent from my Verizon, Samsung Galaxy smartphone

-------- Original message --------
From: Josh Pahl <Josh.Pahl@artsana.com>
Date: 1/9/23 10:57 AM (GMT-05:00)
To: Christina Dibella <Christina.DiBella@buybuybaby.com>
Cc: Heather Hatfield <Heather.Hatfield@buybuybaby.com>, Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
Subject: RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

Chrissy,

There is a total of $5.2m open for direct import and **$2.0m** is now past due.  Can you advise when we will receive the past due payment of $2.0M?

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Monday, January 9, 2023 10:04 AM
**To:** Josh Pahl <Josh.Pahl@artsana.com>
**Cc:** Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Josh can you shed some light here?  How much are you showing as past due?

Chrissy DiBella
Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

**From:** Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>
**Sent:** Monday, January 9, 2023 10:02 AM
**To:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>; Christina Dibella <Christina.DiBella@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>; Erika Christiansen <ERIKA.Christiansen@buybuybaby.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

@Lindsey Marden@Christina Dibella@Heather Hatfield@Erika Christiansen Yusen informed us that Artsana is holding PO's due to payment issues.  Are we on hold for overdue payments or negotiating new payment terms?  Can you please find our their lead time for shipping once payments are resolved.  Thank you.

**From:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>
**Sent:** Monday, January 9, 2023 8:57 AM
**To:** Paul Pastor <Paul.Pastor@bedbath.com>; Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>; Gregory Cooke <Gregory.Cooke@bedbath.com>; Timothy Stroever <Timothy.Stroever@bedbath.com>
**Cc:** Ian Pinchuk <Ian.Pinchuk@bedbath.com>; Laurie Staugaitis <laurie.staugaitis@us.yusen-logistics.com>; Seweryn Soban <seweryn.soban@bedbath.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hi Paul,

Noted.

*Best regards,*

*Rita*

Rita Shippee  I  Client Management Specialist  I  Client Management & Operations  I  Order Management  I  Supply Chain Solutions
**Yusen Logistics (Americas) Inc.**  I  300 Lighting Way, 6th Floor  I  Secaucus, NJ 07094
C: 774.281.5043  I  E: Rita.Shippee@us.Yusen-Logistics.com  I  W: www.yusen-logistics.com



**From:** Paul Pastor <Paul.Pastor@bedbath.com>
**Sent:** Monday, January 9, 2023 8:55 AM
**To:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>; Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>; Gregory Cooke <Gregory.Cooke@bedbath.com>; Timothy Stroever <Timothy.Stroever@bedbath.com>
**Cc:** Ian Pinchuk <Ian.Pinchuk@bedbath.com>; Laurie Staugaitis <laurie.staugaitis@us.yusen-logistics.com>; Seweryn Soban <seweryn.soban@bedbath.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

Rita if there are charges we should try to push back on vendor.  Thanks

**From:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>
**Sent:** Monday, January 9, 2023 8:54 AM
**To:** Paul Pastor <Paul.Pastor@bedbath.com>; Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>; Gregory Cooke <Gregory.Cooke@bedbath.com>; Timothy Stroever <Timothy.Stroever@bedbath.com>
**Cc:** Ian Pinchuk <Ian.Pinchuk@bedbath.com>; Laurie Staugaitis <laurie.staugaitis@us.yusen-logistics.com>; Seweryn Soban <seweryn.soban@bedbath.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hi Paul,

It was not mentioned, but I'll check and let you know.

Thanks.

*Best regards,*

*Rita*

Rita Shippee  I  Client Management Specialist  I  Client Management & Operations  I  Order Management  I  Supply Chain Solutions
**Yusen Logistics (Americas) Inc.**  I  300 Lighting Way, 6th Floor  I  Secaucus, NJ 07094
C: 774.281.5043  I  E: Rita.Shippee@us.Yusen-Logistics.com  I  W:  www.yusen-logistics.com

**From:** Paul Pastor <Paul.Pastor@bedbath.com>
**Sent:** Monday, January 9, 2023 8:49 AM
**To:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>; Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>; Gregory Cooke <Gregory.Cooke@bedbath.com>; Timothy Stroever <Timothy.Stroever@bedbath.com>
**Cc:** Ian Pinchuk <Ian.Pinchuk@bedbath.com>; Laurie Staugaitis <laurie.staugaitis@us.yusen-logistics.com>; Seweryn Soban <seweryn.soban@bedbath.com>
**Subject:** RE: BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

Thanks Rita, 3 of the orders have booking numbers

Any concern with charges from carrier?

| VENDOR NAME | P.O. # | PO STATUS | PORT OF LADING | PORT OF DISCHARGE | DC | CARRIER | CARRIER BOOKING NUMBER | REQUESTED SHIP DATE |
|---|---|---|---|---|---|---|---|---|
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RQ | Planned to Ship | YANTIAN | LOS ANGELES, CA | 3601 IMPORTS/SOUTHWEST | EVERGREEN | 149300024011 | 01/26/2023 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RT | Planned to Ship | YANTIAN | LOS ANGELES, CA | 3601 IMPORTS/SOUTHWEST | EVERGREEN | 149300024037 | 01/27/2023 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RM | Planned to Ship | YANTIAN | LOS ANGELES, CA | 3601 IMPORTS/SOUTHWEST | MEDITERRANEAN S | 181AY0224718847D1 | 01/19/2023 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RS | Planned to Ship | YANTIAN | NEWARK, NJ | 1590 NE IMPORT TRANSLOAD VIRT | EVERGREEN | | 01/27/2023 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RU | Planned to Ship | YANTIAN | SAVANNAH, GA | 3666 IMPORTS/SOUTHEAST | MEDITERRANEAN S | | 01/27/2023 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RP | Planned to Ship | YANTIAN | NEWARK, NJ | 1590 NE IMPORT TRANSLOAD VIRT | EVERGREEN | | 01/26/2023 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RR | Planned to Ship | YANTIAN | SAVANNAH, GA | 3666 IMPORTS/SOUTHEAST | MEDITERRANEAN S | | 01/26/2023 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RY | Planned to Ship | YANTIAN | NEWARK, NJ | 1590 NE IMPORT TRANSLOAD VIRT | MEDITERRANEAN S | | 02/02/2023 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RZ | Planned to Ship | YANTIAN | LOS ANGELES, CA | 3601 IMPORTS/SOUTHWEST | MEDITERRANEAN S | | 02/02/2023 |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2SA | Planned to Ship | YANTIAN | SAVANNAH, GA | 3666 IMPORTS/SOUTHEAST | MEDITERRANEAN S | | 02/02/2023 |

11/4/24, 2:59 PM                RE: BBB - PO on Hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. - Nicholas C. Brown - Outlook

**From:** Rita Shippee <Rita.Shippee@us.yusen-logistics.com>
**Sent:** Monday, January 9, 2023 8:00 AM
**To:** Jennifer Turetsky <Jennifer.Turetsky@bedbath.com>; Gregory Cooke <Gregory.Cooke@bedbath.com>; Timothy Stroever <Timothy.Stroever@bedbath.com>; Paul Pastor <Paul.Pastor@bedbath.com>
**Cc:** Ian Pinchuk <Ian.Pinchuk@bedbath.com>; Laurie Staugaitis <laurie.staugaitis@us.yusen-logistics.com>; Seweryn Soban <seweryn.soban@bedbath.com>
**Subject:** BBB - PO on hold - ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD.

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Good morning,

The vendor is holding the below po's due to payment issues.

Please keep us posted with any updates on these po's.

Thank you.

| VENDOR NAME | P.O. # | BUYER NAME | DEPT# | INCOTERMS | PO STATUS |
|---|---|---|---|---|---|
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RM | CHRISTINA DIBELLA | 882 | FOB | Planned to Ship |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RT | CHRISTINA DIBELLA | 882 | FOB | Planned to Ship |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RQ | CHRISTINA DIBELLA | 882 | FOB | Planned to Ship |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RY | CHRISTINA DIBELLA | 882 | FOB | Planned to Ship |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RZ | CHRISTINA DIBELLA | 882 | FOB | Planned to Ship |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2SA | CHRISTINA DIBELLA | 882 | FOB | Planned to Ship |

| VENDOR NAME | P.O. # | PORT OF LADING | PORT OF DISCHARGE | APPROVED T |
|---|---|---|---|---|
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RS | YANTIAN | NEWARK, NJ | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RU | YANTIAN | SAVANNAH, GA | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RP | YANTIAN | NEWARK, NJ | |
| ARTSANA USA INC C/O CABEN ASIA PACIFIC LTD. | NX5M2RR | YANTIAN | SAVANNAH, GA | |

*Best regards,*

*Rita*

Rita Shippee I Client Management Specialist I Client Management & Operations I Order Management I Supply Chain Solutions
**Yusen Logistics (Americas) Inc. I** 300 Lighting Way, 6th Floor I Secaucus, NJ 07094
C: 774.281.5043 I E: Rita.Shippee@us.Yusen-Logistics.com I W: www.yusen-logistics.com

**Yusen Logistics**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

 Outlook

---

## Fw: Chicco

---

**From** Amanda Plasterer <Amanda.Plasterer@artsana.com>
**Date** Wed 5/14/2025 11:40 AM
**To**    Corey Eshelman <corey.eshelman@artsana.com>

📎 1 attachment (50 KB)
BBB AGING 1-10-2023.xlsx;

**Amanda Plasterer**
Staff Accountant
Chicco USA | Artsana USA
1826 William Penn Way | Lancaster, PA 17601
p 717-517-5823 | f 717-735-0888 | chiccousa.com

---

**From:** Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Sent:** Tuesday, January 10, 2023 2:10 PM
**To:** Steve Rubin <Steve.Rubin@artsana.com>; Amanda Plasterer <Amanda.Plasterer@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>
**Cc:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** FW: Chicco

Team – Per my recent call with Chad Taylor of BBB we are effectively prepay go forward.

Thanks
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA | Artsana USA
1826 William Penn Way | Lancaster, PA 17601
p 717-735-6200 | f 717-735-0888 | chiccousa.com



**From:** Steve McLaughlin
**Sent:** Tuesday, January 10, 2023 2:09 PM
**To:** Chad Taylor <chad.taylor@buybuybaby.com>; Nora.Shoots@buybuybaby.com;
christina.dibella@buybuybaby.com
**Cc:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** Chicco

Good afternoon team,

Considering recent news, we regret to inform you that we will be moving our terms to prepayment effective
immediately on invoices dated 1/10/2023 or later.  We understand this move is not ideal and can review as more
information on the state of the business is released.

I have attached the current aging report prepared by our finance team for your review.  Our expectation is that
payments will continue as outlined for anything invoiced prior to 1/10/2023 according to our current terms
agreement.

We appreciate your partnership as we navigate this challenging time.

Regards,
Steve

**Steve McLaughlin**
Vice President of Sales

Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com



Case 24-01336-VFP    Doc 21-1    Filed 03/13/26    Entered 03/13/26 15:16:51    Desc
Memorandum of Law in support of Motion for Summary Judgment    Page 366 of 376

Exhibit 13

 **Outlook**

---

**RE: Open DI PO's January BBB**

---

**From** Patrick Smith <IMCEAEX-
_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=cfffe0431d18443783362d629f1d626f-
Patrick+20Smi@EURP251.PROD.OUTLOOK.COM>

**Date** Wed 1/11/2023 10:22 AM

**To** Josh Pahl <Josh.Pahl@artsana.com>; Pietro Colombo <Pietro.Colombo@artsana.com>

Hi Josh,
These look like the open POs for BBB that have not shipped yet:
  NX5M2RP
  NX5M2RQ
  NX5M2RR
  NX5M2RY
  NX5M2RZ
  NX5M2SA
  NX5M2RM
  NX5M2RS
  NX5M2RT
  NX5M2RU
Thanks,

Pat

**From:** Josh Pahl
**Sent:** Wednesday, January 11, 2023 9:18 AM
**To:** Patrick Smith ; Pietro Colombo
**Subject:** Open DI PO's January BBB
Hey Patrick,
Can you please send me the PO's that will not be shipping DI based on us holding BBB shipments because of payment situation?
Possible to send in the next hour or so?
Thanks

 Outlook

---

**RE: Buy Buy Aging**

From  Chad Taylor <chad.taylor@buybuybaby.com>
Date  Wed 1/18/2023 11:36 AM
To    Steve McLaughlin <IMCEAEX-
      _o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-
      Steve+20McLau@EURP251.PROD.OUTLOOK.COM>; John Dery <John.Dery@bedbath.com>
Cc    Christina Dibella <Christina.DiBella@buybuybaby.com>; Josh Pahl <Josh.Pahl@artsana.com>; Greg Obetz <IMCEAEX-
      _o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=ARTSANAGROUP+2Eonmicrosoft+2Ecom-
      50609-Greg+2EObetz+40artsana+2Ecom22c@EURP251.PROD.OUTLOOK.COM>

---

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Hi Steve
Thank you for reaching out.
We (merchant team), have given the greenlight and prioritized weekly payments for you in both the domestic and DI sides, but can confirm I don't see any payments going out after last Monday to you. I'm reaching out to our AP team on this and am hoping for a payment date confirmation.
-Chad

**From:** Steve McLaughlin
**Sent:** Wednesday, January 18, 2023 9:37 AM
**To:** John Dery ; Chad Taylor
**Cc:** Christina Dibella ; Josh.Pahl@artsana.com; Greg Obetz
**Subject:** Buy Buy Aging

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Good Morning,
Please find attached Artsana aging report. We are currently close to $3M in past due invoices. I know last week this was brought up on your end. Can you please provide an update on payment?
Thanks,
Steve
**Steve McLaughlin**
Vice President of Sales
Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com



This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.

Please, think about environment before printing this e-mail

 Outlook

---

**RE: This Week's Order and Payment**

---

From  Steve McLaughlin <IMCEAEX-
_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=58e11f0bd91a4de68b884de3ea85b487-
Steve+20McLau@EURP251.PROD.OUTLOOK.COM>

Date  Fri 2/24/2023 11:59 AM

To    Josh Pahl <Josh.Pahl@artsana.com>; Tom Gwiazdowski <Tom.Gwiazdowski@artsana.com>; Greg Obetz <IMCEAEX-
_o=ExchangeLabs_ou=Exchange+20Administrative+20Group+20+28FYDIBOHF23SPDLT+29_cn=Recipients_cn=ARTSANAGROUP+2Eonmicrosoft+2Ecom-
50609-Greg+2EObetz+40artsana+2Ecom22c@EURP251.PROD.OUTLOOK.COM>; Steve Rubin <Steve.Rubin@artsana.com>

---

Great, thanks for the update.
**Steve McLaughlin**
Vice President of Sales
Chicco USA | Artsana USA

1826 William Penn Way | Lancaster, PA 17601

p 717-735-6200 | f 717-735-0888 | chiccousa.com

 

**From:** Josh Pahl
**Sent:** Friday, February 24, 2023 11:59 AM
**To:** Steve McLaughlin ; Tom Gwiazdowski ; Greg Obetz ; Steve Rubin
**Subject:** RE: This Week's Order and Payment
I just heard from Chrissy again and Heather is writing the order today

**From:** Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Sent:** Friday, February 24, 2023 10:57 AM
**To:** Tom Gwiazdowski <Tom.Gwiazdowski@artsana.com>; Greg Obetz <Greg.Obetz@artsana.com>; Steve Rubin <Steve.Rubin@artsana.com>
**Cc:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** FW: This Week's Order and Payment
FYI

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Friday, February 24, 2023 10:03 AM
**To:** Josh Pahl <Josh.Pahl@artsana.com>
**Subject:** This Week's Order and Payment

EXTERNAL EMAIL - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

| Vendor # | Vendor Name | Payment Type | Cost NEW ORDERS | Repay | Total Cost |
|----------|-------------|--------------|-----------------|-------|------------|
| 18595 | ARTSANA USA INC/JUVENILE | ACH | $1,065,040 | $532,520 | $1,597,560 |

**Chrissy DiBella**
Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712
welcome to parenthood™
buybuy BABY

**Falk, Turner N.**

| | |
|---|---|
| **From:** | Josh Pahl <Josh.Pahl@artsana.com> |
| **Sent:** | Monday, February 27, 2023 2:13 PM |
| **To:** | Chrissy Dibella; 'Nora.Shoots@buybuybaby.com'; 'Heather Hatfield' |
| **Cc:** | Steve McLaughlin |
| **Subject:** | RE: Chicco Buy |
| **Attachments:** | BBB DED 1.PDF; BBB DED 2.PDF; BBB DED 3.PDF; BBB DED 4.PDF |

Hi Chrissy,

Thank you for the heads up and confirming we did see payment in the system this morning. A few things I would like to align on moving forward.

1. We contacted BBB routing for the orders we received, and they said they will not be routing until Thursday/Friday of this week. Giving you a heads up as this means the product will not ship until mid/late next week based on history. Not sure if there is anything we can do to have the BBB team accept routing early this week?

2. Attached/below are the deductions we received for 2022 program against the old invoices that were paid.

| | | |
|---|---|---|
| ADR534789 | 01/12/2023 | -$4,600.48 |
| ADR534790 | 01/12/2023 | -$2,542.38 |
| FRT534639 | 01/11/2023 | -$52,838.13 |
| FRT534753 | 01/11/2023 | -$26,540.78 |
| REB534166 | 01/11/2023 | -$95,241.03 |
| REB534417 | 01/11/2023 | -$34,403.02 |
| SMD534091 | 01/11/2023 | -$18,720.17 |
| SMD534390 | 01/11/2023 | -$10,345.41 |

   - **Can you please confirm that moving forward, no additional deductions for program (Mkt, Supply Chain, Growth, Defective) will be taken. It is my understanding that the only deduction that would be taken is the 5.75% freight allowance.**
   - **Can you also please confirm that the freight deduction will be taken on a quarterly basis?**

3. Order Candence – Are you able to share your order cadence for Chicco? My plan is to put together a working document and send to you weekly with order recco's based on BBB current inventory, Chicco stock availability & ROS. We will plan to use the last document you sent over as the base spreadsheet to keep it consistent.

4. Lastly, the below 4 items were ordered. The 3 highlighted in yellow are discontinued, and the FastLock 360 is unfortunately OOS for 2-3 months. How do you want to handle this? Would you like to order more of other existing items to use the $68,108.72 for this rd of orders or should we apply a credit to your account for the $68,108.72 for future orders?

| | | |
|---|---|---|
| 05079666080070 | QUICKSEAT HOOK ON CHAIR POETIC USA | $ 6,749.26 |
| 05079771410070 | FIT2 REAR-FACING B.CAR SEAT FLEUR USA | $ 8,284.85 |
| 06079014750070 | KIDFIT BELT P.BOOSTER SEAT GRAVITY USA | $ 2,463.65 |
| 06079852070070 | NEXTFIT ZIP BABY CAR SEAT GEO USA | $ 19,737.60 |

| 00079676940070 | FASTLOCK 360 HOOK ON CHAIR CHARCOAL USA | $ 30,873.36 |
| Total | | $ 68,108.72 |

Please let me know on the above as soon as you can!

Thanks Chrissy!
Josh


**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Monday, February 27, 2023 9:03 AM
**To:** Josh Pahl <Josh.Pahl@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Cc:** Nora Shoots <Nora.Shoots@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Subject:** RE: Chicco Buy

EXTERNAL EMAIL - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

ACH payment, you should see this by today . . .

# ☰ ORACLE

## Payment: 823031 ⓘ

| | |
|---|---|
| **Payee** | ARTSANA USA INC |
| **Payment Date** | 2/27/23 |
| **Status** | Negotiable |
| **Accounting Status** | Unaccounted |
| **Reconciled** | No |
| **Type** | Payment Process Request |

**Payment Details**  Paid Invoices  History  Conversion  Other

### Payee

| | |
|---|---|
| **Current Name** | |
| **Payee Site** | 018595 |
| **Remit-to Address** | 1826 WILLIAM PENN WAY, LANCASTER, LancasterPA 17601 |
| **Payment Function** | Payables disbursements |

### Processing Details

| | |
|---|---|
| **Disbursement Bank Account** | BBB CONTROLLED DISB TRADE 27509 |
| **Payment Method** | Electronic |
| **Bill Payable** | No |
| **Payment Process Profile** | JPMC PPP JPMC ACCOUNT |

### General Information

| | |
|---|---|
| **Payment Description** | |
| **Reference Number** | 74259 |

## Chrissy DiBella

Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

**From:** Christina Dibella
**Sent:** Tuesday, February 21, 2023 2:30 PM

3

**To:** Josh Pahl <Josh.Pahl@artsana.com>; Steve McLaughlin <Steve.McLaughlin@artsana.com>
**Cc:** Nora Shoots <Nora.Shoots@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Subject:** RE: Chicco Buy

@Steve McLaughlin attached is the list that we discussed

## Chrissy DiBella

Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

**From:** Christina Dibella
**Sent:** Tuesday, February 21, 2023 12:21 PM
**To:** Josh Pahl <Josh.Pahl@artsana.com>
**Cc:** Nora Shoots <Nora.Shoots@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Subject:** RE: Chicco Buy

Thanks, we need confirmation today to pay on Thursday and ship next week

No pressure 😊

## Chrissy DiBella

Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Tuesday, February 21, 2023 11:06 AM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Cc:** Nora Shoots <Nora.Shoots@buybuybaby.com>; Heather Hatfield <Heather.Hatfield@buybuybaby.com>
**Subject:** Re: Chicco Buy

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hi Chrissy,

Sorry for delay. We are working through it and should definitely have feedback a little later today.

Thanks,
Josh

Sent from my iPhone

4

On Feb 21, 2023, at 9:38 AM, Christina Dibella <Christina.DiBella@buybuybaby.com> wrote:

**EXTERNAL EMAIL** - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links or attachments

Hey Josh, just a reminder that we'd like to get your feedback here ASAP so we can get back to ordering. Thanks,

### Chrissy DiBella
Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
**buybuy BABY**

**From:** Nora Shoots <Nora.Shoots@buybuybaby.com>
**Sent:** Friday, February 17, 2023 2:15 PM
**To:** Josh.Pahl@artsana.com
**Cc:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Subject:** RE: Call Follow Up - Chicco

Hi Josh

Here is the sku list for feeding:

| | | | Unit Total | Retail Total | Cost To |
|---|---|---|---|---|---|
| 68776879 | 68776879 (CUP SILI SPT TRNS GRL 7OZ CHCO) | 872 | 438 | $ 3,062 | $ 1,621 |
| 68776886 | 68776886 (CUP SILI SPT TRNS BOY 7OZ CHCO) | 872 | 384 | $ 2,684 | $ 1,421 |
| 68776893 | 68776893 (CUP SPOUT TRNR GRL 7Z2P CHCCO) | 872 | 207 | $ 2,068 | $ 1,139 |
| 69936827 | 69936827 (CUP SPT TRNS SIPY 7Z GRN CHCCO) | 872 | 204 | $ 1,426 | $ 785 |
| 69936829 | 69936829 (CUP SPT TRNS SIPY 7Z PNK CHCCO) | 872 | 126 | $ 881 | $ 485 |
| 69936828 | 69936828 (CUP SPT TRNS SIPY 7Z BLU CHCCO) | 872 | 114 | $ 797 | $ 439 |
| 69688846 | 69688846 (NIPPLE DUO FAST 2PK CHICCO) | 872 | 468 | $ 2,803 | $ 1,498 |
| 69688847 | 69688847 (NIPPLE DUO MED 2PK CHICCO) | 872 | 612 | $ 3,666 | $ 1,958 |
| 69688848 | 69688848 (BOTTLE DUO 9OZ 2PK CHICCO) | 872 | 200 | $ 3,998 | $ 2,160 |
| 69688849 | 69688849 (BOTTLE DUO 9OZ CHICCO) | 872 | 16 | $ 208 | $ 108 |
| 69688850 | 69688850 (BOTTLE DUO 5OZ 2PK PINK CHICCO) | 872 | 16 | $ 320 | $ 173 |
| 69688851 | 69688851 (NIPPLE DUO SLOW 2PK CHICCO) | 872 | 6 | $ 36 | $ 19 |
| 69688852 | 69688852 (BOTTLE DUO 9OZ 2PK PINK CHICCO) | 872 | 36 | $ 720 | $ 389 |
| 69688853 | 69688853 (BOTTLE DUO 5OZ 2PK CHICCO) | 872 | 52 | $ 1,039 | $ 562 |
| 69688854 | 69688854 (BOTTLE DUO 5OZ CHICCO) | 872 | 20 | $ 260 | $ 135 |
| 69689322 | 69689322 (GIFTSET DUO NEWBORN PNK CHICCO) | 872 | 6 | $ 300 | $ 163 |
| 69689323 | 69689323 (GIFTSET DUO NEWBORN CHICCO) | 872 | 114 | $ 5,699 | $ 3,104 |
| 69689324 | 69689324 (GIFTSET DUO DELUXE CHICCO) | 872 | 240 | $ 16,798 | $ 9,305 |
| 42391432 | 42391432 (PACI SIL CLR 0-6M 2PK CHICCO) | 872 | 228 | $ 1,366 | $ 695 |
| 69627168 | 69627168 (PACI SIL MINI PNK 0-2M 2P CHCO) | 872 | 204 | $ 1,426 | $ 738 |
| 69627169 | 69627169 (PACI SIL MINI CLR 0-2M 2P CHCO) | 872 | 150 | $ 1,049 | $ 543 |

Thanks!

Kind regards,

**nora shoots**
Director, Category Management – Feeding, Safety, Baby Wellness, Consumables & Gift
nora.shoots@buybuybaby.com
650 Liberty Avenue
Union, NJ 07083
t: 908-855-2710

https://partners.bedbath.com/web/public

welcome to parenthood™
**buybuy BABY**

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Friday, February 17, 2023 2:00 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>; Nora Shoots
<Nora.Shoots@buybuybaby.com>
**Subject:** RE: Call Follow Up - Chicco

CAUTION: This email originated from outside your organization. Exercise caution when
opening attachments or clicking links, especially from unknown senders.

Hi,

Ok, thanks for sending. We will look at it and provide feedback.

Thanks!
Josh

**From:** Christina Dibella <Christina.DiBella@buybuybaby.com>
**Sent:** Friday, February 17, 2023 1:56 PM
**To:** Josh Pahl <Josh.Pahl@artsana.com>; Nora Shoots <Nora.Shoots@buybuybaby.com>
**Subject:** RE: Call Follow Up - Chicco

EXTERNAL EMAIL - Prestare attenzione a eventuali collegamenti o allegati - Be careful with links
or attachments

Hey Josh,

Here is the list for Gear of top selling skus that the planning team pulled for the first round of orders.
Please review the list and let me know if you are in agreement. We should be pulling off any items that
are going away in the near future and adding any new items that may be either available to ship or just
not hitting the top sellers because we haven't owned them.

Let me know if this makes sense or if you'd like to set up a call to review.

Thanks,

## Chrissy DiBella

Manager of Category Management, Gear
christina.dibella@buybuybaby.com
t: 908.855.2712

welcome to parenthood™
buybuy BABY

**From:** Josh Pahl <Josh.Pahl@artsana.com>
**Sent:** Friday, February 17, 2023 1:50 PM
**To:** Christina Dibella <Christina.DiBella@buybuybaby.com>; Nora Shoots
<Nora.Shoots@buybuybaby.com>
**Subject:** Call Follow Up - Chicco

CAUTION: This email originated from outside your organization. Exercise caution when opening attachments or clicking links, especially from unknown senders.

Hi Chrissy/Nora,

It was great seeing you guys on the call today 😊

Our office is closed on Monday for Presidents day, and we are having a call with our team on Tuesday, 2/21 regarding the initial buy plan. My plan is to have order recommendations over to you by item on Wednesday. We can also hop on a call or come to your office to work through any questions if needed. I will also include Heather on the buy plan.

Does that work for you guys?

Have a great weekend!
Josh

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**

*This message is confidential and may be legally privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system; you must not copy or disclose the contents of this message or any attachment to any other person. Copyright in documents created by or on behalf of this firm remains vested in the firm, and we assert our moral rights.*

**Please, think about environment before printing this e-mail**