| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** **DISTRICT OF NEW JERSEY** *Caption in Compliance with D.N.J. LBR 9004-1(b)* SAUL EWING LLP Turner N. Falk, Esq. 1735 Market Street, 34th Floor Philadelphia, PA 19103 Telephone: (215) 972-7777 Email: turner.falk@saul.com *Counsel for Artsana USA, Inc.* | |
| In re: BED BATH & BEYOND, INC., *et al.*,[1] Debtors. | Chapter 11 Case No. 23-13359 (VFP) (Jointly Administered) |
| Michael Goldberg, as Plan Administrator for 20230930-DK-Butterfly-1, Inc. (f/k/a Bed Bath & Beyond Inc.),[2] Plaintiff, v. Artsana USA, Inc., Defendant. | Adv. No. 24-01336 (VFP) |

### DECLARATION OF HAROLD A. SCHAEFFER SUPPORT OF DEFENDANT'S (I) RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (II) CROSS-MOTION FOR SUMMARY JUDGMENT

I, Harold A. Schaeffer, hereby declare as follows:

### BACKGROUND

1.      I am the president of D & H Credit Services Inc., a consulting firm that offers

---

[1]      The last four digits of Debtor Bed Bath & Beyond Inc.'s tax identification number are 0488. A complete list of the Debtors in these chapter 11 cases and each such Debtor's tax identification number may be obtained on the website of the Debtors' proposed claims and noticing agent at https://restructuring.ra.kroll.com/bbby. The location of Debtor Bed Bath & Beyond Inc.'s principal place of business and the Debtors' service address in these chapter 11 cases is 650 Liberty Avenue, Union, New Jersey 07083.

[2]      Pursuant to the Certificate of Amendment of the Certificate of Incorporation of Bed Bath & Beyond Inc., which was filed with the State of New York Department of State on September 21, 2023, the name of the entity formerly known as "Bed Bath & Beyond Inc." was changed to 20230930-DK-Butterfly, Inc. [Filing ID No. 230921001833 DOS ID 315602].

1

various credit-related services to companies in the United States and abroad.

2.      I make this declaration in connection with the response in opposition of Artsana USA Inc. ("Artsana") to Plaintiff's *Motion for Summary Judgment with Respect to Plaintiff's Claims Against Defendant, Artsana USA, Inc.* (the "Response in Opposition") and Artsana's *Cross-Motion for Summary Judgment* (the "Cross-Motion").

3.      I was retained by Artsana to analyze the billing and payment history between Artsana and Debtors' Buy Buy Baby business segment ("BBB"), and to provide opinions with respect to whether such was reflective of an ordinary course of business between them during the 90 days preceding the commencement of the Debtors' bankruptcy cases (the "Preference Period") as contemplated by 11 U.S.C. §§ 547(c)(2)(A) (the "subjective" ordinary course of business defense) and/or 547(c)(2)(B) (the "objective" or "industry standard-based ordinary course of business defense).

4.      My credentials, background, methodology and opinions are set forth in my Report dated November 28, 2025, which is attached hereto as **Exhibit A** (the "Report").

5.      The documents and information upon which I relied in producing my Report are attached to the Report.

6.      The sources of the information I used in forming my opinions as set forth in my Report include business records provided to me by Artsana and data obtained from the Risk Management Association ("RMA") regarding payment practices in the industry applicable to both Artsana and BBB.  These sources were sufficient for me to perform an analysis of the relevant issues.

7.      Use of RMA data for the analysis of preference defenses had been accepted and validated repeatedly by a number of courts, including *In re Murray, Inc.*, 392 B.R. 288, 298 (B.A.P.

2

6th Cir. 2008) (affirming bankruptcy court that "agreed with Schaeffer's analysis and concluded that the transfers made during the preference period were in the ordinary course of business between these parties."); *Dietz v. Jacobs*, No. CIV. 12-1628 JNE/JJG, 2014 WL 1153502, at *7 (D. Minn. Mar. 21, 2014) (finding Mr. Schaeffer's report reliable and holding that "it was appropriate for Mr. Schaeffer's report to conduct an analysis under both [the subjective and objective ordinary course defenses]); *In re AES Thames, L.L.C.*, No. 11-10334 (KJC), 2016 WL 11595116, at *9 (Bankr. D. Del. Oct. 28, 2016) ("Mr. Schaeffer's analysis using RMA data to establish payment practices in the type of industries that reflect the transactions between the Debtor and P&M Brick is relevant" and admitted); *In re Ctr. City Healthcare, LLC*, 664 B.R. 208, 217 (Bankr. D. Del. 2024), aff'd, No. AP 21-50920 (MFW), 2025 WL 3205002 (D. Del. Nov. 17, 2025) (accepting expert report using RMA data and similar methodology to find payments were made in the ordinary course of business).

8. I respectfully believe my specialized knowledge will assist this Court in assessing the facts of this case and the conclusions to be drawn from those facts with respect to Artsana's subjective and objective/industry-standard ordinary course of business defenses to the Plaintiff's preference claim.

9. I have employed reliable principles and methods in my analysis and in producing my Report. My methodologies are described in my Report. I believe the opinions expressed in my Report reflect a reliable application of these principles and methods to the facts of this case.

10. Without limitation to the analysis and opinions contained in my Report, all of which are incorporated herein, below is a summary of such analysis and opinions consistent with my Report and as representative of testimony I would be prepared to provide on the witness stand if this matter were to proceed to trial. Such is without waiver to additional testimony that may be

provided hereafter based on the analysis and opinions contained in my Report and/or in response to any critique of such by Plaintiff in its response to Artsana's Response in Opposition and Cross-Motion.

### OBJECTIVE ORDINARY COURSE ANALYSIS

11. In my experience, the industry that is applicable to both Artsana and BBB is the "Toy and Hobby Goods and Supplies Merchant Wholesalers Industry" (the "Applicable Industry"). It is this industry with respect to which RMA data on billing, payment and collection practices was obtained.

12. In February 2023, a single payment on many invoices was made to Artsana, which payment (the "Transfers") Plaintiff seeks to avoid in this adversary proceeding. As set forth in greater detail in the Report, to determine whether the Transfers were made according to ordinary business terms, I first assessed the "industry standard" with respect to the days after issuance of an invoice until payment of the invoice (i.e., "days to pay") using RMA data for a period including the challenged Transfers.

13. According to the RMA data, the most common credit terms in the applicable industry are Net-30, meaning payment is due 30 days after invoicing. Ex. A at 4.

14. According to the RMA data, the "middle quartiles" (50%) of average days to pay in the Applicable Industry is 2 to 68 days. Based on Net-30 terms, this means that in this industry payments are generally made up to 38 days late. Ex. A at 5.

15. Thus, payments made on invoices issued by Artsana within 38 days of their applicable due date are within the "industry standard". Ex. A at 6.

16. I calculated the number of days after issuance of each Artsana invoice until it was paid. Invoices paid within 98 days of issuance were paid on or before 38 days late – within the industry standard. Ex. A at 5, 42.

4

17.     Only 80 of the invoices paid by the Transfers – totaling $42,966.04 – were paid outside of this days-to-pay range, and potentially outside the industry standard terms.  All other invoices paid by the Transfers were made according to ordinary business terms as contemplated by 11 U.S.C. § 547(c)(2)(B). Ex. A at 5, 42.

### SUBJECTIVE ORDINARY COURSE OF BUSINESS ANALYSIS

18.     The Applicable Industry can experience seasonal differences in payment timing and order frequency.  To account for this, I assessed industry data (including from RMA) and historical data with respect to Artsana's relationship with BBB from the month of February in the ordinary course analysis, as this is when the challenged payment was made.

19.     Payment history data for 2020 and 2021, both in the Applicable Industry and as between Artsana and BBB – likely was distorted by the Covid-19 pandemic, including disruptions to worldwide supply chains, temporary changes in the purchasing behavior of businesses and customers, and government subsidies and programs aimed at counteracting the economic disruption caused by the pandemic.  To account for this, I omitted 2020 and 2021 data from the analysis because it would unreasonably distort the data, and assessed and historical data for 2022 and 2019. These years are relatively free from the impact of the pandemic.

20.     Use of February 2019 and February 2022 data nevertheless still provided sufficient information for me to conduct a full analysis and form opinions, which are set forth in the Report attached as Exhibit A.

21.     In February 2019, the Debtor paid invoices 61 to 167 days after issuance – 1 to 107 days past due on the Net-60 terms applicable during the entire historical relationship between the Debtor and Artsana.  Ex. A at 7, 48-86.

22.     In February 2022, the Debtor paid invoices 62 to 195 days after issuance – 2 to 135

days past due on the Net-60 terms applicable during the entire historical relationship between the Debtor and Artsana.  Ex. A at 7, 86-108.

23.     During the Preference Period, all invoices paid by the Transfers were paid 76 days or less after due date.  Ex. A at 7-8, 109-110.

24.     Thus, and independent of my analysis of the industry standard ordinary course of business defense, the Transfers were made in the ordinary course of business between the Debtors and Artsana under 11 U.S.C. § 547(c)(2)(A).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 14, 2026                                    Respectfully submitted,

                                                         /s/ Harold A. Schaeffer
                                                         Harold A. Schaeffer

6